### IN THE UNITED STATES DISTRICT COURT IN AND FOR THE
### NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) GWACS ARMORY, LLC, an Oklahoma limited liability company, | )<br>)<br>) |
| Plaintiff, | ) |
| v. | ) Case No. |
| | ) |
| (1) KE ARMS, LLC, an Arizona limited liability company; (2) RUSSELL PHAGAN, an individual; (3) SINISTRAL SHOOTING TECHNOLOGIES, LLC, an Arizona limited liability company; (4) Brownells, Inc., an Iowa corporation; and (5) Shawn Nealon, an individual, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

### **COMPLAINT**
### (JURY TRIAL DEMANDED)

**COMES NOW**, Plaintiff GWACS Armory, LLC, an Oklahoma limited liability company ("Plaintiff"), by and through its attorneys of record, James E. Weger and Tadd J.P. Bogan of the law firm of Jones, Gotcher & Bogan, P.C., and hereby submits its Complaint against Defendants, KE Arms, LLC, an Arizona limited liability company ("KEA"); Russell Phagan, an individual ("Phagan"); Sinistral Shooting Technologies, LLC, an Arizona limited liability company ("SST"); Brownells, Inc., an Iowa corporation ("Brownells"); and Shawn Nealon, an individual ("Nealon") (hereinafter collectively referred to as "Defendants"). In support of its Complaint, Plaintiff alleges and shows the Court as follows:

### **PARTIES, JURISDICTION AND VENUE**

1. Plaintiff is an Oklahoma limited liability company with its principal place of business located in Tulsa, Oklahoma.

2. Defendant KEA is an Arizona limited liability company with its principal place of business in Phoenix, Arizona. KEA entered into a Mutual Nondisclosure Agreement with Plaintiff (hereinafter the "KEA NDA"), which is to be construed in accordance with Oklahoma law.

3. Defendant Phagan is an individual residing in Arizona. Phagan entered into an Asset Purchase and Sales Agreement (hereinafter the "IP Purchase Agreement") as the controlling member of Defendant SST. The IP Purchase Agreement provides venue in state or federal courts in Tulsa, Oklahoma, with Oklahoma law governing the same. Further, Phagan previously worked for Plaintiff as a sales representative, and currently works for KEA.

4. Defendant SST entered into the IP Purchase Agreement with Plaintiff, which provides the same shall be construed under Oklahoma law, and that venue shall be in state or federal court in Tulsa, Oklahoma.

5. Defendant Brownells is an Iowa corporation. Brownells is a large firearms dealer which sells firearms and distributes firearm catalogs throughout the United States, including Tulsa, Oklahoma. Further, Brownells entered into two Mutual Nondisclosure Agreements with Plaintiff, the most recent of which is governed by Oklahoma law.

6. Defendant Nealon is an individual residing in Arizona, who misappropriated and sold KEA intellectual property which was purchased by Plaintiff pursuant to the IP Purchase Agreement.

7. The amount in controversy in this matter exceeds $75,000.

8. Jurisdiction and venue are proper in this Court by way of diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1) between Plaintiff and Defendants.

9. Further, this Court has original jurisdiction pursuant to 18 U.S.C. § 1836(c).

10. Furthermore, this Court is a proper venue for this action pursuant to 28 U.S.C. §§ 1391(b)(2)&(3), as it arises out of the IP Purchase Agreement between Plaintiff and SST, which

states venue shall be in Tulsa, Oklahoma; the harm suffered by Plaintiff occurred in Tulsa, Oklahoma; the IP and other assets purchased by Plaintiff are in Oklahoma; and KEA and Brownells entered into the KEA NDA and 2016 Brownells NDA with an Oklahoma company and said agreement is subject to Oklahoma law.

**FACTUAL ALLEGATIONS**

11. Plaintiff incorporates and re-alleges the allegations contained in paragraph numbers 1 – 10 above.

12. In or around December of 2000, Cavalry Arms ("Cavalry"), which was owned by Nealon, created a polymer lower receiver for the civilian version of the M16 rifle, commonly referred to as an AR-15. Cavalry's polymer lower receiver was called the CAV-15.

13. Cavalry's production of the original CAV-15 designs was discontinued in February of 2003.

14. In or around November of 2003, Cavalry began producing CAV-15 polymer lower receivers called the CAV-15 MKII, which was a derivative of Cavalry's original CAV-15 designs.

15. In approximately 2009 or 2010, Cavalry and Nealon were investigated by the United States Department of Justice. Upon information and belief, on February 18, 2010, Nealon plead guilty to violation of federal firearms laws relating to the unlawful transfer of firearms. Thereafter Cavalry and Nealon lost their FFL (federal firearms license), and ceased to be in the firearms business.

16. Defendant Phagan worked for Cavalry from 2001 – 2010.

17. In or about April of 2010, Phagan's company, SST, purchased the assets and intellectual property relating to the CAV-15 from Cavalry, including, but not limited to, the MKI and MKII molds, tooling, CAD drawings, and all intellectual property relating thereto.

18. Phagan thereafter attempted to obtain his own FFL to produce firearms (including the CAV-15 lowers). However, Phagan withdrew his request for his FFL prior to the ATF's approval thereof because he believed he would not be able to obtain his FFL due to his prior relationship with Cavalry, Nealon, and another individual indicted along with Nealon.

19. In or around September of 2011, Phagan and SST advertised the CAV-15 polymer AR-15 lower receiver molds and IP for sale.

20. On November 22, 2011, SST entered into the IP Purchase Agreement with Plaintiff, pursuant to which Plaintiff purchased the CAV-15 intellectual property (the "IP") and assets for production of the MKII.  The purchase and sale included the CAD drawings, design prints, and the molds and tooling for the MKII.  Plaintiff further purchased the production equipment, take-down pins (and specifications), serial number tags, and other miscellaneous tools and equipment for the manufacture of CAV-15 lower receivers.  A copy of the IP Purchase Agreement is attached hereto as Exhibit 1.

21. Pursuant to the IP Purchase Agreement, SST represented that it owned sole, exclusive, good and merchantable title to the assets free and clear of all pledges, claims, liens, restrictions, security interests, charges and other encumbrances. (*See* Exhibit 1, ¶ 1)

22. Pursuant to the IP Purchase Agreement, Plaintiff paid SST One Hundred Twenty Thousand Dollars ($120,000). (*See* Exhibit 1, ¶ 3)

23. Thereafter Plaintiff exclusively produced the CAV-15 polymer lowers for AR-15 rifles.

24. The CAV-15 polymer lowers are unique from other AR-15 lower receivers in that they, among other things: are a polymer (instead of aluminum) monolithic lower receiver with a permanent buttstock attached; are stronger than other polymer designs; are lighter than their aluminum counterparts; and can be manufactured faster than aluminum lower receivers.

25. On or about February 25, 2013, after SST sold the IP to Plaintiff, Phagan went to work for Plaintiff as a sales representative selling Plaintiff's CAV-15 polymer lowers.

26. In or about April of 2015, Phagan went to work at KEA.

27. On June 2, 2015, KEA and Plaintiff entered into the KEA NDA, a copy of which is attached hereto as Exhibit 2.

28. At the time of the KEA NDA, KEA was selling triggers for use in Plaintiff's CAV-15 lowers, and KEA and Plaintiff were working together as the products they manufactured were often sold together.

29. Pursuant to the KEA NDA, KEA agreed to neither use nor disclose Plaintiff's proprietary information, including, but not limited to, trade secrets, know-how, data, operations, records, finances, assets, technology, software, research, inventions, future products, and business development plans. (*See* Exhibit 2, at ¶¶ 2 & 4)

30. KEA also manufactured lower receivers for AR-15 rifles, but KEA's receivers were aluminum and were unlike Plaintiff's CAV-15 monolithic polymer receivers with a permanently attached buttstock.

31. Unbeknownst to Plaintiff, on or about February 25, 2016, KEA purchased "2 boxes of assorted 'Blue prints' and one thumb drive of assorted CAD/CAM files" from Nealon in exchange for $1,000 in cash and $9,000 in KEA firearms products.[1] (*See* Letter from Nealon to KEA dated 2/25/16, attached hereto as Exhibit 3)

32. At the time Nealon sold the above-referenced blue prints and CAD/CAM files relating to the CAV-15, Nealon, KEA and Phagan knew Nealon did not own the IP to the CAV-15, and that the same had been sold to Plaintiff by SST in 2011.

---

[1] This transfer may be void *ab initio* due to Plaintiff's belief Nealon is prohibited from owning firearms. Further, according to KEA, it appears KEA may have unlawfully transferred firearm parts to Nealon.

33. In 2017, InRange TV did an online video on YouTube featuring Plaintiff's CAV-15 lower receiver on a fully assembled AR-15 rifle.

34. Following the InRange TV demonstration Plaintiff's CAV-15 polymer lower receiver gained significant national attention and popularity among gun enthusiasts.

35. By the middle of 2018, Plaintiff had sold out of all of its CAV-15 MKII polymer lowers, which Plaintiff disclosed to KEA and Phagan since the parties had entered into the KEA NDA.

36. KEA and Phagan had been inquiring about future production of the CAV-15 lowers because KEA was selling triggers to go with Plaintiff's lower receivers.

37. In or around June of 2018, after the KEA NDA was signed, Plaintiff disclosed to KEA that the CAV-15 MKII molds were old and getting worn, causing additional post production work to be required, and that Plaintiff was planning to discontinue production of the MKII version of the CAV-15 lowers to begin efforts to produce next generation CAV-15 lowers which they would call the MKIII and MKIV.

38. Plaintiff further disclosed to KEA that it was seeking investors to fund the continued development and production of its improved CAV-15 lowers. Plaintiff also submitted an investment packet to KEA pursuant to the KEA NDA.

39. KEA and Phagan were further aware Plaintiff had submitted an investment packet to a large firearms distributor, Brownells, in an effort to secure investment for the future production of Plaintiff's CAV-15 lower receivers. The aforementioned investment packet included renderings for the MKIII and MKIV, as well as internal financial projections for the same.

40. Further, KEA and Phagan were made aware, after signing the KEA NDA, that Brownells had given Plaintiff a purchase order for approximately 100 units of future generation CAV-15

lowers, and provided a letter stating that projected orders from Brownells would be nearly 8,500 units. The foregoing was done in an effort to help Plaintiff secure additional investors.

41. Further, Plaintiff, along with Faxon Arms, KEA, and Brownells were working together during the relevant time period to produce a fully assembled firearm, which would include Plaintiff's CAV-15 lower receiver, KEA's trigger, and Faxon Arms's upper and final assembly. Brownells was to utilize its distribution channels to distribute the rifles under Brownells's name.

42. Plaintiff protected its IP through the KEA NDA, as well as two other Nondisclosure Agreements with Brownells, the first dated May 31, 2013, attached as Exhibit 4, and the second dated January 24, 2016, attached as Exhibit 5 (hereinafter collectively referred to as the "Brownells NDAs").

43. From approximately August through December of 2018, Plaintiff was in discussions with Brownells and KEA, who were talking to InRange, regarding production of the complete rifles discussed above, and thereafter InRange was to feature the CAV-15 polymer lower receiver on the fully assembled rifle on InRange's show.

44. Brownells, pursuant to the Brownells NDAs, was also made aware of the condition of Plaintiff's CAV-15 molds and Plaintiff's future development plans for the CAV-15 lower receivers.

45. On September 10, 2018, Brownells asked Plaintiff about licensing the use of Plaintiff's MKII molds to produce additional CAV-15 lowers, but Plaintiff did not grant a license to Brownells.

46. Plaintiff was unsuccessful in raising the capital needed for the production of the new CAV-15 lowers, including further development and production of the MKIII and MKIV derivatives of

the MKII, and was not financially able to meet the production demand required for the proposed deal with Brownells.

47. When Plaintiff was unable to produce the CAV-15 lowers necessary to meet the demand of the market and/or Brownells's distribution plan, KEA and Brownells colluded to willfully and maliciously misappropriate Plaintiff's IP. KEA began efforts to produce and market CAV-15 polymer lower receivers using the name MKIII, KE-15 and/or KE-15 MKIII (the "KEA Polymer Lower").

48. Subsequently, Brownells presented a prototype firearm at a large gun convention. According to Brownells's representative, the prototype included a KEA Polymer Lower based upon the CAV-15 design.

49. KEA and Brownells moved forward with the CAV-15 project using Plaintiff's IP without Plaintiff's knowledge or consent.

50. KEA utilized Plaintiff's IP, including but not limited to, its trade secrets, know-how, data, financial information, technology, research, business development plans and other confidential trade secrets to produce the KEA Polymer Lower, all in violation of the KEA NDA and Plaintiff's intellectual property rights.

51. Further, KEA and Brownells marketed and displayed the KEA Polymer Lower online and in catalogs as the MKIII.

## FIRST CAUSE OF ACTION
### Breach of Contract (KEA NDA) against KEA

52. Plaintiff hereby incorporates and re-alleges the allegations contained in paragraph numbers 1 – 51 above.

53. Pursuant to the KEA NDA, proprietary information means "… any information disclosed by one Party… to the other… (i) that is marked 'Proprietary' or (ii) that relates to the business of

the Discloser or the Discloser's affiliates, including without limitation, trade secrets, know-how, data, operations, records, finances, assets, technology, software, research, inventions, future products, customer information, or business development plans." (*See* Exhibit 2, at ¶ 2)

54. Further, the KEA NDA provides, "The Receiving Party and its personnel shall use Proprietary Information only for the purpose set forth in paragraph 1 hereof and shall not use or exploit such Proprietary Information for its own benefit or the benefit of another without the prior written consent of the Disclosing Party." (*See* Exhibit 2, at ¶ 4)

55. KEA breached the KEA NDA by using, disclosing and exploiting Plaintiff's proprietary information, including, but not limited to Plaintiff's IP, trade secrets, know-how, data, operations, finances, technology, software, research, inventions, future product information, and business development plans.

56. Pursuant to the KEA NDA, Plaintiff is entitled to an injunction against KEA to prohibit KEA from the threatened or actual unauthorized use or disclosure of Plaintiff's IP and other proprietary information. (*See* Exhibit 2, at ¶ 10)

57. As a result of KEA's breach of the KEA NDA, Plaintiff has suffered damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000), together with punitive damages, interest, costs and attorney fees.

### SECOND CAUSE OF ACTION
### Misappropriation of Trade Secrets against KEA, Phagan & Nealon

58. Plaintiff hereby incorporates and re-alleges the allegations contained in paragraph numbers 1 – 57 above.

59. KEA and Phagan developed the KEA Polymer Lower, which is a product used, or intended to be used, in interstate commerce.

60. KEA and Phagan developed the KEA Polymer Lower knowingly using Plaintiff's IP and trade secrets without Plaintiff's consent, and to Plaintiff's detriment.

61. KEA and Phagan stole, misappropriated and used Plaintiff's financial, business, scientific, technical, economic and engineering information, which Plaintiff took reasonable measures to keep secret and which was not generally known, to develop the KEA Polymer Lower.

62. KEA and Phagan obtained Plaintiff's trade secrets through information disclosed pursuant to the KEA NDA, as well as from files and information unlawfully obtained from Nealon in 2016.

63. KEA's, Phagan's and Nealon's misappropriation of Plaintiff's trade secrets was willful and malicious.

64. KEA's, Phagan's and Nealon's above-referenced acts were in violation of 18 U.S.C. § 1831 *et seq.*

65. Pursuant to 18 U.S.C. § 1836(b)(3)(A), Plaintiff is entitled to an injunction against KEA, Phagan and Nealon prohibiting the misappropriation of Plaintiff's trade secrets.

66. As a result of KEA's, Phagan's and Nealon's misappropriation of Plaintiff's trade secrets, Plaintiff has suffered damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000), together with punitive damages, interest, costs and attorney fees

67. Further, pursuant to 18 U.S.C. § 1836(b)(3)(C), Plaintiff is entitled to recover exemplary damages from KEA, Phagan and Nealon as a result of their willful and malicious misappropriation of Plaintiff's trade secrets.

### THIRD CAUSE OF ACTION
### Trademark Infringement against KEA & Brownells

68. Plaintiff hereby incorporates and re-alleges the allegations contained in paragraph numbers 1 – 67 above.

69. On or about July 6, 2018, Plaintiff publicly disclosed on its website that it was finalizing the design of the CAV-15 MKIII and MKIV, and used the foregoing marks to describe its products.

70. Plaintiff disclosed its intent to produce and market the CAV-15 MKIII and MKIV to KEA and its agent/employee Phagan on or before July 9, 2018.

71. Plaintiff used the MKIII mark on Facebook on January 10, 2019.

72. KEA, through its website, Brownells and in online videos, marketed the KEA Polymer Lower, which is a CAV-15 look-a-like, as the "MKIII" and "MK3" after Plaintiff's use of the MKIII mark to describe the next model of its CAV-15 polymer lower receivers.

73. KEA's and Brownells's use of MKIII and/or MK3 mark has caused confusion or mistake between Plaintiff's CAV-15 lower receivers and the KEA Polymer Lower, and/or creates deception as to an affiliation, connection or association between KEA and Plaintiff in relation to the KEA Polymer Lower.

74. Specifically, KEA's Polymer Lower with the name MKIII or MK3 is likely to, and has, caused market confusion, misleading the public to believe KEA's Polymer Lower is a CAV-15 lower or is otherwise associated with Plaintiff's lower receivers.

75. KEA's and Brownells's use of MKIII and/or MK3 for a monolithic polymer lower receiver for AR-15 rifles is in violation of Plaintiff's rights to the MKIII mark.

76. Plaintiff is entitled to injunctive relief against KEA and Brownells prohibiting the use of Plaintiff's MKIII and MK3 unregistered trademark pursuant to 15 U.S.C. § 1125(c), plus damages for unjust enrichment, dilution of value to Plaintiff's mark, attorney fees, costs and all other relief this Court deems just and equitable.

**FOURTH CAUSE OF ACTION**
**Trade Dress Infringement against KEA**

77. Plaintiff hereby incorporates and re-alleges the allegations contained in paragraph numbers 1 – 76 above.

78. The overall appearance of the KEA Polymer Lower, and the unique combination of non-functional features, infringes upon Plaintiff's trade dress rights pursuant to 15 U.S.C. § 1125(a), and common law.

79. The overall appearance of the KEA Polymer Lower includes a monolithic polymer lower receiver with a permanently attached buttstock, which is different in appearance than other AR-15 lower receivers (including other AR-15 polymer receivers), but looks like a CAV-15 lower receiver.

80. KEA's violation of Plaintiff's trade dress rights is likely to cause confusion or mistake, and/or is misleading or deceptive as to its affiliation with Plaintiff and/or the CAV-15.

81. Plaintiff's infringement upon Plaintiff's trade dress is injurious to Plaintiff and will dilute Plaintiff's market share for monolithic polymer receivers, and/or its ability to market Plaintiff's IP for future sale or licensing.

82. Pursuant to 15 U.S.C. § 1125(c) Plaintiff is entitled to injunctive relief against KEA prohibiting KEA from violating Plaintiff's trade dress rights with the KEA Polymer Lower.

83. Further, Plaintiff is entitled to damages for unjust enrichment, dilution of value to Plaintiff's mark, attorney fees, costs and all other relief this Court deems just and equitable.

**FIFTH CAUSE OF ACTION**
**Copyright Infringement against KEA**

84. Plaintiff hereby incorporates and re-alleges the allegations contained in paragraph numbers 1 – 80 above.

85. Upon information and belief, KEA used CAD drawings, blue prints and/or other drawings included in the IP Purchase Agreement to create the KEA Polymer Lower.

86. Plaintiff's drawings are protected by federal copyright laws, with or without registration, and KEA infringed upon Plaintiff's copyrights in relation to the CAV-15 and KEA Polymer Lower.

87. As a result of KEA's infringement upon Plaintiff's copyright rights, Plaintiff has been damaged in an amount in excess of Seventy-Five Thousand Dollars ($75,000), together with punitive/exemplary damages, interest, costs and attorney fees.

## SIXTH CAUSE OF ACTION
### Misappropriation of Intellectual Property against KEA, Phagan & Nealon

88. Plaintiff hereby incorporates and re-alleges the allegations contained in paragraph numbers 1 – 87 above.

89. As set forth above, KEA utilized CAD drawings, which were part of the intellectual property purchased by Plaintiff from SST, in its development and design of the KEA Polymer Lower.

90. KEA knowingly copied, replicated, received, bought and obtained Plaintiff's IP, specifically the CAD drawings upon which the CAV-15 are based, from Nealon and/or Phagan.

91. At the time KEA obtained Plaintiff's IP from Nealon and/or Phagan, KEA knew the same was the property of Plaintiff.

92. Pursuant to 18 U.S.C. § 1836(b)(3)(A), Plaintiff is entitled to an injunction against KEA, Phagan and Nealon to prevent the production and/or distribution of the KEA Polymer Lower, and the future use, distribution and misappropriation of Plaintiff's IP.

93. Further, pursuant to 18 U.S.C. § 1836(b)(3)(C), Plaintiff is entitled to exemplary damages from KEA, Phagan and Nealon for their willful and malicious misappropriation of Plaintiff's IP.

94. As a result of KEA's, Phagan's and Nealon's misappropriation of Plaintiff's IP, including CAD drawings and derivative works, Plaintiff has been damaged in an amount in excess of

Seventy-Five Thousand Dollars ($75,000), together with punitive/exemplary damages, interest, costs and attorney fees.

### SEVENTH CAUSE OF ACTION
### Breach of Implied Covenant of Good Faith and Fair Dealing against KEA, Phagan, SST & Brownells

95. Plaintiff hereby incorporates and re-alleges the allegations contained in paragraph numbers 1 – 94 above.

96. Plaintiff entered into valid contracts with KEA (the KEA NDA), SST (the SST NDA and the IP Purchase Agreement), and Brownells (the Brownells NDAs).

97. The covenant of good faith and fair dealing is implied in every contract, including the aforementioned nondisclosure agreements and IP Purchase Agreement.

98. Plaintiff has at all times complied with the NDAs and the IP Purchase Agreement; however, KEA, Phagan, SST and Brownells have each breached their respective agreements with Plaintiff.

99. KEA failed to deal with Plaintiff fairly and in good faith by attempting to obtain (or obtaining) Plaintiff's intellectual property after entering into the KEA NDA. This includes, but is not limited to, KEA obtaining Plaintiff's IP from Phagan and Nealon, despite knowing Plaintiff owned the IP and that neither Phagan nor Nealon were permitted to disclose such information to KEA.

100. KEA failed to deal with Plaintiff fairly and in good faith by using information disclosed by Plaintiff to KEA under the KEA NDA to circumvent Plaintiff and enter into a production agreement for Brownells to distribute the KEA Polymer Lowers on fully assembled rifles.

101. SST breached the IP Agreement and NDA by disclosing the IP and other trade secrets to KEA in an effort to circumvent Plaintiff and make a deal directly with Brownells relating to future production of the CAV-15.

102. Phagan breached the IP Agreement, SST NDA, and KEA NDA by gaining valuable information and insight from Plaintiff under the pretense KEA was working with Plaintiff on the project for Brownells and in furtherance of their working relationship.

103. Brownells failed to deal with Plaintiff fairly and in good faith by using information disclosed by Plaintiff to Brownells under the Brownells NDAs to circumvent Plaintiff and enter into a production agreement for Brownells to distribute the KEA Polymer Lowers on fully assembled rifles.

104. As a result of the foregoing, KEA, Phagan, SST and Brownells breached the above-referenced agreements and failed to deal with Plaintiff fairly and in good faith. As a result, Plaintiff has been damaged in an amount in excess of Seventy-Five Thousand Dollars ($75,000), together with punitive damages, interest, costs and attorney fees.

**EIGHTH CAUSE OF ACTION**
**Breach of Contract against SST**

105. Plaintiff hereby incorporates and re-alleges the allegations contained in paragraph numbers 1 – 104 above.

106. In the IP Purchase Agreement SST represented it had sole, exclusive, good and merchantable title to the IP, free and clear of all pledges, claims, liens, restrictions, security interests, charges and other encumbrances. (*See* Exhibit 1, at ¶¶ 1 & 10.2)

107. In the alternative to Plaintiff's above causes of action relating to Plaintiff's IP; if SST did not own the intellectual property relating to the CAV-15, SST breached the IP Purchase Agreement.

108. Further, pursuant to the IP Purchase Agreement, SST is required to indemnify Plaintiff in the event claims are brought against Plaintiff relating to the assets sold thereby, which include the IP. (*See* Exhibit 1, at ¶ 12)

109. As a result of SST's potential breach of the IP Purchase Agreement and the warranties contained therein, Plaintiff has been damaged in an amount in excess of Seventy-Five Thousand Dollars ($75,000), together with punitive damages, interest, costs and attorney fees.

## NINETH CAUSE OF ACTION
### Breach of Contract against Brownells

110. 110. Plaintiff hereby incorporates and re-alleges the allegations contained in paragraph numbers 1 – 109 above.

111. Pursuant to the 2016 Brownell NDA, proprietary information means "… any information disclosed by one Party… to the other… (i) that is marked 'Proprietary' or (ii) that relates to the business of the Discloser or the Discloser's affiliates, including without limitation, trade secrets, know-how, data, operations, records, finances, assets, technology, software, research, inventions, future products, customer information, or business development plans." (*See* Exhibit 5, at ¶ 2)

112. Further, the 2016 Brownells NDA provides, "The Receiving Party and its personnel shall use Proprietary Information only for the purpose set forth in paragraph 1 hereof and shall not use or exploit such Proprietary Information for its own benefit or the benefit of another without the prior written consent of the Disclosing Party." (*See* Exhibit 5, at ¶ 4)

113. Brownells breached the 2016 Brownells NDA by using, disclosing and exploiting Plaintiff's proprietary information, including, but not limited to Plaintiff's IP, trade secrets, know-how, data, operations, finances, technology, software, research, inventions, future product information, and business development plans.

114.     Pursuant to the 2016 Brownells NDA, Plaintiff is entitled to an injunction against Brownells to prohibit Brownells from the threatened or actual unauthorized use or disclosure of Plaintiff's IP and other proprietary information. (*See* Exhibit 5, at ¶ 10)

115.     As a result of Brownells's breach of the 2016 Brownells NDA, Plaintiff has suffered damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000), together with punitive damages, interest, costs and attorney fees.

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff, GWACS Armory, LLC, respectfully requests the Court enter judgment in its favor and against Defendants as follows:

(1) Against Defendant KE Arms, LLC on Plaintiff's causes of action for breach of contract (First COA), misappropriation of trade secrets (Second COA), trademark infringement (Third COA), trade dress infringement (Fourth COA), copyright infringement (Fifth COA), misappropriation of intellectual property (Sixth COA), and breach of implied covenant of good faith and fair dealing (Seventh COA), and award Plaintiff judgment in the amount in excess of Seventy-Five Thousand Dollars ($75,000), plus exemplary damages, injunctive relief, attorney fees, costs and all other relief this Court deems just and equitable.

(2) Against Defendant Russell Phagan on Plaintiff's causes of action for misappropriation of trade secrets (Second COA), misappropriation of intellectual property (Sixth COA), breach of implied covenant of good faith and fair dealing (Seventh COA), and breach of contract (Eight COA), and award Plaintiff judgment in the amount in excess of Seventy-Five Thousand Dollars ($75,000), plus exemplary damages, injunctive relief, attorney fees, costs, and all other relief this Court deems just and equitable.

(3) Against Defendant Sinistral Shooting Technologies, LLC, on Plaintiff's causes of action for breach of implied covenant of good faith and fair dealing (Seventh COA), and breach of contract (Eight COA), and award Plaintiff judgment in the amount in excess of Seventy-Five Thousand Dollars ($75,000), plus exemplary damages, injunctive relief, attorney fees, costs and all other relief this Court deems just and equitable.

(4) Against Defendant Brownells, Inc., on Plaintiff's causes of action for trademark infringement (Third COA), breach of implied covenant of good faith and fair dealing (Seventh COA), and breach of contract (Ninth COA), and award Plaintiff judgment in the amount in excess of Seventy-Five Thousand Dollars ($75,000), plus exemplary damages, injunctive relief, attorney fees, costs and all other relief this Court deems just and equitable.

(5) Against Defendant Shawn Nealon on Plaintiff's causes of action for misappropriation of trade secrets (Second COA), and misappropriation of intellectual property (Sixth COA), and award Plaintiff judgment in the amount in excess of Seventy-Five Thousand Dollars ($75,000), plus exemplary damages, injunctive relief, attorney fees, costs and all other relief this Court deems just and equitable.

        Respectfully submitted,

        **JONES, GOTCHER & BOGAN, P.C.**

        s/James E. Weger_____
        James E. Weger, OBA 9437
        Tadd J.P. Bogan, OBA 20962
        3800 First Place Tower
        15 East Fifth Street
        Tulsa, Oklahoma 74103
        Telephone: (918)581-8200
        Facsimile: (918)583-1189
        E-Mail: jweger@jonesgotcher.com
             tbogan@jonesgotcher.com
        ***Attorneys for Plaintiff, GWACS Armory, LLC***

# VERIFICATION

STATE OF OKLAHOMA )
                  ) ss.
COUNTY OF TULSA   )

Comes now the undersigned, __Jud Gudgel__, being under oath and after being first duly sworn, states that he is the President and CEO of the Plaintiff in this case, has read the contents within the foregoing Complaint, knows the contents thereof, and states that the facts and matters therein are true and correct to the best of his knowledge and belief.

_____
Jud Gudgel

Subscribed and sworn to before me this 15th day of July, 2020.

_____
Notary Public

My Commission No.: 12007187   Expires: 08/01/2024