## ASSET PURCHASE AND SALES AGREEMENT

This Asset Purchase and Sales Agreement (this "Agreement") is made and entered into as of the 22nd day of November, 2011 by and between Sinistral Shooting Technologies, LLC, an Arizona limited liability company, (hereinafter referred to as "Seller"), and GWACS Armory, LLC, an Oklahoma , limited liability company, (hereinafter referred to as "Purchaser") with reference to the following:

(a)     Seller owns business assets located in Gilbert, Arizona; and

(b)     Seller desires to sell and Purchaser desires to purchase assets upon the terms and subject to the conditions set forth in this Agreement.

NOW, THEREFORE, in consideration of the premises and the respective covenants herein contained, Seller and Purchaser agree as follows:

1.     *Sale and Purchase of Assets.* At the Closing, upon the terms and subject to the conditions hereinafter set forth, Seller shall sell, assign and deliver to Purchaser and Purchaser shall purchase and accept from Seller, free and clear of all liens as to the assets, all of Seller's rights, title and interest in and to certain assets owned by the Seller, which are specifically identified as such on Schedule 1 (the *"Assets")*. Schedule 1 is a complete list of all the Assets being acquired by Purchaser herein. The Seller has sole and exclusive, good and merchantable title to the Assets free and clear of all pledges, claims, liens, restrictions, security interests, charges and other encumbrances.

2.     *No Assumption of Assumed Liabilities.* Upon and concurrently with the sale of the Assets, Purchaser shall not assume agree to pay, perform or discharge, any liabilities and obligations that existed prior to the Closing with respect to the Assets acquired herein.

3.     *Purchase Price.* The purchase price for the Assets being acquired by Purchaser from the Seller shall be one hundred twenty thousand dollars and no/100 ($120,000.00) (hereinafter referred to as the *"Purchase Price").*

4. *Manner of Payment.*

4.1 Purchaser has heretofore remitted Three Thousand and no/100 Dollars ($3,000.00) to Seller as a down payment on the Purchase Price. At Closing, Purchaser shall remit the balance of the Purchase Price to Seller, by wire transfer of immediately available funds to an account specified by Seller in the amount of One Hundred Seventeen Thousand and noll 00 Dollars ($117,000.00)

5.     *Closing.*

5.1     P l a c e *and Date.* Subject to the conditions contained in this Agreement, the closing (the "Closing") of the transactions contemplated by this Agreement shall be held on or before January 15th, 2012, or at such other date as the parties may agree upon in writing (the "Closing Date")

## EXHIBIT 1

5.2   *Expenses.* Each of the parties shall pay its own respective attorneys', accountants' and other consultants' fees and expenses incidental to this transaction.

6.   *Disclaimer of Warranty.* Except as to the covenant of title and freedom from liens or encumbrances set forth in Sections 1 and 10.2, the Assets are being sold and delivered to Purchaser in "AS IS, WHERE IS, WITH ALL FAULTS" condition, without any representation, warranty or guaranty of any kind being made or given by the Seller, its officers, directors, shareholders, members, managers, agents, employees, attorneys or assigns, express or implied, arising by law or otherwise and Seller disclaims all express or implied warranties whether arising in law, in equity, in contract, or in tort, including, without limitation, any implied warranty of merchantability, condition, or fitness for a particular use.

7.   *Seller's Deliveries.* At the Closing, Seller shall deliver to Purchaser the executed Bill of Sale attached hereto as Schedule 3, representing the sale and transfer of the Assets to Purchaser. Purchaser, at its expense, shall be solely responsible for transporting the Assets from Seller's location to Purchaser, and Purchaser hereby assumes all risk of damage or loss arising from the packaging, shipping and delivery of the Assets to Purchaser's location.

8.   *Purchaser's Deliveries.* At the Closing, Purchaser shall deliver to Seller the Purchase Price in the manner specified in Section 4.

9.   *Publicity; Disclosure to Third Parties.* No party to this Agreement shall disclose or make any press releases, notices or public announcements of the specific transactions related to the sales of the Assets and the terms contemplated by this Agreement without the prior written consent of the other party, unless required to make such disclosure or announcement by law, in which event the party making the disclosure or announcement shall notify the other party at least twenty-four (24) hours before such disclosure or announcement is expected to be made. This Section 9 shall not apply to Purchaser with respect to its ability to announce to third parties that it acquired the subject molds, and any related intellectual property, thereto, as identified in the Assets at Schedule 1.

10.   *Representations and Warranties of Seller.* Seller represents and warrants to Purchaser that:

10.1   *Corporate Existence; Qualification.* Sinistral Shooting Technologies, LLC, is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Arizona and is qualified or licensed to conduct its business in Arizona.

10.2   *Title to Assets.* Seller has good title to the Assets, of record and beneficially, free and clear of all liens, claims, encumbrances and restrictions of every kind.

10.3   *Authority.* This Agreement is a valid and legally binding obligation of the Seller and is enforceable against the Seller in accordance with its terms.

10.4   *No Conflicts.* Neither the execution and delivery of this Agreement nor the performance by the Seller of its obligations hereunder will: (a) violate, conflict with, or result in a breach of any provisions of, or constitute a material default (or an event which, with notice or lapse of time or both would constitute a default) under, or result in the termination of, or accelerate the performance required by, or result in a right of termination or acceleration under,

2

**EXHIBIT 1**

or result in the creation of any lien, security interest, charge or encumbrance upon any of the properties or assets of the Seller under, any of the terms, conditions or provisions of (i) its charter documents or Operating Agreement; or (ii) any note, bond, mortgage, indenture, deed of trust, license, lease, agreement or other instrument or obligation, to which the Seller is a party or to ,vhich Seller or any of its respective properties or assets may be subject; or (b) violate any judgment, ruling, order, writ, injunction, decree, statute, rule or regulation applicable to the Seller or any of its respective properties or assets.

10.5 *Survival.* All representations and warranties of the Seller shall be deemed made as of the date of this Agreement and again as of the Closing Date and shall survive the Closing for Five (5) years.

*11. Representations and Warranties of Purchaser.* Purchaser represents and warrants that:

11.1 *Corporate Existence; Qualification.* GWACS Armory, LLC, is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Oklahoma and is qualified or licensed to conduct its business in Oklahoma

11.2 *Authority.* This Agreement is a valid and legally binding obligation of the Purchaser and is enforceable against the Purchaser in accordance with its terms.

11.3 *No Conflict.* Neither the execution and delivery of this Agreement nor the perfonnance by the Purchaser of its obligations will: (a) violate or conflict with any of the provisions of its charter documents, or Bylaws or Operating Agreement; or (b) violate any judgment, ruling, order, writ, injunction, decree, statute, rule or regulation applicable to Purchaser or any of its properties or assets.

11.4 *Consents.* Except in connection with or in compliance with the provisions of applicable corporate law, no notice to, filing with, or authorization, consent or approval of, any federal, state, local or other public body, agency or authority or any other third party is necessary for the consummation by Purchaser of the transactions contemplated by this Agreement.

11. 5 *Survival.* All representations and warranties of the Purchaser shall be deemed made as of the date of this Agreement and again as of the Closing Date and shall survive the Closing for Five (5) years.

*12. Indemnification by Seller.*

12.1 *Indemnification.* Seller shall indemnify and hold harmless Purchaser, at all times from and after the Closing Date, against and in respect to any Damages. For the purposes of this Section 0, the term "Damages" means the cost of any claims, actions, demands, deficiencies, lawsuits, losses, expenses, liabilities, penalties and damages (including, without limitation, attorneys' and accountants' fees incidental to the enforcement by Purchaser of this Agreement) resulting to Purchaser, net of any insurance proceeds received by Purchaser in reimbursement of such Damages, from: (a) any material inaccurate representation made to

3

**EXHIBIT 1**

Purchaser in or pursuant to this Agreement or in any certificate, schedule or other instnlment or document delivered to Purchaser pursuant to this Agreement; (b) any material breach of any of the warranties made to Purchaser in or pursuant to this Agreement or in any certificate, schedule or other instrument or document delivered to Purchaser pursuant to this Agreement; (c) any material breach or default in the performance by Seller of any of its covenants or obligations under this Agreement or in any certificate, schedule or other instrument or document delivered to Purchaser pursuant to this Agreement; (d) any material omission from any certificate, schedule or other instrument delivered to Purchaser by Seller pursuant to this Agreement; or (e) any material litigation involving the Seller relating to or arising from acts, events or omissions prior to the Closing Date. Seller shall reimburse Purchaser on demand for any payment made by Purchaser at any time after the Closing, based upon the judgment of any court of competent jurisdiction or pursuant to a bona fide compromise or settlement of claims, demands or actions, in respect of any Damages to which the foregoing indemnity relates; *provided that*, (i) Seller shall have had the opportunity to negotiate and defend same; (ii) Purchaser shall have given prompt notice of all facts relating thereto and shall have fully cooperated with Seller with respect thereto; and, (iii) all applicable appeal periods have expired.

13Indemnification by Purchaser.

*13.1Indemnification.* Purchaser shall indemnify and hold harmless Seller, at all times fiom and after the Closing Date, against and in respect to any Damages. For the purposes of this Section 13, the tenn "Damages" means the cost of any claims, actions, demands, deficiencies, lawsuits, losses, expenses, liabilities, penalties and damages (including without limitation, attorneys' and accountants' fees incidental thereto or incidental to the enforcement by Seller of this Agreement) resulting to Seller, net of any insurance proceeds received by Seller in reimbursement of such Damages, from: (a) any inaccurate representation made to Seller in or pursuant to this Agreement or any certificate, schedule or other instrument or document delivered to Seller pursuant to this Agreement; (b) any breach of any ofthe warranties made to Seller in or pursuant to this Agreement or any certificate, schedule or other instrument or document delivered to Seller pursuant to this Agreement; (c) any breach or default in the perfonnance by Purchaser of any of its covenants or obligations under this Agreement or any certificate, schedule or other instrument or document delivered to Seller pursuant to this Agreement; (d) any material omission from any certificate, schedule or other instrument delivered to Seller by Purchaser pursuant to this Agreement; or (c) any material litigation involving Purchaser relating to or arising from acts, events or omissions arising on or after the Closing Date. Purchaser shall reimburse Seller on demand for any payment made by Seller at any time after the Closing, based upon the judgment of any court of competent jurisdiction or pursuant to a bona fide compromise or settlement of claims, demands or actions, in respect of any Damages to which the foregoing indemnity relates; *provided that* (i)Purchaser shall have had the opportunity to negotiate and defend same; (ii) Seller shall have given prompt notice of all tcts relating thereto and shall have fully cooperated with Purchaser with respect thereto: and (iii) all applicable appeal periods have expired.

A

**EXHIBIT 1**

*14. General.*

> *14.1 Notices.* All notices required or permitted herein must be in writing and shall be deemed to have been duly given on the date of service if served personally or by telecopier, telex or other similar communication to the party or parties to whom notice is to be given or on the third business day after mailing if mailed to the party or parties to whom notice is to be given by registered or certified mail, return receipt requested, postage prepaid, to the party to whom notice is to be given at the address set forth below:

| | |
|---|---|
| Seller: | Sinistral Shooting Technologies, LLC<br>c/o Russell Phagan<br>3319 East Fairbrook Street<br>Mesa, AZ 85213<br>Voice: 480-235-4703<br>Email: Sinistra!Rifleman@hotmail.com |
| Purchaser: | GWACS Armory, LLC<br>c/o Judson M. Gudgel<br>907 S. Detroit, Sixth Floor<br>Tulsa, Oklahoma 74120<br>Voice: (918) 794-5670<br>Fax: (918) 794-5675<br>Email: jgudgel@gwacsdefense.com |

or to such other addresses as either party hereto may designate to the other from time to time for this purpose. Any communication which is mailed shall be confirmed immediately by telecopier, but failure to so confirm shall not affect the effectiveness of such notice from and after the date on which such notice is actually received.

> *14.2 Integrated Agreement.* This instrument contains and constitutes the entire agreement between the parties herein and supersedes all prior agreements and understandings between the parties hereto relating to the subject matter hereof. There are no agreements, understandings, restrictions, warranties or representations among the parties relating to the subject matter hereof other than those set forth herein. All exhibits and all schedules attached hereto or delivered pursuant hereto are hereby incorporated herein and made a part of this Agreement. This instrument is not intended to have any legal effect whatsoever, or to be a legally binding agreement, or any evidence thereof, until it has been signed by both parties hereto.

14.3 *Governing Law/Venue.* This Agreement shall be governed by, construed and enforced in accordance with the laws of the State of Oklahoma (without regard to its

5

**EXHIBIT 1**

conflict of laws rules. Any suit brought hereunder shall be brought in the state or federal courts sitting in Tulsa County, Oklahoma, the parties hereby waiving any claim or defense that such forum is not convenient or proper. Each party agrees that any such court shall have in personam jurisdiction over it and consents to service of process in any manner authorized by Oklahoma law.

*14.4 Construction..* All pronouns and any variations thereof shall be deemed to refer to the masculine, feminine or neuter gender thereof or to the plurals of each, as the identity of the person or persons or the context may require. The descriptive headings contained in this Agreement are for reference purposes only and are not intended to describe, interpret, define or limit the scope, extent or intent of this Agreement or any provision contained herein.

*14.5 Invalidity.* If any provision contained in this Agreement shall for any reason be held to be invalid, illegal, void or unenforceable in any respect, such provision shall be deemed modified so as to constitute a provision conforming as nearly as possible to such invalid, illegal, void or unenforceable provision while still remaining valid and enforceable, and the remaining terms or provisions contained herein shall not be affected thereby.

*14.6 Binding Effect.* This Agreement shall be binding upon, inure to the benefit of and be enforceable by the parties hereto and their respective successors and assigns.

*14.7 Litigation Expense.* In any action brought by a party hereto to enforce the obligations of any other party hereto, the prevailing party shall be entitled to collect from the other parties to such action such party's reasonable attorneys' fees, court costs and other expenses incidental to such litigation.

*14.8 Counterpart Execution.* This Agreement may be executed in any number of counterparts (including by facsimile or by an electronic scan delivered by electronic mail), each of which shall be deemed to be an original, and all of which together shall constitute one and the same instrument and shall become effective when counterparts have been signed by each of the parties hereto and delivered to the other parties, it being understood that all parties need not sign the same counterpart. This Agreement may be executed and delivered by facsimile or by an electronic scan delivered by electronic mail. Any party who delivers a signature page by facsimile or electronic scan agrees to later deliver an original counterpart to all other parties.

**EXHIBIT 1**

*14.9Amendment and Waiver.* This Agreement may be amended at any time, but only by an instrument in writing executed by both parties hereto. A party hereto may waive any requirement to be performed by the other party, provided that such waiver shall be in writing and executed by the party waiving the requirement: provided, further that any waiver by either party hereto of a breach or violation of any provision of this Agreement shall not operate as, or be construed to be, a waiver of a subsequent breach of the same or any other provision hereof.

*14.10Fees and Expenses.* Whether or not the transactions contemplated by this Agreement shall be consummated, each party hereto shall pay its own fees, expenses and disbursements incurred in connection herewith and all other costs and expenses incurred in the performance and compliance with all conditions to be performed hereunder.

*14.11Time of Essence.* Time shall be of the essence with respect to the performance by the parties hereto of their respective obligations hereunder.

(THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK. SIGNATURES APPEAR ON THE FOLLOWING PAGE)

7

**EXHIBIT 1**

IN WITNESS WHEREOF, the parties hereto have executed this Agreement on the date first set forth above.

"SELLER"

MINISTRAL SHOOTING TECHNOLOGIES, LLC

*Russell Phogan*, Controlling member

Russell Phogan, Controlling member

"PURCHASER"

GWACS ARMORY, LLC

By:_____
Judson M. Gudgel, President and COO

8

**EXHIBIT 1**

## SCHEDULE 1

### *ASSETS*

1. Van Don 300 Press HT Series Model 300HT14-2865 1996 with Pathfinder 4500 Controller;

2. Con Air SC30 Plastic Dryer with hopper – Serial Number 80105;

3. Branson 90 Series Linear Vibration Welder Model VW2 Serial Number 96R523769;

4. Take Down Pin Sets (1,500+);

5. Serial number tags (1,000+);

6. CAD drawings, design prints to the molds, including any and all intellectual property ("IP") related thereto;

7. Take Down Pins specifications;

8. Miscellaneous tools and equipment to manufacture, market and sell the Lowers.

**EXHIBIT 1**

## BILL OF SALE

KNOW ALL MEN BY THESE PRESENTS:

That for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable considerations, the receipt and sufficiency of which is hereby acknowledged, the undersigned Sinistral Shooting Technologies, LLC, (the "Seller"), does by these presents hereby sell, transfer, convey, assign and deliver unto GWACS Armory, LLC (the "Purchaser"), and its successors and assigns, all of the following described tangible personal property, to-wit:

1. Van Don 300 Press HT Series Model 300HT14-2865 1996 with Pathfinder 4500 Controller;
2. Con Air SC30 Plastic Dryer with hopper – Serial Number 80105;
3. Branson 90 Series Linear Vibration Welder Model VW2 Serial Number 96R523769;
4. Take Down Pin Sets (1,500+);
5. Serial number tags (1,000+);
6. CAD drawings, design prints to the molds, including any and all intellectual property ("IP") related thereto;
7. Take Down Pins specifications;
8. Miscellaneous tools and equipment to manufacture, market and sell the Lowers.

TO HAVE AND TO HOLD each of the above enumerated items of tangible personal property and all accessories, appurtenances and additions thereto, unto the Purchaser, its successors and assigns, forever.

As a part of the consideration hereof, Seller, by these presents, does further sell, transfer and assign unto Purchaser all warranties and/or guarantees relating to the tangible personal property sold, transferred and conveyed hereby and hereinabove enumerated and described.

All Arizona sales taxes payable as a result of the sale by Seller to Purchaser of the above enumerated items of tangible personal property shall be borne by Seller and the Purchaser held harmless therefrom. It shall be the responsibility of Seller to timely remit all such taxes to the appropriate taxing authorities and file any returns required by law.

As a material part of the consideration hereof, Seller does hereby warrant title to all of the above enumerated items of tangible personal property herein sold and conveyed to Purchaser and by these presents Seller does hereby represent and warrant to Purchaser, its successors and assigns, that all of such items of property above enumerated are free and clear of all liens, encumbrances, security interests, restrictions, charges and claims; and Seller by these presents does hereby covenant and agree with Purchaser to defend Seller's title in and to all of the above enumerated items hereby sold and conveyed to Purchaser against the claims of all persons whomsoever.

Bill of Sale GWACS 01

**EXHIBIT 1**

All personal property ad valorem taxes and all other taxes levied or assessed for the time prior to the execution of the bill of sale and prior years against the above enumerated items being herein sold and conveyed have been paid by Seller and Purchaser shall be held harmless therefrom by Seller. Any and all personal property ad valorem taxes or other taxes levied or assessed against said property subsequent to the the execution of the bill of sale shall be paid by Purchaser and Seller held harmless therefrom.

IN WITNESS WHEREOF, this Bill of Sale has been duly executed and delivered by Seller to Purchaser at _____, Oklahoma, effective for all purposes (including the transfer, of all personal property sold and conveyed herein) as of the 22nd day of November, 2011.

Zyven Josiah Fontes-Evans
NOTARY PUBLIC–ARIZONA
MARICOPA COUNTY
My Commission Expires
March 28, 2015

Sinistral Shooting Technologies, LLC

By: _Russell Rhogan_

Russell Rhogan, Controlling member

"SELLER"

STATE OF OKLAHOMA    )
                     ) ss:
COUNTY OF _____ )

The above and foregoing document was executed and acknowledged before me this _____ day of _____, _____, by _____ the Seller, for the use and benefit of said Seller.

_____
Notary Public

My commission expires:

_____

Comm. No. _____

Bill of Sale GWACS 01

**EXHIBIT 1**