UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

GWACS ARMORY, LLC,                )
                                  )
        Plaintiff,              )
                                  )
v.                                )   Case No. 20-CV-0341-CVE-CDL
                                  )
KE ARMS, LLC, RUSSELL             )
PHAGAN, SINISTRAL SHOOTING        )
TECHNOLOGIES, INC.,               )
BROWNELLS, INC., and              )
SHAWN NEALON,                     )
                                  )
        Defendant.              )

**OPINION AND ORDER**

Now before the Court are the Motion to Transfer Venue or Stay Proceedings of Defendant, KE Arms, LLC, and Brief in Support (Dkt. ## 17, 19)[1] and the Motion to Dismiss for Improper Venue of Defendants, and Brief in Support (Dkt. # 21). Defendants argue that venue is improper in this District, and they ask the Court to dismiss the case or transfer it to the District of Arizona. Dkt. # 21. Defendants also argue that the case should be stayed or transferred to the District of Arizona under the first to file rule, because KE Arms, LLC (KEA) filed a lawsuit against GWACS Armory, LLC (GWACS) in Arizona involving the same parties and legal issues. Dkt. # 17. GWACS responds that the Arizona case does not involve the same parties or issues and will not fully resolve the dispute between the parties. Dkt. # 27, at 6. GWACS asserts that the first to file rule should not be applied in this case, because the rule is discretionary and the Arizona case is an improper anticipatory lawsuit. Id. at 14-15.

---

[1] All of the other defendants have requested to join (Dkt. # 20) in the motion to transfer venue or stay the case, and the Court finds that the request should be granted.

**I.**

In December 2000, Cavalry Arms (Cavalry)[2] created a polymer lower receiver for the AR-15 assault rifle, and Cavalry produced the original design of the product, known as the CAV-15, until February 2003. Dkt. # 2, at 3. Cavalry began producing a new version of its polymer lower receiver later in 2003, and the new design was known as CAV-15 MKII. Id. Cavalry was owned by Shawn Nealon, but Cavalry and Nealon lost their federal firearms license and left the firearms industry. Id. Russell Phagan was employed by Cavalry from 2001 to 2010 and Phagan's company, Sinistral Shooting Technologies, LLC (SST), purchased the intellectual property relating to the CAV-15 polymer lower receiver from Cavalry. Id. Phagan abandoned his own efforts to obtain a federal firearms license, and SST entered an Asset Purchase and Sales Agreement with GWACS for the sale of the intellectual property rights to the CAV-15 polymer lower receiver. Dkt. # 2-1. The asset purchase agreement states that "this Agreement shall be governed by, construed and enforced in accordance with the laws of the State of Oklahoma" and "[a]ny suit brought hereunder shall be brought in the state or federal courts sitting in Tulsa County, Oklahoma . . . ." Id. at 5-6. SST also agreed to waive any "claim or defense that such forum is not convenient or proper" and that "any such court shall have in personam jurisdiction over it . . . ." Id. at 6.

GWACS began producing CAV-15 polymer lower receivers after it purchased the intellectual property from SST, and Phagan worked for GWACS as a sales representative from February 2013 to April 2015. Id. at 4-5. In April 2015, Phagan left his employment with GWACS and began

---

[2] In GWACS' briefing, it refers to Cavalry Arms as "Calvary Arms," but the complaint refers to this entity as "Cavalry Arms." Dkt. # 27, at 8; Dkt. # 28, at 5. The Court assumes that a firearms company would operate under the name "Cavalry Arms," in reference to a highly mobile army historically mounted on horses, and the Court will refer to this entity as "Cavalry Arms" in this Opinion and Order.

working for KEA. Id. at 5. On June 2, 2015, GWACS and KEA executed a non-disclosure agreement (NDA) under which the parties agreed to maintain the confidentiality of "trade secrets and proprietary information" that may be disclosed while the parties engaged in negotiations for a potential business relationship. Dkt. # 2-2, at 1. The NDA provides that any party in receipt of proprietary information was permitted to use the information only for the purpose of evaluating the parties' potential business relationship. Id. The parties did not include a venue or forum selection clause in the NDA, but they agreed that the NDA "is made under and shall be construed in accordance with the laws of Oklahoma without regard to its provisions regarding conflict of laws." Id. at 3. On February 25, 2016, KEA purchased two boxes of assorted blue prints and a thumb drive from Nealon in exchange for $1,000 in cash and $9,000 in firearms products. Dkt. # 2-3. GWACS alleges that the blue prints and thumb drive contained information relating to the CAV-15 polymer lower receiver and that KEA knew that GWACS owned the rights to the intellectual property relating to this product. Dkt. # 2, at 5.

By 2018, GWACS had sold its entire supply of CAV-15 receivers, and GWACS advised KEA that it would be discontinuing production of the MKII version of the CAV-15 in order to design a newer model. Id. at 6. GWACS advised KEA that it was looking for investors to fund the development of a new model of the CAV-15, and GWACS alleges that KEA was aware that GWACS had submitted an investment packet to Brownells, Inc. (Brownells). Id. GWACS advised KEA that Brownells had submitted a purchase order for 100 units of the new model of the CAV-15, and Brownells provided a letter that GWACS could show to investors stating Brownells anticipated that it would order another 8,500 units. Id. at 7. GWACS and Brownells had executed two non-disclosure agreements as part of GWACS' efforts to solicit an investment from Brownells, and

GWACS alleges that this was part of a broader effort with multiple manufacturers to distribute a fully assembled AR-15 rifle that incorporated the new model of the CAV-15 polymer lower receiver. Id. GWACS was eventually unable to raise the necessary capital to produce a new model of the CAV-15, and it alleges that KEA and Brownells colluded to produce a polymer lower receiver using the intellectual property shared with them by GWACS pursuant to the NDAs. Id. at 8. GWACS states that it did not consent to KEA or Brownells' use of its intellectual property, and KEA advertised the new product using the name KE-15 MKIII. Id.

On April 7, 2020, Russell Anderson, the director of programs and compliance for GWACS, sent an e-mail to KEA demanding that it cease and desist further production and sales of the KE-15 MKIII polymer lower receiver, because KEA allegedly manufactured this product using designs shared with KEA pursuant to the NDA. Dkt. # 27-1, at 2. GWACS invited KEA to negotiate a license for the use of its intellectual property and advised KEA that it would take legal action if KEA continued to use GWACS' intellectual property without a licensing agreement. Id. KEA did not respond to the e-mail and, on April 21, 2020, GWACS sent a copy of the e-mail to Brownells. Dkt. # 17-1, at 4. On April 27, 2020, KEA filed a lawsuit in Maricopa County Superior Court seeking a declaratory judgment that KEA complied with its obligations under the NDA. Id. at 5. KEA alleges that the NDA includes a provision recognizing that KEA and GWACS could offer competing products, and KEA was not prohibited from developing a polymer lower receiver through independent means. Id. at 3-4. KEA also alleges claims for breach of the implied covenant of good faith and fair dealing, interference with prospective economic advantage, and business disparagement

against GWACS, GWACS Defense, Inc., Jud Gudgel,[3] and Anderson. These claims are based on KEA's assertion that GWACS has falsely alleged to potential customers that KEA violated the NDA and that GWACS made this false allegation to force KEA to pay for an unnecessary license to intellectual property from GWACS. Id. at 7. The case was removed to the federal district court in Arizona on August 18, 2020.

On July 15, 2020, GWACS filed this case alleging numerous claims against KEA, Phagan, Brownells, and Nealon arising out of defendants' alleged misuse of GWACS's intellectual property disclosed pursuant to the NDAs with KEA and Brownells. The complaint alleges claims of breach of contract, misappropriation of trade secrets, trademark infringement, trade dress infringement, copyright infringement, misappropriation of intellectual property, and breach of the implied covenant of good faith and fair dealing against KEA (first through seventh causes of action).[4] Dkt. # 2, at 8-14. GWACS alleges an "alternative" claim for breach of contract against SST on the ground that SST may have breached the asset purchase agreement if it falsely represented that it owned the intellectual property rights to the CAV-15 receiver (eighth cause of action). Id. at 15. GWACS also alleges a breach of contract claim against Brownells for allegedly breaching the NDA (ninth cause of action), and the trademark infringement claim (third cause of action) is asserted against KEA and Brownells. Id. at 11, 16. GWACS seeks damages in excess of $75,000 against each defendant, injunctive relief, punitive damages, and attorney fees.

---

[3] The complaint in the Arizona case states that Gudgel is the chief executive officer of GWACS Defense, Inc. and an owner of GWACS. Dkt. # 17-1, at 2.

[4] GWACS also asserts its claims for misappropriation of trade secrets and misappropriation of intellectual property against Phagan and Nealon, and the claim for breach of the implied covenant of good faith and fair dealing is alleged against all defendants.

## II.

Defendants argue that venue is improper in this District, because a substantial part of the events giving rise to GWACS' claims did not occur in the Northern District of Oklahoma. Dkt. # 21. Defendants also ask the Court to dismiss the case for improper venue or to transfer the case to the District of Arizona under the first to file rule. Dkt. # 17. GWACS responds that a substantial part of the events giving rise to its claims occurred in this District, and venue is proper here. Dkt. # 28. GWACS also argues that the first to file rule does not apply, because there is not substantial overlap of parties or issues in the Arizona case and the Arizona case was an improper anticipatory lawsuit. Dkt. # 27.

## A.

Defendants argue that a substantial part of the events giving rise to GWACS's claims did not occur in Oklahoma, and they ask the Court to dismiss the case for improper venue. Once an issue as to venue has been raised, the plaintiff bears the burden to show that venue is proper. Scott v. Buckner Co., 388 F. Supp. 3d 1320, 1324 (D. Colo. 2019); Mohr v. Margolis, Ainsworth & Kinlaw Consulting, Inc., 434 F. Supp. 2d 1051, 1058 (D. Kan. 2006); McCaskey v. Continental Airlines, Inc., 133 F. Supp. 2d 514, 523 (S.D. Tex. 2001). When venue is challenged under Rule 12(b)(3) and the parties have not requested an evidentiary hearing, the plaintiff must make only a prima facie showing that venue is proper in its chosen forum. Mitrano v. Hawes, 377 F.3d 402 (4th Cir. 2004); Delong Equipment Co. v. Washington Mills Abrasive Co., 840 F.2d 843, 845 (11th Cir. 1988).

Under 28 U.S.C. § 1391(b)(2), a civil action "may be brought in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ." Venue may be proper in more than one district in which a substantial part of the events giving rise to the

plaintiff's claims occurred. Wilson v. Qorvis Communications, LLC, 2007 WL 4171567 (W.D. Okla. 2007). The plaintiff does not have to establish that its chosen venue "has the most substantial contacts to the dispute; rather, it is sufficient that a substantial part of the events occurred [here], even if a greater part of the events occurred elsewhere." Nat'l Council on Compensation Ins. Inc. v. Caro & Graifman, P.C., 259 F. Supp. 2d 172 (D. Conn. 2003) (quoting Indymac Mortgage Holdings Inc. v. Reyad, 167 F. Supp. 2d 222, 237 (D. Conn. 2001)). The Court must determine whether "the forum activities played a substantial role in the circumstances leading up to the plaintiff's claim. If the selected district's contacts are 'substantial,' it should 'make no difference that another's are more so, or the most so.'" Crowe & Dunlevy, P.C. v. Stidham, 609 F. Supp. 2d 1211, 1221 (N.D. Okla. 2009). The Tenth Circuit has explained that a venue challenge is subject to a two step analysis: (1) courts "examine the nature of the plaintiff's claims and the acts or omissions underlying those claims;" and (2) "determine whether substantial 'events material to those claims occurred' in the forum district." Employers Mut. Cas. Co. v. Bartile Roofs, Inc., 618 F.3d 1153, 1166 (10th Cir. 2010).

Although GWACS has alleged nine claims for relief, the central issue underlying most of GWACS' claims is whether KEA used proprietary information protected by an NDA to develop a competing product. The complaint states that venue is proper in this Court on the grounds that GWACS and SST executed an asset purchase agreement containing a forum selection clause, the harm suffered by GWACS occurred in Tulsa, GWACS' proprietary information is located in Oklahoma, and KEA and Brownells signed NDAs with Oklahoma choice of law provisions. Dkt. # 30. The Court initially notes that not all of these grounds support proper venue under § 1391(b)(2). The asset purchase agreement does contain a forum selection clause selecting "the state or federal

courts sitting in Tulsa County, Oklahoma" as the forum for disputes arising under the agreement, but the forum selection clause is not enforceable against any defendant except for SST. GWACS alleges that the effects of defendants' actions were felt by GWACS in Tulsa, but that is only because GWACS was located in Tulsa. To establish that venue is proper, the Court must focus on where the conduct occurred rather than where the consequences or effects of that conduct were felt. Clarendon Nat'l Ins. Co. v. Glickauf, 2019 WL 7168657, *3 (N.D. Okla. Dec. 23, 2019); Allstate Life Ins. Co. v. Stanley W. Burns, Inc., 80 F. Supp. 3d 870 (N.D. Ill. 2015). The Court also notes that a choice of law provision selecting the law of a particular state does not show that a party also consented to venue in that state, and choice of law and forums selection provisions serve distinct and separate purposes. Red Rock Resources, LLC v. Trident Steel Corp., 2014 WL 12769664 (W.D. Okla. Nov. 24, 2014).

The first factor for the Court to consider is the nature of plaintiff's claims and the acts or omissions underlying those claims. Employers Mut. Cas. Co., 618 F.3d at 1166. Seven of the nine claims alleged in the complaint concern the potential business relationship between KEA and GWACS, and the key act underlying all of these claims is KEA's alleged violation of the NDA. GWACS alleges claims of breach of contract, misappropriation of trade secrets, trademark infringement, trade dress infringement, copyright infringement, misappropriation of intellectual property, and breach of the implied covenant of good faith and fair dealing against KEA, and some of the claims are also alleged against Phagan, Nealon, or Brownells. The polymer lower receiver was originally designed and marketed by Cavalry, and Cavalry sold the rights to the product to SST. Dkt. # 2, at 3. SST sold the intellectual property and related equipment to GWACS pursuant to the asset purchase agreement, and GWACS manufactured the CAV-15 polymer lower receiver until it

ran out of supply in 2018. Id. at 4, 6. GWACS asserts that it was seeking investors to fund the development and production of a new design of polymer lower receiver, and it disclosed proprietary information to KEA and Brownells pursuant to NDAs in an effort to form a business relationship with them. Id. at 6. GWACS claims that it was unable to obtain the necessary capital to produce a new model of the CAV-15 polymer lower receiver, but KEA and Brownells used the proprietary information disclosed under the NDAs to develop a polymer lower receiver. Id. at 7-8. GWACS alleges that KEA used GWACS' intellectual property to develop the KE-15 MKIII polymer lower receiver, but the NDA did not permit KEA to use the intellectual property for any other purpose than exploring a potential business relationship with GWACS. Id. at 9-10.

The Court must next determine whether substantial events material to GWACS' claims occurred in the Northern District of Oklahoma. In response to the motion to dismiss, GWACS takes the position that nearly everything relevant to its claims occurred in Oklahoma, because GWACS itself is based in Oklahoma and the effects of defendants' actions were felt by GWACS in Oklahoma. Dkt. # 28, at 5-7. However, the venue analysis is focused on where the events occurred, not where the effects were felt, and the Court must consider whether defendants engaged in substantial actions related to GWACS' claims in the forum state. The Court finds that venue would likely be appropriate in Arizona where much of the alleged conduct by defendants took place, but GWACS has made a prima facie showing that a substantial part of the events giving rise to its claims took place in Oklahoma. GWACS is organized under the laws of Oklahoma and has its principal place of business in Oklahoma, and GWACS states that it manufactured the CAV-15 polymer lower receiver in Oklahoma. Dkt. # 28-1, at 1. The NDAs are central to almost all of GWACS' claims, and GWACS states that those agreements were drafted in Oklahoma and are to be construed under

Oklahoma law. Id. at 2. KEA and Brownells engaged in negotiations with GWACS for the possible development of a new model of the CAV-15 polymer lower receivable, and it is reasonable to assume that KEA intended to manufacture the new model in Oklahoma and that some of these negotiations occurred in Oklahoma. Dkt. # 2, at 6. Oklahoma may not have the most significant connections of all possible forums to defendants' actions, but defendants' actions in this forum substantially contributed to plaintiff's claims in this case. Therefore, the Court finds that venue is proper in this forum and defendants' motion to dismiss for improper venue (Dkt. # 21) is denied.

**B.**

KEA asks the Court to transfer this case to the District of Arizona under the first to file rule or, in the alternative, KEA asks the Court to stay this case pending a resolution of jurisdictional motions in the Arizona case. Dkt. # 17. Plaintiff responds that the first to file rule does not apply, because there is no substantial overlap of parties and issues between the two cases and the Arizona case was an improper anticipatory filing. Dkt. # 27, at 6.

"The rule is that the first federal district court which obtains jurisdiction of parties and issues should have priority and the second court should decline consideration of the action until the proceedings before the first court are terminated." Cessna Aircraft Co. v. Brown, 348 F.2d 689, 692 (10th Cir. 1965). A district court should consider three factors when determining if the first to file rule applies: "(1) the chronology of events (2) similarity of the parties involved, and (3) similarity of the issues or claims at stake." Wakaya Perfection, LLC v. Youngevity Int'l, Inc., 910 F.3d 1118, 1124 (10th Cir. 2018). The Court must look to the filing date of the complaints in both cases to determine which case was filed first. Hospah Coal Co. v. Chaco Energy Co., 673 F.2d 1161, 1163 (10th Cir. 1982) (rejecting argument that case in which defendant was served first should have

priority and clarifying that the filing of the complaint is the event used to establish priority of cases). However, the first to file rule is not mandatory and, instead, is a general rule of deference in cases involving overlapping parties and issues. See Wakaya, 910 F.3d at 1124 (the "first to file" rule is general in nature and there may be cases when the "first court to acquire jurisdiction may not be ideally suited to decide the merits"); Cherokee Nation v. Nash, 724 F. Supp. 2d 1159 (N.D. Okla. 2010); see also O'Hare Int'l Bank v. Lambert, 459 F.2d 328, 331 (10th Cir. 1972) ("The rule of comity is a self-imposed restraint upon an authority actually possessed. The abstention doctrine is not an automatic rule; it rather involves a discretionary exercise of the court's equity powers where there exist special circumstances prerequisite to its application on a case-by-case basis.").

The first issue the Court must consider is the chronology of events in order to determine whether the Arizona case was actually the first-filed case. Wakaya Perfection, LLC, 901 F.3d at 1125. The Tenth Circuit has determined that courts applying the first to file rule in a situation where a case was removed to federal court should treat the date that the case was initially filed in state court as the applicable date for the first to file rule. Id. at 1125-26. KEA filed the complaint in Arizona state court on April 27, 2020, and GWACS filed its complaint in this case on July 15, 2020. GWACS does not dispute that KEA's lawsuit in Arizona is the first filed case, but GWACS argues that the Arizona case was an anticipatory filing or the result of forum shopping by KEA. Dkt. # 27, at 13. GWACS claims that KEA took no action to respond to the two cease and desist letters sent by GWACS and, instead, filed a lawsuit against GWACS without attempting to negotiate a licensing agreement. Dkt. # 27, at 10, 14-17. The Court will separately consider GWACS' argument that equitable factors preclude application of the first to file rule, but there is no dispute that KEA's lawsuit in Arizona was the first-filed case.

11

The next issue for the Court to consider is the similarity of the parties involved in each case. KEA filed a lawsuit in Arizona naming GWACS, GWACS Defense, Inc., Gudgel, and Anderson as defendants. Gudgel is the chief executive officer of GWACS and Anderson is the director of programs and compliance of GWACS. In this case, GWACS is the plaintiff and the complaint names KEA, Phagan, SST, Brownells, and Nealon as defendants. Phagan owns SST and he is employed by KEA as a sales representative. Nealon sold documents and a thumb drive to KEA, and GWACS believes that the information purchased by KEA related to the CAV-15 polymer lower receiver. Dkt. # 2, at 5. Brownells is a firearms dealer who signed an NDA with GWACS, and GWACS alleges that Brownells violated the NDA by working with KEA and another competitor to develop a fully assembled AR-15 rifle that incorporated GWACS' CAV-15 polymer lower receiver. Id. The parties in this case and the Arizona case are not identical, but the key component of both cases is the business relationship between GWACS and KEA. The other parties in both cases are employees, officers, or business entities who have been named as parties because of their association with GWACS or KEA. It is not required that the parties be identical in each lawsuit, and the first to file rule may apply when the parties are substantially similar. Letbetter v. Local 514, Transport Workers Union of America, 2014 WL 4403521 (N.D. Okla. Sep. 5, 2014); Cherokee Nation, 724 F. Supp. 2d at 1169; Shannon's Rainbow, LLC v. Supernova Media, Inc., 683 F. Supp. 2d 1261, 1279 (D. Utah 2010). The parties are not identical in both cases, but the Court finds that the parties are substantially similar for application of the first to file rule.

Finally, the Court will consider the similarity of the issues involved in this case and the Arizona case. GWACS argues that the issues in this case and the Arizona case are "substantially distinguishable," because the Arizona case involves only a request for declaratory relief that

defendants can market and produce products that compete with the polymer lower receiver designed by GWACS. Dkt. # 27, at 11. According to GWACS, the Arizona court will not be required to consider whether defendants violated the NDAs and there is only "minor overlap" between the issues raised in this case. Id. at 2. The Court has reviewed the pleadings in both cases, and the key issue that must be resolved by this Court or the Arizona court is whether defendants violated the NDA by developing a competing product by using proprietary information belonging to GWACS. KEA's complaint filed in Arizona states that it did not violate the NDA, because any competing product distributed by KEA was independently developed using information already in its possession or from the public domain. Dkt. # 17-1, at 3. KEA also alleges that GWACS committed various torts by falsely accusing KEA of violating the NDA, and the key issue for the viability of these tort claims will be whether KEA actually violated the NDA. Id. at 4-7. GWACS asserts nine claims for relief in this case, including breach of the NDA, misappropriation of trade secrets and intellectual property, copyright infringement, and trade dress infringement against KEA, and GWACS asserts breach of contract claims against Brownells and SST. Regardless of the legal theory, the central issue that will determine whether GWACS recovers against any of the defendants is whether GWACS can prove that the defendants violated the NDA by using proprietary information to develop a competing product. The Court finds that both lawsuits require a determination of whether KEA and the other defendants named in this case violated the NDA, and this is a substantial issue supporting application of the first to file rule.

 The Court finds that the Arizona case was the first-filed case and the requirements to invoke the first to file doctrine have been established. However, GWACS asks the Court to refrain from transferring or staying this case under an equitable exception to the first to file rule. The first to file

rule is discretionary, not mandatory, and the Court is not required to defer to the first-filed case if doing so would permit inequitable conduct, bad faith, forum shopping, or an anticipatory lawsuit. Choctaw Defense Servs., Inc. v. T & H Servs., LLC, 2019 WL 8194730 (W.D. Okla. Oct. 21, 2019); Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc., 679 F. Supp. 2d (D. Kan. 2010). The first to file rule may be disregarded "to prevent a misuse of litigation in the nature of vexatious and oppressive foreign suits." Wakaya Perfection, LLC, 910 F.3d at 1127 (quoting O'Hare Int'l Bank v. Lambert, 459 F.2d 328, 331 (10th Cir. 1972). Courts have also recognized an anticipatory suit exception to the first to file rule that is intended to discourage a race "to the courthouse door in an attempt to preempt a later suit in another forum." Alter v. F.D.I.C., 57 F. Supp. 3d 1325, 1331 (D. Utah 2014). However, a court must examine the full context under which the first case was filed, and a party may not invoke the anticipatory filing exception merely because it was the first party to threaten litigation. MedSpring Group, Inc. v. Atlantic Healthcare Group, Inc., 2006 WL 581018, *4 (D. Utah Mar. 7, 2006).

GWACS argues that the Arizona case was an improper anticipatory filing, because GWACS had threatened to file suit against KEA and KEA immediately filed a declaratory judgment action in a forum that was inconvenient for GWACS. Dkt. # 27, at 15. GWACS claims that it invited KEA to engage in settlement negotiations and, instead of accepting GWACS' invitation, KEA filed a lawsuit seeking declaratory relief in a distant forum to gain a better bargaining position in settlement negotiations with GWACS. Id. The fact that KEA is seeking declaratory relief is relevant to the Court's consideration of the anticipatory filing exception, especially in a contract case, because it is not uncommon for a party threatened with litigation to preemptively file a lawsuit seeking declaratory relief. Morgan v. 3-B Cattle Co., Inc., 2018 WL 6651529, *3 (N.D. Okla. Dec. 19,

2018). The Court has considered the timing and context of KEA's decision to file the Arizona case, and finds that GWACS would have had a compelling argument for application of the anticipatory filing exception if had not forwarded the cease and desist letter to Brownells. The Court would likely have found the Arizona case to be anticipatory if KEA filed a case seeking only declaratory relief shortly after it received the cease and desist letter from GWACS. However, KEA was not obligated to take action in response to the cease and desist letter, and KEA did not immediately file a lawsuit seeking declaratory relief. Instead, GWACS forwarded the cease and desist letter to Brownells, and KEA alleges that GWACS' false and disparaging accusations concerning KEA's alleged violation of the NDA has harmed its business relationship with Brownells. Dkt. # 17-1, at 4. KEA filed a lawsuit in Arizona seeking a declaratory judgment that it had not violated the NDA, but KEA also alleged tort claims based on GWACS' alleged interference with KEA's business relationship with Brownells. These claims directly relate GWACS' act of forwarding the cease and desist letter to Brownells, and this is not simply a mirror-image lawsuit filed to beat GWACS in a race to the courthouse. GWACS argues that KEA purposefully filed the case in a forum that would be inconvenient for GWACS, and KEA is engaged in forum shopping by forcing GWACS to litigate in a distant forum. Dkt. # 27, at 17. This argument does not tend to show that KEA engaged in improper forum shopping. There is no forum that is equally convenient for all parties, and the choice of forum will present an inconvenience to certain parties whether the case proceeds in Arizona or Oklahoma. The fact that GWACS may be somewhat inconvenienced by proceeding in Arizona does not amount to improper forum shopping, and the Court does not find that any equitable exceptions are present that would prevent the application of the first to file rule.

The Court finds that the first to file rule is applicable and GWACS has not shown that an equitable exception to this rule weighs in favor of allowing this case to proceed. The Court notes that a motion to dismiss is pending in the District of Arizona, and GWACS has moved to dismiss the Arizona case for lack of personal jurisdiction. GWACS has also alleged claims against SST in this case, and those claims may be subject to a forum selection clause selecting the "state or federal courts sitting in Tulsa County, Oklahoma" as the appropriate forum for claims arising under the asset purchase agreement. Given the present procedural posture of this case and the Arizona case, the Court finds that the appropriate remedy is to stay this case to allow the Arizona court to determine whether it will exercise jurisdiction over KEA's claims.

**IT IS THEREFORE ORDERED** that the Motion to Transfer Venue or Stay Proceedings of Defendant, KE Arms, LLC, and Brief in Support (Dkt. ## 17, 19) is **granted**, and this case is **stayed** pending a ruling on the motion to dismiss in the District of Arizona.

**IT IS FURTHER ORDERED** that the parties shall file notice within 14 days of the District of Arizona's ruling on GWACS' motion to dismiss, and the Court will consider whether to lift the stay or transfer the case to the District of Arizona at that time. In the interim, an administrative closing order will be entered.

**IT IS FURTHER ORDERED** that the Motion to Dismiss for Improper Venue of Defendants, and Brief in Support (Dkt. # 21) is **denied**.

**IT IS FURTHER ORDERED** that the motion (Dkt. # 20) to join in KEA's motion to transfer venue or stay the case is **granted**.

**DATED** this 21st day of January, 2021.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE