Exhibit 6

GWACS ARMORY, LLC v. KE ARMS, LLC,et. al.
CLAYTON WOODRUM   3/3/2022

Page 1

```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF OKLAHOMA

GWACS ARMORY, LLC, ET AL.,        )
                                  )
               Plaintiffs,        )
                                  )
vs.                               )  Case Number
                                  )  20-cv-0341-CVE-SH
KE ARMS, LLC, ET AL.,             )  (BASE FILE)
                                  )
               Defendants.        )
_____


              THE DEPOSITION OF CLAYTON WOODRUM,
taken on the 3rd day of March, 2022, between the hours of
9:20 a.m. and 4:42 p.m., on behalf of the Defendants,
pursuant to Federal Rules of Civil Procedure, via Zoom
technology, before Linda Fisher, CSR-RPR, and Notary
Public in and for the State of Oklahoma.
                    A p p e a r a n c e s
For the Plaintiffs:     MR. TADD J.P. BOGAN
                        Jones, Gotcher & Bogan, P.C.
                        3800 First Place Tower
                        15 East Fifth Street
                        Tulsa, Oklahoma  74103
                        (918) 581-8200
                        tbogan@jonesgotcher.com
For the Defendants:     MR. ALEXANDER K. CALAWAY
                        Marquis, Aurbach, Coffing
                        10001 Park Run Drive
                        Las Vegas, Nevada  89145
                        (702) 382-0711
                        acalaway@maclaw.com


Also present:           MR. JUD GUDGEL
```

GWACS ARMORY, LLC v. KE ARMS, LLC,et. al.
CLAYTON WOODRUM  3/3/2022

```
 1   deposition?
 2         A.   I really -- I really haven't -- haven't done
 3   anything specific.
 4         Q.   Talk to anybody in preparation for your
 5   deposition?
 6         A.   Other than counsel telling me I needed to be
 7   here today and so forth, I really haven't had any
 8   discussions with anybody about it.
 9         Q.   Okay.  And I don't want to hear anything you
10   have discussed with your counsel.  But did you discuss
11   anything with Reed Oppenheimer about this deposition?
12         A.   No, other than the fact that I was going to be
13   here today.  That's all.  I just told him I was going to
14   be here for the deposition.  That's the extent of it.
15         Q.   Okay.  And was there any -- what did he say
16   about that?
17         A.   Nothing, really nothing.
18         Q.   And how did you contact Mr. Reed Oppenheimer to
19   let him know that you were being deposed?
20         A.   Well, he's a -- he's a client of mine and I see
21   him several times a week.  And I saw him this morning
22   before I left the office.  He had come into my office, and
23   I told him I was coming over for a deposition.
24         Q.   Understood.  And you said that he has been a
25   client of yours in the past.  How long has he been a
```

GWACS ARMORY, LLC v. KE ARMS, LLC,et. al.
CLAYTON WOODRUM   3/3/2022

Page 15

1           MR. CALAWAY:  Yes.  And I said that the

2    dismissal will be within the scope, and according to the

3    stipulation that was sent by Mr. Bogan on March 1st, 2022,

4    at 12:35 p.m.

5           MR. BOGAN:  Agreed.

6       Q.   (By Mr. Calaway) All right.  Mr. Woodrum, sorry

7    about that.  We're going to get back into this questioning

8    now.

9       Now, we were talking about, you know, the investment

10   analysis services, and other consultation services that

11   you provided for Mr. Reed Oppenheimer in the past.  One of

12   the questions that I have with respect to that is:  Are

13   you aware of Mr. Oppenheimer's investment into Armory?

14      A.   Well, I believe he has an investment in it but

15   I'm not that familiar with it, no.

16      Q.   So do you know how much he has invested into

17   Armory?

18      A.   No.

19      Q.   Do you know when he first invested into Armory?

20      A.   No.

21      Q.   And do you know where -- do you handle his

22   bookkeeping, Mr. Oppenheimer's bookkeeping?

23      A.   Some of it, his personal bookkeeping, some of

24   it.

25      Q.   Okay.  Are you aware if Mr. Oppenheimer

GWACS ARMORY, LLC v. KE ARMS, LLC,et. al.
CLAYTON WOODRUM   3/3/2022

1        A.    No.

2        Q.    Were you ever asked about documents to be

3   produced about Armory protecting its alleged trade

4   secrets?

5        A.    No.

6        Q.    Okay.  And you know, the -- I guess we're

7   trying to make sure where we can find those documents if

8   we were to ask for them.  So I'm going to try to dig into

9   some of these areas.  If Armory was to spend money or

10  invest money into trade secrets, I'm going to ask you in

11  the context of your knowledge as a CPA, where would that

12  be recorded or how would that come up on financial

13  documents?

14             MR. BOGAN:  Object to form.

15       A.    Well, to the extent that I was aware of it, it

16  would be recorded in the accounting records that I keep.

17       Q.    (By Mr. Calaway) Understood, sir.  And which

18  accounting records and where?

19       A.    The Sage 50 accounting records that I referred

20  to earlier, general ledger and so forth.

21       Q.    The ones that you keep?

22       A.    Yes.

23       Q.    Okay.  And would those records also reflect the

24  money that was spent or invested in maintaining trade

25  secrets?

GWACS ARMORY, LLC v. KE ARMS, LLC,et. al.
CLAYTON WOODRUM   3/3/2022

Page 31

```
 1       A.   If I was aware of it, they certainly would,
 2   yes.
 3       Q.   Okay.  And when you say if you were aware of
 4   it, what do you mean by that, sir?
 5       A.   Well, if I was -- if I had knowledge of it and
 6   it was given to me in connection with the accounting
 7   records, it would be reflected in the accounting records.
 8       Q.   Okay.  And I understand that -- I understand
 9   what you're saying, sir.  But what I'm trying to
10   understand is why wouldn't the accounting records be
11   accurate?
12       Is there any -- and let me rephrase my question here
13   for you.  Has there ever been an indication to you that
14   the documents or information provided to you from Armory
15   has been inaccurate in the past?
16       A.   Oh, not that I'm aware of, no.
17       Q.   Okay.  And -- and you've provided tax and
18   accounting services for Armory since 2017, right?
19       A.   I'm sure I have, yes.
20       Q.   Okay.  And were you aware that -- well,
21   withdrawn.  Mr. Woodrum, I'm going to talk -- I'm going to
22   ask you a little bit about the company structure of
23   Armory, and how it's -- how it was formed.  And if you
24   don't know, just let me know.
25       I don't want to spend a whole lot of time if you
```

GWACS ARMORY, LLC v. KE ARMS, LLC,et. al.
CLAYTON WOODRUM   3/3/2022

Page 53

```
 1   yes.
 2        Q.   Okay.  And Armory was -- Armory has had to
 3   spend money to pursue this litigation, is that correct?
 4        A.   Yes.
 5        Q.   Okay.  And that money, is that -- is that money
 6   being provided by Mr. Oppenheimer?
 7        A.   Yes.
 8        Q.   Okay.  And so when Mr. Oppenheimer pays for
 9   this litigation, does he pay directly to the professionals
10   that represent Armory, or does he pay that by way of
11   advancement like we spoke about earlier?
12              MR. BOGAN:  Form.
13        A.   He pays it directly.
14        Q.   (By Mr. Calaway) Okay.  And so his money
15   invested, -- oh, excuse me.  Question withdrawn.  Is
16   Armory obligated to pay Mr. Oppenheimer back for his
17   investment --
18              MR. BOGAN:  Object to form.
19        Q.   (By Mr. Calaway) -- into this litigation?
20        A.   He expects to be repaid, yes.
21        Q.   Understood.  And that repayment would be in the
22   form of cash, not in equity, correct?
23              MR. BOGAN:  Form.
24        A.   I -- I can't answer that question.  I don't
25   know what his arrangement might be with them.
```

GWACS ARMORY, LLC v. KE ARMS, LLC,et. al.
CLAYTON WOODRUM   3/3/2022

Page 67

1            MR. BOGAN:  Form.

2       A.   Yes.

3       Q.   (By Mr. Calaway) And you mentioned earlier that

4  Mr. Oppenheimer has been advancing money to Armory?  Did I

5  -- was that correct?  I don't want to put words in your

6  mouth.  That's correct, right?

7       A.   He has paid certain invoices and expenses of

8  Armory direct to third parties, yes.

9       Q.   And when you say "advances," is there an

10 interest rate associated with that?

11      A.   I'm not -- I'm not sure there is or isn't.  I

12 don't know.

13      Q.   They're not formal advances, to your knowledge,

14 where there might be a note or promissory note involved

15 with that?

16            MR. BOGAN:  Form.

17      A.   I'm not aware of whether there is or not.  This

18 is -- the amount of money I think he probably has

19 advanced, and I don't know exactly what it is, but it's

20 not a -- it's not necessarily a significant amount to him.

21 And he may or may not even know how much it is.  He just

22 tells me to pay the bills when they come in.  And I fix

23 them for him to pay and he may not even recall how much

24 they are.

25      Q.   (By Mr. Calaway) And when you say it's "not a

GWACS ARMORY, LLC v. KE ARMS, LLC,et. al.
CLAYTON WOODRUM   3/3/2022

Page 68

```
 1   lot of money to him," what do you mean?
 2        A.   Well, when I say it's "not a lot of money to
 3   him," he has significant wealth that -- in different
 4   things.  And Armory is not one of his major investments.
 5        Q.   I understand, sir.  And I just -- it's a
 6   relative term a significant amount of money.  And I get
 7   what you're saying.  How much in money has he invested
 8   into Armory?
 9        A.   I don't know.
10        Q.   Well, you said that you know it's not
11   "significant."  And I want to understand what a
12   significant amount of money would be that he has invested
13   or not invested.
14             MR. BOGAN:  Object to form.
15        Q.   (By Mr. Calaway) I'm trying to get an
16   understanding.  I understand that you don't understand off
17   the top of your head, sir, but your answer doesn't make
18   sense.
19             MR. BOGAN:  Object to the form.
20        A.   I don't know how much it is but relative to
21   some other investments he may have, it wouldn't be
22   significant in relationship to some other investments he
23   may have in other businesses.
24        Q.   (By Mr. Calaway) Okay.  So what would be a
25   large investment for Mr. Oppenheimer?
```

GWACS ARMORY, LLC v. KE ARMS, LLC,et. al.
CLAYTON WOODRUM  3/3/2022

Page 71

```
 1         Q.   Do you have access to those records through
 2    today?
 3         A.   Yes.
 4              MR. CALAWAY:  Those are all the questions.
 5    If there's any redirect I'll pass to Mr. Bogan.
 6              MR. BOGAN:  Just a couple, I think.
 7                    CROSS-EXAMINATION
 8    BY MR. BOGAN:
 9         Q.   When you were talking about the money that Mr.
10    Oppenheimer had advanced to Armory and not being
11    significant, are you talking about the attorney's fees
12    he's been paying?  Or what were you talking about?
13              MR. CALAWAY:  Object to the form of the
14    question.
15         A.   I was really thinking about the fees in
16    connection with this case.
17              MR. BOGAN:  That's all I have.
18              MR. CALAWAY:  That's all I have.  Thank you
19    for your time.
20              THE WITNESS:  Yes.  I would like to read.
21              MR. BOGAN:  Yeah, just tell her.
22              THE WITNESS:  I would like to read the
23    deposition when it's prepared.
24              MR. BOGAN:  Read and sign, please.
25         (Whereupon, the proceedings were concluded.)
```

GWACS ARMORY, LLC v. KE ARMS, LLC, et. al.
CLAYTON WOODRUM   3/3/2022

Page 73

```
 1                        CERTIFICATE
 2   STATE OF OKLAHOMA          )
 3   COUNTY OF TULSA            )   ss.
 4             I, Linda Fisher, a Certified Shorthand
 5   Reporter, Registered Professional Reporter, and Notary
 6   Public in the State of Oklahoma, do hereby certify that on
 7   the 3rd day of March, 2022, via Zoom technology, pursuant
 8   to Federal Rules of Civil Procedure, appeared the above
 9   witness, CLAYTON WOODRUM, who was by me first duly sworn
10   to testify the truth, the whole truth, and nothing but the
11   truth in the case aforesaid, and that the deposition by
12   him was reduced to writing by me in stenograph, and
13   thereafter transcribed by me, and is fully and accurately
14   set forth in the preceding pages.
15             I do further certify that I am not related to
16   nor attorney for any of the said parties, nor otherwise
17   interested in the event of said action.
18             WITNESS my hand and official seal this 10th day
19   of March, 2022.
20
21
22
23                        Linda Fisher, CSR-RPR #866
24
25
```