UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| GWACS ARMORY, LLC, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> KE ARMS, LLC, RUSSELL ) <br> PHAGAN, SINISTRAL SHOOTING ) <br> TECHNOLOGIES, INC., ) <br> BROWNELLS, INC., and ) <br> SHAWN NEALON, ) <br> ) <br> Defendants, ) <br> ) <br> and ) <br> ) <br> KE ARMS, LLC, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> GWACS ARMORY, LLC, GWACS ) <br> DEFENSE INCORPORATED, ) <br> JUD GUDGEL, RUSSELL ANDERSON, ) <br> DOES I through X, and ROE ) <br> CORPORATIONS I through X, ) <br> ) <br> Defendants. ) | Case No. 20-CV-0341-CVE-CDL <br> <u>BASE</u> <u>FILE</u> <br> Consolidated with: <br> Case No. 21-CV-0107-CVE-JFJ |

## OPINION AND ORDER

Now before the Court are Plaintiff GWACS Armory, LLC's and Counterclaim Defendants' Joint Motion to Dismiss (Dkt. # 51) and Plaintiff's Motion for Order Dismissing Claims against Defendant Shawn Nealon without Prejudice (Dkt. # 84). Plaintiff GWACS Armory, LLC (GWACS) filed a complaint (Dkt. # 2) alleging claims against KE Arms, LLC (KEA) and others

arising out of the alleged breach of a non-disclosure agreement (NDA), and GWACS believes that the defendants conspired to misappropriate GWACS' intellectual property. KEA filed counterclaims against GWACS and related persons and entities seeking a declaratory judgment that KEA has not violated the NDA, and KEA has alleged claims for interference with prospective economic advantage and business disparagement. GWACS asks the Court to dismiss KEA's counterclaims for interference with prospective economic advantage and business disparagement, because the alleged defamatory statement giving rise to the claims was made pursuant to an absolute privilege for statements made in connection with or in anticipation to litigation. Dkt. # 51. GWACS also requests leave to dismiss its claims against defendant Shawn Nealon without prejudice to refiling. Dkt. # 84. Nealon responds that GWACS has filed its motion simply to avoid a ruling in Nealon's favor on his prospective motion for summary judgment, and Nealon argues that GWACS' claims against him should be dismissed with prejudice. Dkt. # 87.

I.

Cavalry Arms Corporation (Cavalry) created a monolithic polymer receiver for the AR-15 assault rifle and began marketing the product, known as the CAV-15 MKI receiver (MKI), in 2000.[1] Dkt. # 49, at 3. Cavalry discontinued production of the MKI receiver in 2003, and Cavalry introduced a new version of the product known as the CAV-15 MKII receiver (MKII). Id. at 4. In 2007, Cavalry later produced a single prototype of its new CAV-15 MKIII receiver (MKIII), but the

---

[1] GWACS has asked the Court to dismiss two of KEA's counterclaims, and the Court will rely on the allegations of KEA's counterclaims (Dkt. # 49) when reviewing GWACS's motion. See Business Loan Express, LLC v. Faith Ventures, Inc., 2008 WL 11338444 (W.D. Okla. July 30, 2008) (relying on allegations of counterclaims to determine if the defendant has stated a valid counterclaim against the plaintiff). To the extent that GWACS recites it own allegations from the complaint as a basis for dismissal, any factual disputes must be raised in a motion for summary judgment at a later stage of the case.

product was never manufactured by Cavalry due to problems with Cavalry's federal firearms license. Id. Cavalry eventually surrendered its federal firearms license and sold its assets, and a former employee of Cavalry, Russell Phagan, purchased the MKI and MKII molds through his company, Sinistral Shooting Technologies, LLC (SST). Id. Phagan later sold the MKII mold and related tools for production of the MKII receiver to GWACS, but the parties dispute whether GWACS obtained any intellectual property rights associated with the MKII receiver as part of this transaction. Id. at 5. KEA alleges that SST offered to sell GWACS the MKI mold and parts, but GWACS declined to purchase the MKI mold. Id. KEA alleges that it has searched the database provided by the United States Patent and Trademark Office and it has found no registered patents or trademarks held by GWACS. Id. at 6.

On June 2, 2015, GWACS and KEA entered a NDA for the purpose of "engag[ing] in discussions concerning the establishment of a business relationship between them," and it was anticipated that the parties would "disclose certain trade secrets or other proprietary information" to aid them in determining if a business relationship would be feasible. Dkt. # 49-2, at 1.[2] The parties agreed not to "use or exploit such Proprietary Information for [their] own benefit or the benefit of another without the prior written consent of the Disclosing Party." Id. The term "Proprietary Information" as defined by the parties' agreement does not include information that:

(a) At the time of disclosure was already in the possession of the Receiving Party;

---

[2] The Court can consider documents attached to KEA's counterclaims or that are referenced in the counterclaims without converting GWACS' motion into a motion for summary judgment if the documents are central to KEA's counterclaims and the authenticity of the documents is not disputed. Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009). The documents attached to KEA's counterclaims satisfy these requirements and can be referenced in this Opinion and Order without converting GWACS' motion into a motion for summary judgment.

>(b) Is independently made available to the Receiving Party by a third party not bound directly or indirectly by a non-disclosure obligation to the Disclosing Party;
>
>(c) Is in the public domain; or
>
>(d) Is independently developed by the Receiving Party without reference to Proprietary Information received from the Disclosing Party.

Id. at 2. The parties acknowledged that KEA or GWACS could be in the process of offering or developing products or services that were in competition with each other, and the NDA did not prohibit such competition as long each party complied with their obligations under the NDA. Id.

KEA alleges that it maintained its federal firearms license and continued to manufacture firearms and related products. Dkt. # 49, at 7. However, KEA claims that GWACS allowed its federal firearms license to expire and GWACS appeared to be a "dead company." Id. Customers of GWACS approached KEA looking for spare parts after GWACS stopped responding to customer's requests for information or products. Id. at 8. KEA states that it designed a receiver for the AR-15 rifle "from scratch," and its receiver has features not provided by the MKI, MKII, or MKIII receivers. Id. On April 7, 2020, Russell Anderson, an employee of GWACS, sent a letter to KEA claiming that KEA had violated the NDA by developing and marketing its new receiver, and Anderson demanded that KEA cease and desist from any further efforts to manufacture its receiver. Dkt. # 49-5, at 1. Anderson stated that GWACS would be willing to enter a licensing agreement with KEA, but GWACS would take legal action to protect its intellectual property rights if KEA refused to cease manufacturing its receiver. Id. at 2. KEA claims that Anderson's demand contains false and disparaging statements about KEA's alleged misappropriation of GWACS' intellectual property. Dkt. # 49, at 9. GWACS subsequently sent a copy of the demand to one of KEA's largest customers and distributors, Brownells, Inc. (Brownells). Id. The demand does not suggest that

GWACS was contemplating litigation against Brownells, and the demand does not contain any allegations suggesting that Brownells was unlawfully conspiring with KEA to develop a receiver. Dkt. # 49-5. KEA alleges that GWACS violated the NDA by attempting to stop KEA from independently developing its own products, and KEA claims that it lost over $2.5 million in revenue due to GWACS' interference with KEA's business operations. Dkt. # 49, at 9-10.

On July 15, 2020, GWACS filed this case alleging breach of contract claims against KEA, SST, and Brownells (first, eighth, and ninth causes of action), and GWACS alleges other claims for trademark infringement, copyright infringement, and the alleged misappropriation of intellectual property against KEA. GWACS has also named Phagan, SST, Brownells, and Nealon as defendants. As to Nealon, GWACS alleges claims of misappropriation of trade secrets and intellectual property against him.[3] KEA filed counterclaims against GWACS and other related entities and persons for breach of the implied covenant of good faith and fair dealing (second claim), interference with prospective economic advantage (third claim), business disparagement (fourth claim), and deceptive trade practices and unfair competition (fifth claim). Dkt. # 49. KEA also seeks a declaratory judgment (first claim) that it complied with the NDA when it developed its receiver. Id. at 11-12. KEA also filed its own lawsuit against GWACS and other defendants in the District of Arizona, and the parties filed competing motions to transfer or stay the cases. This Court granted GWACS's motion to stay this case pending a decision by the Arizona court as to whether it would exercise jurisdiction over KEA's claims. Dkt. # 32. The Arizona court applied Arizona law and determined that KEA's tort claims against GWACS were barred by the absolute privilege applicable to

---

[3]    GWACS alleges that Nealon formerly owned Cavalry, and GWACS claims that Nealon illegally sold KEA blueprints and other intellectual property that had already been sold to GWACS. Dkt. # 2, at 5.

5

statements made pursuant to private litigation. Dkt. # 34-1, at 11-14. The Arizona court also declined to exercise jurisdiction over KEA's declaratory judgment claim, and transferred KEA's remaining claim for breach of the covenant of good faith and fair dealing to this Court for further proceedings. GWACS has filed a partial stipulation of dismissal as to its claims for trademark infringement (third claim), trade dress infringement (fourth claim), and copyright infringement (fifth claim). Dkt. # 81. KEA has filed a stipulation of dismissal as to its counterclaims against GWACS Defense Incorporated, Jed Gudgel, and Anderson, but its counterclaims against GWACS remain pending. Dkt. # 99.

## II.

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." Id. (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 562. Although decided within an antitrust context, Twombly "expounded the pleading standard for all civil actions." Ashcroft v. Iqbal, 556 U.S. 662, 683 (2009). For the purpose of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to a claimant. Twombly, 550 U.S. at 555; Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007); Moffett v. Halliburton

Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002).  However, a court need not accept as true those allegations that are conclusory in nature.  Erikson v. Pawnee Cnty. Bd. of Cnty. Comm'rs, 263 F.3d 1151, 1154-55 (10th Cir. 2001).  "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based."  Hall v. Bellmon, 935 F.2d 1106, 1109-10 (10th Cir. 1991).

### III.

GWACS asks the Court to dismiss KEA's counterclaims for interference with prospective economic advantage, business disparagement, and deceptive trade practices and unfair competition, because GWACS made the allegedly defamatory statement giving rise to these claims pursuant to an absolute litigation privilege.  Dkt. # 51, at 2.  GWACS also requests leave to dismiss its claims against Nealon without prejudice to refiling.  Dkt. # 84.  KEA argues that GWACS may have a qualified privilege, if any privilege at all, and the litigation privilege was not applicable to alleged defamatory statements made to Brownells.  Dkt. # 54, at 10-11.  Nealon asks the Court to deny GWACS' motion to dismiss unless GWACS' claims are dismissed with prejudice, or he requests that the Court defer consideration of GWACS' motion until Nealon has received a ruling on a forthcoming motion for summary judgment.  Dkt. # 87, at 9.

### A.

GWACS argues that its communication with Brownells was protected by a litigation privilege, and KEA's claims for interference with prospective economic advantage, business disparagement, and deceptive trade practices and unfair competition should be dismissed.  Dkt. # 51. Oklahoma recognizes a litigation privilege "under which attorneys, parties, jurors, and witnesses are immune from defamation liability for statements made in the course of judicial or quasi-judicial

proceedings, so long as the statements are relevant to the proceedings." Cardtoons, L.C. v. Major League Baseball Players Ass'n, 335 F.3d 1161, 1166 (10th Cir. 2003). The privilege has been extended to statements made in anticipation of litigation. Id. The litigation privilege does not "give free reign [sic] to attorneys to defame," and the privilege is applicable if the communication is (1) relevant or has some relation to a proposed proceeding and (2) circumstances surrounding the communication have some relation to the proposed proceeding." Samson Inv. Co. v. Chevaillier, 988 P.2d 327, 330 (Okla. 1999). The privilege applies whether the challenged communication is true or false as long as the author or speaker of the statement had a good faith belief in the truth of the statement. Cardtoons, 335 F.3d at 1166 (citing Kirschstein v. Haynes, 788 P.2d 941 (Okla. 1990)). The issue of whether a communication is privileged is a matter of law to be determined by the court. Id. at 329.

In this case, the communication at issue is the e-mail from Anderson to KEA in which Anderson alleges that KEA violated the NDA by marketing and manufacturing its own receiver for an AR-15 rifle. Dkt. # 49-5. The e-mail was originally sent only to KEA, but the e-mail was later forwarded to Brownells. Anderson asks KEA to "[c]ease and [d]esist the use, manufacture and marketing of any designs, IP and other likeness to the GWACS Armory CAV MKII and MKIII immediately." Id. at 1. Anderson believed that the product being produced by KEA was based on the design for the MKIII receiver. Id. Anderson invited KEA to discuss a licensing arrangement with GWACS, but he stated that GWACS would take legal action against KEA if the parties could not come to an agreement. Id. at 2.

GWACS argues that Anderson's statements are protected by the litigation privilege and KEA's claims for interference with prospective economic advantage, business disparagement, and

deceptive trade practices should be dismissed. The Oklahoma Supreme Court has stated that the elements of a claim of interference with prospective economic advantage are:

> 1.) interference with a business or contractual right;
>
> 2.) malice or wrongful interference that it is neither justified, privileged, nor excusable; and
>
> 3.) damage proximately sustained as a result of the interference.

Loven v. Church Mut. Ins. Co., 452 P.3d 418, 424 (Okla. 2019). The elements of a claim for business disparagement are that "(1) the defendant published false and disparaging information about it, (2) with malice, (3) without privilege, (4) that resulted in special damages to plaintiff." Choctaw Town Square, LLC v. City of Choctaw, Oklahoma, 2014 WL 12818169 (W.D. Okla. Dec. 29, 2014). A claim of business disparagement is similar to a defamation claim and privilege to make the disputed communication is a defense to a business disparagement claim. Id. at *5. Under Oklahoma's Deceptive Trade Practices Act, OKLA. STAT. tit. 78, § 53, a person "engages in a deceptive trade practice when in the course of business, vocation, or occupation, the person . . . [d]isparages the goods, services, or business of another by false or misleading representation of fact . . . ."

KEA argues that Anderson's statements were made pursuant to a qualified privilege, if any privilege at all, and KEA asks the Court to deny GWACS' motion to dismiss. However, KEA's argument is based on legal authority from jurisdictions other than Oklahoma, and the Court rejects KEA's proposed framework for considering GWACS' assertion of the litigation privilege. The Oklahoma Supreme Court has provided sufficient guidance concerning the scope of Oklahoma's litigation privilege, and the privilege will generally apply when a communication is "(1) relevant or

has some relation to a proposed proceeding and (2) circumstances surrounding the communication have some relation to the proposed proceeding." Samson Inv. Co., 988 P.2d at 330. GWACS relies heavily on the findings of the Arizona court in its ruling on GWACS' motion to dismiss, and the Court finds that this is also unhelpful in resolving the issue before this Court. The Arizona court was applying Arizona law and was relying on factual allegations that may not be contained in KEA's counterclaims in this case. This Court is applying Oklahoma law and is relying solely on the allegations of KEA's counterclaims.

Relying solely on the allegations of KEA's counterclaims, the Court finds GWACS' motion to dismiss should be denied, without prejudice to assertion of litigation privilege in a motion for summary judgment. Anderson's letter clearly related to potential litigation against KEA, but there nothing in the letter or KEA's counterclaim suggesting that GWACS was contemplating litigation against Brownells. KEA's counterclaims simply contain no allegations concerning the relationship between KEA and Brownells, and the Court cannot infer the scope or nature of these parties' relationship from the allegations of the counterclaims. The only allegation concerning Brownells is KEA's assertion that Brownells was customer or distributor of KEA and that GWACS sent a copy of the cease and desist letter to Brownells. Dkt. # 49, at 9. KEA has provided a copy of the cease and desist letter that was forwarded to Brownells, and it does not give notice that Brownells could be subject to litigation because of KEA's actions. Dkt. # 49-5. Brownells was also not invited to participate in negotiations for a licensing agreement with GWACS, and Anderson's letter simply provides notice that GWACS was contemplating litigation against KEA in the future. Id. at 2. GWACS argues that Brownells was "highly involved" with KEA's development of a lower polymer receiver and Brownells had executed an NDA with GWACS. Dkt. # 51, at 5. However, these

allegations are outside the scope of KEA's counterclaims, and the Court finds that it would be premature to resolve the issue of GWACS' litigation privilege in forwarding a copy of the cease and desist letter to Brownells. GWACS' motion to dismiss (Dkt. # 51) on the basis of litigation privilege is denied, but the issue may be suitable for resolution by means of a motion for summary judgment.

**B.**

GWACS requests leave to dismiss its claims against Nealon without prejudice to refiling, because it does not wish to pursue its claims against Nealon and the discovery of evidence implicating Nealon in defendants' "plot" to misappropriate GWACS' intellectual property appears unlikely. Dkt. # 84, at 3. Nealon opposes GWACS' motion for dismissal of its claims without prejudice, and he asserts that GWACS' claims against him should be dismissed with prejudice, or GWACS' motion should be denied so that he may file a motion for summary judgment. Dkt. # 87.

GWACS requests leave to dismiss its claims without prejudice and without conditions. Under Fed. R. Civ. P. 41(a)(2), "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Unless a defendant can show "legal" prejudice from granting a plaintiff's request for voluntary dismissal, such requests should ordinarily be granted. Ohlander v. Larson, 114 F.3d 1531, 1537 (10th Cir. 1997). The Tenth Circuit has identified four non-exclusive factors that should be considered in reviewing a request for voluntary dismissal: "the opposing party's effort and expense in preparing for trial; excessive delay and lack of diligence on the part of the movant; insufficient explanation of the need for dismissal; and the present stage of the litigation." Cnty. of Santa Fe v. Pub. Serv. Co. of N.M., 311 F.3d 1031, 1048 (10th Cir. 2002). However, "[t]his list of factors 'is by no means exclusive,' and factors that are 'unique to the context of the case' must also be considered." Id. (quoting Ohlander, 114 F.3d at 1537). To ensure that

"substantial justice is accorded to both parties," the Court must consider the "equities not only facing the defendant, but also those facing the plaintiff." Brown v. Baeke, 413 F.3d 1121, 1124 (10th Cir. 2005).

GWACS alleges that Nealon was the owner of Cavalry, and Cavalry sold its assets, including the intellectual property rights to the MKI and MKII receivers, to SST in 2011. Dkt. # 2, at 3. GWACS claims that Nealon later sold two boxes of materials related to the CAV-15 receiver to KEA, and GWACS asserts that KEA knew that SST had already sold the intellectual property rights to the CAV-15 receiver to GWACS in 2011. Id. at 5. GWACS alleges claims of misappropriation of trade secrets (second and sixth claims) against Nealon. On October 7, 2021, Nealon made an offer of judgment to GWACS, but the offer was rejected. Dkt. # 87-1. Nealon alleges that he offered to appear for a remote deposition, but GWACS insisted that Nealon travel to Tulsa for a deposition. Dkt. # 87, at 2. GWACS disputes Nealon's assertion concerning the possibility of a remote deposition, and GWACS asserts that Nealon voluntarily agreed to appear for a deposition in Tulsa. Dkt. # 91, at 4-5. In November 2021, GWACS sought additional discovery related to a 2016 letter from Nealon to KEA, and KEA and Nealon produced the discovery materials requested by GWACS. Id. at 5. GWACS states that it was contemplating dismissing its claims against Nealon and, on December 15, 2021, GWACS' attorney sent defense counsel a proposed stipulation of dismissal of GWACS' claims against Nealon. Id. The parties were unable to reach an agreement concerning the dismissal of the claims against Nealon, and GWACS filed a motion for a court order allowing GWACS to dismiss its claims against Nealon without prejudice.

The first factor for the Court to consider is the effort and expense that Nealon has expended in defending against GWACS' claims. Nealon claims that he offered to appear remotely for a

deposition to reduce the cost to the parties, but GWACS insisted that he travel to Tulsa for a deposition. Dkt. # 87, at 2. The primary dispute between GWACS and Nealon concerns Nealon's alleged sale of GWACS' intellectual property, and the parties have engaged in numerous discovery disputes concerning the production of this evidence. Dkt. # 78. However, it is unclear whether Nealon has personally incurred any attorney fees, because a representative of KEA testified in a deposition that KEA is paying Nealon's legal expenses. Dkt. # 91-4, at 2. The Court does not find that this factor weighs strongly in favor of either party. GWACS could have agreed to a remote deposition to reduce the parties' expenses in connection with Nealon's deposition, but the docket sheet shows that both sides bear some responsibility for the extensive pretrial litigation and costs associated with pretrial discovery. It also does not appear that Nealon is personally responsible for paying his attorney's fees, and it is not clear that Nealon has incurred substantial costs or legal fees in defending against GWACS' claims.

     The second factor is GWACS's diligence in seeking leave to dismiss its claims against Nealon. The case was filed on July 15, 2020 and GWACS' motion to dismiss was filed on January 5, 2022. When the motion to dismiss was filed, the discovery cutoff was January 24, 2022, and the dispositive motion deadline was set for February 7, 2022. Approximately 17 months passed from the filing of the case to the filing of GWACS' motion to dismiss, and this is a substantial amount of time. However, there was significant pretrial litigation, including a motion to dismiss filed by KEA, and this case was delayed by proceedings before the Arizona court. The Court does not find the amount of time between the filing of the complaint and GWACS's motion to dismiss is a significant factor weighing against granting GWACS' request.

The third factor for consideration is GWACS' explanation for seeking leave to dismiss its claims against Nealon. In its motion to dismiss, GWACS states that it "desires to continue this case in the most efficient and effective manner, which it believes does not include its claims against Nealon." Dkt. # 84, at 3. GWACS asserts that "it is possible additional evidence will further implicate Nealon," but "discovery of such evidence appears unlikely at this time." Id. However, GWACS continues to characterize Nealon as a bad actor who participated in "KEA and Phagan's plot to misappropriate [GWACS'] trade secrets and intellectual property," and it is unclear whether GWACS actually intends to walk away from its claims against Nealon. In its reply, GWACS advises the Court that outstanding discovery issues remain that could lend additional support to its claims against Nealon, but GWACS believes that it would not be "the best use of its time and resources" to investigate these matters. Dkt. # 91, at 9. GWACS further adds that Nealon will not be prejudiced by a dismissal "as long as new evidence is not discovered during the final stages of discovery." Id. at 8. The Court finds that GWACS' explanation for seeking leave to dismiss is vague, and GWACS' briefing undercuts its assertion that it actually intends to cease its efforts to hold Nealon liable for his role in the alleged scheme to misappropriate GWACS's intellectual property.

The final factor is the present stage of the litigation, and this factor weighs against GWACS' request to dismiss its claims against Nealon. When GWACS' motion was filed, the discovery cutoff was January 24, 2022 and the dispositive motion deadline was set for February 7, 2022. Dkt. ## 68, 76. In the most recent scheduling order, the discovery cutoff has expired and the dispositive motion deadline is set for July 11, 2022. Nealon states that he anticipates filing a motion for summary judgment and he argues that he will be prejudiced unless he is permitted to seek a final resolution

of GWACS' claims against him. Dkt. # 87, at 8. GWACS' calls Nealon's argument "problematic," but GWACS makes no attempt to argue that its claims against Nealon are likely to survive a motion for summary judgment. Dkt. # 91, at 5. The record also shows that Nealon has made an offer of judgment and GWACS may incur attorney fees if Nealon is ultimately successful on a motion for summary judgment. See Scottsdale v. Tolliver, 636 F.3d 1273 (10th Cir. 2011) (Oklahoma's offer of judgment statutes, OKLA. STAT. tit. 12, § 1101.1, is applicable in diversity actions in federal district court in Oklahoma).

Considering all of the factors, the Court finds that GWACS' motion to dismiss without prejudice its claims against Nealon should be denied, with leave to re-urge a motion to dismiss subject to appropriate conditions. Nealon has not incurred significant expense in defending against GWACS' claims and GWACS is not wholly responsible for any delay in filing its motion to dismiss. However, GWACS has not provided a compelling explanation for seeking leave to dismiss its claims against Nealon, and GWACS' representations call into question whether it actually seeks to cease prosecution of its claims against Nealon. The Court also gives significant weight to present stage of the litigation, because Nealon states that he is prepared to proceed with a motion for summary judgment that would potentially subject GWACS to an award of attorney fees if Nealon is successful. The parties are encouraged to confer to determine if there are any conditions that would allow for an agreed dismissal of GWACS' claims against Nealon, but the Court finds that dismissal without prejudice and without conditions would be inappropriate at this stage of the litigation.

**IT IS THEREFORE ORDERED** that Plaintiff GWACS Armory, LLC's and Counterclaim Defendants' Joint Motion to Dismiss (Dkt. # 51) is **denied**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Order Dismissing Claims against Defendant Shawn Nealon without Prejudice (Dkt. # 84) is **denied.**

**DATED** this 6th day of July, 2022.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE