IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| GWACS ARMORY, LLC,<br><br>                Plaintiff,<br><br>v.<br><br>KE ARMS, LLC, RUSSELL PHAGAN, SINISTRAL SHOOTING TECHNOLOGIES, LLC, BROWNELLS, INC., and SHAWN NEALON,<br><br>                Defendants.<br>and<br><br>KE ARMS, LLC,<br>                Plaintiff,<br>v.<br>GWACS ARMORY, LLC, GWACS DEFENSE INCORPORATED, JUD GRUDEL, RUSSEL ANDERSON, DOES I through X, and ROE CORPORATIONS I through X,<br>                Defendants. | Case No.:20-cv-0341-CVE-SH<br>BASE FILE<br><br>Consolidated with:<br>Case No. 21-CV-0107-CVE-JFJ |

### DECLARATION OF PAUL LEVY IN SUPPORT OF BROWNELLS INC.'S MOTION FOR SUMMARY JUDGMENT

Paul Levy, declares as follows:

1.    I am over the age of 18 years and have personal knowledge of the facts stated herein, except for those stated upon information and belief, and as to those, I believe them to be true. I am competent to testify as to the facts stated herein in a court of law and will so testify if called upon.

2.    I am the director of product management for Brownells, Inc. ("Brownells"), a firearm retailer based in Iowa.

3. Brownells was a former customer of Cavalry Arms Corporation ("**Cavalry**") from approximately 2001 to 2010. Brownells purchased CAV-15 MKI and MKII semi-automatic firearms, as well as various CAV-15 parts and accessories from Cavalry.

4. Brownells is a current customer of KE Arms, LLC ("**KEA**"). Brownells purchases semi-automatic rifles, including the KP-15, as well as various other firearms and firearm components, subcomponents, parts, and accessories from KEA.

5. On or about May 31, 2013, Brownells entered into a mutual nondisclosure agreement with Armory (the "**First Brownells NDA**"). **Exhibit 1** is a true and correct copy of the First Brownells NDA.

6. On or about May 31, 2018, the First Brownells NDA expired. *See id.* To my knowledge, Brownells: (a) did not receive any "proprietary information," as defined in the First Brownells NDA, from Armory related to the CAV-15; and (b) did not breach any express or implied term of the First Brownells NDA.

7. On January 24, 2016, Brownells entered into a second mutual nondisclosure agreement with Armory (the "**Second Brownells NDA**"). **Exhibit 2** is a true and correct copy of the Second Brownells NDA.

8. On or about January 24, 2021, the Second Brownells NDA expired. *See id.* To my knowledge, Brownells: (a) did not receive any "proprietary information," as defined in the Second Brownells NDA, from Armory related to the CAV-15; and (b) did not breach any express or implied term of the Second Brownells NDA.

9. **Exhibit 3** is a true and correct copy of an email I received from Armory's director, Russell L. Anderson, on April 21, 2020.

/ / /

/ / /

/ / /

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 18th day of July, 2022.

_____
Paul Levy

## APPENDIX OF EXHIBITS TO DECLARATION OF PAUL LEVY

| EXHIBIT NO. | DOCUMENT DESCRIPTION |
|---|---|
| 1 | 2013-05-31 - GWACS-Brownells Mutual Nondisclosure Agreement |
| 2 | 2016-01-24 - GWACS-Brownells Mutual Nondisclosure Agreement |
| 3 | 2020-04-21 Email Exchange between Phagan and Levy re Cease and Desist |

# Exhibit 1
# 2013-05-31 - GWACS-Brownells Mutual Nondisclosure Agreement

GWACS Armory LLC

**MUTUAL NONDISCLOSURE AGREEMENT**

This mutual nondisclosure agreement ("Agreement") by and between GWACS Armory, LLC. ("GAL"), and __Brownells Inc_____, "( BI )", a __Iowa Corporation____, is effective as of __5-31-13_____ (the "Effective Date").

1. Background. GAL and __BI__ (each a "Party" and collectively, the "Parties") intend to engage in discussions concerning the establishment of a business relationship between them. In the course of such discussions, it is anticipated that each may disclose certain trade secrets or other proprietary information for the purpose of enabling the parties to evaluate the feasibility of such business relationship. The Parties are entering into this Agreement in order to assure the confidentiality of such trade secrets and proprietary information in accordance with the terms of this Agreement.

2. Proprietary Information. As used in this Agreement, the term "Proprietary Information" shall mean any information disclosed by one Party (the "Discloser") to the other Party (the "Recipient") (i) that is marked "Proprietary" or (ii) that relates to the business of the Discloser or the Discloser's affiliates, including without limitation, trade secrets, know-how, data, operations, records, finances, assets, technology, software, research, inventions, future products, customer information, or business development plans.

3. Disclosure of Proprietary Information. All disclosures of information by the Disclosing Party to the Receiving Party pursuant to this Agreement shall be made by or through its "Authorized Recipient". The Authorized Recipients for the parties are identified at the end of this Agreement.

4. Use and Protection of Proprietary Information. The Receiving Party shall hold the Disclosing Party's Proprietary Information in confidence, and shall not disclose any Proprietary Information of the Disclosing Party to any person or entity other than its own personnel on a need-to-know basis for a period of five (5) years from the Effective Date. The Receiving Party and its personnel shall use such Proprietary Information only for the purpose set forth in paragraph 1 hereof and shall not use or exploit such Proprietary Information for its own benefit or the benefit of another without the prior written consent of the Disclosing Party. The Receiving Party shall adopt and maintain programs and procedures which are reasonably calculated to protect the confidentiality of Proprietary Information and shall be responsible to the Disclosing Party for any disclosure or misuse of Proprietary Information by its agents, contractors, representatives and employees which results from a failure to comply with this provision.

5. Judicial Disclosure. In the event that the Receiving Party or anyone to whom the Receiving Party transmits any Proprietary Information in accordance with this Agreement is requested or required (by deposition, interrogatories, requests for information or documents in legal proceedings, subpoenas, civil investigative demand or similar process) to disclose any Proprietary Information, the Receiving Party will give the Disclosing Party prompt written notice of such request or requirement so that the Disclosing Party may seek an appropriate protective order or other remedy, and the Receiving Party will reasonably cooperate with the Disclosing GWACS Armory LLC.

Party (at the Disclosing Party's expense) to obtain such protective order. In the event that such protective order or other remedy is not obtained, the Receiving Party will furnish only that portion of the Proprietary Information which, in the advice of its counsel, it is legally required to disclose.

6. Limitation on Obligations. "Proprietary Information" shall not include information which:
    (a) At the time of disclosure was already in the possession of the Receiving Party;
    (b) Is independently made available to the Receiving Party by a third party not bound directly or indirectly by a non-disclosure obligation to the Disclosing Party;
    (c) Is in the public domain; or
    (d) Is independently developed by the Receiving Party without reference to Proprietary Information received from the Disclosing Party.

7. Warranty. The Disclosing Party warrants that it has the right to disclose the Proprietary Information to the Receiving Party. No right or obligation other than those expressly enumerated herein shall be created or implied by the fact that Proprietary Information has been disclosed pursuant to this Agreement or by the fact of the parties entering into this Agreement. Nothing herein shall alter any ownership rights with respect to Proprietary Information, nor shall it create any relationship, partnership, joint venture, agreement to enter into a contract or to make any reimbursement between the Parties, nor shall it be read to grant any license to any Proprietary Information, trade secret, trademark, copyright or patent beyond the specific use expressly authorized herein.

8. Term. This Agreement shall continue in effect until the earlier of (i) termination by either party upon ten (10) days' prior written notice to the other party, or (ii) five (5) years from the effective date of this Agreement. .

9. Return of Materials. Either Party may at any time during or after the term request in writing the return or destruction of any or all Proprietary Information disclosed by it hereunder, in which case the Receiving Party shall within ten (10) days thereof (i) return to the Disclosing Party all originals and any and all copies of such Proprietary Information in the Receiving Party's possession in whatever medium or form it is held, or (ii) certify to the Disclosing Party that it has destroyed any and all documents containing or derived from such Proprietary Information, in accordance with the Disclosing Party's request.

10. Equitable Relief. The parties acknowledge that the unauthorized use or disclosure of Proprietary Information could cause irreparable damage to the Disclosing Party. In order to provide a remedy by which to limit or prevent such damage, the Receiving Party of any Proprietary Information disclosed pursuant hereto agrees that the Disclosing Party shall have the right to obtain an injunction to prevent threatened or actual unauthorized use or disclosure of such Proprietary Information. Such injunctive remedy shall be in addition to any other legal or equitable remedy available to the Disclosing Party in the event of a breach or threatened breach of this Agreement.
GWACS Armory LLC

11. Competition. Each party acknowledges that the other party (or its affiliates) may be in the process of offering or developing products or services that are competitive with and potentially similar to the products and services which it offers or intends to offer, and agree that this Agreement shall not preclude such offerings or development, irrespective of any competition with or similarity to its products or services, so long as the other party's actions are in

2

**EXHIBIT 4**    KEA000045

compliance with the obligations under this Agreement with respect to the Proprietary Information.

12. Entire Agreement. This Agreement supersedes all prior agreements, written or oral, between the parties relating to the subject matter of this Agreement. This Agreement may not be modified, amended or discharged, in whole or in part, except by an agreement in writing signed by the parties hereto. In the event that any provision of this Agreement is found to be unlawful or unenforceable, the remaining provisions of the Agreement shall nonetheless be enforceable and construed so as to give effect to the Agreement as a whole

13. No Assignment. This Agreement may not be assigned or otherwise transferred by either party without the express written consent of the other party, except that references to either party shall include the named company and all wholly owned subsidiaries and affiliates of such party.

14. Governing Law. This Agreement is made under and shall be construed in accordance with the laws of New York without regard to its provisions regarding conflicts of laws.

EXECUTED as of the day and year first set forth above.

GWACS Armory LLC                     *Brownells Inc*

By:                                  By: *Paul Levy*

Title:                               Title: *Category Manager*

Authorized Recipient:                Authorized Recipient:
_____              *[signature]*

3

**EXHIBIT 4**                        KEA000046

# Exhibit 2
# 2016-01-24 - GWACS-Brownells Mutual Nondisclosure Agreement

GWACS Defense Inc

**MUTUAL NONDISCLOSURE AGREEMENT**

This mutual nondisclosure agreement ("Agreement") by and between GWACS Defense Inc. Inc. ("GDI"), GWACS Armory LLC ("GAL") and Brownells, is effective as of January 24, 2016

1. Background. GDI, GAL and Brownells (each a "Party" and collectively, the "Parties") intend to engage in discussions concerning the establishment of a business relationship between them. In the course of such discussions, it is anticipated that each may disclose certain trade secrets or other proprietary information for the purpose of enabling the parties to evaluate the feasibility of such business relationship. The Parties are entering into this Agreement in order to assure the confidentiality of such trade secrets and proprietary information in accordance with the terms of this Agreement.

2. Proprietary Information. As used in this Agreement, the term "Proprietary Information" shall mean any information disclosed by one Party (the "Discloser") to the other Party (the "Recipient") (i) that is marked "Proprietary" or (ii) that relates to the business of the Discloser or the Discloser's affiliates, including without limitation, trade secrets, know-how, data, operations, records, finances, assets, technology, software, research, inventions, future products, customer information, or business development plans.

3. Disclosure of Proprietary Information. All disclosures of information by the Disclosing Party to the Receiving Party pursuant to this Agreement shall be made by or through its "Authorized Recipient". The Authorized Recipients for the parties are identified at the end of this Agreement.

4. Use and Protection of Proprietary Information. The Receiving Party shall hold the Disclosing Party's Proprietary Information in confidence, and shall not disclose any Proprietary Information of the Disclosing Party to any person or entity other than its own personnel on a need-to-know basis for a period of five (5) years from the Effective Date. The Receiving Party and its personnel shall use such Proprietary Information only for the purpose set forth in paragraph 1 hereof and shall not use or exploit such Proprietary Information for its own benefit or the benefit of another without the prior written consent of the Disclosing Party. The Receiving Party shall adopt and maintain programs and procedures which are reasonably calculated to protect the confidentiality of Proprietary Information and shall be responsible to the Disclosing Party for any disclosure or misuse of Proprietary Information by its agents, contractors, representatives and employees which results from a failure to comply with this provision.

5. Judicial Disclosure. In the event that the Receiving Party or anyone to whom the Receiving Party transmits any Proprietary Information in accordance with this Agreement is requested or required (by deposition, interrogatories, requests for information or documents in legal proceedings, subpoenas, civil investigative demand or similar process) to disclose any Proprietary Information, the Receiving Party will give the Disclosing Party prompt written notice of such request or requirement so that the Disclosing Party may seek an appropriate protective order or other remedy, and the Receiving Party will reasonably cooperate with the Disclosing Party (at the Disclosing Party's expense) to obtain such protective order. In the event that such protective order or other remedy is not obtained, the Receiving Party will furnish only that

**EXHIBIT 5**                                                               KEA000047

portion of the Proprietary Information which, in the advice of its counsel, it is legally required to disclose.

6. Limitation on Obligations. "Proprietary Information" shall not include information which:
> (a) At the time of disclosure was already in the possession of the Receiving Party;
> (b) Is independently made available to the Receiving Party by a third party not bound directly or indirectly by a non-disclosure obligation to the Disclosing Party;
> (c) Is in the public domain; or
> (d) Is independently developed by the Receiving Party without reference to Proprietary Information received from the Disclosing Party.

7. Warranty. The Disclosing Party warrants that it has the right to disclose the Proprietary Information to the Receiving Party. No right or obligation other than those expressly enumerated herein shall be created or implied by the fact that Proprietary Information has been disclosed pursuant to this Agreement or by the fact of the parties entering into this Agreement. Nothing herein shall alter any ownership rights with respect to Proprietary Information, nor shall it create any relationship, partnership, joint venture, agreement to enter into a contract or to make any reimbursement between the Parties, nor shall it be read to grant any license to any Proprietary Information, trade secret, trademark, copyright or patent beyond the specific use expressly authorized herein.

8. Term. This Agreement shall continue in effect until the earlier of (i) termination by either party upon ten (10) days' prior written notice to the other party, or (ii) five (5) years from the effective date of this Agreement. .

9. Return of Materials. Either Party may at any time during or after the term request in writing the return or destruction of any or all Proprietary Information disclosed by it hereunder, in which case the Receiving Party shall within ten (10) days thereof (i) return to the Disclosing Party all originals and any and all copies of such Proprietary Information in the Receiving Party's possession in whatever medium or form it is held, or (ii) certify to the Disclosing Party that it has destroyed any and all documents containing or derived from such Proprietary Information, in accordance with the Disclosing Party's request.

10. Equitable Relief. The parties acknowledge that the unauthorized use or disclosure of Proprietary Information could cause irreparable damage to the Disclosing Party. In order to provide a remedy by which to limit or prevent such damage, the Receiving Party of any Proprietary Information disclosed pursuant hereto agrees that the Disclosing Party shall have the right to obtain an injunction to prevent threatened or actual unauthorized use or disclosure of such Proprietary Information. Such injunctive remedy shall be in addition to any other legal or equitable remedy available to the Disclosing Party in the event of a breach or threatened breach of this Agreement.

11. Competition. Each party acknowledges that the other party (or its affiliates) may be in the process of offering or developing products or services that are competitive with and potentially similar to the products and services which it offers or intends to offer, and agree that this Agreement shall not preclude such offerings or development, irrespective of any competition with or similarity to its products or services, so long as the other party's actions are in compliance with the obligations under this Agreement with respect to the Proprietary Information.

**EXHIBIT 5**   KEA000048

12. **Entire Agreement.** This Agreement supersedes all prior agreements, written or oral, between the parties relating to the subject matter of this Agreement. This Agreement may not be modified, amended or discharged, in whole or in part, except by an agreement in writing signed by the parties hereto. In the event that any provision of this Agreement is found to be unlawful or unenforceable, the remaining provisions of the Agreement shall nonetheless be enforceable and construed so as to give effect to the Agreement as a whole

13. **No Assignment.** This Agreement may not be assigned or otherwise transferred by either party without the express written consent of the other party, except that references to either party shall include the named company and all wholly owned subsidiaries and affiliates of such party.

14. **Governing Law.** This Agreement is made under and shall be construed in accordance with the laws of Oklahoma without regard to its provisions regarding conflicts of laws.

EXECUTED as of the day and year first set forth above.

| GWACS Defense Inc | Brownells |
|---|---|
| By: Shel Jones | By: |
| Title: Vice President | Title: |
| Authorized Recipient: _[signature]_ | Authorized Recipient: _[signature]_ |

GWACS Armory LLC

By: Shel Jones

Title: Chief Operations Officer

Authorized Recipient: _[signature]_

# Exhibit 3
# 2020-04-21 Email Exchange between Phagan and Levy re Cease and Desist

| | |
|---|---|
| **Message** | |
| **From:** | russell@kearms.com [russell@kearms.com] |
| **Sent:** | 4/21/2020 2:17:21 PM |
| **To:** | Paul Levy [paul.levy@brownells.com] |
| **Subject:** | [EXTERNAL] re: Cease and Desist |
| **Flag:** | Follow up |

**CAUTION**

Paul,

I'm sorry that GWACS contacted you about this. This was clearly inappropriate on their part. We have engaged with an IP Attorney to handle this. We will be responding to it formally in the next 24-48 hours, and we will provide Brownell's with our response. If you need further clarification please call me.

Regards,

Russell Phagan
KE Arms
Sales & Marketing Director
480-466-8832

---

**From:** Rus Anderson [mailto:randerson@gwacsdefense.com]
**Sent:** Tuesday, April 21, 2020 1:38 PM
**To:** russell@kearms.com
**Cc:** Jud Gudgel <jgudgel@gwacs.us>; paul.levy@brownells.com
**Subject:** RE: Cease and Desist

Russell,

Please see the email below. We have not received a response from you and would request you reply soon or we will have to consider other action to protect our rights.

*Rus*

Russell L. Anderson
Colonel USMC (Ret)
Director of Programs and Compliance
GWACS Defense, Inc.
GWACS Armory, LLC
7130 S. Lewis Ave, Ste 300
Tulsa, OK 74136
Office: 918-794-5670 Ext. 200
Fax:    918-794-5675
Cell:    918-232-0118

---

**From:** Rus Anderson
**Sent:** Tuesday, April 7, 2020 4:22 PM
**To:** russell@kearms.com
**Cc:** Jud Gudgel <jgudgel@gwacs.us>
**Subject:** Cease and Desist

KEA000620

Russell,

I am sending this email on behalf of Jud Gudgel and GWACS Armory, LLC. Today it has come to our attention that you (more specifically, your employer, KE Arms) are attempting to develop a GWACS CAV-15 M III in direct conflict with our intellectual property rights. Please consider this email as a demand to Cease and Desist this activity immediately.

As you are aware, GWACS purchased all the equipment, molds, designs, and related IP from Calvary Arms in 2011, and own exclusive rights to such. In 2015, we attempted to form a broader relationship with KE Arms in order to allow the manufacture of an aluminum version of the CAV15 MK II and MK III lower receiver for GWACS to market. Under this premise, we shared our latest designs with you and jointly executed a Nondisclosure Agreement (NDA) of the designs (copy attached). It appears that the MK III is the design you are currently attempting to market.

As mentioned above, by this email GWACS Armory is providing you official notice to Cease and Desist the use, manufacture and marketing of any designs, IP and other likeness to the GWACS Armory CAV 15 MKII and MKIII immediately.

We would be willing to discuss a licensing arrangement between GWACS and KE Arms, both as a manufacturer for GWACS Armory and as a manufacturer of a KE Arms Variant under license from GWACS. If this is something you and your employer would be interested in pursuing, I look forward to hearing from you soon.

We have enjoyed a long and great relationship over the years and I would like to continue that relationship, if at all possible. However, if we can't quickly come to a mutual agreement and licensing agreement, we will be forced to take legal action to protect our intellectual property.

*Rus*

Russell L. Anderson
Colonel USMC (Ret)
Director of Programs and Compliance
GWACS Defense, Inc.
GWACS Armory, LLC
7130 S. Lewis Ave, Ste 300
Tulsa, OK 74136
Office: 918-794-5670 Ext. 200
Fax:    918-794-5675
Cell:   918-232-0118