IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **GWACS ARMORY, LLC**, an Oklahoma limited liability company, <br><br> **Plaintiff,** <br><br> v. <br><br> **KE ARMS, LLC** <br> **RUSSEL PHAGAN, SINISTRAL SHOOTING TECHNOLOGIES, LLC** <br> **BROWNELLS, INC.** and <br> **SHAWN NEALON,** <br><br> Defendants, <br><br> and <br><br> **KE ARMS, LLC,** <br><br> Plaintiff, <br><br> v. <br><br> **GWACS ARMORY, LLC, GWACS DEFENSE INCORPORATED, JUD GUDGEL, RUSSEL ANDERSON, DOES I through X,** and **ROE CORPORATIONS I through X,** <br><br> Defendants. | Case No. 20-CV-0341-CVE-SH <br> <u>**BASE FILE**</u> <br> Consolidated with: <br> Case No. 21-CV-0107-CVE-SH |

**PLAINTIFF'S MOTION FOR PROTECTIVE ORDER AND
ORDER PROHIBITING EXTRAJUDICIAL STATEMENTS AND
<u>PRETRIAL PUBLIC COMMUNICATION AND DISSEMINATION OF INFORMATION</u>**

**COMES NOW**, Plaintiff and Counter-Defendant, GWACS Armory, LLC ("Armory"), by and through its attorneys of record, and pursuant to Rule 26 of the Federal Rules of Civil Procedure, common law, and the Oklahoma Rules of Professional Conduct, hereby requests that the Court enter a protective order and what is commonly referred to as a "Gag Order" to protect

1

the integrity of the fact-finding process and the parties' Constitutional right to a fair and impartial trial, and in support states as follows:

## I. INTRODUCTION

The case before the Court includes a significant amount of privileged and confidential information. In fact, the underlying claims relate to violations of Mutual Nondisclosure Agreements ("NDAs") by defendants KE Arms, LLC ("KEA"), Sinistral Shooting Technologies, LLC ("SST"), and Brownells, Inc. ("Brownells"). (*See* Complaint [Dkt. #2]) This case also involves "confidential" and "highly confidential" information that has been exchanged between the parties and/or obtained from non-parties. On September 28, 2021, the parties filed an *Agreed Motion for Protective Order* [Dkt. # 56]. On September 30, 2021, the Court entered a Stipulated Protective Order [Dkt. #60]. Based upon the Stipulated Protective Order, certain facts and evidence in this case are not open to public dissemination or discussion. Furthermore, KEA, SST, Brownells, Russell Phagan ("Phagan"), and Shawn Nealon ("Nealon") (hereinafter collectively the "Defendants"), are all represent by the same attorneys, and those attorneys have represented every third-party witness deposed by Armory's counsel. Each third-party witness deposed by Armory also claimed to have entered into a Joint Defense Agreement with Defendants, thus prohibiting Armory from discovering any communications between the witnesses and the Defendants regarding this case.

Discovery in this matter closed on July 11, 2022. The case is currently scheduled for trial on September 12, 2022. Notwithstanding the Court's entry of a Stipulated Protective Order, the nature of the claims involved in this case, or the limited ability to publicly disclose the entirety of the facts and evidence in this case, on or about July 23, 2022, Defendants, in apparent concert with third-party witness Karl Kasarda ("Kasarda") of InRangeTV ("InRange"), published a scripted

2

video about this case on YouTube, Reddit, Facebook, and other platforms. According to the Kasarda, the video is "indicative of the problem with the system as a whole" and "it's time now to really let the audience, as a whole know, some of the things that have gone on with the [WWSD] project…" In the video, Kasarda misrepresented the facts of the case and misleads the public (and potential jurors) about Armory's claims and its motives therefor, by including references to the deposition testimony of a non-party witness, Reed Oppenheimer ("Oppenheimer"). Defendants also caused an article to be published on RECOILweb.com ("RECOIL"), a large firearms publication. The RECOIL article makes many of the same misrepresentations made in the InRange video and further disseminates case information – including the Declaration of Phagan in support of Summary Judgment, which is 985 pages long and includes information subject to the Stipulated Protective Order [Dkt. #60]. Notably, KEA refused to produce its CAD or CAM files in this case without the Stipulated Protective Order, but has now posted images of those designs (which are based off the CAV-15 CAD designs central to this case) online. (*See* Dkt. #124-33, which includes several CAV-15 drawings directly, including Figures 16, 17 & 18) It is now apparent why Defendants filed separate declarations with substantially more evidence attached thereto than necessary to support their motions for summary judgment. (*See* Declaration of Russell Phagan [Dkt. #124], exhibits 1 – 71). This evidence includes the entire 309-page deposition of Armory. Defendants' motives for including confidential and highly confidential information to purportedly support summary judgment are now clear. Defendants are conducting a smear campaign against Armory and/or Mr. Oppenheimer, which is intended to harass and oppress Armory and/or Oppenheimer. This is also an attempt to prejudice Armory's ability to have a fair trial in this case. Defendants are seeking their own form of public justice, because, according to the InRange video, "justice is not what the legal system does, it does legal stuff."

## II. THE PUBLIC DISCLOSURES

### A. InRange and Kasarda's Video

The initial publication and dissemination of false information about this case was by Kasarda. Kasarda is the owner of InRange and is one of the originators of the What Would Stoner Do ("WWSD") project. "InRange disseminates its videos on a wide range of media outlets and video platforms all over the internet." (*See* Declaration of Kasarda, Dkt #102-5 at ¶ 3) InRange has 426,000 subscribers on YouTube, 40,134 followers on Facebook, and approximately 3,800 members on reddit.com. The video in question was shared to each of those platforms. Kasarda also receives a 5% royalty from the sale of the WWSD branded KP-15 monolithic polymer lower receivers.[1] (*See* Dkt. #102-5 at ¶ 14)

On or about July 23, 2022, InRange and Kasarda posted a video titled "WWSD – GWACS Armory Sucks" on YouTube (the "Video"). In the Video Kasarda reads from a script, and falsely claims delays and issues with the WWSD project, as well as diminished content on InRange's YouTube channel, are a result of Defendants being sued by Armory. However, the truth is that KEA sued Armory first (a fact blatantly left out by Kasarda in the Video), and within weeks of Armory suing Defendants, KEA, Brownells and InRange were fully marketing the WWSD project. According to Kasarda's Declaration, InRange curtailed is promotion of the WWSD rifle from approximately May 2020 until August 2020. (*See* Declaration of Kasarda, Dkt # 102-5 at ¶ 32) Armory filed this case on July 15, 2020. Thus, Kasarda's purported reason for publishing the video is untrue and his motives are thinly veiled. The Video also omits any discussion of the tremendous success KEA enjoyed from its sale of the KP-15 monolithic polymer lower using

---

[1] The 5% royalty to InRange is actually split 2.5% to Kasarda and 2.5% to Ian McCollum, his former InRange partner. (*See* Exhibit 2 at p. 21, l. 8 - 25)

Armory's CAV-15 design and other proprietary information. However, Armory is prohibited from publicly disclosing details related to the success of the KP-15 or the WWSD project, and to do so would not be proper.

Kasarda also falsely claims InRange went to KEA for KEA to develop a monolithic polymer lower receiver when Armory could not supply sufficient inventory for the WWSD project. In fact, it was Phagan's idea for Defendants to use Phagan's knowledge and possession of proprietary information related to the CAV-15, and Armory, to develop the KP-15 lower receiver. (*See* e-mail dated 9/6/18, attached hereto as Exhibit 1, and Kasarda Depo, attached as Exhibit 2, at p. 32, l. 8 – p. 34, l. 17) Further, the Video falsely claims Armory is claiming proprietary rights to the standard A1 length of pull, the use of QD sockets and slings, and the use of trapdoor storage compartment in buttstocks. Kasarda claims Armory alleged in his deposition that A1 length of pull, trapdoor storage compartments in buttstocks, and QD sockets and slings were proprietary to the CAV-15. None of these claims were made in Kasarda's deposition. The Video grossly mischaracterizes Armory's claims in this case. Armory's claims are based upon Defendants' use of CAV-15 CAD design files SST sold Armory, information provided in confidential investment packets (which included financing needs, pricing, product development plans, renderings of updated designs, and projected sales figures), information related to the number of CAV-15 lowers sold by Armory (contained in text messages attached to Phagan's aforementioned declaration [Dkt. # 124-32]), and other proprietary information disclosed under the NDAs. Unfortunately, Armory is unable to respond to Defendants' and Kasarda's false claims due to the Stipulated Protective Order and the duties imposed upon attorneys and parties in litigation in Oklahoma and the United States District Court for the Northern District of Oklahoma.

The Video is clearly a smear campaign of Armory and Oppenheimer, falsely claiming this lawsuit is an attempt at some form of gun control. Kasarda goes on to call Oppenheimer an angel investor brought in to fund this lawsuit, and questions his motives for doing so. Kasarda references Oppenheimer's deposition, stating that he "made pretty flagrant anti-AR-15 and military style firearms comments." This is where the Video instigates the conspiracy theory that Oppenheimer is funding this lawsuit in order to diminish the amount of AR-15 rifles on the market, as a form of activism. To further this misconception, Kasarda gives the alternative that if not for the purpose of gun control, perhaps this lawsuit is because Armory actually believes it owns the WWSD project, the A1 length of pull, trapdoors in buttstocks, and QD sockets, all of which would be nonsensical and unbelievable. Almost immediately after InRange posted the foregoing video, Phagan of SST commented that he would be making all of the evidence in this case public. (*See* SinistralRifleman post attached hereto as Exhibit 3)

Within twenty-four hours the Video had been viewed 58,476 times and had 789 comments. In the first seven days of the Video's publication, it had been viewed 92,203 times and had 1,050 comments, and nearly 7,500 "likes". The day after the Video was posted, Armory received the following voicemail from an anonymous caller:

> Since y'all got so many guns up there maybe you should [F'ing] kill yourself you slimy backhanded bastards. What the [fu--] is wrong with you? How the hell do you sleep at night. Man, go off yourself you sorry pieces of shit. I can't believe you're Oklahomans. I can't believe I got to share a state with you mother[fu—ers]. Go to hell. [Fu--] your business. I hope you go out of business. You should have fired up your molds when you had the chance. Jackasses.

The voice message above apparently came from someone living in Oklahoma, who could potentially be a member of the jury pool at the trial in this matter. It also created significant fear on the part of Armory's owners and investors. In addition, there have been numerous comments

6

about Oppenheimer, his charitable foundation, boycotting any businesses he is a part of, and many other damaging statements specifically about Oppenheimer, Armory, and Armory's lawyers.

### B. RECOIL MAGAZINE

On July 29, 2022, Defendants' misinformation campaign continued. This time through an even larger outlet, RECOIL magazine. RECOIL's Facebook page alone has 517,302 followers. The title of the RECOIL article is, "KE Arms, Brownells and Others Sued By Anti-AR-15 Investor". A copy of the RECOIL article is attached hereto as Exhibit 4. First, Oppenheimer, the investor referenced in the article, is not a party to this lawsuit. Oppenheimer was a witness in this case only because his testimony was demanded by Defendants for the improper purpose to harass and annoy Armory. Initially, Oppenheimer's testimony was sought to further KEA's improper alter ego claims KEA later dismissed. (*See* Resp. and Objection to Motion for Contempt against Oppenheimer, Dkt. # 108, and Opinion and Order Dkt. # 111) Second, one of the witnesses in this case, and a party to yet another Joint Defense Agreement with Defendants, Iain Harrison, is an editor for RECOIL. (*See* Deposition of Harrison, attached as Exhibit 5, at p. 8, l. 17 – 25 & p. 48, l. 19 – 25) Harrison testified as the corporate representative of a company called Tool & Design Group, LLC ("TDG"). TDG owns the KP-15 lower receiver molds and the vibration welder used for manufacturing the lowers. TDG was formed by the owner of KEA, Mike Kenney, after KEA decided to make its own CAV-15 lower receiver using the confidential information disclosed to it by Armory. Another editor at RECOIL, Glen Castle, is also an investor in TDG. (*See* Depo of Harrison, Ex. 5, at p. 22, l. 1 – 9) TDG owns the KP-15 molds and welder and receives payment from KEA for each KP-15 lower receiver sold. Armory cannot disclose the number of KP-15 units KEA has sold due to the Stipulated Protective Order, but the number is staggering. Thus, the second publication of misinformation about this case is by RECOIL. RECOIL has two editors on

7

its staff who have a significant financial stake in the KP-15, and the company in which they invested is represented by the same counsel as Defendants and has a Joint Defense Agreement with Defendants.

The RECOIL article includes links to "KE Arms statement" (which suggest this lawsuit is an attack on the 2nd Amendment), "Russell Phagan's statement" and Russell Phagan's Declaration to this Court. (*See* Ex. 4) Both Phagan's statement and his declaration link to several hundred pages of documents in this case, many of which are confidential and subject to the Stipulated Protective Order. This includes documents showing design features of the CAV-15 and the KP-15.

### III. ARGUMENTS & AUTHORITIES

Pursuant to the Stipulated Protective Order [Dkt. # 60], "… Confidential Information or Highly Confidential Information shall not be used by any person, other than the Supplying Party, for any purpose other than conducting this Proceeding… and in no event shall such information be used for any business, competitive, personal, private, public or other purpose." (Dkt. # 60 at ¶ 3) Defendants have clearly used confidential information in this case, as well as Armory's inability to publicly disclose the same, for purposes outside of this litigation.

Further, extrajudicial statements which could have an imminent and material prejudicial effect on the fact-finding process are disfavored in Oklahoma. The Oklahoma Rules of Professional Conduct expressly prohibit lawyers participating in litigation from making "an extrajudicial statement that a reasonable lawyer would expect to be disseminated by means of public communication if the lawyer knows or reasonably should know that it will have an imminent and materially prejudicial effect on the fact-finding process in an adjudicatory proceeding relating to the matter and involving lay fact-finders…" Okla. Stat. tit. 5, App. 3A, Rule

3.6. Counsel for Defendants admitted that they provided Kasarda with Oppenheimer's deposition transcript "because he asked for it."[2] Although counsel did not directly make the public statements in the Video or the RECOIL article, counsel participated in the dissemination of this information. "It is professional misconduct for a lawyer to: (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another; *** (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation; (d) engage in conduct that is prejudicial to the administration of justice…." Okla. Stat. tit. 5, App. 3A, Rule 8.4.

This Court's local rules further require attorneys practicing before it to conduct themselves with honesty and integrity, and prohibit the conduct described herein. The Local Rules for the Northern District of Oklahoma recite the preamble of the Oklahoma Rules of Professional Conduct, which includes in pertinent part, "[a] lawyer should use the law's procedures only for legitimate purposes and not to harass or intimidate others." *See* LGnR3-2. Local Rule 4-6 requires the following, "[i]n fulfilling his or her primary duty to the client, a lawyer must be ever conscious of the broader duty to the judicial system that serves both attorney and client"; "[a] lawyer owes, to the administration of justice, the fundamental duties of personal dignity and professional integrity"; "[a] client has no right to demand that counsel abuse the opposite party or indulge in offensive conduct. A lawyer shall always treat adverse witnesses and suitors with fairness and due

---

[2] It should be noted that Defendants are also represented by local counsel with the Hall Estill law firm, which also represents Oppenheimer in unrelated matters, but to Armory's knowledge, Hall Estill has not participated in the acts described herein.

9

consideration"; and "[a] lawyer should not use any form of discovery, or the scheduling of discovery, as a means of harassing opposing counsel or counsel's client." LGnR4-6.

The Court has the authority to prohibit further public dissemination of evidence in this case. *See* U.S. v. Tijerina, 412 F.2d 661, 666-667 (10th Cir. 1969) ("[t]he order against extrajudicial statements was designed to maintain the atmosphere essential to the preservation of a fair trial, 'the most fundamental of all freedoms.'") Citing Sheppard v. Maxwell, 384 U.S. 333 (1966), the Tenth Circuit Court of Appeals in U.S. v. Tijerina recognized it is "[t]he responsibility of a trial judge to exercise the control necessary to assure a fair trial…" *Id*. at 667. Further, Rule 26(c) permits the Court's entry of protective orders. Pursuant to Rule 26, "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression..." In determining whether or not to prohibit the extrajudicial dissemination of information, the Court should determine whether or not there is a reasonable likelihood of prejudicing a fair trial." U.S. v. Tijernia, 412 F.2d at 666-667.

Not only are Defendants actions likely to prejudice a fair trial in this case, the information being used to publicly attack Oppenheimer and Armory was obtained through discovery. In Seattle Times Co. v. Rhinehart, the United States Supreme Court stated in pertinent part,

> Much of the information that surfaces during pretrial discovery may be unrelated, or only tangentially related, to the underlying cause of action. Therefore, restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information.

Seattle Times Co. v. Rhinehart, 467 U.S. 20, 33 (1984). The Supreme Court in the Seattle Times Co. observed, "…pretrial depositions and interrogatories are not public components of a civil trial." *Id*. In that case the Supreme Court went on to hold, "[t]here is an opportunity, therefore, for litigants to obtain – incidentally or purposefully – information that not only is irrelevant but if

publicly released could be damaging to reputation and privacy. The government clearly has a substantial interest in preventing this sort of abuse of its processes." Id. at 36.

Defendants are clearly aware of the current political climate in this country, and few issues are more hotly contested than the 2nd Amendment, and the sale of AR-15 style rifles. For Defendants to publicize this case, taint a jury in this case, and subject Armory and Oppenheimer to the type of vitriol demonstrated in the voicemail received by Armory (and the comments section of the Video) by piggybacking the debate over the 2nd Amendment, is clearly inappropriate and an abuse of the judicial process. Armory is a gun manufacturer. Armory sells guns, including AR-15 style rifles. Oppenheimer's current, personal, opinion about civilian ownership of AR-15 rifles and military style weapons has absolutely nothing to do with this case and are not relevant to the claims or defenses in herein. Defendants are using information obtained in a deposition of a non-party conducted in pretrial discovery to attempt to harass Armory and Oppenheimer and prejudice the jury. This case is about the Defendants using CAD files SST had sold to Armory to make the KP-15, KEA, Phagan, SST and Brownells using product design features, pricing information, product development cost information, and other confidential information disclosed under an NDA to create the KP-15. KEA and Brownells even used photographs of the CAV-15 to advertise the KP-15. And despite the fact KEA sued Armory and its owners, Defendants are now playing the victim in the court of public opinion and sharing misinformation, and confidential information, about this case to millions of people. There is no justifiable reason for Defendants' actions, except to harass Armory and Oppenheimer and attract publicity to prejudice this case. According to the Video, Armory is using "a janky legal system as a weapon" and the Video provides information "indicative of the problem with the system as a whole." In Kasarda's own words, the Video relates directly to this trial and the judicial process being followed in this case.

As further evidence of Defendants' abuse of this judicial process through distributing misinformation, and the absurdity of Defendants' narrative, the following are the statements Oppenheimer actually made during his deposition:

1. When asked how he would describe his involvement with Armory, Oppenheimer stated, "[r]emote, passive, and obscure." (*See* Deposition of Oppenheimer, attached hereto as Exhibit 6, at p. 27, l. 7 – 9)

2. When asked if he would have made an additional investment in Armory for further research and development of the CAV-15 if Armory had come to him for an additional investment, Oppenheimer said, "[p]robably not." When asked why, he said, "I don't like AR-15s." *Id*. at p. 65, l. 25 – p. 66, l. 7.

3. Oppenheimer later said his personal opinion of the [AR-15] is "[o]f the industry, yeah, the weapon is fine." *Id*. at p. 67, l. 5-9.

4. When Defendants' counsel stated, "[s]o you have an objection to semi-automatic weapons generally, and that's the issue with the - -", Oppenheimer stated, "[a]n objection means I don't care for them. I don't go out and picket or carry signs and stuff. But it's just not something I'm interested in." *Id*. at p. 75, l. 16 – 20.

5. When pressed further on the issue of AR-15s, Oppenheimer stated, "Semiautomatic is a broad thing including .22 pistols and everything else. Specifically, the AR-15 and military style weapons to civilians, I'm not that interested in." *Id*. at p. 76, l. 24 – p. 77, l. 2.

6. When asked why he was funding this litigation Oppenheimer said first, "I was an investor in a company. It sounded like a good idea." *Id*. at p. 17, l. 10 – 12.

7. When asked again why he was funding this litigation, Oppenheimer stated, "I felt it was the right thing to do to fund the litigation if Jud [Gudgel] is being sued or suing somebody. I have a lot of confidence in Jud." *Id*. at p. 78, l. 14-20.

Based upon the foregoing, Defendants, in a concerted effort with Kasarda and RECOIL, have repeatedly published conspiracy theories alleging that this litigation has been brought to control civilian access to AR-15s. Kasarda and RECOIL conveniently leave out the fact that KEA sued Armory, two of its owners, and one of its employees in Arizona nearly three (3) months before Armory brought this lawsuit against KEA in the Northern District of Oklahoma. Oppenheimer clearly stated that he is funding this litigation because he is an investor in Armory, and because he felt it was the right thing to do if Jud Gudgel (who was initially sued by KEA prior to this action being filed) is being sued or suing somebody.

As a result of the pre-trial publicity being generated by the Defendants in this case, counsel for Defendants has violated the Stipulated Protective Order, The Oklahoma Rules of Professional Conduct, and this Court's local rules related to Professional Conduct for Attorneys and Standards of Practice.

## IV. CONCLUSION

Defendants have taken this case, and the information obtained in discovery, to levels which are dangerous, defamatory, oppressive, harassing, and likely prejudicial to Armory's ability to a fair trial. The timing of these extrajudicial statements is quite telling. Defendants waited until after the close of discovery, and after they submitted an absorbent number of documents under the guise of their motions for summary judgment, to make these false and inflammatory public statements with links to only their statements and evidence. Further, the statements were made just seven (7) weeks before the trial date set forth in the Amended Scheduling Order [Dkt. #101]. Based upon

the foregoing, Armory respectfully requests the Court issue a protective order and "gag order" prohibiting further dissemination of evidence and information relating to this litigation.

**WHEREFORE**, premises considered, Plaintiff and Counter-Defendant, GWACS Armory, LLC, respectfully requests the Court enter protective order and "gag order" prohibiting the parties from disseminating information and evidence related to this case, prohibiting public harassment and oppression of Armory and/or Oppenheimer, and prohibiting the use of evidence and information in this case for any purpose other than this litigation. Armory also would request the court impose appropriate sanctions against Defendants' out of state counsel who have clearly participated in this Breach of Ethics by revoking the court's Pro Hac admission to practice before this court or whatever other appropriate sanctions as the court deems fit.

Respectfully submitted,

**JONES, GOTCHER & BOGAN, P.C.**

s/Tadd J.P. Bogan
James E. Weger, OBA #9437
Tadd J.P. Bogan, OBA #20962
15 East Fifth Street, Suite 3800
Tulsa, Oklahoma 74103-4309
Telephone: (918) 581-8200
Facsimile: (918) 583-1189
jweger@jonesgotcher.com
tbogan@jonesgotcher.com
*Attorneys for Plaintiff &*
*Third-Party Defendants*

## CERTIFICATE OF SERVICE

       I hereby certify that on August 1, 2022, I electronically transmitted the attached document to the Clerk of Court using the Electronic Case Filing System for filing. Based on the record currently on file in this case, the Clerk of Court will transmit a Notice of Electronic Filing to those registered participants of the ECF System.

                                                                        s/Tadd J.P. Bogan
                                                                        Tadd J. P. Bogan