# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

GWACS ARMORY, LLC,                          )
                                            )
      Plaintiff,                             )
                                            )
v.                                          )
                                            )
KE ARMS, LLC; RUSSELL PHAGAN;               )
SINISTRAL SHOOTING                          )
TECHNOLOGIES, LLC; BROWNELLS,               )
INC.; and SHAWN NEALON,                     )
                                            )
      Defendants,                            )
                                            )
and                                         )          Case No. 20-cv-00341-CVE-SH
                                            )                  BASE FILE
KE ARMS, LLC,                               )
                                            )
      Plaintiff,                             )
                                            )
v.                                          )
                                            )
GWACS ARMORY, LLC; GWACS                     )
DEFENSE INCORPORATED;                        )
JUD GUDGEL; RUSSELL ANDERSON;                )
DOES I through X; and ROE                    )
CORPORATIONS I THROUGH X,                    )
                                            )
      Defendants.                            )

## OPINION AND ORDER

      Before the Court is the motion for sanctions filed by Counter-Defendants GWACS

Armory, LLC ("Armory"), GWACS Defense, Inc. ("GWACS Defense"), Jud Gudgel

("Gudgel), and Russell Anderson ("Anderson") (collectively, the "Armory Defendants").

Armory Defendants assert that Counter-Plaintiff KE Arms, LLC ("KEA") violated Fed. R.

Civ. P. 11 when it filed its counterclaims in this case, because (1) KEA had no basis to assert

it suffered damages; and (2) Armory Defendant's actions were protected by litigation

privilege.

The undersigned finds KEA had evidentiary support for its damages allegations. As for the litigation privilege, United States District Judge Claire V. Eagan has since denied Armory Defendants' motion to dismiss, refusing to find KEA's claims barred by this privilege—at least based on the allegations in the pleadings. The undersigned, therefore, declines to find KEA's legal contentions unwarranted by existing law. Armory Defendants' motion will be denied.

## Background

The ownership and use of intellectual property to the CAV-15 monolithic polymer receiver for AR-15 assault rifles is at the center of this dispute. On April 7, 2020, Russell Anderson, on behalf of Armory, sent a cease-and-desist e-mail to Russell Phagan at KEA. (ECF Nos. 49-5; 93-1.) Armory asserted that KEA was developing a receiver in conflict with Armory's intellectual property rights; demanded KEA cease and desist use, manufacture, and marketing of any designs, IP, or other likeness to Armory's CAV-15 MKII and MKIII receivers; and threatened legal action. (*Id.*) On April 21, 2020, Armory re-sent its demand email to KEA, but this time, Armory also copied Paul Levy at Brownells, Inc. ("Brownells"), one of KEA's "largest customers/distributors." (ECF No. 49 ¶ 51; ECF No. 93-1.)

Six days later, on April 27, 2020, KEA filed suit against Armory Defendants in Arizona state court, seeking a declaratory judgment, but also asserting claims of (1) breach of the implied covenant of good faith and fair dealing against Armory; (2) interference with prospective economic advantage against Armory Defendants; and (3) business disparagement against Armory Defendants. (Case No. 21-cv-00107-CVE-SH, ECF No. 1-3 at 5-12.[1]) The Arizona pleading contained many of the statements highlighted by

---

[1] All references to page numbers refer to the page number listed in the ECF header.

Armory Defendants in their current motion, including that their actions had damaged KEA. (*Id.* at 10 ¶ 32, 11 ¶¶ 40 & 48, 12 ¶ 50.) Following removal to federal court, on March 9, 2021, United States District Judge John J. Tuchi dismissed KEA's tortious interference and disparagement claims, finding an absolute litigation privilege to apply under Arizona law. (Case No. 21-cv-00107-CVE-SH, ECF No. 17.) The Arizona federal court declined to exercise jurisdiction over the declaratory judgment claim and transferred the good faith claim to this district under 28 U.S.C. § 1404(a). (*Id.*)

Meanwhile, on July 15, 2020, Armory filed its complaint in this case, asserting multiple claims against KEA relating to alleged breaches of certain contracts, various forms of infringement, misappropriation of intellectual property, and other claims. (ECF No. 2.) Judge Eagan stayed this case in favor of the pending Arizona case. (ECF No. 32.) However, once the remaining claims from Arizona were transferred to Oklahoma, the stay was lifted, and the two cases were consolidated. (ECF No. 35.) At that point, the defendants answered Armory's complaint, and, on April 13, 2021, KEA filed a counterclaim against Armory Defendants. (ECF No. 49.) In this counterclaim, KEA reasserted the claims dismissed by the Arizona federal court and, again, asserted that it had suffered damages as a result of Armory Defendants' actions in sending the April 21, 2020, cease-and-desist e-mail. (*Id.*) Armory Defendants again moved to dismiss KEA's claims as a matter of law, including on the basis of absolute litigation privilege. (ECF No. 51.) On July 6, 2022, Judge Eagan denied Armory Defendants' motion to dismiss, without prejudice to reasserting the privilege at summary judgment. (ECF No. 112.)

While the motion to dismiss was pending, on January 26, 2022, Armory Defendants sent a safe harbor letter to KEA, enclosing the Rule 11 Motion for Sanctions.[2] (ECF No. 102-7.)  The letter focused on KEA's purported lack of damages (*id*. at 1-3), but the attached motion also stated in passing that KEA "disregarded the litigation privilege . . . when it filed its claims" (*id*. at 11).  KEA did not withdraw any filings or file any corrections with the Court within 21 days.  Instead, on the 21st day, KEA sent a letter to Armory Defendants, denying the claimed "litigation privilege" and asserting that its damages were supported by the evidence.  (ECF No. 102-8 at 3-4.)  In the letter, KEA also *sua sponte* raised the application of an Oklahoma law to certain of its claims and offered to stipulate to the dismissal of its claims against GWACS Defense and Anderson.  (*Id*. at 4-6 (citing Okla. Stat. tit. 12, § 682(B)).)  KEA also demanded Armory dismiss its claims against Russell Phagan ("Phagan") for the same reason.  (*Id*. at 1, 6.)  The next day, KEA sent a proposed stipulation of dismissal.  (ECF No. 102-9, 104-17.)  The proposed stipulation did not unilaterally dismiss KEA's claims against GWACS Defense and Anderson.  (ECF No. 104-17.)  Instead, it was a mutual stipulation to dismiss both KEA's claims against Anderson and Armory's claims against Phagan; the claims against GWACS Defense were not mentioned.  (*Id*.)

Armory Defendants responded to neither offer, and, on February 22, 2022, they filed the instant motion for sanctions.  (ECF No. 93.)  The parties later stipulated to the

---

[2] A party seeking Rule 11 sanctions must serve its motion for sanctions on the opposing party at least 21 days prior to filing the motion with the court, thus providing the opposing party an opportunity to withdraw or correct the challenged paper, claim, or contention. *See* Fed. R. Civ. P. 11(c)(2).

dismissal of KEA's claims against GWACS Defense, Gudgel, and Anderson.[3]  (ECF No. 99.)  KEA's claims against Armory remain pending.

Analysis

## I.    Standard of Review

Pursuant to Rule 11, an attorney must sign every pleading, motion, or other paper filed with the Court.  Fed. R. Civ. P. 11(a).  By doing so, the attorney certifies, among other things, that: (A) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for changing the law; and (B) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after further investigation.  Fed. R. Civ. P. 11(b)(2)-(3).  Rule 11 therefore imposes "an affirmative duty to conduct a reasonable inquiry into the facts and the law before filing."  *Collins v. Daniels,* 916 F.3d 1302, 1320 (10th Cir. 2019) (quoting *Bus. Guides, Inc. v. Chromatic Commc'ns Enterprises, Inc.,* 498 U.S. 533, 545 (1991)). "In short, Rule 11 requires that a pleading be, to the best of the signer's knowledge, well grounded in fact, warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and not interposed for any improper purpose." *Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.,* 793 F.3d 1177, 1182 (10th Cir. 2015) (cleaned up).

In deciding whether to impose Rule 11 sanctions, a district court applies an "objective reasonableness" standard, asking "whether a reasonable attorney admitted to

---

[3] KEA argues that its offer to dismiss certain defendants by the safe harbor deadline—and its subsequent agreement to dismiss other defendants—renders Armory Defendants' motion "moot" as to those defendants.  (ECF No. 102 at 14-15.)  As noted above, it is not clear that KEA truly offered to dismiss any of the defendants unilaterally, or whether KEA, instead, sought to negotiate a bilateral dismissal of other claims against its affiliate, too. In any event, as the undersigned finds no sanctions appropriate, this issue need not be resolved.

practice before the district court would file such a document." *Id.* (quoting *Adamson v. Bowen,* 855 F.2d 668, 673 (10th Cir. 1988)). An attorney's "good faith belief in the merit of an argument is not sufficient" to avoid Rule 11 sanctions if that belief is objectively unreasonable. *White v. General Motors Corp.,* 908 F.2d 675, 680 (10th Cir. 1990). "Because our adversary system expects lawyers to zealously represent their clients, [the Rule 11] standard is a tough one to satisfy; an attorney can be rather aggressive and still be reasonable." *Predator,* 793 F.3d at 1182.

If a court determines that Rule 11(b) has been violated, it "may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). An "appropriate sanction" means a sanction "'limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated.'" Fed. R. Civ. P. 11(c)(4).

## II.     KEA's Allegations of Damages Have Evidentiary Support

For the most part, Armory Defendants complain of allegations made by KEA that it suffered <u>any</u> damages at all.[4] Specifically, Armory Defendants assert sanctions are warranted, because KEA has "zero evidence" to substantiate its factual allegations that Armory's April 21, 2020, communication to Brownells damaged KEA's reputation, relationship with Brownells, and revenue. (ECF No. 93 at 7-8.) In support, Armory Defendants identify eight damage-related statements from KEA's counterclaim they allege are "indisputably" and "patently false." (*Id.* at 3-5, 9.) Armory Defendants attempt

---

[4] Armory Defendants do note that KEA initially alleged—on information and belief—that their conduct caused it to lose over $2.5 million in revenue and that, at other times, KEA has asserted $400,000 in damages. (ECF No. 93 at 3.) However, Armory Defendants do not assert there is any issue with KEA's belief as to the <u>amount</u> of damages. Instead, Armory Defendants asserts there is no basis to assert KEA has suffered any damages at all. As such, the Court need not address whether KEA's allegation as to the amount of damages was likely to "have evidentiary support after a reasonable opportunity for further investigation or discovery." *See* Fed. R. Civ. P. 11(b)(3).

to prove the falsity of such statements by pointing to specific evidence, including Brownells' answers to Armory's first set of interrogatories and the deposition testimony of Russell Phagan, Mike Kenney, and Paul Levy.  (*Id.* at 5-8.)

Contrary to Armory Defendants' assertion, there is evidence supporting KEA's damage allegations.  Karl Kasarda, the owner and manager of InRange, LLC ("InRange"), has provided a declaration that InRange "curtailed its promotion of the [What Would Stoner Do ("WWSD")] Rifle from approximately May 2020 until about August 2020 due to the statements in Armory's letter" and that such marketing curtailment "directly affected the amount of WWSD Rifles sold."[5]  (ECF No. 102-5 at 6 ¶¶ 32, 35.)  Additionally, based on an analysis of sales data between KEA and Brownells before and after Armory's April 21, 2020, cease-and-desist email, expert witness Michael Rosten concluded that KEA suffered lost revenues of $637,427.00 and lost profits of $387,918.00 "but for" Armory's actions.  (ECF No. 102-6 at 4.)  Some of this evidence—including the October 2021 expert report—has been developed since the filing in April 2021 of the counterclaim that is the subject of the pending motion.  However, it is reasonable to believe that KEA was aware of the May-to-August 2020 marketing curtailment in April 2021—indeed KEA alleged in its counterclaim that it was forced to substantially limit its marketing efforts.  (ECF No. 49 ¶ 55.)  And, it is reasonable for KEA to believe that the evidence showed it had suffered some damages at the time it made its claims.

---

[5] According to Kasarda, in 2018, Brownells and InRange entered into an agreement wherein Brownells was the exclusive retailer and InRange was the primary marketer of a fully assembled AR-15 rifle for the WWSD project.  (ECF No. 102-5 at 3-4 ¶¶ 11-14, 21.) While KEA was to manufacture components for the fully assembled WWSD rifle, Armory was not.  (*Id.* At 4 ¶¶ 15-20.)  Prior to this agreement, the WWSD project consisted of separate AR-15 components customers purchased directly from recommended manufacturers, including Armory and KEA, and then assembled on their own.  (*Id.* At 3 ¶¶ 6-9.)

To be sure, it was only a matter of days from the time Brownells received the cease-and-desist e-mail to when KEA itself publicized the parties' dispute by filing its lawsuit, and Armory filed its own lawsuit just a few months later.  And, Armory Defendants have presented evidence indicating that the marketing could have been curtailed due to KEA's manufacturing delays and that KEA could not fill the orders that were being made during this time period—much less any orders that might have been made "but for" the cease-and-desist e-mail.  However, Armory Defendants essentially ask the Court to sanction KEA because, in their view, the evidence supports their position on KEA's counterclaims.  Although Rule 11 "sets a threshold for the factual and legal assertions of a complaint, it is not a broad mechanism for testing the sufficiency of a plaintiff's claims."  *Ross v. Mukasey,* No. 08-cv-00643-PAB-MJW, 2009 WL 4250124, at *1 (D. Colo. Nov. 24, 2009) (unpublished) (citation omitted).[6]  The Court thus finds it inappropriate to conclusively determine the legal and factual sufficiency of KEA's counterclaims in a motion for sanctions.  *See, e.g., Tso v. Murray,* No. 16-cv-02480-WJM-STV, 2018 WL 684767, at *2 (D. Colo. Feb. 1, 2018) (unpublished) ("Although Plaintiff cites to evidence in support of his version of events . . ., a motion for Rule 11 sanctions is not the proper mechanism for resolving factual disputes."); *Kaufman v. Kanbar,* No. 09-CV-522-GKF-FHM, 2010 WL 3075279, at *1 (N.D. Okla. Aug. 5, 2010) (unpublished) (denying defendant's Rule 11 motion that "in effect" asked the court to determine the factual and legal sufficiency of plaintiff's claims, because such challenge was "not appropriately decided in the context of Rule 11").

---

[6] Unpublished decisions are not precedential, but they may be cited for their persuasive value.  10th Cir. R. 32.1(A).

Because there is evidentiary support for KEA's alleged damages, it was not objectively unreasonable for KEA's counsel to file or refuse to dismiss KEA's counterclaims.  Therefore, sanctions pursuant to Rule 11(b)(3) are not warranted.

### III.   KEA's Legal Contentions Do Not Warrant Sanctions

Armory Defendants additionally assert KEA disregarded the litigation privilege applicable in this case when it filed its countersuit.  (ECF 93 at 8.)  As noted above, Judge Eagan denied Armory Defendants' motion to dismiss KEA's claims on this basis, but she indicated such issue may be suitable for resolution by means of a motion for summary judgment.  (ECF No. 112.)  In so ruling, the Court noted Armory relied heavily on the District of Arizona's order granting Armory's motion to dismiss, which the Court found unhelpful as the Arizona court applied Arizona law and relied on factual allegations that may not be contained in KEA's counterclaims in this case.  (*Id.* at 10.)  The Court also noted some factual issues were outside the scope of KEA's counterclaims and found it was premature to resolve the litigation privilege issue at the dismissal stage.  (*Id.* at 10-11.)  Because the existence of a litigation privilege "is a matter of law to be determined by the court" (*id.* at 8 (citing *Samson Inv. Co. v. Chevaillier,* 1999 OK 19, ¶ 5, 988 P.2d 327, 329)), and as discussed above, a Rule 11 motion for sanctions is not the appropriate context for making such determination, the Court declines to impose sanctions on this basis.

IT IS THEREFORE ORDERED that Counter-Defendants' Rule 11 Motion for Sanctions (ECF No. 93) is DENIED.

ORDERED this 29th day of September, 2022.

SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT