# Exhibit 1

**From:** Tim McBride <timmcbride@gmail.com>
**Date:** October 8, 2022 at 7:45:45 PM MST
**To:** russell@kearms.com
**Subject: From Tim; Fwd: Cav15 dealer inquiry**

---------- Forwarded message ----------
From: <dealer@gwacsarmory.com>
Date: Tuesday, January 15, 2013
Subject: RE: Cav15 dealer inquiry
To: Tim McBride <timmcbride@gmail.com>

Thank you for your interest in becoming a dealer with GWACS Armory.  Attached is our dealer agreement which you will need to sign and email scanned copy back.  Also attached is our warranty and technical notes as well as our 2013 dealer pricing.   We require a minimum purchase of five at this time.  Currently all dealer orders are being handled by Shel Jones on his Cell phone, 202-595-4683.

We are currently producing stock and can ship within one week or less.

-------- Original Message --------
Subject: Cav15 dealer inquiry
From: Tim McBride <timmcbride@gmail.com>
Date: Thu, August 23, 2012 3:48 pm
To: dealer@gwacsarmory.com

Interested in seeing if your company was setting up with dealers yet?

Regards,
Tim McBride
owner, EVC-3

1

KEA003098

# GWACS ARMORY LLC



## NON-EXCLUSIVE DEALER AGREEMENT

This Non-Exclusive Dealer Agreement ("Agreement") is entered into by and between GWACS Armory LLC, as supplier/manufacturer ("GAL") having its principal place of business at 907 S. Detroit Ave., 6th Floor, Tulsa, Oklahoma 74120, and the Dealer described below concerning Dealer's sale of GAL Products within the United States to the Dealer's customers and the public.

DEALER

| | |
|---|---|
| NAME: | _____ |
| ADDRESS: | _____ |
| TELEPHONE: | _____ |
| FACSIMILE: | _____ |
| CONTACTS PRIMARY: | _____ |
| EMAIL: | _____ |
| TELEPHONE: | _____ |
| SECONDARY: | _____ |
| EMAIL: | _____ |
| TELEPHONE: | _____ |
| PAYMENT TERMS: | _____ |
| DATE: | _____ |

This Agreement (including all of the terms and conditions attached as pages 5 through 8 hereto) constitutes the entire agreement between GAL and Dealer regarding the subject matter hereof and all prior agreements, correspondence, discussions and understandings of the parties (whether oral or written) are superseded hereby, it being the express intention of the parties that this Agreement shall serve as the complete and exclusive statement of the terms of their agreement together. No amendment, waiver or other modification to all or any portion of this Agreement or the rights and obligations of the parties hereunder shall be valid unless in writing and signed by the parties. The parties acknowledge that they have read the following terms and conditions and are agreeable thereto. Neither party has upon any statements, representations, or other communications that are contained in this Agreement.

GAL, INC.                                DEALER

By: _____          By: _____

Title: _____          Title: _____

KEA003099

**GWACS Armory LLC**



# THIS

# PAGE

# INTENTIONALLY

# LEFT

# BLANK

KEA003100

# GWACS ARMORY LLC



## Dealer Agreement Instructions

If you are interested in becoming a dealer for GWACS Armory CAV15 MKII lower receivers, please follow the instructions below.  Once GWACS Armory has received all of the required information and approved your application, GWACS Armory will sign the agreement and return a copy to you notifying you of your acceptance as a dealer.

1.      Complete the information page and return it to a GWACS Armory representative (GWACS Armory will return a signed copy to you upon your approval)

2.      Provide the following items to GWACS Armory either by mail or by scanning and emailing to dealers@gwacsarmory.com:

        a.      Copy of the documents establishing your company (i.e., articles of incorporation, LLC certificate, business license, etc.)

        b.      Copy of current FFL

        c.      Resale tax number and any supporting documentation

        d.      Minimum Initial Order, as set out in paragraph 5 of the agreement

If you have any questions, you may contact GWACS Armory at dealers@gwacsarmory.com, or you can call Shel Jones at 202-595-4683, or Shannon Ramsey at 918-645-6277.

KEA003101

# GWACS Armory LLC



# THIS

# PAGE

# INTENTIONALLY

# LEFT

# BLANK

KEA003102

# GWACS ARMORY LLC



**TERMS AND CONDITIONS OF AGREEMENT**

**1. Dealer Qualifications; Appointment:** In order to qualify as a GAL dealer, Dealer must (i) be primarily engaged in the business of selling small arms to the public; (ii) possess all requisite business licenses in accordance with all local, state, and federal laws; (iii) possess a resale tax number and provide a copy of this document to GAL; (iv) possess a Federal Firearms License (FFL) for all firearm sales and transfers; (v) submit and pay the Minimum Initial Order for the first year of this Agreement and Minimum Annual Order each year thereafter, as provided in Section 5 below, and (vi) abide by all of the other terms and conditions set forth herein. Subject to the foregoing, GAL hereby appoints Dealer as an authorized non-exclusive dealer of the products ("Products") described in GAL's current dealer product list, and Dealer agrees to purchase the Products from GAL and to devote its continuing best efforts to the promotion and sale of the Products.

**2. Term of Agreement:** This Agreement shall commence as of the date first written above and expire one year from said date. This Agreement will automatically renew for successive one year periods unless either party submits a written termination notice to the other party not later than thirty (30) days prior to the automatic renewal date, and as provided below.

**3. Additions, Discontinuations and Modifications:** GAL shall have the right at any time to introduce new Products, discontinue the manufacture or sale of any of its Products and make changes in the design or construction of any such Products without incurring any obligation or liability to Dealer whatsoever. Any purchase order modification by Dealer must be completed by giving written notice to GAL at least sixty (60) days prior to the scheduled shipping date, provided that any notice to decrease the order quantity or price must be submitted and accepted at least ninety (90) days prior to the scheduled shipment date, subject to the terms of paragraph 13 below.

**4. Rebate, Discount, and Other Incentive Programs**: GAL, in its sole discretion, may at different times, and from time to time, offer or publish to Dealer certain rebate, discount or other incentive programs. GAL reserves the right to withdraw such rebate programs prior to commencement thereof, and, unless otherwise provided, any and all rebate programs shall be subject to the terms and conditions of this Agreement.

**5. Orders:** This Agreement is contingent upon Dealer (a) initially purchasing not less than FIVE (5) lower receivers from GAL for immediate shipment (no scheduling permitted) (the "Minimum Initial Order") and (b) purchasing not less than two (2) lower receivers from GAL during each renewal term (the "Minimum Annual Order"); provided, however, that if Dealer's account is idle for more than twelve (12) consecutive months, Dealer will be required to execute another Minimum Initial Order to reactivate its Dealer status hereunder. In each case, Dealer shall issue purchase orders for Products. Dealer's purchase orders shall not be effective until acceptance is acknowledged in writing by GAL. Purchase orders will be accepted by GAL only in accordance with the terms and

conditions of this Agreement. Orders shall be made by Dealer in writing only (i) by mail to GAL at 907 S. Detroit Ave., 6th Floor, Tulsa, Oklahoma 74120; (ii) by email to dealers@gwacsarmory.com; or (iii) by way of GAL's website at www.gwacsarmory.com. (A telephone request to purchase, or to modify an existing order, shall not be considered an order unless and until followed up in writing.) All orders shall be subject to written acceptance by GAL. Dealer acknowledges and agrees that this Agreement supersedes any inconsistent terms or conditions set forth in Dealer's purchase orders. Accordingly, if there is any conflict between the terms and conditions contained in Dealer's purchase order and the terms and conditions contained in this Agreement, this Agreement shall control and govern in all respects.

**6. Prices:** Products will be sold to Dealer at the Dealer Prices published in the current GAL Price Guide and otherwise in accordance with the terms and conditions of this Agreement. GAL may implement price changes at any time during the term of this Agreement, and will endeavor to the best of its ability to provide thirty (30) days prior written notice thereof to Dealer.

**7. Delivery and Freight:** Shipping and other transport, transfer and delivery charges will be invoiced to the Dealer for all Products ordered from GAL at the prevailing rates available to GAL through common carriers. All orders are shipped from the point of manufacture. Shipping charges will be added to the Dealer's invoice. Orders will be shipped UPS Ground, Federal Express, or other acceptable common carrier unless other arrangements are made in advance and agreed to in writing by both the Dealer and GAL. As part of any rebate, discount or other incentive programs, GAL may at different times, and from time to time, at its sole discretion, offer reduced shipping rates and other incentives based upon Dealer meeting certain criteria.

**8. Dealer's Remedies:** If GAL, for any reason whatsoever, fails or is unable to deliver any Products ordered by the Dealer, the Dealer's sole and exclusive remedy shall be the recovery of the purchase price, if any, paid by the Dealer to GAL for such Products. GAL shall not incur any liability whatsoever for any delay in the delivery of any Products. In no event shall GAL be liable for any incidental, consequential or other damages arising out of any failure to deliver any Products to the Dealer or any delay in the delivery thereof.

**9. Payment Terms/Authorized Credit Checks:** Upon GAL approving Dealer's credit, GAL shall invoice the Dealer for the Products at the time of shipment. Dealer shall make payment on the terms described on the first page of this Agreement. In the event the Dealer fails to pay in accordance with such terms, the Dealer hereby agrees to pay a monthly service charge equal to the lesser of one and one-half percent (1.5%) or the maximum rate permitted under applicable law. In addition to the initial credit check conducted prior to entering this Agreement, Dealer authorizes GAL to run complete credit checks of Dealer at any time and from time to time during the term of this Agreement as GAL deems necessary or prudent in its sole discretion. Dealer agrees that it shall complete all necessary forms to authorize and otherwise to accommodate

KEA003103

# GWACS ARMORY LLC



such credit checks within ten (10) days following GAL's written request. Dealer further agrees to provide GAL with financial statements in such form as GAL may reasonably require at any time and from time to time for credit purposes.

**10. Sales and Marketing:** Dealer shall not advertise any Product for less than the Minimum Advertised Price ("MAP"). The MAP for each Product shall be as indicated in the most recent Price Guide published by GAL. The GAL Price Guide may be revised at any time and from time to time without notice. Advertising, for the purposes of this Agreement, shall be any presentation, offer, or solicitation for purposes of sale to the general public of GAL products by the Dealer, whether within or external to Dealer's place(s) of business. This shall include, but is not limited to: price lists, newspaper and magazine advertisements, catalogs, flyers, direct mailings, mass mailings, signs, billboards, and/or banners. These advertising standards also apply to promotions or advertising in conjunction with off premise events (*e.g.*, gun shows, auctions, flea markets, user groups, etc.) at or in which the Dealer participates for the purpose of selling GAL brand or distributed products. It is also understood that this Agreement covers any and all forms of electronic sales promotions to the general public to include, but not limited to, radio, television, facsimiles, electronic mail, Internet (including online auctions, user groups, gun shows, flea markets, etc.) websites, and other media. GAL may at different times, and from time to time, at its sole discretion, provide Dealer with merchandising assistance in the form of advertising programs and Product and sales training. Dealer agrees to fully utilize such assistance in carrying out GAL's merchandising policies.

**11. Use of Trademarks and Intellectual Property:** Dealer acknowledges GAL's exclusive right, title, and interest to its trademarks, trade names, trade-dress, service marks, patents and other intellectual property (collectively referred to as "Intellectual Property") belonging to GAL, and will not at any time, be responsible for any act or thing contesting or in any way impairing or tending to impair any part of GAL's rights to its Intellectual Property. Dealer is permitted to use the trademarks, service marks, brand identification and trade names to promote the sale of GAL products only in accordance with GAL's instructions. Dealer does not have the right to sublicense or otherwise designate the right to use any Intellectual Property belonging to GAL. If the Dealer wishes to advertise a GAL product in conjunction with its own products, a separate written Trademark License Agreement will be required.

**12. Compliance with Laws:** Dealer hereby covenants, warrants and represents as follows:

a) Dealer is duly organized, validly existing and in good standing under the laws of its place of organization.

b) Dealer has the power and authority to enter into this Agreement and to carry out its obligations hereunder.

c) No consent or approval is required from any governmental organization or other third party for the execution or performance of this Agreement, provided, however, that certain approvals may be needed for the execution or performance of definitive agreements that may be entered into pursuant hereto.

d) Dealer agrees to comply with any and all applicable laws and regulations, and shall require all of its employees, representatives and any other business associates retained in conjunction with the activities described in this Agreement to do likewise. Any such failure to effect compliance shall be a breach of this Agreement.

e) The sale and export of firearms, weapons and related products are heavily regulated by the United States Government. All weapon sales must be approved and authorized in writing by certain agencies and branches of government, including without limitation, the United States Congress, State Department (the "State Department") and Bureau of Alcohol, Tobacco and Firearms ("ATF"). Accordingly, this Agreement and any purchase order or other contract between the parties shall be expressly subject to, and conditioned and contingent upon, Dealer receiving all necessary approvals, authorizations and certifications from the State Department, ATF and all other government branches and agencies that regulate the manufacture, sale, distribution and export of weapons in or from the United States.

f) Dealer will not export GAL Products outside of the United States without prior express written permission from GAL and in conjunction with an approved Export License issued by the U. S. Department of State. United States law restricts the export or re-export of products to certain people, countries, and end users. Dealer agrees to comply with these laws and will not sell, or otherwise provide Products to anyone either in the United States or abroad in violation of these export restrictions, including without limitation, the U.S. Export Administration Regulations ("EAR"), International Traffic in Arms Regulations ("ITAR"), the Arms Export Control Act ("AECA"), the Export Administration Act ("EAA"), as implemented through the International Economic Emergency Powers Act), the Anti-Boycott Regulations and Guidelines issued under the Export Administration Act, as amended, Section 999 of the Internal Revenue Code ("Anti-Boycott Regulations"), and the Foreign Corrupt Practices Act ("FCPA"). Dealer further agrees not to sell, or otherwise provide products to anyone who does not agree to comply with export laws of the United States.

**13. Termination of this Agreement (without cause):** Either GAL or Dealer may terminate this Agreement in its entirety at any time, with or without cause, by giving written notice to the other party effective thirty (30) days after the date of receipt, provided, however, that in any event, Dealer is required to pay, fulfill and otherwise comply with any purchase orders regarding Products that would be shipped within ninety (90) days after the termination notice is received by GAL, regardless of whether such shipment actually occurs within said ninety (90) days, so long as GAL has commenced manufacturing said Products during said ninety (90) day period.

KEA003104

# GWACS ARMORY LLC



**14. Termination of this Agreement (for cause):** Notwithstanding anything herein to the contrary, GAL, at its sole discretion, may suspend or deny shipments of Products to the Dealer, and/or terminate this Agreement, for any of the following reasons:

a) Dealer's material breach of this Agreement;

b) Insolvency of the Dealer; filing of a voluntary petition in bankruptcy by Dealer; appointment of a receiver or a trustee for the Dealer; execution by the Dealer for the benefit of creditors; sale or transfer by operation of law or otherwise, to any third party, assets of the Dealer that are required for the conduct of its business;

c) Failure to pay the Dealer's obligations to GAL according to any credit terms granted by GAL; providing inaccurate or misleading financial information upon which GAL has relied in granting credit;

d) Submission by the Dealer of any false or fraudulent application or claim for reimbursement, warranty compensation or other discount or allowance under any GAL program;

e) Dealer's promoting, selling, or dealing in any products manufactured by other companies which, in any way infringes the GAL Intellectual Property or in any way erodes or diminishes the GAL brand;

f) Dealer's failure to comply with the GAL MTP guidelines;

g) If Dealer degrades or places in bad repute the name and reputation of GAL expressly or by virtue of its methods of handling and/or promoting the Products;

h) GAL determines that Dealer's credit is insufficient or inadequate;

i) Failure of Dealer for any reason to function in the ordinary course of business; or,

j) Conviction of Dealer, or a manager, partner, principal officer, owner, or major stockholder of Dealer for any violation of law tending, in the sole opinion of GAL, to affect adversely the operation or business of Dealer or the good name, goodwill, or reputation of GAL, products of GAL, or Dealer.

Termination of this Agreement, by either party, will not release the Dealer from the obligation to timely pay outstanding invoices to GAL, nor release the Dealer from performing any obligations required by this Agreement subsequent to termination.

GAL shall have no liability to Dealer by any reason of any termination or cancellation of this Agreement, including without limitation, liability for direct or indirect damages on account of loss of income arising from anticipated sales, compensation, or for expenditures, investments, leases or other commitments or for loss of goodwill or business opportunity or otherwise.

**15. Return of GAL Property:** At GAL's request, Dealer agrees to promptly return to GAL any and all product samples, sales and marketing materials, and other proprietary documents, manuals and information of or belonging to GAL, following the termination of this Agreement or for any other reason or purpose, in GAL's sole discretion. Upon any such request, Dealer further agrees to refrain from making or retaining any copies or extracts of such property or materials.

**16. Acceptance or Rejection of Products:** Dealer shall have thirty (30) days following delivery to reject all or part of any shipment because it contains nonconforming Products by providing written notice to GAL. Such written notice shall specifically identify which Products are nonconforming and why. A Return Merchandise Authorization (RMA) must be obtained from GAL prior to returning any Products. Dealer shall be entitled to a refund or credit for any nonconforming Products within fifteen (15) days after GAL has received the RMA and returned Products. Dealer's failure to notify GAL of any nonconforming Products within thirty (30) days receipt of the Products shall be deemed an acceptance of such Products.

**17. State of Emergency:** GAL reserves the right to suspend shipments without prior notice to Dealer in order to fulfill military or police orders during time of local or national emergency. Such suspension shall not constitute a breach under this Agreement. GAL apologizes for any inconvenience that this may cause and will make every effort to get Product to its valued dealers as soon as possible.

**18. Relationship of the Parties:** The relationship of the parties established by this Agreement is that of vendor and vendee, and all work and duties to be performed by the Dealer as contemplated by this Agreement shall be performed by it as an independent contractor. The full cost and responsibility for hiring, firing and compensating employees of the Dealer shall be borne by the Dealer. Nothing in this Agreement or otherwise shall be construed as constituting an appointment of the Dealer as an agent, legal representative, joint venturer, partner, employee or servant of GAL for any purpose whatsoever. The Dealer is not authorized to transact business, incur obligations, sell goods, solicit orders, or assign or create any obligation of any kind, express or implied, on behalf of GAL, or to bind it in any way whatsoever, or to make any contract, promise, warranty or representation on GAL's behalf with respect to Products sold by GAL or any other matter, or to accept any service of process upon GAL or receive any notice of any nature whatsoever on GAL's behalf.

**19. Limitation of Liability; Disclaimer of Warranties:** Under no circumstances will GAL be liable for any loss of profits or revenue by Dealer for any actions, advertising, sales, promotion, organization, business practices, or any other activity by GAL. GAL may offer or publish certain warranties or other agreements to retail customers or end-users of its Products at any time, and from time to time, in its sole discretion. Dealer acknowledges and agrees that it is not a retail customer or end user of GAL Products and, therefore, Dealer is not an intended beneficiary of or party to any such warranties

KEA003105

# GWACS ARMORY LLC



or agreements, except as expressly set forth herein or in a separate written agreement between the parties.

**20. Insurance:** Dealer must maintain comprehensive commercial general liability insurance, covering both personal injury and property damage, including "contractual" coverage for Dealer's indemnity obligations hereunder, and having limits of not less than $1,000,000 per occurrence and $2,000,000 aggregate liability per policy. Dealer shall also maintain employer's liability insurance, with minimum limits of $1,000,000 liability per occurrence. Each carrier providing any such insurance, or portion thereof, shall be licensed to do business in the jurisdiction where the Dealer is located, and unless otherwise agreed by GAL in writing, shall have a claims paying ability rating by Best's Guide of not less than "A Minus, VII" or better. At GAL's request, at any time and from time to time during the term hereof, Dealer shall provide GAL a current certificate of insurance demonstrating the coverage described above.

**21. Indemnification:** Under no circumstances shall GAL be liable for any act, omission, contract, debt or other obligation of any kind of the Dealer or any salesperson, employee, agent or other person acting for or on behalf of the Dealer. Dealer shall indemnify and hold GAL harmless from any and all claims, liabilities, losses, damages or expenses (including reasonable attorneys, fees and costs) arising directly or indirectly from, as a result of, or in connection with, the Dealer's operation of the Dealer's business. GAL shall indemnify and hold Dealer harmless from any and all claims, liabilities, losses, damages or expenses (including reasonable attorneys, fees and costs) arising directly or indirectly from, as a result of, or in connection with, GAL's operation of GAL's business. The terms of this indemnity shall survive the termination of this Agreement.

**22. Confidential Information:** As used in this Section, "Proprietary Information" means information developed by or for GAL which is not otherwise generally known in any industry in which GAL is or may become engaged and includes, but is not limited to, information developed by or for GAL, whether now owned or hereafter obtained, concerning plans, marketing and sales methods, materials, processes, procedures, devices utilized by GAL, prices, quotes, suppliers, manufacturers, customers with whom GAL deals (or organizations or other entities or persons associated with such customers), trade secrets and other confidential information of any type, together with all written, graphic and other materials relating to all or any part of the same. Except as authorized in writing by GAL, the Dealer shall not at any time, either during or after the term of this Agreement, disclose or use, directly or indirectly, any Proprietary Information of which the Dealer gains knowledge during or by reason of this Agreement and the Dealer shall retain all such information in trust in a fiduciary capacity for the sole use and benefit of GAL.

**23. Additional Terms and Conditions:**

a) <u>Entire Agreement; Modification</u>. This Agreement constitutes the entire agreement between the parties relating to the subject matter hereof and all prior agreements, correspondence and understandings of the parties (whether oral or written) are superseded hereby, it being the express intention of the parties that this Agreement shall serve as the complete and exclusive statement of the terms of their agreement together. No amendment, waiver or other modification to all or any portion of this Agreement or the rights and obligations of the parties hereunder shall be valid unless in writing and signed by the parties. Neither party has relied upon any statements, representations, or other communications that are not contained in this Agreement.

b) <u>Governing Law; Venue</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of Oklahoma, without application of any conflicts of law principles. In the event of any litigation involving this Agreement, all such matters will be resolved exclusively in the state or federal courts seated in Tulsa County, Oklahoma, and the Dealer consents to such venue and jurisdiction.

c) <u>Notices</u>. All notices required or permitted to be given under this Agreement shall be in writing and shall be considered to be given and received in all respects when (i) personally delivered; (ii) one (1) business day after sent by reputable overnight delivery service; (iii) same day if delivered by email to the dealers@gwacsarmory.com, including proof of delivery by electronic confirmation; or (iv) three (3) business days after being deposited in the United States mail, certified mail, postage prepaid, return receipt requested, addressed to the parties at their respective addresses set forth below, or to such other address as may be designated by like notice duly given.

d) <u>Severability</u>. The parties agree that if any provision of this Agreement is under any circumstances considered invalid or inoperative by any court of competent jurisdiction, such provision shall be deemed modified to the extent necessary to render it enforceable and the rights and obligations of the parties hereunder shall be construed and enforced accordingly, or, failing which, such provision shall be stricken and the remainder of this Agreement shall remain in full force and effect.

e) <u>Assignment</u>. This Agreement may not be transferred or assigned in whole or in part by operation of law or otherwise by the Dealer without the prior written consent of GAL. Upon thirty (30) days prior written notice to the Dealer, GAL may assign its rights, duties and obligations under this Agreement. Without written notice, GAL may assign its rights, duties and obligations under this Agreement to any parent, subsidiary or other affiliated corporation of GAL.

f) <u>Waiver</u>. Failure of either party at any time to require performance by the other party of any provision hereof shall not be deemed to be a continuing waiver of that provision, or a waiver of its rights under any other provision of this Agreement, regardless of whether such provision is of the same or a similar nature.

KEA003106

**U.S. Department of Justice**
Bureau of Alcohol, Tobacco, Firearms and Explosives

## Federal Firearms License
*(18 U.S.C. Chapter 44)*

In accordance with the provisions of Title I, Gun Control Act of 1968, and the regulations issued thereunder (27 CFR Part 478), you are licensed to engage in the business specified in this license, within the limitations of Chapter 44, Title 18, United States Code, and the regulations issued thereunder, until the expiration date shown. See "WARNINGS" and "NOTICES" on reverse.

Direct ATF Correspondence To
ATF - Chief, FFLC
244 Needy Road
Martinsburg, WV 25405-9431

Chief, Federal Firearms Licensing Center (FFLC)

**5-73-143-07-4F-03657**

**June 1, 2014**

Name
**GWACS ARMORY LLC**

Premises Address (Changes? Notify the FFLC at least 10 days before the move.)
**907 S DETROIT AVE**
**TULSA, OK 74120-**

Type of License
**07-MANUFACTURER OF FIREARMS OTHER THAN DESTRUCTIVE DEVICES**

Purchasing Certification Statement

The licensee named above shall use a copy of this license to assist a transferor of firearms to verify the identity and the licensee status of the licensee as provided by 27 CFR Part 478. The signature on each copy must be an original signature. A faxed, scanned or e-mailed copy of the license with a signature intended to be an original signature is acceptable. The signature on this copy of the Federal Firearms Licensee (FFL) or a responsible person of the FFL certify that this is a true copy of a license issued to the licensee named above to engage in the business specified above under "Type of License."

Mailing Address (Changes? Notify the FFLC of any changes.)
**GWACS ARMORY LLC**
**907 S DETROIT AVE**
**TULSA, OK 74120**

Licensee/Responsible Person Signature
Position/Title    President

Printed Name    **JUDSON GUDGEL**
Date    5-29-14

ATF Form 8 (5310.11)
Revised September 2008

Previous Edition is Obsolete

---

**Federal Firearms License (FFL) Customer Service Information**

Federal Firearms Licensing Center (FFLC)
244 Needy Road
Martinsburg, WV 25405-9431

Toll-free Telephone Number:   (866) 662-2750
Toll-free Fax Number:   (866) 257-2749
E-mail: NLC@atf.gov

ATF Homepage: www.atf.gov
FFL eZ Check: www.atfonline.gov/fflezcheck

**Change of Address** *(27 CFR 478.52)*. Licensees may during the term of their current license remove their business or activity to a new location at which they intend regularly to carry on such business or activity by filing an Application for an Amended Federal Firearms License, ATF Form 5300.38, in duplicate, not less than 30 days prior to such removal with the Chief, Federal Firearms Licensing Center. The application must be executed under the penalties of perjury and penalties imposed by 18 U.S.C 924. The application shall be accompanied by the licensee's original license. The license will be valid for the remainder of the term of the original license. **(The Chief, FFLC, shall, if the applicant is not qualified, refer the application for amended license to the Director of Industry Operations for denial in accordance with § 478.71.)**

**Right of Succession** *(27 CFR 478.56)*. (a) Certain persons other than the licensee may secure the right to carry on the same firearms or ammunition business at the same address shown on, and for the remainder of the term of, a current license. Such persons are: (1) The surviving spouse or child, or executor, administrator, or other legal representative of a deceased licensee; and (2) A receiver or trustee in bankruptcy, or an assignee for benefit of creditors. (b) In order to secure the right provided by this section, the person or persons continuing the business shall furnish the license for that business for endorsement of such succession to the Chief, FFLC, within 30 days from the date on which the successor begins to carry on the business.

*(Continued on reverse side)*

Cut Here ✂----------------



**GWACS ARMORY, LLC**

**Shel Jones**
US Army LTC Retired

907 South Detroit Ave.
Sixth Floor
Tulsa, OK 74120
202-595-4683 - Mobile
918-794-5670 - Office

**POWER SERIES**

sjones@gwacsarmory.com

FFL Newsletter - Electronic Version Available
Sign-Up Today!

FFLs interested in receiving the electronic version of the FFL Newsletter, along with occasional additional information, should submit name, FFL number, and e-mail address to: FFLNewsletter@atf.gov.

The electronic FFL Newsletter will enable ATF to communicate information to licensees on a periodic basis.

KEA003107

# GWACS Armory LLC



## 2013 Dealer Pricing Sheet

|  | MSRP | MAP | Dealer |
|---|---|---|---|
| CAV15 MKII Lower Receiver | $195 | $185.25 | $136.50 |
| CAV15 MKII Lower Receiver Populated MILSPEC Trigger | $285 | $261.25 | $216 |
| GWACS CAV15 A1/A2 Solid Butt Plate | $29.95 | $28.45 | $21 |

Dealer pricing assumes an initial purchase of 5 or more.

Lower receiver comes with take down pins, but plate, and 5/64th roll pin.

Lower receiver populated includes lower receiver as stated above with carbine buffer and spring, Buffer Detent and MILSPEC trigger group installed and tested.

MAP WILL BE ENFORCED

Current Colors, Call for availability.
Black (Magpul Match)
Coyote Tan
Flat Dark Earth (Magpul Match)
OD Green (Magpul Match)
Zombie Green

KEA003108

# CAV-15 MKII Receiver

# Assembly Instructions:

**Notes to Gunsmiths and Armorers:**

* **Takedown Pins**: Use the supplied speed pins to secure your upper receiver to your CAV-15 lower receiver. *If you lose or misplace the supplied pins, replacement pins can be ordered from GWACS Armory at a cost of $5.00 a piece.

* The CAV-15 MKII lower receiver uses a ***carbine buffer and spring***.

* The CAV-15 MKII lower receiver uses standard mil-spec fire control pins. Though the area of the receiver that accepts the hammer pin is wider than aluminum AR15 receivers, it uses a standard fire control pins. Simply center the pin in the hole, and ensure it catches on the J-pin in the hammer.

**\* Check all pinholes before you Assemble gun!**

*Parts vary slightly between manufacturers and some parts may fit tighter than others, especially the safety selector detent.*

**\*** Safety selector detent pin/spring load from the top. The spring may need to be trimmed for proper fit. The top of the detent should sit at 0.20" (+/-0.020) from the base of the selector hole.

**\*** Bolt hold open spring will need to be trimmed 1 to 1½ coils for the last round hold-open to function with older/weak magazines.

**\*** The 5/64th roll pin attached to this sheet is to capture your buffer detent pin and spring.

**CAV-15 Technical Notes:**

*If the Safety Selector Detent will not fit into the hole for the selector spring and detent, this is usually because the base of the detent itself is too wide. The base can be cut or ground off to fit.

*Selector spring and detent load from the top. Selector then slides over. **Note:** Selector does not need to ever be removed. Fire control parts can be installed and removed with it in place. Before inserting selector check spring tension and trim the spring if needed. The safety can be removed by placing half way between safe and fire and pushing out.

KEA003109

\* The fit of the take down pins on the CAV-15 is intentionally tight. This is intended to keep the upper secured to the lower. The pins may require the use of a rubber hammer and punch to remove. The fit will wear in over time the more the rifle is disassembled for maintenance.

**·If your magazines do not drop free from your lower, and you have verified that they are good magazines follow these instructions:**

1. Separate the upper from the lower.
2. Looking down from the top into the lower, look to see where the magazine is dragging with a magazine inserted.
3. Use a safe edge file to remove material from the mag well in the tight areas until the magazine drops free.
4. Check the fit frequently so you do not remove too much material.

\*If the buffer detent roll pin does not line up properly when hammed in to the lower, try inserting it from the opposite side to remedy the problem.

\*If the buffer detent does not sit high enough to capture the buffer, it can be fixed by relieving material from the shoulder of the detent to allow it to sit higher.

### *CAV-15 .45 ACP Technical Notes*

### *You will need the following parts to build a .45 ACP CAV-15 Carbine:*

1. Complete CAV-15 MKII Lower
2. Olympic Arms .45 ACP Upper
3. Hahn Precision M3 Grease Gun Magazine Block
4. Heavy 8oz+ buffer (Hahn Precision or Slash)
5. M3 Grease Gun Magazines

***Failure to use the heavy 8oz+ buffer will result in damage to the lower.***

### *M3 Grease Gun Magazine Fit:*

The CAV-15 MKII has the center of the magazine well wider to be capable of accepting grease gun mags. This feature was designed based on some USGI surplus mags it had at the time (2003). Recently new batches of magazines have surfaced and there are manufacturers making new M3 Grease Gun Magazines. These magazines appear to be dimensionally different than the older USGIs we have. Users have started to encounter problems with these magazines in the CAV-15 lower.
If your M3 Grease Gun magazines are fitting too tightly into your lower, do not force them in. Doing so risks damaging the lower. Fortunately, the CAV-15 receivers' construction lends itself to end user fitting and modification.

KEA003110

The area that is too tight is usually the very front of the mag well where it is narrow for .223/5.56mm magazines. Follow the steps below to give M3 Grease Gun Magazines a better fit.

1.Separate the upper from the lower.
2.Looking down from the top into the lower, look to see where the magazine is dragging with a magazine inserted (do not insert the mag all the way if it is tight.)
3. Use a safe edge file to remove material from the mag well until the magazine moves in and out freely.
4. Check the fit frequently so you do not remove too much material.

## CAV-15 MKII Armorer Notes

### Differences between CAV-15 MKII Receiver and standard aluminum receiver.

·Selector spring and detent load from the top. Selector then slides over.
**Note:** Selector does not need to ever be removed. Fire control parts can be installed and removed with it in place. Before inserting selector, check spring tension and trim spring if needed. Safety can be removed by placing half way between safe and fire and pushing out.
·Safety Detent may need sizing
·Hammer pin will be recessed on both sides of hole. Insert until "J-Pin" engages center notch.
·Bolt catch may need spring trimmed to ensure proper tension.
·Take down pins are intentionally tight. Pins insert left to right into the receiver and are not captured in the receiver. Long pin in front, short pin in rear.
·Calibers larger than .223 will require 3H or heavier buffers. Unlocked blowback pistol caliber uppers must use appropriate weights (9mm 5.5oz, .45 8 oz. Or heavier to avoid damaging the lower)
·Buffer Detent is held in by 5/64thx1" Roll Pin (Buffer Detent Assembly is not needed for function of the rifle)

KEA003111

**<u>Parts Needed to Complete Lower:</u>**
1 Carbine buffer and spring
2 Hammer/Trigger pins
1 Hammer with spring
1 Trigger with spring
1 Disconnector with spring
1 Bolt catch with roll pin
1 Bolt catch detent with spring
1 Safety selector
1 Selector detent with spring
1 Buffer detent with spring
1 5/64thx1" Roll Pin
1 Mag Catch with button and spring
1 Long ¼" Speed Pin
1 Short ¼" Speed Pin

**<u>Tools for assembly and Armorer level repair:</u>**

Roll Pin Driver 5/64"
Roll Pin Holder 5/64"
Hammer
Razor Knife
Small file (safe edge)
Diagonal pliers
#24 Drill bit (bolt catch detent)
#27 Drill bit (safety detent)
¼" Reamer (take down pins and buffer detent)
5/64" Drill bit (buffer detent cross pin)
1" ½ Round file
#40 Aircraft drill (bolt catch cross pin)
Receiver Construction
·Nylon 6 30% Glass filled
·Linear vibration welded

**<u>Disclaimer:</u>**

Possession and/or ownership of firearms is subject to various federal, state, and local restrictions, laws and regulations. Buying, carrying, or using a firearm without compliance with local, state, and federal law is a crime. It is your legal responsibility to learn and obey the laws that apply in your area. The buyer has complete responsibility to ensure he/she is in full compliance with all applicable local, state and federal

law regarding possession of firearms.  GWACS Armory LLC reserves the right to refuse the sale of any firearm to anyone who may be in violation of the laws of the State of Oklahoma and the United States of America pertaining to the purchase of a firearm. This includes, but is not limited to, "straw purchases", which is a purchase or the attempt to purchase by an individual for another person knowing they are not permitted to possess a firearm.  Further, the buyer assumes any and all responsibility to insure any firearm purchased is handled safely.  OUR PRODUCTS ARE INTENDED FOR ADULT USE ONLY. GWACS ARMORY LLC SHALL IN NO WAY BE LIABLE FOR ANY SPECIAL, INDIRECT, PUNITIVE OR CONSEQUENTIAL DAMAGES RESULTING FROM ANY USE OR MISUSE OF ANY ITEM OR PRODUCT PURCHASED OR OBTAIND FROM THE GWACS ARMORY LLC.

KEA003113

# GWACS ARMORY LLC



# Manufacturer's Warranty

GWACS Armory LLC CAV15 MKII lower receivers come with a limited lifetime warranty against any manufacturing defects, subject to the terms listed below:

1.   Any GWACS Armory CAV15 MKII found to have a defect in manufacturing will be replaced at no cost to the buyer within one year of the date of purchase.  Buyer must provide proof of purchase at the time any claim under this provision of the warranty is made.  After one year, GWACS Armory will only replace a CAV15 MKII lower receiver based on the damage warranty below.

2.  After one year, GWACS Armory will replace any damaged GWACS Armory CAV15 MKII lower receiver (stripped receivers only – receiver with no buffer, buffer spring, or trigger assembly group) for $30.00 (thirty dollars) plus shipping.  When submitting a claim under the provision of this warranty, claimant must send to GWACS Armory the *stripped* damaged lower receiver along with the payment of $30.00 (thirty dollars).  Once verified, GWACS Armory will return a new *stripped* GWACS Armory CAV15 MKII lower receiver to the claimant, COD.

3.  GWACS Armory will honor the damage warranty listed in paragraph 2 above on any and all previously produced CAV15 MKII lower receivers, whether produced by GWACS Armory or any previous manufacture of CAV15 MKII lower receivers.  Claimant must abide by the requirements in paragraph 2 in order to submit a claim pursuant to this paragraph.  Further, a claim submitted under this provision will be considered the transfer of a firearm, requiring the claimant to successfully pass any background check required by local, state, or federal government, as well as complying with any local, state or federal laws governing the transfer of firearms.

4.  This warranty does not cover any unauthorized or illegal modifications made to any CAV15 MKII lower receiver.  It further does not cover any add-ons, attachments, upgrades, or any other part or accessory that is added by the buyer/owner of a CAV15 MKII lower receiver.

5.  When submitting a claim under this warranty, claimant must send the lower receiver along with any required documentation and any necessary payment to:  GWACS Armory LLC, ATTN: Warranty, 907 S. Detroit Ave., 6th Floor, Tulsa, OK 74120.

KEA003114

**From:** Tim McBride <timmcbride@gmail.com>
**Date:** October 8, 2022 at 7:46:56 PM MST
**To:** russell@kearms.com
**Subject: From Tim. Fwd: Cav15 dealer inquiry**

---------- Forwarded message ----------
From: **Shel Jones GWACS Dealer** <dealer@gwacsarmory.com>
Date: Wednesday, April 17, 2013
Subject: Cav15 dealer inquiry
To: Tim McBride <timmcbride@gmail.com>

I would like to offer you a chance to get in as  a dealer with GWACS Armory
with no initial buy in requirement.  I am offering this to several dealers
around the country that have contacted us from areas that we don't currently
have any coverage.

Attached is our dealer pricing sheet.   Go to our web page
www.gwacsarmory.com and create an account.  Once you have that complete
email us back at sales@gwacsarmory.com and we will waive you to dealer III
level pricing.

This week is a an opportunity to gain even greater margins with our products
as we have an additional blanket discount of 10% as part of our tax week
savings event.

Hope you can take advantage of this.  If you have any questions feel free to
contact me.

Shel Jones

GWACS Armory
Cell 202-595-4683

1

KEA003115

-----Original Message-----
From: Tim McBride [mailto:timmcbride@gmail.com]
Sent: Thursday, August 23, 2012 5:48 PM
To: dealer@gwacsarmory.com
Subject: Cav15 dealer inquiry

Interested in seeing if your company was setting up with dealers yet?

Regards,
Tim McBride
owner, EVC-3

KEA003116

# GWACS Armory LLC



## CONFIDENTIAL 2013 Dealer Pricing Sheet April 2013

Dealer level is established with initial minimum Purchase as outlined in Table 1.  The Dealer level is then maintained with gross annual purchases, which includes the initial order during year one.   If the account is stagnant for 12 months an initial purchase has to be made to gain that level.

| Dealer Level | Initial Order Requirements | |
| --- | --- | --- |
| | Intitial Purchase | Gross Annual Purchases |
| Dealer I | $300.00 | $600.00 |
| Dealer II | $600.00 | $1,200.00 |
| Dealer III | $900.00 | $1,800.00 |
| Dealer IV | $12,500.00 | $25,000.00 |

**Table 1 Initial purchase requirements for Dealer levels**

| Level | Dealer Pricing Stripped CAV15 MKII Lower | |
| --- | --- | --- |
| | Typical Quantities | Price |
| Retail | 1 | $195.00 |
| Dealer I | 12-23 | $156.00 |
| Dealer II | 24-47 | $146.25 |
| Dealer III | 48-99 | $136.50 |
| Dealer IV | 100-999 | $126.75 |

**Table 2 Stripped CAV 15 Lower Receiver Pricing**

Stripped Lower receiver comes with take down pins, but plate, and 5/64[th] roll pin.

| LEVEL | Dealer Pricing Fully Populated CAV15 MKII Lower | |
| --- | --- | --- |
| | Typical Quantities | Price |
| Retail | 1 | $295.00 |
| Dealer I | 12-23 | $241.90 |
| Dealer II | 24-47 | $233.05 |
| Dealer III | 48-99 | $221.25 |
| Dealer IV | 100-999 | $212.40 |

**Table 3 Fully Populated CAV 15 Lower Receiver Pricing**

 Fully populated lower receiver includes lower receiver as stated above with carbine buffer and spring, Buffer Detent and MILSPEC trigger group installed and tested.

Minimum Advertised Pricing (MAP) WILL BE ENFORCED.  You cannot advertise and sell for less than 5% off MSRP

Current Colors, Call for availability.  Black (Magpul Match), Coyote Tan, Flat Dark Earth (Magpul Match), OD Green (Magpul Match), Zombie Green

Accessories:

# GWACS Armory LLC





GWACS Armory Carbine Buffer and Buffer Spring.  Standard Carbine 3.0oz Buffer for AR/M16 type Rifles. Features a quality military grade CNC construction with red anodized finish.  Includes GWACS Armory Logo.  Uses 3.0oz of Conventional steel weights and includes a Mil-Spec Carbine length buffer spring.  Manufactured and designed by GWACS Armory LLC.  Life time guarantee!

INCLUDES BUFFER AND SPRING.

| Dealer Level | Price |
|---|---|
| MSRP | $23.95 |
| Dealer I | $19.16 |
| Dealer II | $17.96 |
| Dealer III | $16.77 |
| Dealer IV | $15.57 |

KEA003118