# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| GWACS ARMORY, LLC, an Oklahoma limited liability company, **Plaintiff,** v. KE ARMS, LLC RUSSEL PHAGAN, SINISTRAL SHOOTING TECHNOLOGIES, LLC BROWNELLS, INC. and SHAWN NEALON, Defendants, and KE ARMS, LLC, **Plaintiff,** v. GWACS ARMORY, LLC, GWACS DEFENSE INCORPORATED, JUD GUDGEL, RUSSEL ANDERSON, DOES I through X, and ROE CORPORATIONS I through X, Defendants. | Case No. 20-CV-0341-CVE-SH **BASE FILE** Consolidated with: Case No. 21-CV-0107-CVE-SH |

### PLAINTIFF'S RESPONSE AND OBJECTION TO
### DEFENDANTS' MOTION FOR SPOLIATION SANCTIONS

**COMES NOW**, Plaintiff, GWACS Armory, LLC ("Armory"), by and through its attorneys of record, James E. Weger and Tadd J.P. Bogan of the law firm of Jones, Gotcher & Bogan, P.C., and for its response and objection to Defendants' Motion for Spoliation Sanctions ("Defendants' Motion") [Dkt. # 177], states as follows:

### INTRODUCTION

Defendants' Motion falsely claims Armory withheld evidence requested in discovery. KE Arms, LLC ("KEA") requested Armory produce <u>internal</u> communications between Armory and Shel Jones ("Jones") from 2016 to present concerning the trade secrets and proprietary information at issue in this case.[1] The emails at issue here, attached to the Supplemental Declaration of Russell Phagan [Dkt. # 179] (the "Phagan's Declaration"), were not responsive to the document requests served by KEA. The emails attached to Phagan's Declaration are between Jones and third parties, not Jones and Armory.

Further, the emails attached to Phagan's Declaration did not disclose the trade secrets or proprietary information at issue in this case. Defendants' discovery specifically requested communications concerning Armory's "trade secrets" referenced in paragraphs 59-67 of the Complaint [Dkt. # 2] or "proprietary information" identified in response to Interrogatory No. 8. Armory's Complaint, at paragraphs 59-67, alleged in pertinent part, "KEA and Phagan developed the KEA Polymer Lower knowingly using Plaintiff's IP and trade secrets…", "KEA and Phagan stole, misappropriated and used Plaintiff's financial, business, scientific, technical, economic and engineering information… to develop the KEA Polymer Lower", and "KEA and Phagan obtained Plaintiff's trade secrets through information disclosed pursuant to the KEA NDA, as well as from files and information unlawfully obtained from Nealon in 2016". (*See* Complaint [Dkt. #2] at pp. 9 -10). Armory's response to Interrogatory No. 8 states, "Armory disclosed the condition of the molds; financial information of Armory; that Armory was seeking investors for continued manufacturing and development; total CAV-15 MKII lower sales volume; CAV-15 MKII sales following InRange videos; its intent to use Marks MKIII and MKIV for future CAV-15 models;

---

[1] *See* Dkt. #177 at pp. 5-6, ¶¶ 1 & 3; Dkt. #178-1 at pp. 4 (¶2), p.8 (¶ 16 & Request No. 60); and Dkt. #178-4 at p. 6 (¶2), & p. 9 (¶16 and Request No. 60).

financial projections for future CAV-15 production and sales; drawings/renderings of the CAV-15; the MKIII CAD renderings and functionality improvements to include several features that were included in the KEA polymer receiver; and the MKIV adjustable stock CAD renderings and functionality." (*See* Response to Interrogatory No. 8 attached hereto as Exhibit "1") Because the emails supporting Defendants' Motion were not requested by KEA, the motion for spoliation sanctions must be denied. Further, assuming arguendo the emails at issue in Defendants' Motion had been requested, the emails do not contain the trade secrets or proprietary information at issue in this case. Therefore, Defendants' requested sanctions are not appropriate.

Defendants' Motion attempts to characterize Armory's failure to produce the emails at issue as an intentional omission or concealment. Defendants' Motion alleges Armory "… cherry-picked Mr. Jones' communications while concealing others." Contrary to Defendants' claim, the emails Armory previously produced from Jones related to Defendants' specific requests, including communications responsive to Request Nos. 63, 64, 71 & 77. For example, KEA's Interrogatory No. 23 requested Armory identify each person to whom Armory disclosed the 2015 & 2018 Investment Packets. (*See* Armory's Amended Responses to Defendant/Counter-Plaintiff [KEA's] Second Set of Interrogatories, attached hereto as Exhibit "2"). Request for Production Nos. 63 & 64 requested communications concerning Armory's Investment Packets, Request No. 71 requested copies of all non-disclosure agreements, and Request No. 77 requested documents evidencing Armory's efforts to protect its CAV-15 trade secrets. (*See* Dkt. #178-1). Because Armory entered into non-disclosure agreements with Oleg Volk, Gabe Suarez, and Jeff Petty, and shared the Investment Packets (containing trade secrets and proprietary information) with those individuals, Armory produced those non-disclosure agreements and the communications relating thereto. Armory was unaware of the communications attached to Phagan's Declaration because those

3

communications were not requested. Jones did not communicate internally using the "sales@gwacsarmory.com" for "dealer@gwacsarmory.com" email addresses, the source of the emails attached to Phagan's Declaration, so those email addresses were not searched for Jones' internal communications. (*See* Declaration of Shel Jones, Ex. 3, at ¶ 4) Nonetheless, as stated above, the information contained in the emails relied upon in Defendants' Motion are neither the trade secrets nor the proprietary information at issue in this case. Further, even if the responsive emails were requested or were relevant in this case, Defendants have not been prejudiced by the same not being produced.

## FACTUAL BACKGROUND

Armory did not identify Kenneth King, Timothy McBride, Angus Anderson, MKO Firearms, LLC, Mark Blankenau, Greg Bowling, Mike F. Di, Nathaniel Hall, or Nate Henry as potential witnesses in this case because Armory was unaware of their existence, and they do not have information relevant to the claims and defenses in this case. (*See* Dec. of Jones, Ex. 3, at ¶ 14) The emails in question occurred between 2012 – 2018, and the information disclosed therein was neither the trade secrets nor the proprietary information that are at issue in this case. Nonetheless, none of the emails discussed below were requested in discovery.

1. **Kenneth King**. Mr. King was sent a photo of the inside of a CAV-15 MKII production lower. Contrary to Defendants' argument, the ribbing in the CAV-15 MKII production model is not the same ribbing as used in the KP-15. The ribbing for the KP-15 was taken from the CAV-15 CAD files. Defendants misappropriated the ribbing design, which only exists in the CAV-15 CAD files Armory purchased from Russell Phagan ("Phagan") and Sinistral Shooting Technologies, LLC ("SST"). It is disingenuous for Defendants to argue that Armory disclosure of the internal rib structure of the production model of the CAV-15 MKII is somehow a disclosure

of the internal rib structure misappropriated for the KP-15. Defendants are well aware that the ribbing at issue exists only in the CAV-15 CAD files.[2] Defendants' Motion further appears to argue that Mr. King had the idea to add a QD sling attachment to the CAV-15 based upon Mr. King suggesting the same to Jones in an email on May 14, 2018. However, the 2015 Investment Executive Summary (the "2015 Investment Packet") attached to Armory's Motion for Summary Judgment [Dkt. #143] as Exhibit 12 [Dkt. 143-12], clearly shows Armory had added a QD sling socket years before the suggestion was made by Mr. King in 2018. (*See* Dec. of Jones, Ex. 3, at ¶ 5)

2.  **Timothy McBride**.  Armory emailed Mr. McBride on January 15, 2013 and April 17, 2013. The only thing these emails show is that Armory disclosed dealer pricing to a firearms dealer wanting to sell CAV-15 lower receivers. The pricing in the dealer packet sent to McBride in 2013 is different than the pricing contained in the 2015 Investment Packet and the 2018 Financing Executive Summary (the "2018 Investment Packet") Armory provided to KEA, Phagan, and Brownells. (*See* Dkt. #143-11 & 143-12). (*See* Dec. of Jones, Ex. 3, at ¶ 6) Further, the dealer pricing provided is marked as "confidential" and the Terms and Conditions provided therewith require confidentiality. Nonetheless, the information provided to McBride did not contain the cost of materials, the cost of producing lowers, the volume of sales, sales projections, Armory's market weaknesses, or any of the other information used by Defendants in this case. Further, Defendants knew of and had contact with McBride well before filing Defendants' Motion. According to McBride, he worked for KEA from July through October of 2020, worked on the KP-15 project, and even took part in InRange's videos.[3] Notably, it was Defendants who failed to disclose McBride's knowledge and information in discovery. In fact, Defendants have known

---

[2] See Dkt. # 78 at pp. 9-10; 142 at pp. 12-13; 143 at p. 19; and 144 at pp. 9-10.
[3] See Dkt. # 180

5

about McBride since at least November 9, 2021, when Defendants provided Defendants'/Counter-Plaintiff's 6th Supplemental Disclosures. (*See* Defendants'/Counter-Plaintiff's 6th Supplemental Disclosures attached hereto as Exhibit "4" and Dkt. #82-11). Defendants' disclosures provided only McBride's mailing address and provided only a generic description of his anticipated testimony. When counsel for Armory asked counsel for Defendants what information they possessed regarding McBride, counsel stated in pertinent part, "… it is our understanding that Alisha Swindle, Brad Pace, and Tim McBride are all people who worked at both Cavalry Arms Corporation and KEA. We have not made contact with these persons and do not have phone numbers yet." (*See* letter from Alex Calaway dated February 16, 2022, attached hereto as Exhibit "5") Counsel for Armory responded to the aforementioned letter on February 21, 2022, and asked what information Defendants believed Mr. McBride possesses, and if he was part of the internal design team at KEA. (*See* letter dated February 21, 2022, attached hereto as Exhibit "6") Armory never received the information requested from Defendants, and it was not until Defendants' Motion that Armory learned Mr. McBride worked at KEA during the KP-15 prototyping (development) phase and that he allegedly received a copy of the CAV-15 CAD files from Shawn Nealon ("Nealon"). Defendants are all represented by the same counsel, Nealon allegedly provided McBride with a copy of the CAV-15 CAD files, and Defendants never disclosed that information to Armory until they filed Defendants' Motion after the close of discovery. It is disingenuous for Defendants to lodge such a claim against Armory relating to a former employee with whom they have significant contracts and whom they failed to identify as someone who they allege received the CAV-15 CAD files.

    3.    **Angus Anderson**.    Again, the internal structure of the production CAV-15 MKII is not at issue in this case. The trade secret KEA misappropriated was the internal ribbing

used in the KP-15, which only exists on the CAV-15 CAD files. Further, the information provided to Mr. Anderson, that 1.5 inches can be cutoff and 3 inches of buffer stop, is not exact measurements. In fact, neither of the foregoing are precise specifications of the CAV-15. (*See* Dec. of Jones, Ex. 3, at ¶ 7) Further, Mr. Anderson could have discovered the information Armory provided if he had cut his lower receiver in half.

4. **MKO Firearms, LLC**. Defendants' Motion claims Armory's statement, "0.135 inch thickness on the pistol grip and most other areas…" is a disclosure of a trade secret. However, 0.135 is not the actual thickness of the CAV-15 pistol grip, and thicknesses of the lower vary. None of the wall thicknesses of the CAV-15 are .135 inches thick. Frankly, Defendants' arguments regarding these measurements demonstrates that they lack independent knowledge of the CAV-15 specifications without referencing Armory's CAD files. Further, MKO Firearms, LLC also asked to have Armory's CAD drawings, and those drawings were not provided to MKO Firearms, LLC by Armory. The CAD drawings were not provided because those drawings are trade secrets and contain proprietary information. (*See* Dec. of Jones, Ex. 3, at ¶ 8)

5. **Mark Blankenau**. Mr. Blankenau was told by Armory that he could use Nylon 6 20% glass fill to reduce the gap between the upper and lower receivers. Armory does not contend that the fact the CAV-15 was made of Nylon 6 was public knowledge. However, what was not public knowledge was the amount of glass fill, or the type of glass fill in the polymer used by Armory. Notably, as Phagan testified in his deposition, the CAV-15 is not made of 20% glass filled Nylon 6, and Armory tell did not tell Blankenau whether the glass was long glass or short glass. (*See* Dec. of Jones, Ex. 3, at ¶ 9)

6. **Greg Bowling**. The only information provided to Mr. Bowling was after this lawsuit was filed and Mr. Bowling was told Armory lacked the inventory for Armory to continue

7

to honor the lifetime warranty for CAV-15 lower receivers to replace two Saber Defense lowers produced by Cavalry Arms Corp. (*See* Dec. of Jones, Ex. 3, at ¶ 10)

1. **Mike F. Di**. On or about May 16, 2012, Jones did a phone interview for the 80spodcastchannel with "DUDEJERKY" regarding the CAV-15 and Armory's purchase of the mold, IP and production equipment to produce the CAV-15. Jones did not disclose trade secrets or proprietary information during the interview. In fact, Jones was specifically asked how long it took to mold a CAV-15 lower receiver and Jones did not provide that information. Further, this interview occurred in 2012, which, like the mail to Mr. McBride occurred outside of the timeframe specified in KEA's requests for documents. (*See* Dec. of Jones, Ex. 3, at ¶ 11)

7. **Nathaniel Hall**. On September 6, 2017, Mr. Hall emailed Armory and asked when they expected to have Flat Dark Earth a/k/a FDE and OD green colored lower receivers back in stock and if they had any plans for future upgrades. Armory responded stating they hoped to have the FDE color back in stock in the next month and that the next generation lower (referencing the CAV-15 MKIV) would have an adjustable length and multiple QD sockets. (*See* Dkt. # 179-8) First, the lower receiver Defendants copied is the CAV-15 MKIII, which does not have an adjustable stock/length and does not have multiple QD sockets. The CAV-15 MKIII design has one QD socket, and Armory did not disclose the location of the QD socket. Jones was referring to the CAV-15 MKIV, as demonstrated by the fact he referenced the adjustable length/buttstock. Defendants not only incorporated a QD socket into the KP-15, the QD socket on the KP-15 is in the same location as the QD socket shown in the 2015 & 2018 Investment Packets. ((*See* Dec. of Jones, Ex. 3, at ¶ 12, and Dkt. 143-11 at pp. 5, 6, 15 & 16)

8. **Nate Henry**. Mr. Henry asked the temperature limit for the CAV-15 because he wanted to paint his CAV-15 lower receiver using a resin that requires curing for an hour at 300

degrees. (*See* Dkt. # 179-9) Defendants' Motion claims Armory disclosed the manufacturing temperature for the CAV-15, and thus disclosed information about the manufacturing process. Defendants' description is inaccurate and misstates what was disclosed to Mr. Henry. First, 425 degrees is not the melting point for the lower. Second, Armory simply disclosed that temperatures of 425 degrees would begin to impact the lower so that its customer would know that curing the paint at 300 degrees would not be detrimental to the product. (*See* Dec. of Jones, Ex. 3, at ¶ 13)

## ARGUMENTS & AUTHORITIES

### I.     The Standard for Spoliation.

Pursuant to Rule 37 of the Federal Rules of Civil Procedure,

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information used in the litigation may:
>
>   (A)     presume that the lost information was unfavorable to the party;
>
>   (B)     instruct the jury that it may or must presume the information was unfavorable to the party; or
>
>   (C)     dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e). The electronic information which is the subject of Defendants' Motion has neither been lost nor destroyed. It was not requested. Further, as acknowledged by Defendants, spoliation is the intentional destruction or concealment of evidence. Armory did not destroy, or intentionally or in bad faith conceal, any evidence in this case.

9

A finding of bad faith is required for dismissal to be a proper spoliation sanction. *See Leon v. IDX Systems Corp.*, 464 F.3d 951, 959 (9th Cir. 2006). Similarly, "[w]here a movant seeks to remedy the alleged spoliation with an adverse inference that the destroyed evidence would have been unfavorable to the person responsible for its destruction, the movant 'must also prove bad faith.'" (See *Loyd v. Salazar*, 2021 WL 3042663 (W.D. Okla. 2021) (unpublished opinion) citing *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1407 (10th Cir. 1997). Citing *Morris v. Union Pacific Road*, 373 F.3d 896 (8th Cir. 2004), the 10th Circuit Court of Appeals stated, "[a]n adverse inference jury instruction is a particularly powerful sanction because it 'brands one party as a bad actor and necessarily opens the door to a certain degree of speculation by the jury, which is admonished that it may infer the presence of damaging information in the unknown contents of a [destroyed record]'." *Henning v. Union Pacific Railroad Co.*, 530 F.3d 1206, 1219 (10th Cir. 2008). In *Morris* (*supra*), the 8th Circuit stated, "[a]s the district court in this case put it colloquially, it's like cow crap; the more you step in it, the more it stinks.'" *Morris v. Union Pacific R.R.* 373 F.3d 896, 900-901 (8th Cir. 2004). Holding that "there must be a finding of intentional destruction indicating a desire to suppress the truth before an adverse inference is justified," the 8th Circuit Court of Appeals ordered a new trial. In doing so, the court in *Morris* further noted, "[t]he adverse inference instruction, when not warranted, creates a substantial danger of unfair prejudice." *Id*. at 903. Bad faith is the "destruction for the purpose of hiding adverse information*." Mathis v. John Morden Buick Inc*., 136 F.3d 1153, 155 (7th Cir. 1998). Negligent destruction (or concealment) does not amount to bad faith. *See Henning v. Union Pacific Railroad Co.*, 530 F.3d 1206, 1220 (10th Cir. 2008) and *Morris v. Union Pacific Railroad*, 373 F.3d 896, 901 (8th Cir. 2004). There is no evidence of bad faith by Armory in this case. Therefore, dismissal and/or an adverse inference instruction would be improper.

In order for the Court to grant any kind of spoliation sanction against Armory, the allegedly concealed evidence must be prejudicial. *See Loyd v. Salazar,* 2021 WL 3042663 at *2 (W.D. Okla. 2021) (unpublished) quoting *Turner v. Pub. Serv. Co.*, 563 F.3d 1136, 1149 (10th Cir. 2009). Without proving that the allegedly spoliated evidence is relevant, there can be no proof of prejudice. *See Henning v. Union Pac. R.R. Co.*, 530 F.3d 1206, 1220 (10th Cir. 2008); *see also Marshall v. Dentfirst, P.C.*, 313 F.R.D. 691 (N.D. Ga. 2016) (loss of internet browsing history of terminated employee was not prejudicial under Fed. R. Civ. P. 37 (e)(1) because it had not been relied upon). The emails at issue are not relevant in this case because they do not contain the trade secrets or proprietary information disclosed to and used by the Defendants. Therefore, Armory's failure to disclose the same could not be prejudicial. Because Defendants have not been prejudiced, no sanction is appropriate.

## II.    Defendants Did Not Request the Documents at Issue in Defendants' Motion.

KEA failed to request the emails upon which it seeks sanctions. KEA very precisely asked for "…documents evidencing [Armory's] disclosure of proprietary information, as defined in the NDA, to Russell Phagan, SST, KEA, Brownells, and InRangeTV." (*See* Declaration of Alexander Calaway[Dkt. # 178] at Dkt. #178-1, Request No. 59). KEA also requested "… all of [Armory's] communications in Native Format of Shel Jones concerning [Armory's] 'trade secrets' referenced in Paragraphs 59-67 of the Complaint (Dkt. 2) or 'proprietary information' identified in [Armory's] Response to Interrogatory No. 8 during the relevant period. The "Relevant Period" is defined by KEA as January 2016 to present. (*See* Dkt. 178-1 at p. 3 and Dkt. 178-4 at p. 4) As described above, none of the emails which are the subject of Defendants' Motion were requested in discovery. The emails about which Defendants complain are not internal communications between Armory and Jones. Further the information provided in the emails is not the trade secrets

referenced in paragraphs 59 – 67 of Armory's Complaint [Dkt. #2] or in Armory's response to Interrogatory No. 8. The "technical information" that was provided to Armory's customers did not accurately describe Armory's trade secrets. Finally, the email sent to Mr. McBride was sent in 2013, which is outside the "relevant period" as defined by KEA's discovery requests.

Because KEA did not request the communications about which it now complains, Armory cannot be sanctioned for spoliation. Following Armory's objection to Defendants' initial request for every internal email Jones ever sent or received about the CAV-15 from 2016 to present, KEA amended its request, and in doing so narrowly tailored the request to internal communications concerning the trade secrets misappropriated by Defendants and the proprietary information identified in Armory's response to Interrogatory No. 8. (*See* Dkt. #177 at p.p.5-6, Dkt. #178-1 at p. 6 & 8, and Dkt. 178-4 at pp. 6 & 9). Armory responded to KEA's discovery in good faith and produced communications responsive to KEA's requests.

### III.  There Is No Evidence of Bad Faith by Armory.

There is no evidence that Armory intentionally destroyed, or concealed, any evidence in this case. As stated above, the concealment of evidence must be intentional for Defendants to receive a dismissal of Armory's claims and/or an adverse inference instruction. There cannot be a finding of bad faith where, as discussed herein above, the documents about which Defendants complain were not requested in discovery. The emails in question do not show that Armory shared the CAV-15 CAD files Defendants used to make the KP-15. Similarly, the emails in question do not show that Armory emailed the Investment Packets used by Defendants to any individuals without first requiring an NDA. The trade secrets and proprietary information at issue in this case related to the contents of the CAV-15 CAD files (which Defendants used to design the KP-15), and the information disclosed under NDA to KEA/Phagan in text messages with Mr. Jones about

the number of units sold, the condition of Armory's molds and the expense and steps necessary for Armory to obtain new molds, the outside investment needed for Armory to obtain new molds and resume production of its lower receivers, and in other confidential information contained in the Investment Packets. (*See* Dkt. #117 at pp. 10-12). Armory has not made any claims in this case alleging Defendants used the information disclosed in the emails which are the subject of Defendants' Motion.

Defendants request the harshest spoliation sanctions available despite the fact they did not request the emails at issue, the emails still exist and were otherwise discovered by Defendants, and there is no evidence of bad faith on the part of Armory. Defendants' Motion relies upon *Phillips Electronics North America Corp. v. BC Technical*, 773 F.Supp.2d 1149 (Utah 2011) to support their argument. The *Phillips Electronics* case is easily distinguishable from the case before the Court. In that case, the defendant "did not merely refuse to produce documents. It intentionally destroyed documents and attempted to cover-up the electronic deletion within hours after Judge Alba granted Plaintiff's *third* motion to compel. [The defendant] then compounded the problem by misrepresenting information about the issue while under oath." *Id* at 1156. The court found the foregoing to be "an egregious form of interference with the judicial process." *Id*. Further, the defendant's founder and CETO, CTO, and COO lied under oath about the company's actions. *Id*. Furthermore, the defendant had been ordered three (3) times to produce documents. *Id*. In the case before the Court, there is no evidence documents have been destroyed by Armory, there is no evidence of a cover-up, there have been no prior orders compelling Armory to produce documents, and Armory has not committed perjury.

"Mere negligence in losing or destroying records is not enough because it does not support an inference of consciousness of a weak case." *Aramburu v. The Boeing Company*, 112 F.3d 1398,

13

1407 (10th Cir. 1997) "Without a showing of bad faith, a district court may only impose lesser sanctions." *Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1149 (10th Cir. 2009) citing *Henning*, 530 F.3d at 1220. Based upon the foregoing authorities, it is clear there is insufficient evidence for the Court to impose sanctions in the form of a dismissal or an adverse inference instruction.

**IV.     Defendants Were Not Prejudiced**

Rule 37 of the Federal Rules of Civil Procedure clearly requires the failure to preserve electronically stored information to be prejudicial in order to be subject to sanctions. The evidence must be relevant in order for the destruction or concealment thereof to be prejudicial. *See Henning v. Union Pacific Railroad Co*., 530 P.3d 1206, 1219 (10th Cir. 2008) and *Turner v. Public Service Co. of Colo.*, 563 F.3d 1136, 1150 (10th Cir. 2009). In *Henning* the 10th Circuit Court of Appeals stated, "[r]elevance is a highly fact-specific inquiry." *Henning v. Union Pacific Railroad Co*., 530 P.3d at 1219. In that case the defendant failed to preserve dispatcher tapes following a collision between a train and a car, and the plaintiff sought spoliation sanctions. The defense presented expert testimony that dispatcher tapes would not be helpful regarding the issues in the case, and the plaintiff did nothing to refute such testimony. As a result, the appeals court found that the district court did not err in finding the dispatcher tapes were not relevant. *See Id*.

In *Turner v. Public Service Co. of Colo.*, the 10th Circuit Court of Appeals held, "[a]ssuming PSCo had a duty to retain the interview notes under the spoliation doctrine, there is no evidence that Turner was 'actually, rather than merely theoretically' prejudiced by their loss." *Turner v. Public Service Co. of Colo.*, 563 F.3d 1136, 1150 (10th Cir. 2009). *Turner* involved allegations of sex discrimination in violation of Title VII of the Civil Rights Act of 1964 when the defendant refused to hire the plaintiff for an entry-level position. The plaintiff requested an "adverse instruction" because the defendant lost or refused to produce notes taken by interviewers

which were used to assess interview performances and assign interview scores during hiring sessions in 2000 and 2004. *Id*. at 1148 – 1150. In finding there was no evidence of actual prejudice in *Turner*, the appeals court stated, "… Turner had access to a significant amount of evidence regarding the interview process and her performance during the 2004 interview. Turner herself admitted in deposition testimony that she performed poorly during her 2004 interview… Turner has presented no evidence suggesting that [PSCo] made their decision based upon a bias against women, and it is unlikely that the sole reason why Turner has been unable to prove her claim is the loss of the interview notes." *Id*. at 1150.

In the case before the Court, Defendants submitted a substantial amount of evidence to try to establish that Armory's trade secrets and proprietary information were in the public domain in their motions for summary judgment (Dkt. ## 117, 118, 119 & 120). In fact, Defendants submitted the Declaration of Russell Phagan in Support of Defendants' Motion for Summary Judgment [Dkt. # 124], which included 33 exhibits Defendants claim show alleged public disclosure of Armory's trade secrets and proprietary information. (*See* Dkt. #124-34 – 124-67). The exhibits to the aforementioned declaration of Phagan include photos of the production model CAV-15 MKII cut in half (like the photos sent to Messrs. King and Anderson), and a post on Armory's website regarding Armory's mold reaching the end of its useful life. *See* Dkt. ## 124-34 and 124-54. However, the disclosure of one trade secret or piece of proprietary information does not constitute disclosure of all trade secrets or proprietary information. Further, "[the] necessary element of secrecy is not lost, however, if the holder of the trade secret reveals the trade secret to another 'in confidence, and under an implied obligation not to use or disclose it." *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 475 (1974) (citation omitted). "The protection accorded the trade secret holder is against the disclosure or unauthorized use of the trade secret by those to whom the secret

has been confided under the express or implied restriction of nondisclosure or nonuse. The law also protects the holder of a trade secret against disclosure or use when the knowledge is gained, not by the owner's volition, but by some 'improper means'…" *Id*. at 475-476. Furthermore, "[a] trade secret can exist in a combination of characteristics and components each of which, by itself, is in the public domain, but the unified process, design and operation of which, in unique combination, affords a competitive advantage and is a protectable secret." *Hertz v. Luzenac Group*, 576 F.3d 1103, 1109 (10th Cir. 2009). Defendants cannot claim they lawfully obtained the trade secrets at issue in this case from third parties they did not know existed. There is no question KEA, Phagan, SST and Brownells were prohibited from using or disclosing Armory's trade secrets and proprietary information pursuant to the NDAs entered into by the parties. (*See* Dkt. ## 124-2, 124-5, 124-6, 122 Exs. 1 & 2). None of the emails used to support Defendants' Motion evidence Armory's disclosure of its CAD files, or the unified process, design, and operation of or for manufacturing the CAV-15. For example, simply knowing the type of polymer used for the CAV-15 does not mean others possessed the knowledge necessary to make their own CAV-15 lower. Similarly, knowing the condition of Armory's molds without knowing Armory needed a substantial investment in order to produce new molds does not negate Armory's competitive advantage in the market. Nothing produced heretofore in this case by Defendants, whether in the emails at issue here or in Defendants' motions for summary judgment, publicly disclosed a combination of characteristics and components of the CAV-15 such that all competitive advantage and protectable secrets were lost. Therefore, Defendants cannot claim to have been prejudiced by Armory's disclosure of pieces of information to third-parties, especially when the information provided was neither precise nor factually accurate, and when none of those individuals were the sources of the information wrongful used and disclosed by the Defendants.

### V.      Armory's Claims Are Also Based Upon Defendants' Breach of the NDAs

Defendants' Motion requests the Court dismiss all of Armory's claims in this case. In fact, Defendants argue that lesser sanctions are not appropriate given the stage of this litigation. Defendants make this request despite the fact Armory's claims are not solely based upon the fact Defendants misappropriated Armory's trade secrets. Defendants not only misappropriated Armory's trade secrets when they used Armory's CAV-15 CAD files to develop the KP-15, they also used and disclosed confidential information in violation of the NDAs. Defendants do not have any evidence Armory shared its CAD files with any third parties. Similarly, Defendants do not have any evidence Armory shared its Investment Packets with anyone who was not bound by a non-disclosure agreement. Even if the contents of the emails upon which Defendants' Motion rely are/were trade secrets, that does not give Defendants a license to use and/or disclose Armory's other trade secrets and proprietary information in violation of the NDAs. Not only do the non-disclosure agreements prohibit such use and disclosure, at most Armory could only waive its claims relating to the specific information in the public domain which Defendants lawfully obtained as a result thereof. Further, Armory has asserted claims for breach of contract for KEA, Phagan, SST & Brownells breaching their duties of good faith and fair dealing, and a claim for breach of contract against SST (if SST did not own exclusive rights to the CAV-15 IP).

### CONCLUSION

Defendants request for sanctions based upon their discovery of emails that were not requested in discovery must be denied. Defendants know: (1) they did not request these third-party emails, and (2) the technical data provided in the emails at issue was not precise or technically accurate. Nonetheless, because Defendants did not request the emails in question, it is impossible for Defendants to allege Armory's failure to produce the same was done in bad faith or that it was

17

prejudicial to Defendants. Because Defendants cannot establish bad faith, it would be improper for the Court to dismiss Armory's claims or give an adverse jury instruction. Further, no sanctions are appropriate in these circumstances because Defendants cannot establish that they there were prejudiced by Armory's failure to produce emails which do not contain the trade secrets and proprietary information at issue in this case. Therefore, Armory respectfully requests the Court overrule and deny Defendants' Motion.

**WHEREFORE**, premises considered, Plaintiff GWACS Armory, LLC, prays the Court enter and order overruling and denying Defendants' Motion for Spoliation Sanctions [Dkt. # 177] and awarding it all such other relief this Court deems just and equitable.

Respectfully submitted,

**JONES, GOTCHER & BOGAN, P.C.**

s/Tadd J.P. Bogan
Tadd J.P.Bogan, OBA #20962
James E. Weger, OBA #9437
3800 First Place Tower
15 East Fifth Street
Tulsa, Oklahoma 74103
Telephone: (918)581-8200
Facsimile: (918)583-1189
E-Mail: tbogan@jonesgotcher.com
jweger@jonesgotcher.com
**Attorneys for Plaintiff, GWACS Armory, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on December 12, 2022, I electronically transmitted the attached document to the Clerk of Court using the Electronic Case Filing System for filing. Based on the record currently on file in this case, the Clerk of Court will transmit a Notice of Electronic Filing to those registered participants of the ECF System.

s/Tadd J.P. Bogan
Tadd J. P. Bogan