IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| GWACS ARMORY, LLC, an Oklahoma limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>KE ARMS, LLC<br>RUSSEL PHAGAN, SINISTRAL SHOOTING TECHNOLOGIES, LLC<br>BROWNELLS, INC. and<br>SHAWN NEALON,<br><br>Defendants,<br><br>and<br><br>KE ARMS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>GWACS ARMORY, LLC, GWACS DEFENSE INCORPORATED,<br>JUD GUDGEL, RUSSEL ANDERSON,<br>DOES I through X, and ROE CORPORATIONS I through X,<br><br>Defendants. | Case No. 20-CV-0341-CVE-SH<br><u>**BASE FILE**</u><br>Consolidated with:<br>Case No. 21-CV-0107-CVE-SH |

### DECLARATION OF MICHEL "SHEL" JONES IN SUPPORT OF PLAINTIFF'S RESPONSE AND OBJECTION TO DEFENDANTS' MOTION FOR SPOLIATION SACTIONS

I, Michel "Shel" Jones, declare as follows:

1. I am the Vice President of GWACS Armory, LLC ("Armory"), and am competent to testify as to the facts stated herein in a court of law and will so testify if called upon.

Exhibit 3

2. I make this declaration in support of Plaintiff's Response and Objection to Defendants' Motion for Spoliation Sanctions.

3. I was asked to search my emails for emails wherein Armory disclosed the intellectual property, trade secrets, and proprietary information disclosed to and used by KE Arms, LLC ("KEA"), Russell Phagan ("Phagan"), Sinistral Shooting Technologies, LLC ("SST"), Brownells, Inc. ("Brownells") and Shawn Nealon ("Nealon") (hereinafter collectively "Defendants") to create the KP-15 monolithic polymer lower receiver. I was also asked to identify to whom Armory provided its 2015 Investment Executive Summary (the "2015 Investment Packet") and/or its 2018 Financing Executive Summary (the "2018 Investment Packet") (hereinafter collectively the "Investment Packets"), and to produce emails relating thereto as the foregoing packets contain some of the trade secrets and proprietary information used by Defendants to create the KP-15. Finally, I was asked to search my emails for internal communications between Armory and me concerning the trade secrets and proprietary information at issue in this case.

4. In order to produce the requested information, I searched the contents of my "sjones@gwacsdefense.com" and "sjones@gwacsarmory.com" email files. I did not search the contents of the "sales@gwacsarmory.com" or "dealer@gwacsarmory.com" for the information requested because I did not communicate internally with Armory using either of those email addresses and I did not use either of those email addresses to disclose information to the Defendants.

5. I responded to the email from Kenneth King, attached to the Supplemental Declaration of Russell Phagan in Support of Defendants' Motions for Summary Judgment Briefing (Dkt. 117, 118, 119, 120, 159, 160, 161, 162) [Dkt. #179] (the "Phagan Declaration") as Exhibit

1. I sent Mr. King a photo of the inside of a CAV-15 MKII production lower receiver. However, the ribbing in CAV-15 MKII's Armory produced is not the same as the ribbing contained in the CAV-15 CAD files, which is the ribbing contained in the KP-15 polymer lower receiver developed by Defendants.

6.  I responded to the email from Timothy McBride sent to the dealer@gwacsarmory.com email address on August 23, 2012. On January 15, 2013, I sent Mr. McBride Armory's Non-Exclusive Dealer Agreement, Terms and Conditions, FFL, 2013 Dealer Pricing Sheet, CAV-15 MKII Receiver Assembly Instructions, and Manufacturer's Warranty. Thereafter, on April 17, 2013, I sent Mr. McBride an email offering for him to be a dealer for Armory and sent him the Confidential 2013 Dealer Pricing Sheet April 2013, as well as Armory's Terms and Conditions requiring confidentiality. Armory disclosed dealer pricing to a dealer interested in selling the CAV-15. However, the pricing provided to Mr. McBride in 2013, is not the same pricing as that contained in the 2015 Investment Packet and/or the 2018 Investment Packet. Further, the email to Mr. McBride occurred outside of the timeframe specified in KEA's requests for documents.

7.  I responded to the emails from Angus Anderson attached to Phagan's Declaration at Exhibit 3. The photo I sent to Mr. Anderson does not show the ribbing design contained on the CAV-15 CAD files, which was used by Defendants in the KP-15. The photograph sent to Mr. Anderson shows the ribbing contained in the production CAV-15 MKII. In order to assist Armory's customer, I informed Mr. Anderson he could cut 1.5" from the rear of the buttstock without compromising the strength of the lower. However, 1.5" is not the maximum amount which can be removed from the buttstock. Further, I told Mr. Anderson that there is 2.5" of material at

the end of the buffer tube of the CAV-15 to support 45 APC blow back, but 2.5" is not the actual amount of material for the CAV-15 buffer stop.

8. I responded to the email from MKO Firearms, LLC ("MKO"), on February 9, 2018, attached to Phagan's Declaration at Exhibit 4. MKO asked the thickness of the 'skin' on the grip and for a CAD drawing of the cavity inside the lower. I did not send MKO the CAV-15 CAD drawings, or any other CAD drawings. I sent MKO a photo of the inside of a production CAV-15 MKII, which does not have the same ribbing as the ribbing Defendants obtained from the CAV-15 CAD files for use in the KP-15. I also told MKO that the thickness of the pistol grip and most other areas is 0.135 inches. None of the wall thicknesses of the CAV-15 are .135 inches. I provided the information I provided to inform a customer/dealer that they could perform the modifications requested by their customer without disclosing Armory's trade secrets or proprietary information.

9. I responded to the email from Mark Blankenau dated May 13, 2018, attached to Phagan's Declaration as Exhibit 5. Mr. Blankenau wanted to reduce the gap between the upper and lower receivers and asked what polymer Armory used. I responded to Mr. Blankenau "Nylon 6 with 20% glass fill." The CAV-15 is made from Nylon 6, which has been publicly disclosed, but Armory's polymer is not 20% glass fill. I also did not disclose to Mr. Blankenau the source, grade, melting point, amount or type of glass fill in the CAV-15 polymer. Therefore, Armory's trade secrets were not disclosed to Mr. Blankenau.

10. I responded to the email from Greg Bowling on March 23, 2021, attached to Phagan's Declaration as Exhibit 6. The information provided to Mr. Bowling was provided well after this lawsuit was filed and I simply told Mr. Bowling we did not have sufficient inventory to continue to honor the Cavalry Arms Corp. warranty for his two Saber Defense marked CAV-15 lowers.

11. On or about May 16, 2012, I did a phone interview for the 80spodcastchannel with "DUDEJERKY" regarding the CAV-15 and Armory's purchase of the mold, IP and production equipment to produce the CAV-15. During the interview I did not disclose the trade secrets or proprietary information at issue in this case. I was specifically asked how long it took to mold a lower receiver and did not provide that information. Further, this interview occurred in 2012, which, like the email to Mr. McBride, occurred outside of the timeframe specified in KEA's requests for documents.

12. On September 6, 2017, someone with an email address of Nhall2@samford.edu asked when Armory expected to have Flat Dark Earth and OD Green colored lower receivers back in stock, and asked about future plans for upgrades, like an adjustable length of pull or built in QD sockets. This email is attached to Phagan's Declaration at Exhibit 8. I responded to the foregoing email by stating that Armory hoped to have Flat Dark Earth lowers the following month and that Armory was hoping to launch its next generation of lowers with an adjustable length and multiple QD sockets. Neither the CAV-15 MKIII nor the KP-15 have an adjustable length, and do not have multiple QD sockets. This email response referenced the CAV-15 MKIV, as demonstrated by the fact I referenced the adjustable length. Further, I did not disclose the location of the QD socket in Armory's CAV-15 design, or the CAD renderings contained in the Investment Packets.

13. On March 29, 2018, Nate H. sent Armory the email attached to Phagan's Declaration at Exhibit 9. Nate H. asked for the upper temperature limit for the CAV-15 because he wanted to purchase and paint a CAV-15 lower receiver with resin paint that required curing for an hour at 300 degrees. I did not disclose the manufacturing temperature of the CAV-15 to Nate H. After checking with our engineering department, I informed Nate H. that his CAV-15 lower would not be impacted until reaching temperatures of 425 degrees, so 300 degrees should be an

acceptable temperature for the customer's project. 425 degrees is neither the manufacturing temperature nor the melting point for the CAV-15 polymer.

14. I did not identify Kenneth King, Timothy McBride, Angus Anderson, MKO Firearms, LLC, Mark Blankenau, Greg Bowling, Mike F. Di, Nathaniel Hall, or Nate Henry as potential witnesses in this case because I did not recall their existence, and to my knowledge they do not have information relevant to the claims and defenses in this case. I am not aware of any of the individuals identified above being involved in Armory's communications with Defendants regarding the CAV-15 trade secrets and proprietary information, and none have ever worked for Armory.

15. I declare under penalty of perjury that the foregoing is true and correct.

Dated this 12th day of December, 2022.

_____
Shel Jones