# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **GWACS ARMORY, LLC**, an Oklahoma limited liability company, | ) ) ) |
| **Plaintiff,** | ) ) ) |
| v. | )  Case No. 20-CV-0341-CVE-SH ) <u>**BASE FILE**</u> |
| **KE ARMS, LLC** **RUSSEL PHAGAN, SINISTRAL SHOOTING TECHNOLOGIES, LLC** **BROWNELLS, INC.** and **SHAWN NEALON,** | ) **Consolidated with:** ) **Case No. 21-CV-0107-CVE-SH** ) ) ) ) ) |
| **Defendants,** | ) ) |
| and | ) ) |
| **KE ARMS, LLC,** | ) ) |
| **Plaintiff,** | ) ) |
| v. | ) ) |
| **GWACS ARMORY, LLC, GWACS DEFENSE INCORPORATED, JUD GUDGEL, RUSSEL ANDERSON, DOES I through X,** and **ROE CORPORATIONS I through X,** | ) ) ) ) ) ) |
| **Defendants.** | ) |

### PLAINTIFF'S RESPONSE TO DEFENDANTS' SUPPLEMENT TO
### THEIR DISPOSTIVE MOTION BRIEFING (DKT. 117, 118, 119, 120, 159, 160, 161, 162)

**COMES NOW**, Plaintiff, GWACS Armory, LLC ("Armory"), by and through its attorneys of record, and for its response to Defendants' Supplement to Their Dispositive Motion Briefing (Dkt. 117, 118, 119, 120, 159, 160, 161, 162) [Dkt. #187] ("Defendants' Supplement") states as follows:

## INTRODUCTION

In addition to its misappropriation claims, Armory has asserted claims for breach of contract arising from Mutual Nondisclosure Agreements (the "NDAs"), against KEA, Phagan, SST, and Brownells.[1] Armory has also asserted an alternative claim against SST for breach of the IP Purchase Agreement.[2] Granting summary judgment on Armory's claims in this case is improper if there is evidence defendants KE Arms, LLC ("KEA"), Russell Phagan ("Phagan"), Sinistral Shooting Technologies, LLC ("SST"), and/or Brownells, Inc. ("Brownells") (hereinafter collectively "Defendants") used or disclosed a single trade secret or other piece of proprietary information which was not in the public domain at the time it was used or disclosed.

All of the NDAs involved in this case prohibit the Defendants from using, exploiting, or disclosing Armory's "proprietary information".[3] The parties to the NDAs defined "proprietary information" as, "…any information disclosed by one Party (the 'Discloser') to the other Party (the 'Recipient') (i) that is marked 'proprietary' or (ii) that relates to the business of the Discloser or the Discloser's affiliates, including without limitation, trade secrets, know-how, data, operations, records, finances, assets, technology, software, research, inventions, future products, customer information, or business development plans."[4] However, NDAs further provide that "proprietary information" does not include information which is independently made available to the Receiving Party by a third party not bound directly or indirectly by a non-disclosure obligation to the Disclosing Party or which is in the public domain.[5]

---

[1] *See* Complaint [Dkt. #2] at ¶¶ 52-57 & 95-115 (First COA, Seventh COA & Nineth COA).
[2] *Id.* at ¶¶ 105-109 (Eighth COA).
[3] *See* Dkt. 122 at Ex. 5, Dkt. ## 124-3, 124-6 & 124-7 at ¶ 4.
[4] *Id.* at ¶ 2.
[5] *Id.* at ¶ 6.

In the case before the Court, SST, a company solely owned by Phagan, sold Armory all of its exclusive rights, title and interest in and to the CAV-15 CAD drawings, design prints to the molds, including any and all intellectual property ('IP') related thereto; miscellaneous tools and equipment to manufacture, market and sell the CAV-15 lowers; and other production equipment necessary to produce the CAV-15.[6] SST and Phagan were each bound directly and/or indirectly by the NDAs entered into between Armory and SST.[7] SST and Phagan, each of whom work(ed) for KEA at all relevant times, were also bound directly and/or indirectly by the KEA NDA.[8] KEA was likewise bound by the KEA NDA.[9] Brownells was bound by the Brownells NDAs.[10] Notably, none of the NDAs permit the "Receiving Part[ies]" to share Armory's "proprietary information" with each other. In fact, the NDAs expressly state that the "Receiving Part[ies]" "… shall not disclose any Proprietary Information of [Armory] to any person or entity other than its own personnel on a need-to-know basis…"[11] Because Defendants were each directly and/or indirectly prohibited from disclosing Armory's "proprietary information" by non-disclosure obligations, to prevail on summary judgment Defendants must prove that <u>all</u> of the information used, exploited, and/or disclosed by Defendants in their development of the KP-15 monolithic polymer lower receiver was in the public domain or was independently made available to them by someone not bound by a non-disclosure obligation. Because issues of disputed material fact remain in this case, summary judgment on Armory's breach of contract claims must be denied.

Armory's misappropriation claims are based upon KEA and Phagan developing the KP-15 knowingly using and exploiting Armory's trade secrets in violation of 18 U.S.C. § 1831 *et seq.*

---

[6] *See* Dkt. 124-4, Asset Purchase and Sales Agreement at ¶1, Schedule 1, and Bill of Sale.
[7] *See* Dkt. ## 124-3,124-6 & 124-7
[8] *See Id.*
[9] *Id.*
[10] *See* Dkt. #122 Ex. 5.
[11] *See* NDAs Dkt. # 122 at Ex. 5 & Dkt. ## 124-3,124-6 & 124-7, at ¶ 4.

3

Specifically, "KEA and Phagan stole, misappropriated and used [Armory's] financial, business, scientific, technical, economic and engineering information, which [Armory] took reasonable measures to keep secret and which were not generally known, to develop the [KP-15]."[12] More specifically, KEA and Phagan used the CAV-15 CAD files Armory purchased from SST to design and develop the KP-15.[13] They also shared the CAD files with Jovan Beltran of M&B Manufacturing.[14] Further, KEA and Phagan used Armory's financial information (i.e. its financial needs, CAV-15 cost of production, and pricing), as well as technical, engineering and other information contained in Armory's confidential investment packets, in their development and production of the KP-15.[15] Summary judgment on Armory's misappropriation claims is improper because there are factual disputes about: (1) whether Armory took reasonable measures to keep them a secret, and (2) whether Armory's trade secrets were generally known or in the public domain.

Defendants' Supplement fails to specify how or where the information attached thereto applies to their dispositive motions. Defendants' Supplement merely includes a footnote that "a 'trade secret' is only a trade secret if (a) the person claiming the trade secret 'has taken reasonable measures to keep such information secret' and (b) the information is not 'readily ascertainable' through other proper sources. (citations omitted)." Nonetheless, Defendants' Supplement does not change the outcome of the dispositive motions in this case. Material questions of fact remain for the trier of fact to determine; therefore, Defendants' dispositive motions [Dkt. ## 117/159, 118/160, 119/162, & 120/161] must still be denied.

---

[12] Dkt. 2 at ¶61.
[13] *See* Dkt. 143 at p. 5-6, ¶¶ 10-11.
[14] *See* Depo of Beltran p. 9, l. 3 – p. 10, l. 14; p. 69, l. 7 – p. 73, l. 22; p. 76, l. 16 – 20; p. 136, l. 15 – p. 137, l. 20, attached as Exhibit 1.
[15] *See* Dkt. 143 at p. 9, ¶¶ 13 - 16

## ARGUMENTS & AUTHORITIES

### I. INCORPORATION OF PRIOR BRIEFS & OBJECTION TO DEFENDANTS SUPPLEMENTING WITH INFORMATION PREVIOUSLY AVAILABLE.

Armory hereby incorporates the arguments and authorities set forth in Plaintiff's Response and Objection to Defendants' Motion for Spoliation Sanctions [Dkt. # 182] and Plaintiff GWACS Armory, LLC's Objection to Defendants' Motion for Leave to Supplement Their Dispositive Motions [Dkt. #183]. Further, Armory objects to Defendants' use and inclusion of the Declaration of Timothy McBride in Support of Defendants' Motions for Summary Judgment (Dkt. 117, 118, 119 and 120) [Dkt. # 187-2]. As set forth in Dkt. #183, Defendants knew, should have known, or could have discovered with reasonable diligence, the evidence in the possession of Timothy McBride ("McBride"). McBride worked for KEA and was listed in Defendants' witness list eight (8) months before Defendants filed their dispositive motions.[16]

### II. DEFENDANTS BREACHED THE NDAs

The NDAs are governed by Oklahoma law.[17] It is undisputed Armory and Defendants entered into the NDAs. The question for the Court is whether or not there is a disputed material fact regarding Defendants' breaches of the NDAs by using, exploiting or disclosing Armory's trade secrets or other proprietary information. Pursuant to Oklahoma law,

> 'Trade secret' means information, including a formula, pattern, compilation, program, device, method, technique or process, that:
>
> a.    derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and
>
> b.    is the subject of efforts that are reasonable under the circumstances to maintain secrecy.

---

[16] *See* Dkt. #187-2 at ¶¶ 14-15 and Dkt. # 182-4.
[17] *See* Dkt. # 122 at Ex. 5 & Dkt. ## 124-3,124-6 & 124-7, at ¶14

Okla. Stat. tit. 78, § 86(4). Therefore, the NDAs prohibited Defendants' use, exploitation, and disclosure of Armory's trade secrets, as defined above, and its other business information, including its know-how, data, operations, records, finances, assets, technology, software, research, inventions, future products, customer information, or business development plans, as described in paragraph number four (4) of the NDAs.

For purposes of Armory's breach of contract claims, the question is, did Defendants breach the contracts by using Armory's proprietary information that was not in the public domain? The question is not whether the information used, exploited or disclosed by Defendants were trade secrets. Oklahoma's Uniform Trade Secrets Act does not affect Armory's contractual remedies, whether based upon a trade secret or upon the remainder of the definition of proprietary information in the NDAs. (*See MTG Guarnieri Mfg. Inc. v. Clouatre et al.*, 239 P.3d 202, 208 (OK CIV APP 2010) and Okla. Stat. tit. 78, § 92)

Defendants' Supplement consists of communications between Armory and its customers and firearms dealers.[18] Armory providing information to its customers and firearms dealers (who were not firearms manufacturers) does not equate to the information being in the public domain or otherwise publicly available. The information attached to Defendants' Supplement could not be found online or in a public database. At best, the information attached to Defendants' Supplement represents private disclosures of small, isolated, pieces of imprecise and incomplete information about the CAV-15 in response to specific customer requests. There is no evidence the emails or information attached to Defendants' Supplement were ever shared with the Defendants or published publicly by its recipients prior to Defendants breaching the NDAs. In fact, Defendants admit the information attached to Defendants' Supplement was not disclosed to them by their

---

[18] *See* Dkt. #187

recipients until after Defendants filed their dispositive motions. However, the extent to which the information is known outside the business goes only to whether the information is a trade secret, not to whether or not it was in the public domain as the term is used in the NDAs. Nonetheless, "[a] trade secret can exist in a combination of characteristics and components each of which, by itself, is in the public domain, but the unified process, design and operation of which, in unique combination, affords a competitive advantage and is a protectable secret." *Hertz v. Luzenac Group*, 576 F.3d 1103, 1109 (10th Cir. 2009). *See also*, *Rivendell Forrest Products, Ltd. V. Georgia-Pacific Corporation*, 28 F.3d 1042, 1045 (10th Cir. 1994).

Further, the information disclosed in the emails attached to Defendants' Supplement <u>do not contain the proprietary information at issue in this case</u>. The information provided was inaccurate, imprecise, incomplete, and unrelated to the trade secrets and proprietary information used, exploited and/or disclosed by Defendants.[19] This can be proven by comparing the information in the dealer packet to the information provided to McBride and Mark Blankenau.[20] Notwithstanding the foregoing, "[a] finding that some of the elements are secret may support a conclusion that the entire process is protected." *Hertz v. Luzenac Group*, 576 F.3d 1103, 1110 (10th Cir. 2009). For example, in *Hertz* (*supra*) the 10th Circuit stated, "the publicly available Materials Safety Data Sheet for 604AV lists the organosilane surface coating as constituting less than 1% by weight of the product" and that the evidence suggested "that the precise amount of silane in 604AV within 0% to 1% range had commercial value and the public would not necessarily be able to discern the amount by simply knowing the range." *Id*. at 1110-1111. This is similar to the imprecise information Armory provided to its customers, which had no commercial value to the recipients or anyone else. Notably, none of that information attached to Defendants' Supplement is contained

---

[19] *See* Declaration of Michel "Shel" Jones, Dkt.# 182-3.
[20] *See* Dkt. 187-1 at p. 26 (30%) and p. 54 (20%) (neither of which state whether it is long glass or short glass)

7

in the CAV-15 CAD files, the text messages between Phagan and Shel Jones, or the confidential investment packets used and exploited by Defendants. There is no evidence in this case to support a finding that at least some of the elements of Armory's trade secrets were not kept secret, or that all of Armory's proprietary information was in the public domain.

### III. ARMORY'S MISAPPROPRIATION OF TRADE SECRETS CLAIM

As stated above, "[a] trade secret can exist in a combination of characteristics and components each of which, by itself, is in the public domain, but the unified process, design and operation of which, in unique combination, affords a competitive advantage and is a protectable secret." *Hertz v. Luzenac Group*, 576 F.3d at 1109 (10th Cir. 2009). *See also*, *Rivendell Forrest Products, Ltd. V. Georgia-Pacific Corporation*, 28 F.3d at 1045 (10th Cir. 1994). As long as some of the CAV-15 elements are secret, the entire process can be protected.

Upon reviewing the evidence attached to Defendants' Supplement, the Court should ask if any of these individuals could create a monolithic polymer lower receiver with the exact same dimensions, made with the same materials, and with the same design features as the CAV-15 based upon the information contained in Defendants' Supplement. The Court should ask, whether any of these individuals could even create a functional monolithic polymer lower receiver using the information Armory disclosed in the emails attached to Defendants' Supplement. The answer to both of the foregoing questions is clearly, no. In fact, someone could not create a CAV-15 or a KP-15 if you combine all of the information provided in Defendants' Supplement. Despite the KP-15 development program being run by Phagan, who worked on the CAV-15 almost since its inception and sold the CAV-15 assets and IP to Armory, KEA could not even develop the KP-15 without using the CAV-15 CAD files.[21] Further, not even Phagan knew the information provided

---

[21] *See* Dkt. #143 at p. 3 ¶ 2, p. 5-6 ¶¶ 10-11, p. 9 ¶ 15, & p. 15 ¶ C; and Dkt. #145 at pp. 12-13.

in Defendants' Supplement was inaccurate, or he chose not to inform the Court that the information was inaccurate.

Whether information is a trade secret is a question of fact. (*See* Dkt. #117 at p. 20 and *MTG Guarnieri Manuf. v. Clouatre*, 239 P.3d at 210). The information Armory disclosed to its customers and distributors does not have economic value to anyone other than firearms manufacturers, none of whom had ever created a comparable monolithic polymer lower receiver.[22] The fact the CAV-15 was the only polymer lower receiver on the market until Defendants developed the KP-15 is evidence the trade secrets misappropriated by Defendants were not generally known when they were misappropriated by Defendants. (*See MTG Guarnieri Manufacturing, Inc. v. Clouatre et al.* 239 P.3d at 211)

Regarding McBride, he claims Nealon "shared" the CAV-15 CAD files with him when they were discussing his purchase of the CAV-15 mold from Phagan in 2010.[23] This information is spurious given that Phagan had the CAD files and Nealon was under indictment from the federal government. Further, Nealon testified that the last time he opened the CAV-15 CAD files was in 2008 or 2006.[24] Furthermore, McBride does not claim he was given the CAD files.

"The necessary element of secrecy is not lost, however, if the holder of the trade secret reveals the trade secret to another 'in confidence, and under an implied obligation not to use or disclose it." *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 475 (1974) (citation omitted). "The protection accorded the trade secret holder is against the disclosure or unauthorized use of the trade secret by those to whom the secret has been confided under the express or implied restriction of nondisclosure or nonuse. The law also protects the holder of a trade secret against disclosure or

---

[22] *See* Dkt. #143-23 at p. 12, l. 12 – p. 13, l.
[23] *See* Dkt. #187-2 at ¶ 9-10.
[24] *See* Deposition of Nealon, p. 85, l. 1-25, attached as Exhibit 2.

use when the knowledge is gained, not by the owner's volition, but by some 'improper means'…" *Id*. at 475-476. The information provided to McBride was either provided to someone who, at minimum, had an implied obligation not to share the information that had already been sold to Phagan, or was provided pursuant to express or implied obligation for McBride not to disclose such information. The only thing Armory provided McBride was a CAV-15 dealer packet.[25] The Terms and Conditions contained in the dealer packet expressly require that Armory's product samples, sales and marketing materials, and other proprietary documents be returned to Amory without retaining copies upon termination of the agreement or upon request.[26] The Terms and Conditions and the pricing sheet also expressly require that all proprietary information be kept confidential.[27]

In addition to Armory's CAD files Defendants used to develop the KP-15, they misappropriated trade secrets in Armory's investment packets. There is no evidence Armory shared the CAV-15 CAD files with anyone. Everyone who received the investment packet signed NDAs. The trier of fact must be the one to decide if Armory has satisfied the requirement of showing it took reasonable measures to guard the secrecy of its trade secrets. The evidence produced by Defendants, even when supplemented, simply does not warrant the granting of summary judgment in this case.

## CONCLUSION

Defendants' Supplement does not contain the same trade secrets as those at issue this case, and the information is neither accurate nor precise. Defendants' Supplement also does not contain the CAD files or the unified process for manufacturing a CAV-15. Therefore, Defendants'

---

[25] *See* Dkt. #187-2
[26] *See Id*. at p. 13, ¶15
[27] *See Id*. at p. 14, ¶ 22 and p.25.

Supplement does not change the fact Defendants are not entitled to summary judgment on Armory's breach of contract and misappropriation claims.

Respectfully submitted,

**JONES, GOTCHER & BOGAN, P.C.**

 s/Tadd J.P. Bogan
Tadd J.P.Bogan, OBA #20962
James E. Weger, OBA #9437
3800 First Place Tower
15 East Fifth Street
Tulsa, Oklahoma 74103
Telephone: (918)581-8200
Facsimile: (918)583-1189
E-Mail:  tbogan@jonesgotcher.com
         jweger@jonesgotcher.com
**Attorneys for Plaintiff, GWACS Armory, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on January 6, 2023, I electronically transmitted the attached document to the Clerk of Court using the Electronic Case Filing System for filing. Based on the record currently on file in this case, the Clerk of Court will transmit a Notice of Electronic Filing to those registered participants of the ECF System.

 s/Tadd J.P. Bogan
Tadd J. P. Bogan
