## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| GWACS ARMORY, LLC, an Oklahoma limited liability company, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 20-CV-0341-CVE-SH |
| KE ARMS, LLC | ) | **BASE FILE** |
| RUSSEL PHAGAN, SINISTRAL SHOOTING | ) | **Consolidated with:** |
| TECHNOLOGIES, LLC | ) | **Case No. 21-CV-0107-CVE-SH** |
| BROWNELLS, INC. and | ) | |
| SHAWN NEALON, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| KE ARMS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GWACS ARMORY, LLC, GWACS | ) | |
| DEFENSE INCORPORATED, | ) | |
| JUD GUDGEL, RUSSEL ANDERSON, | ) | |
| DOES I through X, and ROE | ) | |
| CORPORATIONS I through X, | ) | |
| | ) | |
| Defendants. | ) | |

### PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S
### MOTION TO RECONSIDER PARTIAL GRANTING OF SUMMARY JUDGMENT

**COMES NOW**, Plaintiff, GWACS Armory, LLC ("GWACS"), by and through its

attorneys of record, and for its reply to Defendant KE Arms, LLC's ("KEA") *Opposition to*

*Plaintiff's Motion to Reconsider Partial Granting of Summary Judgment* [Dkt. # 201] ("KEA's

Response"), states as follows:

**INTRODUCTION**

GWACS filed *Plaintiff's Motion [to] Reconsider Partial Granting of Summary Judgment* [Dkt. # 198] on March 13, 2023 ("Plaintiff's Motion"). KEA filed KEA's Response (Dkt. # 201) on April 3, 2023. KEA's Response mischaracterizes the evidence and raises issues of fact supporting *Plaintiff GWACS Armory, LLC's Joint Response to Defendant' KE Arms, LLC's, Russell Phagan's, and Sinistral Shooting Technologies, LLC's Motions for Summary Judgment* [Dkt. #143] ("GWACS's Response to Summary Judgment"). Based upon GWACS's Response to Summary Judgment, its motion to reconsider, and the information set forth herein, GWACS requests the court reconsider its prior ruling and deny summary judgment in favor of KEA as it relates to the design of the CAV-15 MKI and MKII.

**I.      Issues Relating to the CAV-15 MKI & MKII**

KEA alleges Russell Phagan's ("Phagan") company, Sinistral Shooting Technologies, LLC ("SST") did not represent that it had any exclusive or protected rights to the CAD drawings, prints, molds, or other property SST sold to GWACS. (KEA's Response at p. 3) When analyzing GWACS's Misappropriation of Intellectual Property claim, the Court held that the Asset Purchase and Sale Agreement between GWACS and SST (the "APSA") "does not state that SST represented that it had any exclusive or protected rights to the drawings, prints, molds, or other property sold to GWACS." (Opinion at p. 19) However, Phagan clearly represented that SST owned exclusive rights to the CAV-15 CAD files, and the designs for the CAV-15 were contained on the CAD files and prints SST sold to GWACS. Upon the sale of the CAV-15 CAD files, the same became a trade secret of GWACS. The CAV-15 CAD files contained scientific, technical, or engineering information, including patterns, plans and designs for the CAV-15, GWACS kept the same a

2

secret, and the information has independent economic value from not being generally known. (See 18 U.S.C. § 1839(3))

SST purchased the CAV-15 designs from the inventor of the CAV-15, Shawn Nealon ('Nealon") of Cavalry Arms Corporation ("Cav Arms") prior to Cav Arms selling the remainder of its assets to Christian Cappello ("Cappello") of Cavalry Manufacturing, LLC ("Cav Manufacturing"). (See Deposition of Phagan, Ex. 1 at p. 21, l. 8-23 and p. 23, l. 14 – p. 25, l. 2, and Deposition of Nealon, Ex. 2, at p. 55, l. 21 – p. 56, l. 12) Phagan represented to GWACS that the designs were exclusively owned by SST, and the APSA states "[SST] has sole and exclusive, good and merchantable title to the Assets free and clear of all pledges, claims, liens, restrictions, security interests, charges and other encumbrances." (See APSA Dkt # 124-4 at ¶ 1 & 10.2, and Ex. 1 at p. 52, l. 4 – p. 54, l. 6, p. 79, l. 5 – p. 81, l. 18, and p. 94, l. 21 – p. 97, l. 1) The CAD files for the CAV-15 were expressly identified as an asset being sold pursuant to the APSA.

Further, as set forth in Plaintiff's Motion, Phagan and SST represented numerous times that SST had exclusive ownership of the assets being sold. (*See Id.*, email dated September 28, 2021 at Dkt. 143-17, and Deposition of Phagan, attached hereto as Exhibit "3", at p. 21, l. 22- p. 22, l. 4, and Ex. 1 at p. 77, l. 19 – p. 78, l. 4) Everything listed in Phagan's September 28, 2021, email was in fact sold to GWACS pursuant to the APSA. As previously stated, the reason the APSA was vague in some regards is because Phagan amended the same so he would not have liability from the ATF if the ATF ever reviewed the contract. (*See* Ex. 3 at p. 27, l. 7-11) However, that does not mean Phagan was not selling anything less to GWACS under the APSA. (*Id.* at p. 26, l. 12 - 28, l. 1-5) For example, customer lists are not listed in the APSA, but Phagan sent GWACS customer lists on January 9, 2012, and two days later he shipped the CAD files, prints, screws and fixtures to GWACS. (See Dkt. #143-8 & 143-9) Although part of the sale, customer

3

lists were not enumerated in the APSA because Phagan was concerned about the wording should the ATF ever review the contract. (*See* Ex. 3, at p. 29, l. 2-15) Phagan expressly stated that some aspects relevant to the sale were removed from the contract, but that did not change what Phagan was in fact selling to GWACS. (*Id*. at p. 26, l. 12 – p. 28, l. 5)

Cav Arms sold Cav Manufacturing all of its remaining assets in June of 2010. (*See* Ex. 2, at p. 99, l. 19-22, and p. 101, l. 15-21) As stated above, Can Arms transferred the CAV-15 assets, including the CAD design files, to Phagan before selling the remaining assets to Cav Manufacturing. Further Cav Manufacturing publicly stated that GWACS owned the CAV-15 equipment and intellectual property (design to the CAV-15). (*See* Dkt. #143-6 & 143-7) Phagan likewise stated publicly that the CAV-15 mold and IP had been sold to GWACS. (*See* Ex. 1, at p. 84, l. 7-17 and p. 85, l. 6-22) Notwithstanding the foregoing, Phagan testified that GWACS purchased what SST <u>and</u> Cav Manufacturing purchased from Cav Arms, and that Phagan and Cappello split the proceeds from the sale. (See *Id*. at p. 66, l. 21 – p. 69, l. 11 and p. 85, l. 6-22, and Ex. 3, p. 82, l. 24 – p. 83, l. 16) The language in the APSA, Phagan's representations about his exclusive ownership of the CAV-15 CAD design and other assets being sold, Phagan's revisions to the contract that did not change what was actually being sold, the fact Cav Manufacturing also sold its CAV-15 assets to GWACS through SST, and Cav Manufacturing publicly stating GWACS had purchased the CAV-15 molds and IP, create questions of fact.

GWACS also has evidence that Phagan retained a copy of the CAV-15 CAD files and that the same were not purchased by KEA from Nealon, which create additional questions of fact as to KEA's misappropriation of GWACS's trade secrets. First, Nealon denied giving Phagan the CAV-15 CAD files. (*See* Ex. 2, at p. 56, l. 13-24) According to Nealon, the reason he did not give Phagan a copy of the CAD files was because "he didn't need them." (*Id*. at p. 81, l. 22 – p. 82, l. 3) The

4

foregoing is clearly untrue and contradicts Phagan's testimony, thus creating a question of fact. Second, Nealon testified that the ATF took the CAV-15 CAD files, and that he did not know if the ATF gave the files back. (*See Id*. at p. 44, l. 5-17 & p. 51, l. 7-14) Nealon further testified that he did not know if the designs for the CAV-15 were on the thumb drive he sold to KEA because he did not have the software to open it, and KEA did not look at the CAD files before purchasing them. (*See Id*. at p. 85, l. 1 – p. 86, l. 19 & p. 91, l. 5 – p. 92, l. 4) Furthermore, Nealon testified that he did not retain a copy of what he sold to KEA. (*Id*. at p. 80, l. 4-24) Phagan testified he also did not know what was on the CAV-15 CAD file CD he purchased from Nealon because he did not have the software needed to open it and did not recall ever looking at it himself. (*See* Ex. 1, at p. 46, l. 9-15 and Ex. 3 at p. 138, l. 1-10) Phagan later claimed the CAD files KEA purchased from Nealon included files he had not previously received as part of his dealings with Nealon. (*See* Ex. 1, at p. 119, l. 2 – p. 120, l. 4) If Phagan never looked at the CAD files he sold to GWACS, how would he know the files KEA received from Nealon in 2016 were not the same as what he sold to GWACS? During his deposition Phagan could not say how the files were different because he could not compare them. (*See Id*. at p. 197, l. 9-22) This creates another question of fact.

Further, the CAD files KEA purchased from Nealon related to KEA's pistol product development. (*See* Ex. 1 at p. 106, l. 14 – p. 107, l. 15, and Phagan's Response to Interrogatory No. 8, attached as Exhibit "4") The sale from Nealon to KEA did not have anything to do with the CAV-15. (*See* Ex. 1 at p. 107, l. 16-21) Further, Phagan testified that he does not know if the files KEA purchased from Nealon in 2016 had the complete CAV-15 MKII drawings on them. (*See Id*. at p. 120, l. 17 – p. 121, l. 18) Mike Kenney ("Kenney"), the owner of KEA testified KEA never had prints for the CAV-15 lower receiver. (*See* Deposition of Mike Kenney, attached hereto as Exhibit "5", at p. 11, l. 20-23) Kenney further testified that KEA never had CAD drawings for the

5

CAV-15 MKII. (*Id*. at p. 12, l. 15-20) When asked what was on the disk that KEA purchased from Nealon, Kenney testified he could not open most of the files purchased from Nealon and further stated, "I guess, I honestly don't remember anything that was usable that we got from the disk." (*See* Deposition of Kenney, attached hereto as Exhibit "6" at p. 165, l. 2-22) The foregoing all create questions of fact as to KEA's misappropriation of GWACS's trade secrets, namely the design of the CAV-15.

Notably, as pointed out in Plaintiff's Motion, the ribbing design of the KP-15 is different than the production model of the CAV-15 MKII. (*See* Dkt.# 198) The CAV-15 internal rib design KEA misappropriated was not available for purchase by the general public because the design was an alternative rib design. *Id*. Nealon testified, one difference between the CAV-15 MKII and the KP-15 is the ribbing in the buffer tube. (*See* Ex. 2 at p. 113, l. 13-23). Nealon's testimony is clear evidence that the ribbing design at issue was not available to the general public and could not be recreated by what was publicly available. Similarly, Kenney testified, "… that internal ribbing structure is not in a part, no." (*See* Ex. 5 at p. 18, l. 4 – p. 19, l. 16) Phagan testified he does not have any evidence GWACS ever disclosed its CAD files or drawings, except for an existing photograph of Nealon with a drawing of the CAV-15 on the wall behind him. (*See* Ex. 1 at p. 123, l. 6-12 and Dkt. #143 at p. 3 ¶ 3). However, you cannot clearly see the details in that drawing referenced by Phagan, and Nealon testified, "unless you know what it is, it just looks like just a bunch of chicken scratch." (*See* Ex. 2 at p. 87, l. 5-19) Based upon the foregoing, the CAD design for the CAV-15 was clearly a trade secret of GWACS. Despite clear evidence to the contrary, KEA denies using the CAV-15 CAD files to design the KP-15. If KEA purchased the CAV-15 CAD designs from Nealon, and such designs were not protected or exclusively owned by GWACS, KEA

would have no reason to falsely claim it never used or looked at the CAV-15 CAD files. (*See* Dkt. #143 at p. 5 ¶ 10)

Finally, Phagan testified that KEA shared and used GWACS's CAV-15 runner design with the developers of the KP-15. (*See* Ex. 3, p. 156, l. 13-22) Although Phagan testified he did not believe KEA used any runner or gating design from the CAV-15 MK II, he admitted to showing photographs of the same to the developers of the KP-15 while the KP-15 was being developed. (*Id*. at p. 156, l. 13 – p. 157, l. 16) There is no evidence the photos Phagan showed to the developers of the KP-15 were public, and Phagan nonetheless admitted those photographs were no longer publicly available when they were shared.

## II.   GWACS's Response to KEA's Further Assertions in KEA's Response.

KEA's Response falsely claims there is no evidence GWACS's investment packet was ever disclosed to KEA or its "Authorized Recipient" as required under the NDA. (KEA's Response at p. 5) Mike Kenney, the owner of KEA, testified, that the purpose of the NDA between KEA and GWACS had new product with a removable buttstock that they wanted to discuss him investing in, and they were looking at maybe talking to them about a polymer project. (*See* Ex. 6 at p. 79, l. 15-21) Kenney also testified he assumed the investment packet was sent to him around June of 2015, that he would have discussed it with Phagan, that he was surprised by the dollar amounts they were looking at. (*Id*. at p. 80, l. 4 – p. 81, l. 16). When asked about the 2018 packet, Kenney testified he remembered the initial packet, but was unsure if he saw the 2018 packet. (*Id*. at p. 97, l. 1- 5) Phagan testified he signed NDAs relative to GWACS's investment packet they sent which included their Mark III and Mark IV. (*See* Ex. 1 at p. 125, l. 12 – 20) Phagan also testified he provided Mike Kenney of KEA with the investment packet. (*Id*. at p. 126, l. 9-24)

### III.    Evidence Discovered After Summary Judgment Briefing

KEA initially alleged nothing about the CAV-15 was protected or protectable. KEA later alleged in this case that GWACS did not own any trade secrets relating to the CAV-15, and that all of the intellectual property and trade secrets of the original CAV-15 inventor, Cav Arms, were sold to Cappello and Cav Manufacturing. (*See Defendants'/Counter-Plaintiff's Opposition to Counter-Defendants' Rule 11 Motion for Sanctions* [Dkt. # 102] at p. 5; and the *Declaration of Shawn Nealon in Support of His Motion for Summary Judgment* [Dkt. # 123] at ¶ 10) KEA filed *Defendant KE Arms, LLC's Motion for Summary Judgment* [Dkt. # 117] on July l8, 2022. GWACS filed GWACS's Response to Summary Judgment on August 9, 2022. However, despite claiming there is no intellectual property or trade secrets associated with the CAV-15, and acknowledging that SST and Cav Manufacturing sold their CAV-15 assets to Armory, on October 17, 2022, KEA produced an Asset Purchase Agreement between Cavalry Manufacturing, LLC and KEA dated June 25, 2022. (*See Asset Purchase Agreement* dated 6/25/22, attached hereto as Exhibit "7")

During the deposition of Phagan he testified that when he spoke to Cappello of Cav Manufacturing, and Cappello told him "he wanted to own [the CAV-15 intellectual property] if there was money in it." (*See* Ex. 3 at p. 52, l. 4 – p. 54, l. 5) Despite repeatedly claiming nothing about the CAV-15 was a trade secret and that Nealon had the right to sell the CAV-15 CAD files to KEA in 2016, KEA paid Cappello $22,000, and agreed to pay ten percent (10%) of any judgment awarded to KEA against any person or entity for misappropriation of the CAV-15 name or the intellectual property of the Cav Manufacturing which occurred prior to the date of the agreement. (See Cav Manufacturing APA with KEA, Ex. "7") The fact KEA and Cav Manufacturing entered into an Asset Purchase Agreement in June of 2022, is evidence that Nealon/Cav Arms did not have the right to sell the CAV-15 CAD files KEA claims he sold to it in 2016, and that, contrary to

KEA's claims, there are in fact protectable rights in and to the CAV-15 design. While the CAD design for the CAV-15 may not be classified as intellectual property, it remains a trade secret of GWACS.

## CONCLUSION

GWACS has been the only producer of the CAV-15 since 2010. It was not until this litigation that KEA claimed to have purchased the CAV-15 designs from Nealon in 2016. KEA made this claim despite the fact nobody has been able to testify as to exactly what Nealon sold KEA in 2016. There is no question Nealon sold everything related to the CAV-15 in 2010 while under indictment. It is undisputed that Armory purchased everything related to the CAV-15 from SST, including what was sold to Cav Manufacturing. The sale between SST and Armory included the CAD design files for the CAV-15, which Phagan claimed was exclusively owned by SST. The CAD design for the CAV-15 is a trade secret of GWACS. Therefore, GWACS requests the Court deny KEA's request for summary judgment as to the design of the CAV-15 MK I and MKII.

Respectfully submitted,

**JONES, GOTCHER & BOGAN, P.C.**


 s/Tadd J.P. Bogan
Tadd J.P.Bogan, OBA #20962
James E. Weger, OBA #9437
3800 First Place Tower
15 East Fifth Street
Tulsa, Oklahoma 74103
Telephone: (918)581-8200
Facsimile: (918)583-1189
E-Mail:  tbogan@jonesgotcher.com
         jweger@jonesgotcher.com
**Attorneys for Plaintiff, GWACS Armory, LLC**

9

## CERTIFICATE OF SERVICE

I hereby certify that on April 12, 2023, I electronically transmitted the attached document to the Clerk of Court using the Electronic Case Filing System for filing. Based on the record currently on file in this case, the Clerk of Court will transmit a Notice of Electronic Filing to those registered participants of the ECF System.

s/Tadd J.P. Bogan<br>
Tadd J. P. Bogan