## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **GWACS ARMORY, LLC**, an Oklahoma limited liability company, ) ) ) ) **Plaintiff,** ) ) v. ) ) **KE ARMS, LLC** ) **RUSSEL PHAGAN, SINISTRAL SHOOTING** ) **TECHNOLOGIES, LLC** ) **BROWNELLS, INC.** and ) **SHAWN NEALON,** ) ) **Defendants,** ) ) and ) ) **KE ARMS, LLC,** ) ) **Plaintiff,** ) ) v. ) ) **GWACS ARMORY, LLC, GWACS** ) **DEFENSE INCORPORATED,** ) **JUD GUDGEL, RUSSEL ANDERSON,** ) **DOES I through X, and ROE** ) **CORPORATIONS I through X,** ) ) **Defendants.** ) | Case No. 20-CV-0341-CVE-SH <u>**BASE FILE**</u> Consolidated with: Case No. 21-CV-0107-CVE-SH |

### PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION
### TO EXCLUDE EVIDENCE REGARDING INVESTMENT PACKETS [DKT. # 207]

**COMES NOW**, Plaintiff, GWACS Armory, LLC ("Armory's"), by and through its attorneys of record, and for its response to *Defendant KE Arms, LLC's Motion to Exclude Evidence Regarding Investor Packets* [Dkt. # 207] ("Defendant's Motion"), states as follows:

## **INTRODUCTION**

Armory's breach of contract claim arises out of the Mutual Nondisclosure Agreement entered into between Armory and KE Arms, LLC ("KEA") on June 2, 2015 (the "KEA NDA"). After discussing Armory's CAV-15 with Russell Phagan ("Phagan"), Mike Kenney ("Kenney"), the owner of KEA, expressed an interest in investing in the CAV-15. (*See* Dkt. #203-1 at p. 126, l. 13-25) Armory and KEA entered into the KEA NDA so Armory could provide KEA with its 2015 Investment Executive Summary disclosing its financial needs, CAV-15 costs and pricing, and its CAV-15 product developments and designs. (*See Id*. and Dkt. #143-12) Phagan, the sole member of Sinistral Shooting Technologies, LLC ("SST"), which sold Armory the CAV-15, had previously entered into two Mutual Nondisclosure Agreements ("SST NDA") with Armory. (*See* Dkt. # 205-1 & 205-3) The first SST NDA was entered into when SST sold the CAV-15 to Armory and second was entered into so Armory could discuss the improvements and changes it was making to the CAV-15 with Phagan. (*See* Dkt # 203-1 at p. 125, l. 12-20) After KEA signed the KEA NDA, Phagan offered to share Armory's 2015 Investment Executive Summary with Kenney. However, KEA did not invest in the CAV-15 at that time.

In 2018, Phagan informed Armory that Mike Kenney ("Kenney"), the owner of KEA, was again interested in investing in the CAV-15. (*See* Dkt. # 205-9) Armory sought an investment into the future development of the CAV-15 from KEA for a second time in 2018, and shared its 2018 Financing Executive Summary. (*See* Dkt. # 143-11)

In addition to its claim for KEA's breach of the KEA NDA, Armory has asserted a claim against KEA for misappropriation of trade secrets. Many of the trade secrets misappropriated by KEA were included in the aforementioned investment packets KEA seeks to exclude. This

includes, but is not limited to, Armory's financial condition and needs which were disclosed in the investment packets.

KEA's basis for trying to exclude the 2015 Investment Executive Summary and 2018 Financing Executive Summary are: (1) the information was not provided to Kenney directly from an employee of Armory, (2) the KEA NDA excludes from the definition of "proprietary information" information which is in the possession of the receiving party at the time of the disclosure; and (3) misappropriation only occurs when a trade secret is acquired by improper means. As set forth below, Defendant's Motion must be denied because Kenney received Armory's proprietary information at Armory's request after signing the KEA NDA, the information in the investment packets was not already in the possession of KEA, and acquiring a trade secret through improper means includes acquiring such information under circumstances giving rise to a duty of secrecy and/or through someone bound by a duty of secrecy. As a result, Defendant's Motion must be denied.

## ARGUMENTS & AUTHORITIES

"[E]vidence is relevant if it has 'any tendency to make the existence of any fact *that is of consequence to the determination of the action* more probable or less probable than it would be without the evidence." *United States v. McVeigh*, 153 F.3d 1166, 1190 (10th Cir. 1998), *disapproved of on other grounds by Hooks v. Ward*, 184 F.3d 1206 (10th Cir. 1999) (emphasis added) (quoting Fed. R. Evid. 401). The 2015 Investment Executive Summary and the 2018 Financing Executive Summary are clearly relevant in this case.

I. **THE INVESTMENT PACKETS WERE PROVIDED TO KEA AND MIKE KENNEY**

KEA's first contention is that pursuant to the KEA NDA, only disclosures Armory made directly to Kenney through one of Armory's employees qualified for protection. The basis of this

3

argument is that the KEA NDA states, "[a]ll disclosures of information by the Disclosing Party to the Receiving Party pursuant to this Agreement shall be made by or through its "Authorized Recipient". The Authorized Recipients for the parties are identified at the end of this Agreement." (*See* Dkt.# 124-7 at ¶ 3) Kenney is identified as KEA's authorized recipient. The investment packets at issue in this case were disclosed by or through Kenney. Contrary to the claims in Defendant's Motion, Kenney admitted to receiving the 2015 investment packet and said he may have received the 2018 investment packet. (*See* Dkt. # 203-6 at p. 80, l. 4-22 & p. 97, l. 1 – 5 *see also* 203-1 at p. 126, l. 9-24) Defendant's Motion even acknowledges that Kenney was provided with the 2015 Investment Executive Summary. (*See* Defendant's Motion at Ex.1, 9 [Dkt. # 207-1])

In an email from Phagan of KEA to Shel Jones ("Jones") of Armory, Phagan states, "Signed NDA from Mike and KE Arms Attached. I can just give him the files I have already if that works." (*See* Dkt. # 207-1) In response, Jones states, "Yes you should have this one?" and attached a 2015 investment packet. (*See Id.*) The KEA NDA requires only that Kenney receive the information on behalf of KEA in order for it to be subject to the KEA NDA. The KEA NDA does not require that the information come directly from Armory to Kenney. Phagan was an employee of KEA and was Armory's direct contact at KEA. Nonetheless, the investment packets were provided to Phagan who offered to provide them to Kenney on behalf of Armory. As a result, the investment packets are clearly relevant to Armory's claim for breach of the KEA NDA.

II.     **THE INVESTMENT PACKETS WERE PROPRIETARY**

Both of the investment packets were marked "confidential". (*See* Dkt. ## 143-11 & 143-12) Notwithstanding the foregoing, Defendant's Motion argues "the investment packets cannot be deemed 'proprietary' because it was already known and in the possession of Phagan/SST."

(Defendant's Motion at p. 7) The KEA NDA excludes from the definition of proprietary information, information which: "at the time of disclosure was already in the possession of the Receiving Party" or "is independently made available to the Receiving Party by a third party <u>not bound directly or indirectly by a non-disclosure obligation</u> to the Disclosing Party." (*See* Dkt.# 124-7 at ¶ 6) First, Phagan was the Authorized Recipient under the SST NDAs, but was not the Authorized Recipient under the KEA NDA. Therefore, the information being in Phagan's possession does not equate to it being in the possession of KEA or Kenney unless or until Armory authorizes such disclosure. Second, Phagan was bound by a non-disclosure agreement pursuant to the SST NDAs in 2011 and 2013, as well as the KEA NDA signed in 2015. Further, Phagan testified that Armory required a signed NDA from Kenney <u>before</u> Phagan gave KEA Armory's investment packet. (*See* Dkt. # 203-1 at p. 126, l. 13-15) Based upon the foregoing, the investment packets were not rightfully in the possession of KEA at the time of the disclosure by Armory and were not made independently available by a third party not bound by a nondisclosure agreement. Therefore, the investment packets were clearly "proprietary" as defined by the KEA NDA.

Defendant's Motion next argues that the information in the investment packets was originally provided by Phagan, and in support thereof cites to several 2013 email exhibits attached to the *Declaration of Russell Phagan in Support of Defendants' Motion for Summary Judgment* [Dkt. # 124]. Notably, these emails were exchanged while Phagan was working as a sales representative for Armory. (*See* Dkt. # 205-2) Phagan testified that "[he] signed NDAs relative to sales and pricing data when [he] became a sales rep. [He] signed NDAs relative to [Armory's] investor packet [Armory] sent which included their Mark III and their Mark IV." (*See* Dkt. # 203-1 at p. 125, l. 17-20) Further, the emails relied upon in Defendant's Motion do not include renderings of the CAV-15 MKIII or MKIV, do not include pricing, and do not include product

costs. Although information Phagan provided while working for Armory, which occurred after he signed non-disclosure agreements, is still proprietary information of Armory, the information in the investment packets was not originally provide by Phagan/SST as Defendant's Motion contends. Phagan certainly did not provide Armory with any information about Armory's finances or its financial needs, and only learned of the same after executing the SST NDAs.

KEA's final argument is that Armory's investment packets are irrelevant to Armory's misappropriation of trade secrets claim. Defendant's Motion argues that misappropriation only occurs where the trade secret is acquired by a person who knew or should have known the trade secret was acquired by improper means, and that Armory must establish the infringer knew or had reason to know that its use of the information was improper. (*See* Defendant's Motion at pp. 8-9) To support its contention, KEA alleges "… the only access KEA would have had to the investment packet was through SST/Phagan…" *Id*. Phagan signed non-disclosure agreements with Armory using the same form as the KEA NDA. All of the non-disclosure agreements in this case provide, "[t]he Receiving Party and its personnel shall use such Proprietary Information only for the purpose set forth in paragraph 1 hereof and shall not use or exploit such Proprietary Information for its own benefit or the benefit of another without the prior written consent of the Disclosing Party." (*See* Dkt.# 124-7 at ¶ 4, 205-1 & 205-3) It is undisputed that Phagan, SST, and KEA were all bound by non-disclosure agreements prohibiting the disclosure, use, or exploitation of Armory's proprietary information.

The Court has already determined that there is a genuine dispute as to whether the information in the investment packets were trade secrets. (*See* Dkt. # 191 at pp. 21, 23, 24, 25 & 32) This includes Armory's financial condition and the features of the CAV-15 MKIII and MKIV. (*Id*. at pp. 24 & 32) 18 U.S.C. § 1839 provides in pertinent part, "the term 'trade secret' means all

6

forms and types of financial, business… technical, economic, or engineering information, including patterns, plans… designs, prototypes… whether tangible or intangible, and whether or how stored, compiled, or memorialized…if [the owner has taken reasonable measures to keep the information a secret] and the information derives economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3). Misappropriation as used in 18 U.S.C. § 1831 *et seq*. means,

>    (A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
>
>    (B) disclosure or use of a trade secret of another without express or implied consent by a person who-
>
>    (i) used improper means to acquire knowledge of a trade secret;
>    (ii) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was-
>       (I)   derived from or through a person who had used improper means to acquire the trade secret;
>       (II)  acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or
>       (III) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret; or
>    (iii) before a material change of the position of the person, knew or had reason to know that-
>       (I)   the trade secret was a trade secret; and
>       (II)  knowledge of the trade secret had been acquired by accident or mistake.

18 U.S.C. § 1839(5). The term improper "includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." 18 U.S.C. § 1839(6)(A). Phagan, SST, and KEA all had a duty to keep Armory's trade secrets confidential and to not use such information. KEA not only developed a product which "bore a substantial similarity to [Armory's] products" in the investment packet, KEA also

7

developed a competing product after it learned of Armory's financial needs and inability to produce more CAV-15 MKIIs and or fully develop and distribute the MKIII and MKIV. (*See* Dkt. # 191 at pp. 25 & 32) In addition to other information in the investment packets, KEA used and exploited its knowledge of Armory's financial needs when it decided to create the KP-15 after acquiring the same under circumstances giving rise to a duty to maintain secrecy, all of which is relevant to Armory's misappropriation of trade secrets claim. (*See* Dkt. 205-15 at p. 154, l. 24 – p. 155, l. 14) Therefore, the investment packets are clearly relevant in this case, and Defendant's Motion must be denied.

## **CONCLUSION**

Based upon the foregoing, the investment packets are clearly relevant to the issues in this action. The investor packets were not only disclosed to KEA by or through Kenney, when Phagan provided them at Armory's direction, it is also undisputed that Kenney received this information from someone bound by the SST NDA. Further, Kenney knew the investment packets contained Armory's trade secrets and were provided under a duty of secrecy. KEA then misappropriated Armory's trade secrets when it used them to create the KP-15. Further, it cannot be disputed that Phagan had no involvement in developing Armory's financial information contained in the packets. This fact alone makes Armory's investment packets relevant evidence in this case.

**WHEREFORE**, premises considered, Plaintiff GWACS Armory, LLC prays the Court deny *Defendant KE Arms, LLC's Motion to Exclude Evidence Regarding Investor Packets* [Dkt. # 207].

Respectfully submitted,

**JONES, GOTCHER & BOGAN, P.C.**

 s/Tadd J.P. Bogan
Tadd J.P.Bogan, OBA #20962
James E. Weger, OBA #9437
15 East Fifth Street, Suite 3800
Tulsa, Oklahoma 74103
Telephone: (918)581-8200
Facsimile: (918)583-1189
E-Mail:   tbogan@jonesgotcher.com
              jweger@jonesgotcher.com
**Attorneys for Plaintiff, GWACS Armory, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on May 17, 2023, I electronically transmitted the attached document to the Clerk of Court using the Electronic Case Filing System for filing. Based on the record currently on file in this case, the Clerk of Court will transmit a Notice of Electronic Filing to those registered participants of the ECF System.

 s/Tadd J.P. Bogan
Tadd J. P. Bogan