IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| GWACS ARMORY, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 20-CV-0341-CVE-SH |
| v. | ) **BASE FILE** |
| | ) Consolidated with: |
| KE ARMS, LLC | ) Case No. 21-CV-0107-CVE-SH |
| | ) |
| Defendant. | ) |

**PLAINTIFF'S REPLY TO DEFENDANT'S
OPPOSITION TO PLAINTIFF'S GWACS ARMORY, LLC'S MOTIONS IN LIMINE**

**COMES NOW**, Plaintiff, GWACS Armory, LLC ("Armory"), by and through its attorneys of record, and for its reply to KE Arms, LLC's ("KEA") *Opposition to Plaintiff GWACS Armory LLC's Motion in Limine [Dkt. 205]* ("Defendant's Response"), states as follows:

**I.     INTRODUCTION**

Defendant's Response [Dkt. #212] contains information which is factually inaccurate and/or is incomplete and misleading. In addition to the evidence at issue being irrelevant, KEA's misrepresentations of the facts of this case are precisely why the Court should exclude arguments and evidence relating to: (1) Reed Oppenheimer's personal opinions about AR-15 style rifles and other semi-automatic rifles being sold to and owned by civilians, and/or his loaning Armory money to fund this litigation; (2) Armory's FFL lapsing in 2020 and/or Armory being out of compliance with federal firearms laws and regulations; and (3) Armory's company status with the State of Oklahoma being "terminated" on May 9, 2019, for failing to file annual certificates in January of 2018 and 2019, or Armory otherwise being out of compliance with the Oklahoma Secretary of State.

## II. FACTAL BACKGROUND

Defendant's Response relies upon Dkt. 105-6 for KEA's contention that "[b]efore and after the sale [of the CAV-15 to Armory], [Armory's] business operations were funded by an investor and philanthropist named Reed Oppenheimer ("Oppenheimer"). (*See* Dkt. #212 at p. 2) The testimony cited is of Oppenheimer's accountant, Clayton Woodrum ("Woodrum"). Woodrum's testimony was simply that he believed Oppenheimer had an investment in Armory, but that he is not familiar with the investment and he does not know how much Oppenheimer has invested in Armory. *Id*. Contrary to KEA's assertions, Oppenheimer testified that he has not invested funds into Armory since his initial investment. (*See* Dkt. #134-6 at p. 3, p. 27, l. 10-12, and Depo of Oppenheimer, attached hereto as Exhibit "1", at p. 28, l. 2-8 & 61, l. 24 – p. 62, l. 2)

Defendant's Response goes on to represent to the Court that, "[s]ometime after [Armory] purchased the CAV-15 molds, however, Oppenheimer's views on semi-automatic firearms changed 'tremendously' and he was no longer interested in funding [Armory]." (*See* Dkt. 212 at p. 2) Defendant's Response further alleges that Oppenheimer stopped investing in Armory because he no longer liked the business of selling semi-automatic weapons, and "he decided not to continue his investment into [Armory's] future developments of the CAV-15" because of his personal distaste for the AR-15 market. *Id*. Additionally, Defendant's Response misrepresents to the Court that "[u]pon losing the Oppenheimer funding, [Armory] sought investment from third-parties to 'produce [its] next generation [of] CAV-15 lowers'…" *Id*. The foregoing misstates Oppenheimer's testimony. Oppenheimer testified, "… I don't recall them ever asking for additional investment" and further stated that he did not know why Armory would go out and seek investments from third parties without first seeking an investment from him. (*See* Ex. 1 at p. 60, l. 3-13 and Dkt. #205 at pp. 7-8) Oppenheimer did not stop investing in Armory because of his personal opinions about the

business of selling AR-15s, and Armory did not "lose" funding from Oppenheimer. Armory never asked Oppenheimer to make additional investments in Armory. Further, Oppenheimer testified that Armory never came to him to ask him to invest in research and development of the CAV-15. (*See* Dkt. # 134-6 at p. 65, l. 21-24). When asked if he would have made an additional investment in Armory in order to conduct further research and development of the CAV-15, Oppenheimer said, "[p]robably not". (*See id*. at p. 65, l. 25 – p. 66, l. 5) (emphasis added) However, there is no evidence Oppenheimer stopped investing in Armory because of his personal views about AR-15 rifles, when Oppenheimer's views on AR-15s changed, or that Armory sought third-party investors because it had lost Oppenheimer's funding. Therefore, Oppenheimer's personal views of AR-15s is not relevant in this case, even if the reasons Armory needed funding were relevant.

Defendant's Response clearly misrepresents the facts related to Oppenheimer's "funding" of Armory and the reason(s) Armory sought outside investments for further development and production of the CAV-15. KEA taking these types of liberties with the facts, and the prejudice such evidence would cause, is why the Court should exclude evidence and argument relating to Oppenheimer's personal opinions about AR-15 style rifles, and/or his loaning Armory money to fund this litigation, even if the Court finds that such evidence is relevant. KEA and its associates have previously gone on a campaign to mischaracterize this lawsuit as being an attack on the 2nd Amendment. (*See* Dkt. # 134 and Litigation Update post attached hereto as Exhibit "2") KEA only seeks to introduce this evidence in order to confuse the issues and create unfair prejudice for Armory. Therefore, this evidence must be excluded.

Defendant's Response further misrepresents the facts surrounding Armory's failure to file its annual certificates with the Oklahoma Secretary of State, and the testimony cited in Defendant's Response regarding Armory's Federal Firearms License ("FFL") lapsing is incomplete.

3

Defendant's Response claims Armory allowed its entity to expire and allowed its FFL to lapse "because it had 'ceased production' and [Armory] was 'not producing anymore'." (*See* Dkt. # 212 at p. 3) Armory intentionally allowed one of its three FFLs to lapse in 2017 because it was not actively manufacturing the CAV-15. (*See* Dkt. # 212-2 at p. 29, l. 1-24) As KEA is aware, one unique thing about the CAV-15 is that the lower receivers are produced in batches during production runs. (*See* Dkt. 124-8 at p. 2) ("running the mold 1-2 weeks per year…") Unlike traditional manufacturing where parts are constantly being manufactured, the CAV-15 lowers are produced in batches, held in inventory until sold, and additional production runs would only occur when additional inventory is needed. (*See Id*. and Dkt. # 124-71 at p. 11, l. 9-15, p. 21, l. 20 – 24) The FFL Armory allowed to lapse expired in 2017, was unnecessary because Armory was not currently producing lower receivers at its Tulsa location, and Armory still had another 07 (manufacturing license) that was valid. (*See* Dkt. 212-2 at p. 29, l. 1-9 and ATF data attached as Exhibit "3") The non-renewal of one of Armory's FFLs had nothing to do with Armory shutting down its business as KEA contends. Similarly, Armory never "publicly announced on Facebook that it was closing down its shop" in January of 2019, as alleged in Defendant's Response. (*See* Dkt. 212 at p. 3) Rather, Armory's Facebook post stated, "[i]nteresting developments, we have had to vacate our location. We are in the process of finding new space and will be transferring our FFL license's. We will be off grid until we get set back up." Dkt. 124-57.

  KEA is again attempting to manipulate the facts of this case to support narratives that are untrue. As stated in *Plaintiff's Motions in Limine* [Dkt. # 205], Armory's FFL to sell firearms inadvertently lapsed because Armory deposited its FFL renewal paperwork in its building's mailbox while the mail was not being regularly collected due to COVID. (*See* Dkt. # 205 at p. 10) Further, when Armory did its FFL renewals, it would ensure it was in good standing with the

4

Oklahoma Secretary of State. If Armory's annual filings with the Oklahoma Secretary of state were not up-to-date when its FFLs were renewed, Armory would file the appropriate paperwork and pay the associated fees to the State of Oklahoma before renewing its FFL. (*See* Dkt. #205-16 at p. 19, l. 20 – p. 20, l. 3; and 58, l. 2 – 25) Defendant's Response misstates the testimony and facts in this case in an effort to make them relevant to the claims and defenses herein, but this evidence is clearly irrelevant when the actual evidence and testimony are considered.

### III. ARGUMENT

#### A. Oppenheimer's Testimony is Not Relevant to Whether Armory's Trade Secrets Existed.

Defendant's Response states, "Oppenheimer's investment and decision to ultimately not continue investment into [Armory's] MKIII and MKIV designs… are relevant to the first element of a trade secret – whether or not a protectable trade secret exists." (*See* Dkt. 212 at p. 5) KEA argues, "[i]n this case, the lack of value [of] [Armory's] alleged trade secrets, as well as the lack of funds to invest into development, is material to whether its trade secret exists. Accordingly, Oppenheimer's funding of [Armory], including his reasons for ceasing investment, is material evidence in this case." *Id*. at p. 7. Defendant's Response goes on to falsely claim Oppenheimer stopped investing in Armory because he no longer liked the business. *Id*. However, Oppenheimer testified that he was not asked to invest additional funds in Armory. As stated above, Oppenheimer never made the decision to not continue to invest in Armory's MKIII and MKIV designs, because he was never asked to do so. Further, <u>why</u> Armory needed the funding for the CAV-15 MKIII and MKIV does not make a fact of consequence in this case more probable than without this evidence. Armory's need for funding does not demonstrate a lack of value in the CAV-15 or in Armory's trade secrets. One of Armory's trade secrets in this case related to Armory's need for funds to produce the CAV-15 MKIII and MKIV, and KEA used and exploited the same. Clearly the fact

Armory's polymer lower receivers would essentially be leaving the marketplace if Armory did not secure funding was valuable, because KEA made millions of dollars off sales of the KP-15 after it used and exploited Armory's financial information and its MKIII design. Whether Oppenheimer did not like AR-15s, did not want to fund Armory further, was unwilling or unable to fund further development of the CAV-15, or any other reason why Oppenheimer did not fund further development of the CAV-15, does not tend to make any fact of consequence in this case more or less probable than without this evidence. Oppenheimer can invest in whatever he wants to invest in and was under no obligation to give Armory additional funds for the future production and development of the CAV-15.

Defendant's Response further claims Armory's argument that unfair prejudice will be created by allowing KEA to conflate facts and confuse issues by repeatedly pointing out Oppenheimer's personal opinion about AR-15s is baseless. (*See* Dkt. # 212 at p. 7) However, allowing such testimony and evidence will allow KEA to continue to misrepresent facts to the jury, as it has to the Court in Defendant's Response. Allowing KEA to harp on Oppenheimer's personal feelings about AR-15s when he was never asked to invest more money into the development of the CAV-15 would be highly prejudicial to Armory. The reasons why Armory did not have the funds needed for further development of the CAV-15 are not relevant in this case. What is relevant is that Armory needed funding in order for its polymer lowers to remain in the marketplace, it disclosed that need to KEA, and KEA used and exploited Armory's need for funding (along with Armory's product designs) when it produced the KP-15. Therefore, evidence of Reed Oppenheimer's personal opinions about AR-15 style rifles must be excluded.

**B. GWACS FFL STATUS IS NOT RELEVANT TO THE VALUE OF ITS TRADE SECRETS AND/OR ITS DAMAGES.**

Armory's FFL status has no relationship to it damages in this case. Further, as noted in Defendant's Response, there are several measures of damages available in this case, including "… the amount an investor would have paid to own the trade secret" and " …the value of the trade secret to the misappropriator". (Dkt. #212 at pp. 8-9) Notably, SST did not have an FFL when it sold Armory the CAV-15 designs and production equipment. An FFL is not required to own a trade secret. Nonetheless, Armroy has an FFL. Upon discovering that Armory's FFL had inadvertently lapsed in 2020, Armory immediately called the ATF, and the ATF worked with Armory to expedite the process to get its FFL renewed. (*See* Dkt. #205-16 at p. 23, l. 22, l. 1 – p. 23, l. 21) Notably, this is not the same FFL as the one referenced in Defendant's Response. Armory intentionally allowed one of its three FFLs to lapse because it was not actively manufacturing the CAV-15 in Tulsa in 2017 when it expired. (*See* Dkt. # 212-2 at p. 29, l. 1 – 24) Notwithstanding the foregoing, Armory still had an FFL for manufacturing. (*See* Ex. 3) Armory's trade secrets are not more or less valuable because it allowed an FFL it did not need to lapse. The fact Armory allowed one of its FFLs related to manufacturing expire in 2017 does not make any fact of consequence in this action more or less probable than without the evidence, and should be excluded.

Defendant's Response alleges, "… the evidence in this case shows that [Armory] was unable to produce its 'next generation' of CAV-15 lowers, because it was unable to legally do so." Dkt. # 212 at p. 9) Armory's FFL lapsed in 2020, after KEA misappropriated Armory's trade secrets. (*See* Dkt. #205 at p. 10) Based upon the evidence in this case, at the time KEA misappropriated Armory's trade secrets it was legally able to produce its next generation of lowers, and it remains legally able to do so today.

IV.   **CONCLUSION**

Arguments and evidence relating to: (1) Reed Oppenheimer's personal opinions about AR-15 style rifles and other semi-automatic rifles being sold to and owned by civilians, and/or his loaning Armory money to fund this litigation; (2) Armory's FFL lapsing in 2020 and/or Armory being out of compliance with federal firearms laws and regulations; and (3) Armory's company status with the State of Oklahoma being "terminated" on May 9, 2019, for failing to file annual certificates in January of 2018 and 2019, or Armory otherwise being out of compliance with the Oklahoma Secretary of State, does not make any fact of consequence in this case more probable or less probable than without such evidence. Therefore, such evidence is not relevant, and should be excluded at trial.

Respectfully submitted,

**JONES, GOTCHER & BOGAN, P.C.**

 s/Tadd J.P. Bogan
Tadd J.P.Bogan, OBA #20962
James E. Weger, OBA #9437
3800 First Place Tower
15 East Fifth Street
Tulsa, Oklahoma 74103
Telephone: (918)581-8200
Facsimile: (918)583-1189
E-Mail:  tbogan@jonesgotcher.com
           jweger@jonesgotcher.com
**Attorneys for Plaintiff, GWACS Armory, LLC**

**CERTIFICATE OF SERVICE**

I hereby certify that on May 31, 2023, I electronically transmitted the attached document to the Clerk of Court using the Electronic Case Filing System for filing. Based on the record currently on file in this case, the Clerk of Court will transmit a Notice of Electronic Filing to those registered participants of the ECF System.

 s/Tadd J.P. Bogan
Tadd J. P. Bogan