UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| GWACS ARMORY, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 20-CV-0341-CVE-CDL |
| | ) | **BASE** **FILE** |
| KE ARMS, LLC, RUSSELL | ) | Consolidated with: |
| PHAGAN, SINISTRAL SHOOTING | ) | Case No. 21-CV-0107-CVE-JFJ |
| TECHNOLOGIES, INC., | ) | |
| BROWNELLS, INC., and | ) | |
| SHAWN NEALON, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| KE ARMS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GWACS ARMORY, LLC, GWACS | ) | |
| DEFENSE INCORPORATED, | ) | |
| JUD GUDGEL, RUSSELL ANDERSON, | ) | |
| DOES I through X, and ROE | ) | |
| CORPORATIONS I through X, | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

Now before the Court are the following motions: Plaintiff's Motion for Reconsider[ation of] Partial Granting of Summary Judgment (Dkt. # 198); Plaintiff GWACS Armory, LLC's Motion in Limine (Dkt. # 205); Defendant KE Arms, LLC's Motion to Exclude Evidence Regarding Investor Packets (Dkt. # 207); Defendant KE Arms, LLC's Motion to Exclude Evidence Regarding the CAV-15 MKI and MKII Designs (Dkt. # 208); and Defendant KE Arms, LLC's Motion to Exclude Expert

Testimony of Brian Haygood (Dkt. # 209). Plaintiff GWACS Armory, LLC (GWACS) asks the Court to reconsider its summary judgment ruling to the extent that the Court found that design of the MKI and MKII receivers were not trade secrets under state and federal law. Dkt. # 198. KE Arms, LLC (KEA) responds that GWACS has not provided any new evidence or identified an intervening change in the law, and there is no basis for the Court to reconsider its summary judgment ruling.[1] Dkt. # 201. GWACS and KEA have filed motions in limine asking the Court to exclude evidence at trial. Dkt. ## 205, 207, 208, 209. The parties are advised that motions in limine are not the appropriate forum for the Court to resolve disputed issues of fact, and the evidentiary issues raised by the parties must be capable of resolution based on undisputed facts in order for the Court to rule on the admissibility of evidence before trial.

I.

This case arose out of a dispute between KEA and GWACS concerning the design, manufacture, and distribution of a part for the AR-15 rifle known as the lower receiver.[2] GWACS claims that it purchased the exclusive rights to designs and equipment for the manufacture of a lower receiver, identified as the CAV-15, from Sinistral Shooting Technologies (SST), which had previously purchased the same items from Cavalry Arms Corporation (Cavalry). SST was owned

---

[1] KEA argues that reconsideration would be appropriate only if the Court were to grant summary judgment in favor of KEA on all claims. However, KEA has not filed a motion to reconsider and requests for reconsideration are disfavored. The Court declines KEA's invitation to reconsider its summary judgment ruling.

[2] The Court will provide a brief summary of the factual background based on the summary judgment record and the Court's opinion and order (Dkt. # 191). This is not intended to be a complete recitation of the relevant factual background contained in the Court's prior opinion and order, and is provided merely to provide context for the motions currently pending before the Court.

by Russell Phagan, and Cavalry was owned by Shawn Nealon. Phagan later worked as a sales representative for GWACS, and he subsequently worked for KEA while it was marketing a lower receiver known at the KE-15. In June 2015, KEA and GWACS entered a non-disclosure agreement (NDA) for the purpose of evaluating a potential business relationship, but KEA denies that it received any proprietary information from GWACS pursuant to the NDA. In particular, KEA denies that it received an investor packet with information about GWACS' financial condition. Dkt. # 207, at 2.

GWACS claims that KEA used confidential or proprietary information disclosed pursuant to the NDA to develop a competing product, and GWACS accuses KEA of violating the NDA. On April 7, 2020, GWACS sent a cease and desist letter to KEA, alleging that KEA was attempting to develop a competing product that infringed on GWACS's intellectual property rights. Dkt. # 122, at 15. GWACS claimed that it shared information with KEA pursuant to an NDA, and GWACS demanded that KEA cease from manufacturing or distributing a lower receiver that bore a likeness to GWACS' products. Id. The parties were unable to resolve their dispute and GWACS filed this case alleging claims against KEA, Phagan, Nealon, SST, and Brownells, Inc. KEA filed its own lawsuit against GWACS in the United States District Court for the District of Arizona, but that case was transferred to this Court and consolidated with the case filed by GWACS.

The parties filed numerous pretrial motions, including motions to dismiss, discovery motions, and motions for summary judgment. On February 23, 2023, the Court entered an opinion and order (Dkt. # 191) granting the motions for summary judgment filed by Brownells, SST, and Phagan, and GWACS agreed to dismiss its claims against Nealon with prejudice. The Court granted in part and denied in part KEA's and GWACS motions for summary judgment, but the number of claims and

counterclaims proceeding to trial was substantially limited. GWACS' claims of breach of contract and misappropriation of trade secrets remain pending for trial, but only as to models of its lower receiver that were not generally available to the public. Dkt. # 191, at 25. The Court also found that information about GWACS' financial status could qualify as a trade secret because this evidence may not have been known to the public, and the evidence tended to show that GWACS was not in a position to distribute or manufacture any of its products. Id. at 23. KEA's only remaining counterclaim is one for declaratory relief, and KEA seeks a declaratory judgment that it did not violate the terms of the parties' NDA. Id. at 40.

## II.

GWACS asks the Court to reconsider the summary judgment ruling to the extent that the Court found that design of the MKI and MKII receivers were not trade secrets, and GWACS suggests that the Court "may need clarification regarding certain CAV-15 design features that were not publicly disclosed . . . ." Dkt. # 198, at 2. GWACS argues that it had a production model of the MKII that was sold to the general public, but the design of the MKII disclosed to KEA was based on a design that differed from the production model. Id. at 3. KEA responds that GWACS has not identified any new evidence or an intervening change in the law, and there is no reason for the Court to reconsider its summary judgment ruling. Dkt. # 201, at 10.

In the Court's prior opinion and order (Dkt. # 191), the Court reviewed the evidence to determine what information disclosed to KEA by GWACS could qualify as a trade secret under state and federal law. The Court considered the various contracts by which information was sold, and the measures taken by GWACS to maintain secrecy of the information it acquired from SST. Dkt. # 191, at 17-24. The Court noted that the asset purchase agreement between SST and GWACS stated

that GWACS was purchasing "intellectual property," but SST did not claim to have any patents, copyrights, or other legally protected rights to the items being sold. Id. at 19. GWACS claimed that it provided information to KEA pursuant to an NDA, and GWACS argued that much of the information provided to KEA pursuant to the NDA qualified as a "trade secret" under state and federal law. Id. at 22. GWACS took the position that it was "undisputed" that KEA used information provided under the NDA to develop a new product, even though this is one of the key issues in dispute in this litigation. Dkt. # 121, at 11; Dkt. # 143, at 5; Dkt. # 144, at 10-11. KEA responded to this argument by producing evidence that GWACS provided photographs, information, and design specifications to customers seeking to modify MKI and MKII receivers, and KEA argued that GWACS generally failed to maintain secrecy of information related to all of its lower polymer receivers. Dkt. # 191, at 23. The Court agreed that the MKI and MKII receivers could not be considered "trade secrets" due to GWACS' failure to maintain secrecy of the design, composition, and features of these products. Id. These products were available to the general public and were not protected by a patent, and anyone was free to obtain the MKI and MKII receivers and reverse engineer the product. Id. However, the MKIII and MKIV receivers were not available to the general public, information about these products may have been disclosed to KEA pursuant to an NDA, and there was a genuine dispute as to whether the MKIII and MKIV were trade secrets.

Under Federal Rule of Civil Procedure 59(e), a party may ask a district court to reconsider a final ruling or judgment when the district court has "misapprehended the facts, a party's position, or the controlling law." Barber ex rel. Barber v. Colo. Dep't of Revenue, 562 F.3d 1222, 1228 (10th Cir. 2009). "Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or

5

prevent manifest injustice." Servants of Paraclete v. Does, 204 F.3d 1005, 1012 (10th Cir. 2000). Reconsideration is "not available to allow a party to reargue an issue previously addressed by the court when the reargument merely advances new arguments or supporting facts which were available for presentation at the time of the original argument." FDIC v. United Pac. Ins. Co., 152 F.3d 1266, 1272 (10th Cir. 1998) (quoting Cashner v. Freedom Stores, Inc., 98 F.3d 572, 577 (10th Cir. 1996)). "A Rule 59(e) motion to reconsider is designed to permit relief in extraordinary circumstances and not to offer a second bite at the proverbial apple." Syntroleum Corp. v. Fletcher Int'l, Ltd., 2009 WL 761322 (N.D. Okla. Mar. 19, 2009).

The Court has reviewed GWACS' motion and finds no basis to reconsider its prior ruling. GWACS argues that the Court failed to consider that there were differences between the production models of the MKI and MKII receivers and the designs that were disclosed to KEA pursuant to the NDA. However, GWACS did not clearly raise this argument in its motion for summary judgment or any other filing and, instead, GWACS chose to argue that it was "undisputed" that KEA misappropriated the designs disclosed pursuant to the NDA. GWACS did not clearly distinguish in its summary judgment filings between the production model of the MKII and the design disclosed to KEA, even though KEA argued that GWACS failed to maintain secrecy of the design of the MKI and MKII receivers. The Court relied on the parties to frame the arguments for consideration when it reviewed the voluminous summary judgment record, and the Court issued a 41 page opinion and order (Dkt. # 191) considering the arguments raised by the parties. GWACS chose to assert an argument that it was undisputed that KEA used GWACS' proprietary information to develop a competing product, and KEA responded by producing evidence showing that GWACS failed to maintain secrecy of the designs of the MKI and MKII receivers. The Court rejected GWACS'

argument and found that GWACS freely shared information and design specifications of the MKI and MKII receivers with customers. Dkt. # 191, at 22-23. The Court considered the arguments actually asserted by GWACS and rejected those arguments, and GWACS may not assert new arguments in the guise of "clarification" after it has had an opportunity to review the Court's summary judgment ruling. GWACS' motion (Dkt. # 198) for partial reconsideration of the summary judgment ruling is denied.

### III.

KEA has filed three motions in limine (Dkt. ## 207, 208, 209) seeking to exclude evidence at trial. KEA asks the Court to exclude the expert testimony of Brian Haygood, an expert retained by GWACS to testify about similarities between CAV-15 MKI and MKII receivers and the KP-15 receiver later sold by KEA. Dkt. # 209. KEA argues that evidence concerning the MKI and MKII receivers is wholly irrelevant in light of the Court's summary judgment ruling. Dkt. # 208. KEA also argues that it did not receive an investor packet under the proper channels required by the parties' NDA, and KEA asks the Court to exclude all evidence relating to the investor packets. Dkt. # 207. GWACS asks the Court to exclude testimony of one of its investors, Reed Oppenheimer, concerning his opinion about AR-15 rifles and GWACS' use of Oppenheimer's investment to fund this lawsuit. Dkt. # 205, at 6-9. GWACS also argues that it is irrelevant that it permitted one of its federal firearms licenses (FFL) to lapse and, in a similar argument, GWACS also asserts that it is not relevant that it failed to file necessary documents to remain in good standing with the Oklahoma Secretary of State in 2014 and 2019. Id. at 10-12.

"The purpose of a motion in limine is to aid the trial process by enabling the Court 'to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitively

7

set for trial, without lengthy argument at, or interruption of, the trial.'" Mendelsohn v. Sprint/United Management Co., 587 F. Supp. 2d 1210, 1208 (D. Kan. 2008). However, a court is almost always better situated to make evidentiary rulings during trial, and a court may defer an in limine ruling unless the party seeking to exclude evidence shows that the evidence is inadmissible on all potential grounds. Wright v. BNSF Railway Co., 2016 WL 1611595, *1 (N.D. Okla. Apr. 22, 2016). Defendant removed this case to federal court based on diversity jurisdiction, and the admissibility of evidence is generally governed by federal law. Blanke v. Alexander, 152 F.3d 1224, 1231 (10th Cir. 1998). State law concerning the admissibility of evidence will be considered only if the issue involves a "substantive" state rule of evidence, such as the collateral source rule or the parol evidence rule. Id. The parties are advised that all ruling on the motions in limine are preliminary, but the Court will refrain from offering an in limine ruling if the issue raised by the parties' requires the Court to resolve disputed factual issues.

**Exclusion of MK I and MK II Designs and Opinions of Brian Haygood (Dkt. ## 208, 209)**

KEA argues that evidence concerning the design of the MKI and MKII receivers is irrelevant in light of the Court's summary judgment ruling, and KEA asks the Court to exclude evidence relating only to the design of the MKI and MKII receivers. Dkt. # 208, at 2-3. KEA argues that evidence related solely to the design of the MKI and MKII receivers would be unfairly prejudicial to KEA and would be offered merely to confuse the jury. Id. at 4. KEA also seeks to exclude the expert testimony of Brian Haygood, a firearms expert retained by GWACS, who intends to opine that the KP-15 produced by KEA was "based heavily" on the design files for the MKII, and he further intends to testify that KEA misused "intellectual property" owned by GWACS. Dkt. # 209-1, at 11.

The Court previously granted summary judgment in favor of KEA on GWACS' misappropriation of trade secrets and breach of contract claims as to the MKI and MKII models of GWACS' lower receiver. Dkt. # 191, at 22-23, 28. However, the Court determined that there was a genuine dispute as to whether KEA learned of the design and features of the MKIII and MKIV models through information that was disclosed pursuant to an NDA. GWACS retained Haywood to offer expert testimony supporting its assertion that KEA essentially copied the MKII for the design of its KP-15 receiver. Dkt. # 209-1, at 2-11. GWACS maintains that evidence concerning the design of the MKI and MKII receivers was obtained improperly by KEA, because KEA could have obtained the designs only be means of Phagan's knowledge of the designs or through materials disclosed pursuant to an NDA. Dkt. # 211, at 3. GWACS claims that it is relevant to its remaining claims that KEA allegedly copied the design of the MKII for its own KP-15 receiver, because this makes it more likely that KEA was attempting to replicate the MKIII and it rebuts KEA's assertion that it developed the KP-15 "from scratch." Id. GWACS also claims that it goes to the "honesty and credibility" of KEA if GWACS can prove that KEA is lying about whether it relied on the design of the MKII to develop its own product. Id. For the same reasons, GWACS argues that Haywood's expert testimony should be admissible to show that KEA copied the design of the MKII for its own product. Id. at 9.

The Court finds that KEA's motion in limine (Dkt. # 208) to wholly exclude evidence concerning the MKI and MKII receivers should be denied to the extent it is overly broad, but the Court rejects the arguments raised by GWACS for the admissibility of the design, manufacture, and features of the MKI and MKII receivers. Information concerning the design and manufacture of the MKI and MKII receivers may be relevant as background information, particularly to distinguish

9

those products from the MKIII and MKIV models and to highlight features that tend to show that designs of the MKIII and MKIV are trade secrets. However, it is clear that GWACS does not intend to offer this evidence merely as background information, and GWACS seeks to use the evidence to cast KEA as a bad actor that illegally obtained the designs of the MKII receiver and copied the design for its own product. Those arguments are foreclosed by the summary judgment ruling, and GWACS appears to be searching for a way to work around the Court's finding that the designs of the MKI and MKII receivers are not trade secrets. It is not relevant to any issue in this case whether the design of the KP-15 was in whole or in part based on the design of the MKII, because GWACS previously failed to meet its burden to show that it maintained secrecy of this information. Dkt. # 191, at 22-23. KEA has not established that evidence concerning the MKI and MKII receivers will be wholly irrelevant to any issue that could arise at trial, but GWACS is cautioned that it will not be permitted to imply that KEA engaged in illegal or improper conduct if it relied on the design of the MKI or MKII for its KP-15 receiver. The motion (Dkt. # 208) is granted in part and denied in part.

Based on this limitation, the Court finds that Haygood's expert testimony will likely be irrelevant at trial, and KEA's motion to exclude Haygood's testimony is preliminarily granted in part. The primary purpose of Haygood's testimony is to show that KEA illegally copied the design of the MKII to develop its own KP-15 receiver and, for the reasons stated above, this evidence is not likely to be relevant to any issue that may arise at trial. However, the Court finds that it would be premature to wholly exclude Haygood's testimony, because his expert report (Dkt. # 209-1) contains a discussion concerning general features of lower receivers that be relevant as background information. Therefore, KEA's motion (Dkt. # 209) to exclude Haygood's testimony is granted in part and denied in part.

those products from the MKIII and MKIV models and to highlight features that tend to show that designs of the MKIII and MKIV are trade secrets. However, it is clear that GWACS does not intend to offer this evidence merely as background information, and GWACS seeks to use the evidence to cast KEA as a bad actor that illegally obtained the designs of the MKII receiver and copied the design for its own product. Those arguments are foreclosed by the summary judgment ruling, and GWACS appears to be searching for a way to work around the Court's finding that the designs of the MKI and MKII receivers are not trade secrets. It is not relevant to any issue in this case whether the design of the KP-15 was in whole or in part based on the design of the MKII, because GWACS previously failed to meet its burden to show that it maintained secrecy of this information. Dkt. # 191, at 22-23. KEA has not established that evidence concerning the MKI and MKII receivers will be wholly irrelevant to any issue that could arise at trial, but GWACS is cautioned that it will not be permitted to imply that KEA engaged in illegal or improper conduct if it relied on the design of the MKI or MKII for its KP-15 receiver. The motion (Dkt. # 208) is granted in part and denied in part.

Based on this limitation, the Court finds that Haygood's expert testimony will likely be irrelevant at trial, and KEA's motion to exclude Haygood's testimony is preliminarily granted in part. The primary purpose of Haygood's testimony is to show that KEA illegally copied the design of the MKII to develop its own KP-15 receiver and, for the reasons stated above, this evidence is not likely to be relevant to any issue that may arise at trial. However, the Court finds that it would be premature to wholly exclude Haygood's testimony, because his expert report (Dkt. # 209-1) contains a discussion concerning general features of lower receivers that be relevant as background information. Therefore, KEA's motion (Dkt. # 209) to exclude Haygood's testimony is granted in part and denied in part.

**Exclusion of GWACS' Investor Packets (Dkt. # 207)**

KEA argues that GWACS never disclosed an investor packet containing proprietary information or trade secrets to KEA pursuant to an NDA, and the investor packets are irrelevant to GWACS' claims. Dkt. # 207, at 6-7. KEA asserts that the NDA required that any proprietary information be disclosed to KEA's authorized representative, Mike Kenney, but Kenney denies that he received an investor packet from GWACS. Id. at 7. KEA also disputes that the investor packets contained "proprietary information," because the allegedly proprietary information was already known to KEA. GWACS disputes KEA's contention that GWACS failed to provide investor packets to Kenney, and GWACS cites evidence suggesting that Kenney recalls reviewing the 2015 investor packet. Dkt. # 210, at 3-4. GWACS also claims that KEA was not properly in possession of the same information contained in the investor packets, and the information was considered proprietary under the NDA. Id. at 5-6.

The parties have presented conflicting evidence as to whether Kenney received the investor packets pursuant to an NDA, and the Court will not resolve disputed factual issues when ruling on a motion in limine. The parties have also offered conflicting evidence concerning whether the information in the investor packets was already known to KEA before it allegedly received an investor packet, and GWACS argues that there is evidence suggesting that KEA improperly received information contained in the investment packets from Phagan. Dkt. # 210, at 5. KEA's request to exclude the investor packets is not appropriate for an in limine ruling, because the motion is based on contested factual issues that must be resolved by the jury. The motion is denied.

11

**Oppenheimer's Statements Concerning AR-15 (Dkt. # 205)**

GWACS asks the Court to exclude the opinions of Oppenheimer, a GWACS investor, that he does not like the AR-15 rifle and that he loaned money to GWACS to fund this lawsuit. Dkt. # 205, at 6. The parties are advised that the opinions of Oppenheimer or any other witness as to their personal opinions about the AR-15 rifle are not relevant, and the parties should not elicit such testimony from any witness. It is also not relevant that Oppenheimer loaned money to GWACS to fund this lawsuit. However, GWACS' ability to produce and manufacture the lower receivers at issue in this case is highly relevant, and KEA has come forward with evidence that GWACS lacks the necessary funding for production of its CAV-15 receivers. The parties have provided portions of Oppenheimer's deposition testimony, and he clearly states that he will not invest in GWACS for further development of products related to the AR-15. GWACS contends that the lack of funding to manufacture its product does not detract from the value of its trade secrets, but KEA has a legitimate argument that GWACS should not be able to recover damages for lost profits if it could not actually produce and market its products. The Court finds that Oppenheimer's or any other witness' opinions about the AR-15 rifle should be excluded at trial, but KEA may offer testimony that Oppenheimer declined further investment in GWACS's business. The motion is granted in part and denied in part as to this issue.

**Status of GWACS's Federal Firearms License and  
Oklahoma Business Registration (Dkt. # 205)**

GWACS argues that KEA should not be permitted to offer evidence that GWACS' federal firearms license lapsed or that GWACS failed to maintain current registration with the Oklahoma Secretary of State. Dkt. # 205, at 10-12. GWACS does not dispute that one of its federal firearms

licenses lapsed in June 2020, and KEA has also produced evidence showing that GWACS allowed one of its three federal firearms licenses to lapse in 2017. Dkt. # 205, at 10; Dkt. # 212-2, at 9. GWACS also does not dispute that it failed to file annual certificates and pay fees to the Oklahoma Secretary of State for operating a business in the state of Oklahoma, and GWACS' status was listed as "terminated" for approximately three years due to two separate failures to remain in good standing with the Oklahoma Secretary of State. Dkt. # 205, at 11. GWACS argues that its federal firearm license lapsed in 2020 due to a clerical error on its part, and its claims that status as a terminated business with the Oklahoma Secretary of State did not impair the validity of its contractual agreements with any person or entity. Id. at 10-12. GWACS may explain to the jury how its federal firearms licenses lapsed or why it chose not to comply with the requirements of the Oklahoma Secretary of State to legally operate a business in Oklahoma, but KEA has a valid argument that these facts are relevant to GWACS' demand for damages. GWACS has not shown that this evidence will be inadmissible and, even if the evidence is prejudicial to GWACS, it is not unfairly prejudicial. The motion is denied as to this issue.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Reconsider[ation of] Partial Granting of Summary Judgment (Dkt. # 198) and Defendant KE Arms, LLC's Motion to Exclude Evidence Regarding Investor Packets (Dkt. # 207) are **denied**.

**IT IS FURTHER ORDERED** that Plaintiff GWACS Armory, LLC's Motion in Limine (Dkt. # 205) is **granted in part** and **denied in part**: the motion is granted as to witness opinions about the AR-15 rifle and Oppenheimer's funding of this lawsuit, but the motion is denied in all other respects.

**IT IS FURTHER ORDERED** that Defendant KE Arms, LLC's Motion to Exclude Evidence Regarding the CAV-15 MKI and MKII Designs (Dkt. # 208) and Defendant KE Arms, LLC's Motion to Exclude Expert Testimony of Brian Haygood (Dkt. # 209) are **granted in part** and **denied in part**: evidence testimony concerning the MKI and MKII designs may be admissible as factual background, but this evidence is not admissible for the purpose of showing that KEA engaged in unlawful or improper conduct.

**IT IS FURTHER ORDERED** that the parties shall file a joint status report concerning trial deadlines and the scheduling of a settlement conference no later than **November 7, 2023**.

**DATED** this 24th day of October, 2023.

*[Signature]*
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE