# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| GWACS ARMORY LLC ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | |
| ) | Case No.: 20-cv-341-JDR-SH |
| KE ARMS, LLC, ) | BASE FILE |
| ) | Consolidated with: |
| ) | Case No. 21-cv-107-JDR-SH |
| ) | |
| **Defendant.** ) | |

## DEFENDANT KE ARMS LLC'S TRIAL BRIEF REGARDING MOTION FOR JUDGMENT AS A MATTER OF LAW

Defendant, KE Arms, LLC ("KEA") by and through their attorneys, hereby submits its Brief Regarding Motion for Judgment as a Matter of Law.

**I.     INTRODUCTION**

Throughout this case, KEA has maintained there is no information which it acquired from GWACS Armory, LLC ("GWACS") that is entitled to protection as a trade secret, either under federal or Oklahoma state law (i.e., the DTSA or UTSA). This issue was exemplified by GWACS' inability to define or decide on specific trade secrets upon which its claims are supposedly based, and the Court previously found certain categories of information could not qualify as trade secrets, narrowing GWACS' claims in several regards, as a matter of law.

1

The Court has required GWACS to identify the specific alleged trade secrets which it intends to ask the jury to consider, and GWACS has now (during trial) proposed a verdict form with nine specific alleged trade secrets identified. It is apparent that GWACS' evidence cannot support a rational finding that any of the identified pieces of information is entitled to trade secret protections, for the reasons stated below. And, because GWACS bears the burden of proving the existence of a trade secret as an essential element of both of its remaining claims, judgment as a matter of law should be entered in KEA's favor on GWACS' claims.

Accordingly, the Court should enter judgment as a matter of law in KEA's favor on GWACS' two remaining claims, as each of the alleged trade secrets now identified by GWACS is not entitled to trade secret protection, where GWACS has not presented evidence that the information was kept confidential from third parties, nor that the information has any value derived from its confidential nature. Alternatively, even if the Court finds a genuine issue as to whether the identified information could qualify as "proprietary" under the NDA, the Court should still enter judgment in KEA's favor on GWACS' first claim, and only permit the breach of contract to go to the jury.

Second, if the Court does not dismiss the misappropriation of trade secrets claim, the Court should enter judgment as a matter of law in KEA's favor on the issue of exemplary or punitive damages. GWACS has presented zero evidence from which a rational trier of fact could find malice or intentionality behind the alleged misappropriation,

2

and thus GWACS has not met its burden of supporting a claim for exemplary or punitive damages.

## II. RELEVANT FACTUAL BACKGROUND

1. Two of GWACS' claims remain for trial: (1) misappropriation of trade secrets, pursuant to both federal law (18 U.S.C. § 1832 et seq.) and Oklahoma law (Okla. Stat. tit. 78 § 85 et seq.); and (2) breach of contract, related to the Mutual Nondisclosure Agreement dated June 2, 2015 between GWACS and KEA.[1]

2. The Court ordered GWACS to identify the specific alleged trade secrets at issue.[2]

3. GWACS submitted a proposed verdict form which identifies the following nine alleged trade secrets to be submitted to the jury:

   1) GWACS' enlarged trigger guard design on the CAV-15 MKIII;

   2) GWACS' QD socket on the CAV-15 MKIII;

   3) GWACS' location of the QD Socket on the CAV-15 MKIII;

   4) GWACS' flared magazine well feature of the CAV-15 MKIII;

   5) GWACS' inability to produce polymer lower receivers for the market after 2015;

---

[1] *See* Dkt. # 244 (Joint Pretrial Order).

[2] *See* Dkt. # 241.

6) GWACS' need for financing to produce the CAV-15 MKIII and MKIV;

7) The amount of money GWACS needed to produce the CAV-15 MKIII and MKIV;

8) GWACS' pricing of the CAV-15 MKIII as set forth in the April 2015 investment packet; and

9) GWACS' financial projections for the CAV-15 MKIII and MKIV as set forth in the April 2015 investment packet.

## III. LAW AND ARGUMENT

### A. LEGAL STANDARD – JUDGMENT AS A MATTER OF LAW

Fed. R. Civ. P. 50(a) enables the Court to enter judgment as a matter of law during trial, at any time after a party has been fully heard on an issue but before the case is submitted to the jury.[3] Judgment as a matter of law on a claim is appropriate if (a) "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on [an] issue," and (b) the challenged claim "can be maintained or defeated only with a favorable finding on that issue."[4] In other words, when "all the evidence in the record reveals no legally sufficient evidentiary basis for a claim under the controlling law," the opposing party is entitled to judgment as a matter of law.[5] In making

---

[3] Fed. R. Civ. P. 50(a)(2).

[4] Fed. R. Civ. P. 50(a)(1).

[5] *Bill Barrett Corp. v. YMC Royalty Co.*, 918 F.3d 760, 766 (10th Cir. 2019).

this determination, the Court must draw all reasonable inferences in favor of the nonmoving party, and must not weigh evidence, judge witness credibility, or challenge the factual conclusions of the jury.[6]

### B. KEA IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON GWACS' CLAIMS.

GWACS has two remaining claims in this case: (1) misappropriation of trade secrets, and (2) breach of contract stemming from alleged violation of an NDA by disclosure of trade secrets.

#### 1. The Defend Trade Secrets Act (DTSA) and the Oklahoma Uniform Trade Secrets Act (UTSA) each require the plaintiff to prove the existence of a trade secret.

To prevail on a DTSA claim, a plaintiff must prove: (1) the existence of a trade secret; (2) a misappropriation of the trade secret by another; and (3) the trade secret's relationship to a product or service used or intended for use in interstate or foreign commerce. 18 U.S.C. § 1836(b)(1). Similarly, to prove misappropriation of a trade secret under Oklahoma law, a plaintiff must show (1) the existence of a trade secret, (2) misappropriation of the secret by defendants, and (3) use of the secret to plaintiff's detriment. *MTG Guarnieri Mfg., Inc. v. Clouatre*, 2010 OK CIV APP 71, 239 P.3d 202; *see also* 78 O.S.2001 §§ 85–94; *see also Micro Consulting, Inc. v. Zubeldia*, 813 F.Supp. 1514, 1534 (W.D.Okla.1990), affirmed, 959 F.2d 245 (10th Cir.1992); *see also* 78 O.S.2001 §§ 85–94 and, specifically, § 86. Thus, regardless of whether the DTSA or

---

[6] *Id.*

UTSA is applied, the first necessary element of this claim is establishing the existence of a trade secret.

Similarly, GWACS' breach of contract claim is premised on the NDA entered into between the parties, and specifically GWACS alleges that KEA breached the NDA when it disseminated to third parties trade secrets that were disclosed under the NDA. Thus, both of GWACS' remaining claims necessarily require GWACS prove that a trade secret existed to be misappropriated. If no reasonable jury could find for GWACS on the issue of whether a trade secret existed, then KEA is entitled to judgment as a matter of law on the claim as to that alleged trade secret.

The Defend Trade Secrets Act, 18 U.S.C. § 1831 et seq. ("DTSA"), defines a "trade secret" as:

> all forms and types of financial, business, scientific, technical, economic, or engineering information, including patters, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if –
>
> > (A) the owner thereof has taken reasonable measures to keep such information secret; and
> >
> > (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

18 U.S.C. § 1839(3). Meanwhile, Oklahoma has adopted the Uniform Trade Secrets Act (UTSA), which defines a "trade secret" as:

>information, including a formula, pattern, compilation, program, device, method, technique or process, that:
>
>>a. derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use, and
>>
>>b. is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

OKLA. STAT. tit. 78, § 86(3). Additionally, Oklahoma courts consider the factors from the Restatement of Torts, § 757, Comment B to assist courts in determining whether information is a trade secret, and these factors are:

>(1) the extent to which the information is known outside of the business; (2) the extent to which the information is known by employees and others involved in the business; (3) the extent of measures taken by the business to guard the secrecy of the information; (4) the value of the information to the business and to competitors; (5) the amount of effort or money expended by the business in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*MTG Guarnieri Mfg., Inc. v. Clouatre*, 239 P.3d 202, 210 (Okla. Civ. App. 2010). Even if some of these factors weigh in favor of finding a trade secret, each factor must be thoroughly considered in determining whether information should qualify as a trade secret. *See, e.g. Southwest Stainless, LP v. Sappington*, 582 F.3d 1176, 1189–90 (10th Cir. 2009) (although facts revealed that plaintiff had taken multiple steps to keep pricing information confidential, "these facts do not establish enough," where the plaintiff took only general measures, and did not always do so, in particular as to the specific pricing quote at issue

which was known to outsiders and a third party could properly acquire the information simply by requesting it).

The Restatement approach is consistent with reasoning applied by the United States Supreme Court, which has stated that the primary consideration in determining whether information qualifies as a trade secret is "the extent to which the owner of the secret protects his interest from disclosure to others." *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002, 104 S.Ct. 2862 (1984). Accordingly, it follows that "[i]f an individual discloses his trade secret to others who are under no obligation to protect the confidentiality of the information, or otherwise publicly discloses the secret, ***his property right is extinguished***." *Id.* (emphasis added).

Both the DTSA and UTSA place the burden on the plaintiff to present evidence that proves the information alleged to be a trade secret meets the definition of a trade secret. *See e.g., Bimbo Bakeries USA, Inc. v. Sycamore,* 29 F.4th 630, 642 (10th Cir. 2022) (applying Utah's identical statutory definition of trade secret); *see e.g., Bradbury Co. v. Teissier-duCros,* 413 F. Supp. 2d 1209, 1221–22 (D. Kan. 2006) (applying Kansas' identical statutory definition of trade secret); *see also Dodson International Parts, Inc. v. Altendorf,* 347 F.Supp.2d 997, 1012 (D. Kan. 2004). Thus, a plaintiff cannot prevail simply by relying on speculation or presumption that information is shared as a general matter. *Double Eagle Alloys, Inc. v. Hooper*, 2024 WL 3166921, Case No. 19-cv-243-JDR-CDL (N.D. Okla. June 25, 2024) (quoting *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988)).

**2.     GWACS has presented no evidence that would establish that the information at issue qualifies as trade secrets, and the evidence in truth establishes the opposite to be true.**

While GWACS has now identified the precise information which it alleges to be trade secrets forming the foundation of their remaining claims, GWACS has failed to present any evidence that would enable the jury to find that any of the information qualifies as trade secrets. In fact, the evidence presented, even when taken in the light most favorable to GWACS, would preclude any rational trier of fact from finding in GWACS' favor on the existence of trade secrets here.

**a.     Alleged trade secrets 1–4 (features of the CAV-15 MKIII)**

The first four identified "trade secrets" each concern specific features of the CAV-15 MKIII, specifically: (1) the enlarged trigger guard design, (2) the QD socket, (3) the location of the QD socket, and (4) the flared magazine well.[7] The Court previously noted that the designs of the proposed receivers were posted and easily accessible to the general public via YouTube,[8] however the Court had reservations about granting summary judgment on this issue at that time, caused by the lack of specificity as to the actual features that GWACS was alleging to be trade secrets; it was unclear whether some features may have been publicly disclosed while others were not.

---

[7] It should be noted that Plaintiff Exhibit 23 (the purported location of such alleged trade secret) does not identify a flared magwell as a part of any features of the MKIII. As such, this feature was never even disclosed. Moreover, Brownells published advertising of the MKIII describes it as having "adds to the MKII feature set multiple QD swing swivel sockets…" and the MK IV as "comes with a eight position adjustable stock plus integrated single point sling mount." *See* Plaintiff Exhibit 28.

[8] Dkt # 191, at 22–23.

Now that GWACS has specified the four design features that it believes to be trade secrets, and based on the evidence presented at trial, it is readily apparent that GWACS did not take any measures to keep these specific features "secret," and rather the evidence has shown that the information had been voluntarily disseminated to the public, and was easily accessible to the public, thereby destroying any possibility that GWACS considered the information to be trade secrets within the ambit of DTSA or UTSA.[9]

Not only is it abundantly clear that these design features were not confidential, but GWACS also has failed to present any evidence of how these design features derive some independent economic value from being secret. This is likewise a required element under both the DTSA and the UTSA. Thus, GWACS has failed on both fronts to prove that this information is entitled to protection as trade secrets.

### b.  Alleged trade secrets 5–9 (GWACS' financial information)

The remaining asserted "trade secret" information concern GWACS' particular financial analysis and prospects, specifically, (1) that GWACS was unable to produce polymer lower receivers for the market after 2015; (2) that GWACS needed financing to

---

[9] *See* Defense Exhibits 106, 14, 15, 45 & 46 combined with testimony from both Phagan and Kasarda evidencing public availability and knowledge of the functional benefits of the enlarged trigger guard; *see also* Defense Exhibits 104, 10, 23 & 55 at KEA002865, KEA002871, KEA002872 and Plaintiffs Exhibit 69 combined with Phagan testimony that Kasarda told Phagan to switch from MLOK to QD socket and Kasarda Testimony evidencing public availability and knowledge of the functional benefits of the design and location of the QD socket, and Defense Exhibits 106, 14, 15, 39, 45 & 46 combined with the testimony of Phagan and Kasarda evidencing public availability and knowledge of the functional benefits of the flared magazine well  It should be further noted that the testimony of Armory's own engineer Scott Merrill confirms that these features were simply functional in nature. *See Vornado Air Circulation Sys., Inc. v. Duracraft Corp.*, 58 F.3d 1498, 1503 (10th Cir. 1995) (noting that "the producer of an allegedly infringing product may defend by showing that what the plaintiff is claiming as its trade dress is functional, and therefore that all competitors must be permitted to copy it in their own products.").

produce the MKIII and MKIV; (3) the amount of money that GWACS would need to produce the MKIII and MKIV; (4) GWACS' pricing of the MKIII; and (5) GWACS' financial projections for the MKIII and MKIV.

While GWACS has presented evidence of some slight effort to shelter this information from public view—the NDA—this alone is not sufficient to create a genuine issue of whether the information constitutes trade secrets. Simply put, telling people something is secret or confidential does not make it secret or confidential. For example, the evidence at trial has shown that GWACS' pricing of the MKIII would be easily ascertained by third parties, as a necessity in the course of actual sales had they occurred, and through simple analysis of the prices set by retailers.[10]

Additionally, there has been no evidence of any misappropriation of these alleged trade secrets. Plaintiff must prove that the alleged trade secret was "misappropriated," which means it was acquired by improper means or used or disclosed by a defendant without Plaintiff's consent. *See* 18 U.S.C. § 1839(5)-(6). Here, there has been no evidence

---

[10] *See* Defense Exhibits 80, 55 (at KEA002877-2887) 107 and Plaintiff Exhibit 63 (at Armory-333 wherein Shel Texts Phagan after NDA expired that progress isn't happening 12-21-2018) evidencing public availability and knowledge that Armory was unable to produce polymer lower receivers for the market after 2015; *see also* Plaintiff Exhibits 159 (which confirms 40% off retail pricing structure for distributor), 240 (confirms GWACS sent pricing to Brownells for publication), 28 and Defense Exhibit 108 (which includes cost to manufacture, and distributor to retail pricing) in conjunction with testimony from both Phagan and Kenny evidencing public availability and knowledge of Armory's pricing of the MKIII. Moreover, testimony from Plaintiffs own witnesses acknowledge that they were actively seeking out financing ***and only when someone*** would show an interest in potentially investing would Armory have them sign an NDA to get the investment packet. As such, the fact that they were seeking investment was not a trade secret. It is difficult to imagine anyone signing an NDA not knowing the topic (potential investment in this case) they were going to be discussing.

of any disclosure by the KEA (1) that GWACS was unable to produce polymer lower receivers for the market after 2015; (2) that GWACS needed financing to produce the MKIII and MKIV; (3) the amount of money that GWACS would need to produce the MKIII and MKIV; (4) GWACS' pricing of the MKIII; or (5) GWACS' financial projections for the MKIII and MKIV. Moreover, the evidence affirmatively shows that none of the above alleged trade secrets were ever used by KEA. Notably, the testimony of KEA was clear that the amount of money that GWACS would need to produce the MKIII and MKIV, GWACS' outdated pricing from 2015 (when it didn't even enter the market until 2020) and GWACS' outrageous[11] financial projections would have been of no value to GWACS when it developed its products because it was in a different position wherein it had existing marketshare in the AR market with its existing receivers, already produced ancillary products and was creating its new product based upon the needs of the consumer marketplace and the input of third party InRange who was specifying exactly what they wanted for their WWSD Project.

More importantly, as with the design elements, GWACS has not presented any evidence of the independent economic benefit derived from keeping this information secret. Thus, GWACS has not met its burden of establishing that these five pieces of

---

[11] The claims set forth in the investor packet (Plaintiff's Exhibit 23) were identified by both Russell Phagan and Mike Kenny as outrageous and nowhere near what the market would bear. Rather, as described in detail by Plaintiff's witnesses they had gone to Brownell's to get a pre-order of their products and the amount of potential preorder was strikingly lower than their claimed projections. *See* Plaintiff's Exhibit 161; see also Defense Exhibit 108 which includes CAV-15 historical sales.

information are subject to trade secret protections.

### 3. At most, if the information could qualify as "proprietary," the Court should still dismiss the trade secret claim and only permit GWACS to maintain its breach of contract claim.

KEA maintains the reasons stated above establish that GWACS did not have any interest in keeping the alleged "trade secret" information as confidential due to the public availability of that information. However, should the Court find that the information may separately qualify as "proprietary" under the terms of the NDA even if it fails to qualify as a "trade secret" under the statutory definitions, the Court should still enter judgment as a matter of law on GWACS' misappropriation of trade secrets claim. As the Court has noted previously, the definition of "proprietary" information under the NDA is different than the definition of a "trade secret." Simply put, "proprietary" information is not sufficient to satisfy the elements of a trade secrets claim.

### C.   GWACS HAS NOT PROVEN A CASE FOR EXEMPLARY DAMAGES.

Finally, if the Court does not wholly dismiss the misappropriation of trade secrets claim, the Court should enter judgment as a matter of law in KEA's favor on the issue of exemplary damages. Exemplary damages would only be recoverable in this case if KEA prevails on its misappropriation of trade secrets claim; exemplary or punitive damages are not available in a breach of contract action. However, to prove entitlement to exemplary damages, GWACS was required to establish that KEA "willfully and maliciously misappropriated" the trade secrets. 18 U.S.C. § 1836(b)(3)(C). GWACS simply has not met this high bar, as no evidence has been presented from which a rational jury could find that KEA acted with either (much less both) willfulness or malice toward GWACS. Rather, the evidence has been clear that GWACS disappeared from the market and appears to have only reappeared to initiate this lawsuit – not with

any intent to reenter the market. Thus, GWACS cannot be permitted to request exemplary damages from the jury.

## IV. CONCLUSION

For the reasons stated herein, the Court should enter judgment as a matter of law in KEA's favor.

Dated this 13th day of February, 2025.    Respectfully submitted,

**HALL, ESTILL, HARDWICK,
GABLE, GOLDEN & NELSON, P.C.**

*/s/Robert P. Fitz-Patrick*
Robert P. Fitz-Patrick, OBA #14713
521 East 2nd Street, Suite 1200
Tulsa, OK 74120
Telephone: (918) 594-0400
Facsimile: (918) 594-0505
Email: rfitzpatrick@hallestill.com
**ATTORNEYS FOR DEFENDANT**

-AND-

**MARQUIS AURBACH**

*/s/ Brian R. Hardy*
Brian R. Hardy, Esq.
Nevada Bar No. 10068
*Admitted Pro Hac Vice*
Alexander K. Calaway, Esq.
Nevada Bar No. 15188
*Admitted Pro Hac Vice*
10001 Park Run Drive
Las Vegas, Nevada 89145
Tel: 702-382-0711
bhardy@maclaw.com
acalaway@maclaw.com

**ATTORNEYS FOR DEFENDANT**

## **CERTIFICATE OF SERVICE**

  I hereby certify that I electronically filed the foregoing document with the Clerk of the Court for the United States District Court by using the court's CM/ECF system on the 13th day of February, 2025. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

  James E. Weger, Esq.
  Todd J.P. Bogan, Esq.
  JONES, GOTCHER & BOGAN, P.C.
  3800 First Place Tower, 15 East Fifth St.
  Tulsa, OK 74103
  ATTORNEYS FOR THE PLAINTIFF,
  GWACS GWACS, LLC

                    */s/Robert P. Fitz-Patrick*

MAC: 16075-001 (#5780630.1)