UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| GWACS Armory, LLC, | ) |
| | ) |
| Plaintiff, | ) Case No.: 4:20-cv-341-JDR-SH |
| | ) (BASE FILE) |
| v. | ) |
| | ) Consolidated with: |
| KE Arms, LLC, et al, | ) 21-cv-107-JDR-SH |
| | ) |
| Defendants. | ) |

**PLAINTIFF'S RESPONSE AND OBJECTION TO**
**DEFENDANTS' MOTION FOR ATTORNEY FEES AND COSTS**

**COMES NOW**, Plaintiff, GWACS Armory, LLC ("GWACS"), by and through its attorneys of record, and for its response and objection to *Defendants' Motion for Attorney Fees and Costs* [Dkt. #274] ("Defendants' Motion"), filed by KE Arms, LLC ("KEA"), Russell Phagan ("Phagan"), Sinistral Shooting Technologies, LLC ("SST"), Brownells, Inc. ("Brownells"), and Shawn Nealon ("Nealon") (hereinafter collectively "Defendants"), submit the following brief:

**INTRODUCTION**

Contrary to Defendants' assertions, this litigation was initiated by KEA, not GWACS.[1] On April 7, 2021, GWACS sent a cease-and-desist e-mail to KEA after it learned that KEA had developed the KP-15. *See* Dkt. #274-3, pp.1-2, PEX 16. KEA ignored GWACS's cease-and-desist demand, so on April 21, 2020, GWACS forwarded the demand to Brownells. *See id*. Brownells was the distributor of the KP-15, and had an NDA with GWACS. On April 27, 2020, KEA filed a lawsuit against GWACS Armory, LLC; GWACS Defense, Inc. ("Defense"); Jud Gudgel

---

[1] Defendants' Motion claims that GWACS brought this action years after KEA and GWACS entered into their NDA, infers KEA was forced to participate in this litigation, and claims that GWACS was only interested in destroying a competitor via protracted litigation. *See* Dkt. #274, pp. 1 & 21-22.

("Gudgel"); and Russell L. Anderson ("Anderson") in the Superior Court of Arizona, asserting claims for Declaratory Relief; Breach of Implied Covenant of Good Faith and Fair Dealing; Interference with Prospective Economic Advantage; and Business Disparagement (the "Arizona Lawsuit"). *See* Dkt. #17-1. On July 15, 2020, GWACS filed this lawsuit. On August 18, 2020, GWACS; Defense; Gudgel; and Anderson removed the Arizona action to the United States District Court for the District of Arizona. On August 25, 2020, GWACS filed *Defendants' Motion to Dismiss and, in the Alternative, to Transfer* in the District of Arizona. On August 25, 2020, KEA filed a *Motion to Transfer Venue or Stay Proceedings of Defendant, KE Arms, LLC, and Brief in Support* in the Northern District of Oklahoma [Dkt. #17]. On August 26, 2020, Phagan, SST, Brownells, and Nealon filed their *Joinder to Motion to Transfer Venue and Motion to Stay Proceedings* in the Northern District of Oklahoma [Dkt. #20]. On September 9, 2020, Defendants filed their *Motion to Dismiss for Improper Venue of Defendants, and Brief in Support* [Dkt. #21]. On January 21, 2021, the Court entered an *Opinion and Order* [Dkt. #32], staying these proceedings pending a ruling on GWACS's motion to dismiss in the District of Arizona, and denying Defendants' motion to dismiss for improper venue. On March 9, 2021, the District of Arizona entered an *Order* declining to exercise jurisdiction; dismissing KEA's claims for declaratory relief, tortious interference, and business disparagement without prejudice; and transferring KEA's breach of covenant of good faith and fair dealing claim to the Northern District of Oklahoma. *See* Dkt. #34-1. After KEA's claims were dismissed by the U.S. District Court for Arizona, KEA refiled <u>the same claims</u> in this action as counterclaims. *See* Dkt. #49.

There is absolutely no evidence of bad faith by GWACS in this case. Therefore, KEA is not entitled to fees from GWACS. Although the jury ultimately ruled against GWACS on its claims for breach of contract and misappropriation of trade secrets, that does not mean that GWACS acted

2

in bad faith. Notably, the Court denied KEA's Motion for Summary Judgment [Dkt. #117] as to GWACS's breach of contract and misappropriation of trade secrets claims because GWACS's claims were sufficiently supported by evidence. *See Opinion and Order* [Dkt. #191]. However, unlike GWACS's claims, <u>none</u> of KEA's claims survived summary judgment, except for its request for declaratory judgment, which the Court has now determined to be moot. *See* Dkt. ##191 & 278.

Further, the Defendants seek fees that: (1) they did not incur (2) they did not pay for; (3) would have been incurred by KEA regardless of their individual involvement in this case, and/or (4) related to claims for which fees were not recoverable. All of the Defendants (and third-party witnesses) were represented by the same counsel, and "KEA" paid all of the Defendants' and third-party witnesses' attorney fees in this case. Defendants now seek to recover all of the attorney fees incurred in this action, regardless of the claims to which they relate and/or for whom they were incurred. Furthermore, although KEA was purportedly paying all the fees in this case, the evidence was that Tool & Design Group, LLC ("TDG") paid most, if not all, of the fees incurred by Brownells, SST, Phagan, and Nealon in this case.

## ARGUMENTS & AUTHORITIES

### I.     KEA IS NOT ENTITLED TO ATTORNEY FEES FROM GWACS

"Oklahoma strictly adheres to the 'American rule concerning attorney's fees.'" *Combs v. Shelter Mut. Ins. Co.*, 551 F.3d 991, 1001 (10th Cir. 2008). "Attorney fees are not available unless (1) the opponent acts in bad faith, (2) attorney fees are authorized under a specific statute, or (3) a contract exists between the parties which governs attorney fees." *Id*. Under state and federal trade secret law, the Court may only award reasonable attorney's fees to the prevailing party if a claim for misappropriation is made in bad faith. *See* Okla. Stat. tit. 78, § 89 and 18 U.S.C. §

1836(b)(3)(D). As set forth herein, GWACS did not act in bad faith, and there is no evidence to support a finding that GWACS acted in bad faith.

### A. GWACS DID NOT ACT IN BAD FAITH.

There is no evidence of bad faith on the part of GWACS in this case. The record in this case contains the background and describes in detail how the parties arrived here, but briefly, *inter alia*, the following occurred: (1) in 2011, GWACS paid Phagan's company, SST, $120,000 for the molds, designs, and rights to produce the CAV-15; (2) GWACS entered into two nondisclosure agreements ("NDAs") with SST (signed by Phagan), in 2011 and in 2013 respectively; (3) Phagan worked for GWACS selling the CAV-15 MKII from 2013-2015; (4) GWACS entered into an NDA with KEA, Phagan's subsequent employer, in June of 2015; (5) GWACS entered into two NDAs with Brownells; (6) GWACS had the only viable polymer lower receiver on the market for AR-15 style rifles from 2011 until 2021 when KEA began selling the KP-15; (7) GWACS shared renderings of its future products (the CAV-15 MKIII and MKIV) and details about its company with KEA and Brownells pursuant the aforementioned NDAs; (8) KEA developed its first polymer lower receiver, the KP-15, after learning that GWACS was financially unable to produce more polymer lower receivers; (9) KEA's polymer lower receiver incorporated the same product developments as those shown in the rendering GWACS shared with KEA; and (10) KEA initially called its polymer lower receiver the MK3/MKIII, but changed the name to KP-15 after receiving the cease-and-desist demand from GWACS. After GWACS sent KEA and Brownells the cease-and-desist demand, KEA initiated the litigation against GWACS, Defense, Gudgel, and Anderson. With the exception of its declaratory judgment claim, all of KEA's claims against GWACS, and the others, were subsequently dismissed voluntarily and/or by the Court. *See* Dkt. ##34-1 & 191. Thereafter, the only claims remaining were GWACS's claims for breach of contract (NDA) and

misappropriation of trade secrets, and KEA's claim for declaratory judgment. *See Opinion and Order* [Dkt. 191].

In Defendants' Motion, KEA argues that GWACS proceeded with its claims in this lawsuit in bad faith because the jury found that GWACS did not own the trade secrets alleged to have been misappropriated by KEA. However, on February 23, 2023, this Court held, "[a] reasonable jury could find that information related to the manufacture and design of the MKIII and MKIV qualifies as a trade secret under state or federal law." *See* Dkt. #191, p. 23. The Court went on to state, "GWACS has adequately shown that its financial information may constitute a trade secret." *Id*. at p. 24. Similarly, the Court stated, "[v]iewing the evidence in the light most favorable to GWACS, a reasonable jury could find that KEA chose to develop a competing product after learning that GWACS' lower polymer receivers would essentially be leaving the marketplace. This could reasonably support a finding that KEA misappropriated information it received pursuant to the NDA and that it acted with the necessary intent." *Id*. at 25. Based upon the foregoing, GWACS clearly had a good faith basis to file and continue pursuing its misappropriation of trade secret claim against KEA.

As alleged proof of bad faith by GWACS, Defendants' Motion claims GWACS failed to identify its trade secrets, which is a wholly untrue statement. KEA used GWACS's responses to interrogatories relating to its NDA and copyright claims to advance its theory. *See* Dkt #274, p. 20. First, KEA points to GWACS's response to Interrogatory No. 8 identifying the proprietary information GWACS shared with KEA. *See id*. and Dkt. #274-2, p. 7. Interrogatory No. 8 asked GWACS to identify and describe any "proprietary information" that Plaintiff disclosed to Brownells and KEA, as alleged in paragraphs 55 and 113 of the Complaint [Dkt. #2]. Paragraphs 55 and 113 of GWACS's Complaint [Dkt. #2] relate to the parties' respective NDAs, not GWACS's

5

trade secrets. *See* Dkt. #2, pp. 9 & 16. Defendants' Motion goes on to cite GWACS's response to Interrogatory No. 17, which KEA claims "further mudd[ied] the water". *See* Dkt. #274, p. 20 & 274-2, at pp. 12-13. However, Interrogatory No. 17 asked for GWACS to "identify each of the similarities (if any) between Plaintiff's Work and the KEA Polymer Receiver, and describe each similarity in detail." *See* Dkt. #274-2, at p. 12. What Defendants' Motion does not tell the Court is that "Plaintiff's Work" is defined in KEA's interrogatories as, "the work that Plaintiff alleges is protected by "federal copyright laws" and referenced in Paragraphs 85-86 of the Complaint". *See* KEA's First Set of Interrogatories, attached hereto as Exhibit "1" at ¶ 20, and the Complaint, Dkt. #2, at pp. 12-13. Again, Defendants' Motion misuses GWACS's responses to discovery requests about another claim, this time GWACS's now dismissed copyright infringement claim[2], to allege that GWACS obfuscated its trade secret claim and failed to identify the trade secrets at issue in this case. The foregoing is clearly not an appropriate use of GWACS's discovery responses and is not evidence of bad faith by GWACS.[3]

Defendants' Motion also claims that GWACS falsely alleged that it disclosed GWACS's 2015 investment packet to KEA. *See* Dkt. #274, p. 19. The foregoing is contrary to the evidence in this case, and the admissions of Mike Kenney, who admitted to reviewing at least a portion of the 2015 investment packet, *See* Dkt. # 274-3, p. 3-10, PEX 23. Nonetheless, the Court previously held, "KEA entered an NDA with GWACS and received an investment packet from GWACS, and the investment packet disclosed GWACS' financial condition and features of the proposed MKIII and MKIV receivers. KEA developed a competing product and the new product bore a substantial

---

[2] On December 17, 2021, GWACS voluntarily dismissed its claims for trademark infringement, trade dress infringement and copyright infringement. *See* Dkt. #81.
[3] In fact, the basis for GWACS's trade secret claim was set forth in the Court's order on GWACS's motion for summary judgment. *See* Dkt. #191.

similarity to [GWACS's] products. KEA was also aware that GWACS was unable to produce any more of the MKI or MKII receivers, and KEA also knew that GWACS would not be able to produce its proposed MKIII and MKIV receivers. This evidence would permit a reasonable jury to find that KEA violated the NDA…" Dkt. #191, at p. 32. Based upon the foregoing, the evidence clearly supported that GWACS provided KEA with its investment packets and that GWACS proceeded with this litigation in good faith.

While KEA disputed that GWACS shared its April 2018 Financing Executive Summary PEX 24, it cannot dispute that GWACS shared its April 2015 Investment Executive Summary, *See* Dkt. # 274-3, pp. 3-10, PEX 23, pp. 53-57, PEX 233, and PEX24, attached hereto as Exhibit "2". Similarly, it cannot be disputed that GWACS shared renderings of its future CAV-15 products with KEA. *See id.* and *See* Dkt. # 274-3, p. 21, PEX 63 (statement by Phagan "[s]aw the pics. Looks functional but I think you'll be fighting an up hill {sic} battle aesthetics wise. Particularly when it comes to the grip unless you have pannels {sic} that are supposed to be added."). At trial, KEA admitted to seeing the pictures in the 2018 investment packet with waffle design in the handle. The aforementioned packets contain: renderings of the CAV-15 MKIII and MKIV with the updated features shown thereon; a list of the functional improvements thereof, including the integrated single point sling mount(s) (a/k/a QD sockets) and enlarged trigger guard; the retail price of the stripped and fully populated lowers; the cost to produce the products; financial projections (which were substantially revised in the 2018 packet PEX 24), and the investment sought and return expected thereon. *See* PEX 23 at Dkt. #274-3, pp. 3-10 & Ex. 2, PEX 24, at Armory 145-146, 149, 152, 154-159. The financial projections in the 2018 packet demonstrated that GWACS expected to sell 16,960 lowers in the first year and 21,700 in the second year, or a total of 38,660 lowers in the first two years. The evidence in this case was that KEA sold approximately 35,000 lower

receivers in the first two years of selling the KP-15. Further the evidence in this case demonstrated that GWACS's proposed retail price for a fully populated CAV-15 MKIII was $199, and that the pre-order retail price for KEA's fully populated KP-15 was $199.95. *See* Dkt. #274-3, p. 5, and Dkt. 274-3, p. 11, PEX 38.

Similarly, it cannot be disputed that Shel Jones of GWACS sent Phagan of KEA text messages stating, *inter alia*, that GWACS was still trying to raise the $500,000 investment needed to continue producing the CAV-15, that GWACS would not be doing another run of CAV-15 MKII receivers, the number of units GWACS had sold, and GWACS's remaining CAV-15 inventory. *See* Dkt. #274-3, pp. 21-27, PEX 63. The foregoing evidence clearly supports that GWACS had a good faith basis for maintaining its claims against KEA for breach of the NDA and misappropriation of trade secrets.

Likewise, it cannot be disputed that GWACS made reasonable efforts to maintain the secrecy of the information shared. GWACS required an NDA from KEA, Brownells, Phagan/SST, and anyone else with whom they shared the information at issue in this case. *See* PEX 8, 11, 27, 44, 212, & 234, attached hereto as Exhibit "3", and Dkt. #273-3 pp. 53-57. All of the information provided to Phagan after 2011 was under a duty to maintain the secrecy thereof. *See* Ex. 3 at PEX 27 & 44 and PEX 56, 138, attached hereto as Exhibit "4", and Exhibit "3 at PEX 212. Phagan asked to be "kept in the loop with future developments on the CAV-15 product line" and wanted to "offer feedback and testing of the product[s]…" and agreed to sign the 2013 SST NDA in order to do so. *See* Ex. 4, at PEX 138 & Ex. 3 at PEX 27. Notwithstanding the foregoing, Defendants' Motion, again without any basis, argues that there was no evidence that GWACS made reasonable efforts to maintain the secrecy of its pricing, or that the information was not readily ascertainable through proper channels. *See* Defendants' Motion, Dkt. #274, at p. 14. KEA argues that GWACS's

pricing was publicly available in the Brownells catalog. However, Brownells had an NDA with GWACS. *See* Ex. 3, at PEX 11. The Brownells catalog was not supposed to be published. *See* DEX 112, attached hereto as Exhibit "5". Further, the pricing in the Brownells catalog was not the same pricing contained in GWACS's 2015 packet, which was the pricing used by KEA. *See* Dkt. #274-4, at p. 150; and Dkt. #274-3, pp. 3-11, at PEX 23, PEX 38. Further, the information in the catalog, which was never supposed to come out, did not contain a rendering of the CAV-15 MKIII, or otherwise show the enlarged trigger guard or placement of the QD sockets. *See* Dkt. 274-4, p. 150. Further, the "pricing" Defendants allege Phagan "provided" to GWACS for Brownells in 2013, did not relate to the MKIII or MKIV. *See* Dkt. #274, at p. 15, and Dkt. # 274-4, p. 95-97, DEX 40. Similarly, the other pricing Defendants' Motion claim was provided to GWACS, or publicly disclosed by GWACS, did not relate to the MKIII or MKIV. *See* Dkt. # 274-4, pp. 218-256, DEX 108 & DEX 113. It is disingenuous for KEA to cite pricing disclosures that have nothing to do with the MKIII or MIV, which were the products and pricing at issue in this case, and doing so does not support the arguments in Defendants' Motion.

Defendants' Motion further argues that there was no evidence that GWACS's alleged trade secrets had value. The evidence of the value of GWACS's trade secrets was demonstrated by the fact KEA produced its first polymer lower receiver, which "bore a substantial similarity to [GWACS's] products" (including integrated QD sockets, an enlarged trigger guard, and flared magazine well), generated millions of dollars in revenue for KEA. *See* Dkt. #191, p. 32, Dkt. #274-3, p. 3-11, and PEX 23 & 38, Ex. 2, at PEX 24, and Exhibit "6" at PEX 71. Between 1/2/21 and 7/6/21, KEA paid TDG $564,660 at the rate of $20 per lower receiver produced. *See* PEX 209, attached hereto as Exhibit "7". The foregoing represents the sale of 28,233 KP-15 polymer lowers in just seven months. The evidence at trial was that KEA made a 90% gross margin on sales of the

KP-15. Based upon the foregoing, GWACS clearly had a good faith belief that its trade secrets had substantial value.

Defendants' Motion also argues that GWACS ignored all of the evidence of KEA's "independent development of the KP-15" and that the KP-15 was developed through fair and honest means. *See* Dkt. #274, at p. 17. The evidence in this case was that Phagan, who signed two NDAs with GWACS and sold GWACS the CAV-15 assets, helped KEA develop the KP-15. *See* Ex. 6, PEX 71. Further, KEA and Phagan denied using, or even looking at, the CAV-15 CAD files GWACS purchased from SST to develop the KP-15. However, the evidence in this case is that KEA's initial designer for the KP-15, Jovan Beltran, made direct reference to the CAV-15 when designing the KP-15, and that Mr. Beltran and Phagan looked at the files together. *See* PEX 54 & 192, attached hereto as Exhibit "8". Further, the evidence was that TDG, not KEA, paid to purchase the production equipment, design, and testing for the KP-15. *See* Dkt. #274-3, pp. 44-52, PEX208, and PEX 209, 222 & 222a, attached hereto as Exhibit "9".

Finally, notwithstanding the fact KEA started this litigation by suing GWACS first in Arizona, KEA argues that GWACS never intended to protect any legitimate trade secrets, and was only interested in destroying a competitor via protracted litigation. In support of the alleged negative impact this case has had on KEA, KEA attached a declaration of Mike Kenney. *See* Dkt. #274, at p. 22, and Dkt. #274-5. Shockingly, Mr. Kenney declares, under the penalty of perjury, that, among other things, (1) approximately $7,000,000 in open purchase orders were cancelled by Brownells and RSR Group, and (2) "investors who had invested in KEA, were unwilling to invest any more money into the company or any other new product development because of GWACS lawsuit". *See* Dkt. #274-5, at ¶ 5. In considering KEA's claims for interference with prospective economic advantage, business disparagement, and deceptive trade practices claims, the Court

found as a matter of law that "the evidence shows that KEA's assertion that it was harmed as a result of GWACS's conduct is speculative at best." *See* Dkt. #191, at p. 38. The declaration by Mr. Kenney is the first time it has been alleged that Brownells cancelled a single KP-15 order. The declaration of Mr. Kenney is likewise the first time Mr. Kenney has alleged that KEA had investors. When Mike Kenney testified under oath on October 27, 2021, he stated that KEA did not have investors in the KP-15 and that "KE Arms does not have any investors." *See* 10/27/21 Depo of Kenney, attached hereto as Exhibit "10", at p. 190, l. 24 – p. 191, l. 9. Mr. Kenney's testimony under oath was that he and his wife were the only investors in KEA. *See id*. at p. 192, l. 21-24. Mr. Kenney's declaration, which contradicts the evidence and his own sworn testimony, is completely unreliable and should not be considered by the Court in support of Defendants' Motion.

### B. NEALON IS NOT ENTITLED TO FEES.

GWACS voluntarily dismissed its claims against Nealon in this action. *See* Dkt. #84, 112, 113, & 191. When GWACS sought to dismiss its claims against Nealon, he sought to recover fees as a condition thereof. *See* Dkt. #191, p. 15-16. In granting GWACS's motion to dismiss Nealon (Dkt. #113), the Court stated, "Nealon argues that attorney fees are a necessary condition for dismissal of GWACS' claims against him, but he has not come forward with any evidence that he has actually incurred attorney fees to defend against GWACS' claims." Dkt. 191, p 16. The Court did not give significant weight to Nealon's argument that he had incurred attorney fees because the evidence was that Nealon was not personally responsible for any attorney fees associated with the is litigation. *See* Dkt. 191 at 15. Rather, KEA was paying Nealon's legal expenses. *See* Dkt. #112, p. 13. Ultimately, Nealon's Motion for Summary Judgment [Dkt. #119] was rendered moot in light of the Court's decision to grant GWACS's motion to dismiss Nealon [Dkt. #113], and

judgment was not rendered on the merits in Nealon's favor. *See* Dkt. #191, at 15-16. As a result, Nealon is not entitled to attorney fees from GWACS.

### C. BROWNELLS, PHAGAN, AND SST ARE NOT ENTITLED TO FEES.

Brownells, Phagan, and SST seek fees from GWACS due to offering judgment to GWACS on October 7, 2021, in the amount of $1,500. *See* Dkt. #274, at 24. However, as was the case with Nealon, neither Brownells, Phagan, nor SST paid their own attorney fees in this case. Rather, KEA paid for all of the defendants' attorney fees. *See* Dkt. 91-4.[4] All of the defendants in this case were represented by the same counsel and KEA paid all of the fees. This included third-party witnesses who were deposed in this action. *See* Depo of Karl Kasarda, attached at Exhibit "11", p. 7, l. 19-25; Depo of Jovan Beltran, attached as Exhibit "12", p. 21, l. 11 – p. 22, l. 3; Depo of Iain Harrison, attached as Exhibit "13", p. 46, l. 1-8, p. 47, l. 17-25, and the Joint Defense Agreement attached hereto as Exhibit "14". Pursuant to 12 O.S. § 1101.1(B)(3), Defendants making an offer of judgment are only entitled to recover reasonable attorney fees "incurred by the defendant". *See* Okla. Stat. tit. 12, § 1101.1(B)(3). Further, the fact that Brownells, Phagan, Nealon, and SST seek fees in the sum of $139,822, demonstrates that the fees allegedly incurred by each of them have not been separated or independently considered.

Notwithstanding the foregoing, assuming *arguendo* that Brownells, Phagan, and/or SST are entitled to fees that they did not pay, the fees recoverable would only be the fees associated

---

[4] The evidence at trial was that TDG paid the majority of the attorney fees in this case. Iain Harrison testified that only $300,000 had been paid back to the initial investors in TDG despite TDG receiving payments from KEA equaling $564,660. Mike Kenney and Phagan testified that KEA stopped paying TDG $20 per unit sold in July of 2021 to pay the fees and costs for this litigation. Mike Kenney further testified that the sum over $300,000 went back to KEA to pay for the litigation. *See* Ex. 9, at PEX #222. The evidence was that KEA has sold at least 35,000 KP-15 lowers. The sum of $20 per lower times 35,000 lowers, equals $700,000. Therefore, at least $400,000 of Defendants' attorney fees were paid by TDG, not KEA.

with claims for which judgment was entered after their October 7, 2021, offers of judgment pursuant to 12 O.S. § 1101.1. Pursuant to 12 O.S. § 1101.1(B)(3), "[i]f no offer of judgment… is accepted and the judgment awarded the plaintiff is less than one or more offers of judgment, the defendant shall be entitled to reasonable litigation costs and reasonable attorney fees incurred **by the defendant with respect to the action or the claim or claims included in the offer of judgment from and after** the date of the first offer of judgment…" Okla. Stat. tit. 12, § 1101.1(B)(3).

Defendants took the depositions of Russell Anderson, Shel Jones, and Jud Gudgel of GWACS prior to October 7, 2021. Therefore, Brownells, Phagan, and SST are not entitled to any fees associated with the depositions of Mr. Anderson, Mr. Jones, or Mr. Gudgel due to the depositions occurring prior to their offer to confess. Further, neither Phagan nor SST issued written discovery to GWACS. Brownells issued twenty-five (25) interrogatories to GWACS on May 26, 2021, prior to its offer to confess. Likewise, Brownells, SST, and Phagan all responded to GWACS's interrogatories, requests for admissions and requests for production of documents on September 3, 2021, prior to their October 7, 2021, offers to confess. Therefore, Brownells, Phagan, and SST are not entitled to fees relating to the aforementioned written discovery. GWACS dismissed its Trademark Infringement claim against Brownells on December 17, 2021, shortly after Brownells' offer to confess, leaving only its breach of contract claims against Brownells, and to which Brownells' fees would be limited. *See* Dkt. #81.

It is not reasonable to award Brownells, SST, and Phagan $139,822.00 for fees incurred between October 7, 2021 and February 23, 2023, when all those parties did was file motions for summary judgment. Further, Phagan and SST filed for summary judgment jointly. *See* Dkt. #120. Clearly the fees sought by Brownells, SST, and Phagan were not incurred only after the offers to

confess, and the fees are not specific to the claims asserted against them. As stated herein below, the fees must be apportioned under Oklahoma law, and Defendants' Motion fails to apportion any of the fees sought. Further, as discussed below, without detailed time records it is impossible to know when the fees sought were incurred, what claims they relate to, or if they are reasonable. For the reasons stated above, Defendants' Motoin should be denied.

### D. DEFENDANTS' FEES ARE NOT APPORTIONED TO THE CLAIMS RELATING TO THE PARTIES & ARE NOT SUPPORTED WITH EVIDENCE.

Defendants' Motion seeks the following attorney fees: KEA $667,822; Brownells $139,822; Phagan $139,822; SST $139,822; Nealon $139,822; and SST $421,720.50. *See* Dkt. #274, at p. 2. Defendants clearly seek all of the fees incurred by all of the parties, for all of the claims, as well as the fees relating to counsels' representation of third-party witnesses, to arrive at the total amount of the fees sought by Defendants. Further, awarding the foregoing fees would clearly be duplicative.

Following the District of Arizona's dismissal of KEA's claims and transfer of District of Arizona Case No. CV-20-01625-PHX-JJT to this Court, on April 13, 2021, KEA filed "counterclaims" against GWACS, Defense, Gudgel, and Anderson, for Declaratory Relief (First Claim for Relief), Breach of Implied Covenant of Good Faith and Fair Dealing (Second Claim for Relief), Interference with Prospective Economic Advantage (Third Claim for Relief), Business Disparagement (Fourth Claim for Relief), and Deceptive Trade Practices and Unfair Competition (Fifth Claim for Relief). *See* Dkt. #49. KEA dismissed its claims against Defense, Gudgel, and Anderson with prejudice on March 3, 2022. *See* Dkt. #99. On February 23, 2023, the Court granted GWAC's motion for summary judgment [Dkt. #121] as to KEA's counterclaims for breach of implied covenant of good faith and fair dealing (second claim), interference with prospective economic advantage (third claim), business disparagement (fourth claim), and deceptive trade

practices and unfair competition (fifth claim), and denied summary judgment as to KEA's counterclaim for declaratory relief (first claim). *See* Dkt. #191, at pp. 40-41. The attorney fees and costs incurred for the foregoing claims are not recoverable.

Further, as stated above, on December 17, 2021, GWACS voluntarily dismissed its Third Cause of Action for Trademark Infringement against KEA and Brownells, Fourth Cause of Action for Trade Dress Infringement against KEA, and Fifth Cause of Action for Copyright Infringement against KEA. *See* Dkt. #81. The attorney fees and costs associated with those claims are not recoverable.

The fees sought by Defendants in Defendants' Motion are not allocated among the various claims and counterclaims involved in this case, or among the third-party witnesses. As stated above, KEA and/or TDG paid the attorney fees of every defendant, as well as the third-party witnesses in this case. *See* Exs. 11-14. After KEA initiated the litigation between KEA and GWACS in Arizona, all but two of its claims were dismissed by the United States District Court for Arizona. However, KEA raised those clams again in this action, and the Court granted summary judgment in favor of GWACS on all of those claims except for KEA's declaratory judgment claim. Notwithstanding the foregoing, Defendants seek to each recover all attorney fees incurred by all of the parties and non-parties.

"In diversity cases, attorney fees are a substantive matter controlled by state law." *Combs v. Shelter Mut. Ins. Co.*, 551 F.3d 991, 1001 (10th Cir. 2008), citing *North Texas. Prod. Credit Ass'n v. McCurtain County Nat'l Bank*, 222 F.3d 800, 817 (10th Cir. 2000). "Oklahoma does not have an 'inextricably intertwined' theory upon which attorney fees do not have to be apportioned if the claims are closely related." *Id*. at 1001-1002 citing *State Bank & Trust v. First State Bank*, 242 F.3d 390, 2000 WL 1862690, at *14 (10th Cir. Dec. 20, 2000) (unpublished). *See also Southwest*

*Stainless, L.P. v. Sappington*, 2010 WL 1486935 (N.D. Okla. 2010) (unpublished) citing *Tsotaddle v. Absentee Shawnee Housing Authority*, 20 P.3d 153, 162 (OK CIV APP 2000) ("the Oklahoma Court of Civil Appeals rejected the argument that the full amount of attorney fees should be awarded where the fee bearing and non-fee bearing claims were 'inextricably intertwined.'"). Because Defendants' motion does not allocate attorney fees among the claims, counterclaims, parties, and/or non-parties, the fees sought in Defendants' Motion are not supported and are not reasonable. Therefore, Defendants' Motion must be denied.

Further, under Oklahoma law, "attorneys in this state should be required to present to the trail court detailed time records showing the work performed and offer evidence as to the reasonable value for the services performed for different types of legal work." *State ex rel. Burk v. City of Oklahoma City*, 598 P.2d 659, 663 (Okla. 1979). The Oklahoma Supreme Court explained that doing the foregoing "will enable trial courts to remove the fixing of attorney fees… in every case, from the realm of speculation and guesswork into the area of simple mathematical computation. The trial court may then, with certainty, determine the compensatory fees." *Id*. Further, the Oklahoma Supreme Court has held, "[a] trial court order awarding attorney fees must set forth with specificity the facts and computation to support the award. The trial court must make findings of fact incorporated into the record regarding the hours spent, reasonable hourly rates, and the value placed on additional factors." *See Fleig v. Landmark Construction Group*, 549 P.3d 1208, 1212 (Okla. 2024). Those additional factors include, "1) the time and labor required; 2) the novelty and difficulty of questions; 3) the skill required to perform the legal service properly; 4) the preclusion of other employment by the attorney; 5) the customary fee; 6) whether the fee was fixed or contingent; 7) time limitations imposed by the client or circumstances; 8) the amount involved and results obtained; 9) the experience, reputation and ability of the attorneys; 10) the

undesirability of the case; 11) the nature and length of the relationship with the client; 12) the type of work involved; 13) the number of hours expended; 14) the contingent nature of the litigation; 15) the benefits conferred on plaintiff; 16) services rendered to the public; and 17) difficulty of issues and skill involved. *Id*. at 1211-1212. Defendants' Motion provides only the loadstar and rate factors set forth in *Fleig* (*supra*).

Defendants' Motion does not provide the Court with detailed time records or anything upon which the Court can base its decision in order to take it out of the realm of speculation and guesswork. Rather, Defendants lump together fees incurred by various parties and non-parties for various claims, some voluntarily dismissed by KEA and GWACS, and others dismissed by the Court, to seek all of the fees incurred and paid for by KEA. However, doing so does not comply with Oklahoma law. Without detailed time records, it is impossible for the Court to know what the fees sought related to, or if they were reasonable. Therefore, Defendants' Motion should be denied.

## **CONCLUSION**

Defendants' Motion is completely unreliable, is not supported in law or fact, and does not comply with Oklahoma law. The fact of the matter is that KEA sued GWACS in Arizona and GWACS sued KEA in Oklahoma. KEA lost on the claims it filed, and GWACS lost on the claims that it filed. All of the fees were paid for by KEA, and there is no evidence of bad faith by GWACS in this case; therefore, Defendants' Motion should be denied, and no fees should be awarded.

Respectfully submitted,

**JONES, GOTCHER & BOGAN, P.C.**

 s/Tadd J.P. Bogan
Tadd J.P. Bogan, OBA #20962
James E. Weger, OBA #9437
3800 First Place Tower
15 East Fifth Street
Tulsa, Oklahoma 74103
Telephone: (918)581-8200
Facsimile: (918)583-1189
E-Mail:  tbogan@jonesgotcher.com
           jweger@jonesgotcher.com
**Attorneys for Plaintiff, GWACS Armory, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on March 21, 2025, I electronically transmitted the attached document to the Clerk of Court using the Electronic Case Filing System for filing. Based on the record currently on file in this case, the Clerk of Court will transmit a Notice of Electronic Filing to those registered participants of the ECF System.

 s/Tadd J.P. Bogan
Tadd J. P. Bogan