IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **GWACS ARMORY LLC** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | |
| | ) | **Case No.:20-cv-341-JDR-SH** |
| **KE ARMS, LLC,** | ) | **BASE FILE** |
| | ) | Consolidated with: |
| | ) | Case No. 21-cv-107-JDR-SH |
| | ) | |
| **Defendant.** | ) | |

## DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR ATTORNEY FEES AND COSTS (DKT. 274)

Defendant KE Arms, LLC ("KEA"), Russell Phagan ("Phagan"), Sinistral Shooting Technologies, LLC ("SST"), Brownells, Inc. ("Brownells"), and Shawn Nealon ("Nealon") (collectively "Defendants"), by and through their attorneys of record, hereby submit their reply in support of motion for attorney fees and costs (the "Motion") (Dkt. 274).

### I. INTRODUCTION

Plaintiff GWACS Armory LLC's ("GWACS") opposition to the Motion fails in several ways. First, GWACS fails to dispute the objective speciousness, as well as the subjective bad faith of its trade secret claims. The sad reality is that GWACS' lacked evidence to support the *existence* of a single trade secret – let alone any misappropriation by KEA. Since GWACS' trade secret claims were brought and maintained in bad faith, KEA is entitled to an award of its reasonable attorney fees under both federal and state trade secret law, in the amount of **$667,822.**

Second, GWACS does not dispute that it rejected Brownells, Phagan, SST, and Nealon's valid offers of judgment made in October 2021; nor does it dispute the application of the fee-shifting provisions of the Oklahoma's offer of judgment statute. Because the Court dismissed GWACS' claims against Brownells, Phagan, SST, and Nealon, with prejudice and awarded

MAC: 16075-001 (#5827293.2)

GWACS zero damages, these defendants are entitled to their reasonable attorney fees incurred in the amount of **$139,822** pursuant to Oklahoma's offer of judgment statutes.

Third, GWACS opposition does not oppose SST's request for its attorney fees under its agreement with GWACS, which contained a prevailing party attorney fee provision. Dkt. 274, at pg. 26. Accordingly, SST's attorney fees in the amount of **$421,720** should be awarded as unopposed. Similarly, GWACS does not oppose Defendants' application for an order that GWACS pay Defendants' costs recoverable as prevailing party under 28 U.S.C. § 1920, which are further itemized in detail in their filed Bill of Costs. Thus, Defendants costs in the amount of **$51,460.83.** should be awarded as unopposed.

In all, Defendants respectfully requests the Court award: KEA its reasonable attorney fees in the amount of **$667,822;** Brownells, Phagan, SST, and Nealon in the amount of **$139,822**; SST in the amount of **$421,720**; and costs in the amount of **$51,460**. To be clear, however, Defendants do not seek double recovery of their attorney fees and costs incurred in this case. Thus, if any Defendant is awarded its attorney fees and costs, then the other Defendants' respective awards may be offset by the amounts awarded.

## II.  LEGAL ARGUMENT

### A.  KEA IS ENTITLED TO ITS ATTORNEY FEES AND COSTS FOR HAVING TO DEFEND GWACS' SPURIOUS TRADE SECRET CLAIMS.

KEA is entitled to an award of attorney fees because GWACS' claim for misappropriation was brought and maintained in "bad faith."[1] Fatally, GWACS' opposition fails to substantively

---

[1] Neither the Defend Trade Secrets Act ("DTSA") nor the Oklahoma Uniform Trade Secrets Act ("OUTSA") define "bad faith." However, "courts have developed a two-prong standard to determine whether a claim for trade secret misappropriation was made in bad faith: (1) objective speciousness of the claim, and (2) subjective bad faith in bringing or maintaining the action, i.e., for an improper purpose." *Cherokee Chem. Co. v. Frazier*, No. CV 20-1757-MWF (ASX), 2022 WL 2036305, at *3 (C.D. Cal. Apr. 27, 2022); *Magnum Mach., LLC v. Terves, LLC*, No. 20-3779, 2021 WL 5772533, at *5 (6th Cir. Dec. 6, 2021) (affirming finding of bad faith where a document "didn't actually contain the elaborate trade secrets presented in [the] complaint"); *Teetex LLC v. Zeetex, LLC*, No. 20-CV-07092-JSW, 2022 WL 2439176, at

dispute the actual elements of bad faith under the DTSA and OUTSA, which are: (1) the objective speciousness of its claims, and (2) its subjective bad faith in bringing or maintaining the action. Accordingly, the Court should award KEA its attorney fees under the DTSA and OUTSA.

### 1. GWACS trade secret claim was objectively specious.

First, "[o]bjective speciousness exists where the action superficially appears to have merit but there is a complete lack of evidence to support the claim." *Cherokee Chem Co.,* 2022 WL 2036305, at *3 (internal citations and quotation marks omitted); *Magnum Mach., LLC*, 2021 WL 5772533, at *5; *Teetex LLC*, 2022 WL 2439176, at *5. In other words, the Court must assess what evidence, if any, was presented to support GWACS' contention that KEA misappropriated its trade secrets. *Id*. In its Motion, KEA meticulously analyzed the evidence (or lack thereof) in this case as it relates to each of GWACS' claimed trade secrets under the DTSA and OUTSA. Dkt. 274, pgs. 9-18. In its opposition, GWACS' fails to dispute the objective speciousness of its trade secret claim, because there is simply no evidence to support GWACS' eight (8) purported trade secrets. Dkt. 279, at pgs. 4-11. While GWACS repeatedly states, in conclusory fashion, that it "did not act in bad faith," it fails to present any credible evidence supporting the actual ***existence*** of a trade secret under the DTSA and OUTSA definitions – let alone any misappropriation by KEA. Dkt. 279, at pgs. 4-11. Simply put, the complete dearth of evidence in support of the existence of a trade secret establishes GWACS' bad faith.

Second, GWACS' opposition does not dispute the fact that trade secret law does not offer protection against information that is discovered by fair and honest means, such as by independent

---

*4 (N.D. Cal. July 5, 2022) (finding bad faith where "the record shows that much of the allegedly confidential information. . . was publicly available"); *RJB Wholesale, Inc. v. Castleberry*, 788 F. App'x 565, 566 (9th Cir. 2019) (concluding that bad faith exists under Washington law when a party intentionally brings a frivolous claim with improper motive); *Green Bay Packaging, Inc. v. Preferred Packaging, Inc.*, 932 P.2d 1091, 1098 (Okla. 1996) (deciding that, under Oklahoma law, bad faith exists "when the claim was made for oppressive, abusive or wasteful reasons").

MAC: 16075-001 (#5827293.2)

invention, accidental disclosure, or reverse engineering (i.e., starting with the known product and working backward to divine the process which aided in its development or manufacture). *See Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 476, 94 S. Ct. 1879, 1883, 40 L. Ed. 2d 315 (1974). Nor does GWACS provide any evidence disputing the substantial evidence of KEA's independent development of the KP-15. Dkt. 279, at pg. 10.² In fact, in its opposition, GWACS readily points out the evidence supporting independent development, including: (a) the evidence that Mr. Phagan (whose NDA had expired) helped develop the KP-15; (b) the evidence that Jovan Beltran referenced the CAV-15 (which was already in the marketplace) when designing the KP-15; and (c) the evidence that KEA paid Tool and Design Group ("TDG") $564,660 per lower for the design and development of the KP-15. Dkt. 279, at pg. 10. Despite being aware of all of this evidence establishing independent development, GWACS ignored the facts and law, and maintained its specious lawsuit against KEA.

Third, GWACS opposition does dispute the legal definition of trade secret under the DTSA and OUTSA, but it does seem to fail grasp the concepts therein. ³ For instance, GWACS argues,

---

² Trade secret law does not offer protection against information that is discovered by fair and honest means, such as by independent invention, accidental disclosure, or reverse engineering (i.e., starting with the known product and working backward to divine the process which aided in its development or manufacture). *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 476, 94 S. Ct. 1879, 1883, 40 L. Ed. 2d 315 (1974).

³ Both federal and state law define a "trade secret" as information that meets the following requirements: (1) The information derives independent economic value from not being generally known; (2) The information is not readily ascertainable, through proper means, by other persons who can obtain economic value from its disclosure or use; and (3) The information is the subject of reasonable efforts to maintain its secrecy. 18 USC § 1839(3); Okla. Stat. Ann. tit. § 78-21.To maintain federal and state trade secret claims, it is incumbent upon the party asserting the trade secret to present evidence of: (1) the extent to which the information is known outside the business, (2) the extent to which the information is known by employees and others, (3) the measures taken to guard the secrecy of the information, (4) the value of the information to the business and its competitors, (5) the effort expended in developing the information, and the ease with which the information could be properly acquired or duplicated. *MTG Guarnieri Mfg., Inc. v. Clouatre*, 2010 OK CIV APP 71, ¶ 13, 239 P.3d 202, 209–10 (setting forth six factors adopted from the Restatement of Torts, § 757, Comment b (1939), for use in the analysis of OUTSA claims); *Tri-State Floors, Inc. v. Old Rule Servs., LLC*, No. 19-CV-707-JFH-JFJ, 2022 WL 4653717, at *10-11, *12, n.10 (N.D. Okla. Sept. 30, 2022) (equating evidence applicable in OUTSA and DTSA claims).

incorrectly, that its trade secret claims had merit because it "required an NDA from KEA, Brownells, Phagan/SST, and anyone else with whom they shared information at issue in this case." Dkt. 279, at pg. 8. But simply making an *effort* to maintain secrecy is only one requirement of a trade secret, and does not, by itself, evidence the *existence* of a trade secret under the DTSA and OUTSA. 18 USC § 1839(3); Okla. Stat. Ann. tit. § 78-21. Rather, a plaintiff must also show that: (1) the information derives independent economic value from not being generally known; and (2) the information is not readily ascertainable, through proper means, by other persons who can obtain economic value from its disclosure or use. *Id.*

Similarly, GWACS argues that KEA's revenue demonstrated the existence of a trade secret. Dkt. 274, at pg. 279, at pg. 18 (arguing that the "value of GWACS's [sic] trade secrets was demonstrated by the fact KEA . . . generated millions of dollars in revenue for KEA."). But KEA's revenues, by themselves, do not evidence the *existence* of a trade secret possessed by GWACS; rather, a trade secret must also derive "independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information[.]"18 USC § 1839(3)(B). GWACS has not (and cannot) point to any evidence showing that its eight (8) alleged trade secrets derived any economic value from being secret, nor can it point to any evidence suggesting the information could not be ascertained by proper means. No such evidence exists.

For example, GWACS fails to point to any actual evidence showing that an "enlarged trigger guard design on the CAV-15 MKIII" could objectively meet the critical requirements of a trade secret under the DTSA and OUTSA. 18 USC § 1839(3); Okla. Stat. Ann. tit. § 78-21. What is worse, GWACS maintained this spurious claim despite: (a) evidence that GWACS publicly disclosed this information in a Brownells marketing catalog; (b) evidence that GWACS' own

representative, Mr. Jones, voluntarily provided this information to Brownells, knowing it would be included in a public catalog; (c) evidence that the enlarged trigger guard idea had already been incorporated into other polymer rifle products and was a feature already existing in KEA's pre-existing KE-15 aluminum rifle; (d) evidence that Mr. Phagan told Mr. Jones about these existing products and features in the market; (e) evidence that GWACS admitted on its own website that it incorporated the features recommended by Mr. Phagan into the CAV-15 MKII; and (f) no evidence that the information derived any independent economic value from being secret. *See* Dkt. 274, at pgs. 9-10.

Finally, contrary to GWACS' assertions, the issue before the Court at this stage is not whether summary judgment was properly denied with respect to GWACS' trade secret claim. The summary judgment standard under Rule 56 is not the same as the "bad faith" standard under 18 U.S.C. § 1836(b)(3)(D) and Okla. Stat. Ann. tit. 78, § 89. On summary judgment, courts do not have the benefit of hearing all the evidence in the case and are limited to only cited materials or other materials on the record. *See* Fed. R. Civ. P. 56(c). Whereas, with respect to bad faith, a claim may "superficially" appear to have merit at earlier stages in the litigation but may still be "[o]bjectively specious" due to lack of evidence. *Cherokee Chem Co.*, 2022 WL 2036305, at *3 (internal citations and quotation marks omitted); *Magnum Mach., LLC*, 2021 WL 5772533, at *5; *Teetex LLC*, 2022 WL 2439176, at *5. To be sure, nothing in the DTSA and OUTSA suggests that a plaintiff is immunized from bad faith simply because it made it past the summary judgment phase. 18 U.S.C. § 1836(b)(3)(D) and Okla. Stat. Ann. tit. 78, § 89.

At this stage in the litigation, the Court has now had the benefit of hearing and seeing all the evidence. Conspicuously absent in the evidence is a showing that GWACS' purported trade secrets could objectively meet the definition of a trade secret under the DTSA and OUTSA. You

do not immunize yourself from bad faith Amazingly, GWACS could not objectively meet the requirements for a single purported trade secret. While GWACS may argue it met one of the requirements (such as taking reasonable steps to protect the secrecy of information under NDAs), it could objectively meet all the requirements of a trade secret. Despite this reality, GWACS maintained its specious trade secret claim through trial. That is precisely the sort of bad faith that warrants an award under 18 U.S.C. § 1836(b)(3)(D) and Okla. Stat. Ann. tit. 78, § 89.

### 2. GWACS' subjective bad faith is undisputed.

First, the fact that GWACS brought and maintained its objectively specious claims creates an inference of "subjective bad faith[.]" *Cherokee Chem Co.*, 2022 WL 2036305, at *3 (internal citations and quotation marks omitted); *Magnum Mach., LLC*, 2021 WL 5772533, at *5; *Teetex LLC*, 2022 WL 2439176, at *5. (quoting *Gemini Aluminum Corp. v. California Custom Shapes, Inc.*, 95 Cal.App.4th 1249, 1262 (2002)); *Pop Top Corp. v. Rakuten Kobo, Inc.*, No. 20-cv-04482-DMR, 2022 WL 267407, at *4 (N.D. Cal. Jan. 28, 2022) (citing *Location Based Servs., LLC v. Niantic, Inc.*, No. 17-cv-04413 NC, 2018 WL 7569160, at *1 (N.D. Cal. Feb. 16, 2018)) (noting that courts generally award fees when a plaintiff persists with a clearly untenable claim or adduces no evidence in support of its position). While this alone is sufficient to award attorney fees, GWACS' bad faith is further evidenced by its obvious strategy to harm KEA by prolonging this litigation.

Second, GWACS' does not bother even disputing its nefarious intent. For instance, in its opposition, GWACS does not dispute that it described its trade secrets differently at each stage of the litigation. To the contrary, GWACS readily admits that it was asked to identify and describe the "proprietary information" it allegedly disclosed to KEA under the NDA (Dkt. 279, at pg. 5), to which GWACS responded, but failed to mention any of the trade secrets later presented to the jury, such as the QD socket on the MKIII, flared magazine well, an inability to produce lower

MAC: 16075-001 (#5827293.2)

receivers after 2015, the funds needed to produce the MKIII and MKIV, the pricing of the MKIII, nor financial projections for the MKIII and MKIV. Dkt. 272-2, at pg. 7 (Response to Interrogatory No. 8). Instead, these alleged trade secrets were cooked up specially by GWACS for trial.

What is worse, GWACS vehemently argued at trial, as well as in its most recent opposition, that it disclosed its trade secrets to KEA via a 2015 investment packet. Dkt. 279, at pg. 6 (arguing that "GWACS provided KEA with its investment packets and that GWACS proceeded with this litigation in good faith"). But when GWACS was specifically asked to "Identify the communications [it] had with the Defendants relating to proprietary information" in discovery, GWACS *did not mention* disclosing a 2015 investor packet to KEA. *See* Dkt. 274-2, at pg. 7-8 (Response to Interrogatory No. 8)). Indeed, GWACS hid the ball, yet again, and referenced only the 2018 investor packet (which was never provided to KEA). *Id.*

While KEA appreciates that GWACS' behavior in discovery misconduct in this case is not the subject of the Motion, GWACS' consistent refusal to identify its trade secrets cannot be ignored. Indeed, this tactic allowed GWACS to stretch its baseless claims, as well as KEA's resources, all the way to trial. GWACS does not dispute that it employed this tactic, because it knows that the Court experienced it firsthand. As the Court may recall, on the eve of trial, it had to specifically order GWACS to identify its trade secrets in its proposed jury instructions (Dkt. 241). After GWACS still refused to do so with any particularity (Dkt. 243), and several days into trial, GWACS finally submitted proposed jury instructions identifying its eight (8) purported trade secrets, which were ultimately provided to the jury (Dkt. 272). This blatant gamesmanship is further evidence of subjective bad faith.

Finally, GWACS does not (and cannot) dispute that its only interest in this litigation was destroying its competitor (KEA) via protracted litigation. While GWACS tries to dismiss the

undisputed testimony of Mr. Kenney as "unreliable" (Dkt. 279, at pgs. 10-11), GWACS does not (and cannot) deny the very real impact this litigation has had on KEA's business. To be sure, the bad faith provisions in the DTSA and OUTSA are a vital deterrent of bad-faith claims, alongside the inherent authority of courts to police bad faith litigation conduct by requiring payment of attorneys' fees to the victimized party. *See Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766 (1980). Indeed, in enacting the DTDA, Congress recognized the need to "avoid interrupting the—(A) business of third parties; and (B) legitimate interests of the party accused of wrongdoing." PL 114-153, May 11, 2016, at § 5(4). Accordingly, the statutes must be applied to compensate defendants like KEA who suffer reverberating consequences because of a bad-faith misappropriation claim and the consequential impact on legitimate business of the bad publicity, and it should also be applied to deter plaintiffs like GWACS from asserting misappropriation claims based on information that it knows to be in the public realm.

The undisputed declaration of Mr. Kenney shows that GWACS' spurious claims have had a very real negative impact on KEA and its business, including lost suppliers, vendors, customers, and millions of dollars in sales. KEA has been forced to terminate its employees and liquidate its assets to fund its defense in this case. This is precisely the sort of "bad faith" that 18 U.S.C. § 1836(b)(3)(D) and Okla. Stat. Ann. tit. 78, § 89 aims to prevent.

In sum, the law can and must protect against bad-faith litigants like GWACS. Again, the jury's verdict may have finally put an end to GWACS specious claims, but it will ultimately be this Court who decides whether GWACS will be held accountable for its bad faith.

**B.    THE AMOUNT OF KEA'S ATTORNEY FEES ARE REASONABLE, SUPPORTED, AND NEED NOT BE APPORTIONED.**

First, GWACS' argument that KEA required to provide "detailed time records" in support of its Motion is without merit. Dkt. 279, at pg. 16. Rule 54 of the Federal Rules of Civil Procedure

provides that a motion for attorney fees need only "state the amount sought or provide a fair estimate of it;" and "disclose, if the court so orders, the terms of any agreement about fees for the services for which the claim is made." Fed. R. Civ. P. 54(2)(B)(iii)-(iv). This Court's local rules require a motion for attorney fees to include a sworn statement by the attorney attesting to the time spent on the case, the hourly fee claimed by the attorney, and other pertinent factors. LCvR54-2 (a)-(b). Here, KEA complied with both the Federal Rules and the Local Rules. *See* Dkt. 274-1. Indeed, KEA provided a declaration from its counsel of record, which provides a fair estimate of the combined fee total reasonably incurred from the start of the dispute to present, and properly attests to the time spent on the case for KEA, as well as the hourly fee claimed by its attorneys. *Id.* While GWACS' opposition does not dispute the veracity of the counsel's declaration, KEA and its counsel are more than willing to provide further support, including detailed time records, if the Court deems it necessary or helpful.

Second, GWACS fails to overcome the presumptive reasonableness of KEA's attorney fees. In this Circuit, "a claimant is entitled to the presumption that [the] lodestar amount reflects a 'reasonable' fee." *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998); *Anchondo v. Anderson, Crenshaw & Assoc., LLC*, 616 F.3d 1098, 1102 (10th Cir. 2010) (the lodestar is "'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate,' which produces a presumptively reasonable fee that may in rare circumstances be adjusted to account for the presence of special circumstances.").[4] Here, GWACS does not dispute that the

---

[4] Similarly, under Oklahoma law, "the hourly rate times the number of hours spent ... [is] the 'lodestar' of the court's fee determination." *State ex rel. Burk v. City of Okla. City*, 1979 OK 115, 598 P.2d 659, 660-61; *Silver Creek Invs., Inc. v. Whitten Constr. Mgmt., Inc.*, 2013 OK CIV APP 49 ¶ 18, 307 P.3d 360, 367.

MAC: 16075-001 (#5827293.2)

lodestar amount for KEA's attorney fees was correctly calculated. *See* Dkt. 274-1, at pg. 5.[5] Since KEA has established both components of the lodestar amount, KEA is thus entitled to a presumption that the amount reflects a reasonable fee. *Robinson*, 160 F.3d at 1281 (internal quotation marks omitted).

Third, GWACS incorrectly argues that KEA must apportion its attorney fees between "fee bearing and non-fee bearing claims[.]" Dkt. 279, at pg. 16. ¶25 That is not the law. In Oklahoma, the "'inextricably intertwined' rule holds that time spent in establishing the common elements necessary to both a fee-bearing and a non-fee-bearing claim need not be apportioned." *Nayles v. Dodson*, 2020 OK CIV APP 53, ¶ 25, 476 P.3d 1245, 1251. Contrary to GWACS argument, Oklahoma's Court of Civil Appeals has, in fact, recognized this theory on several occasions. *See Beavers v. Byers*, 2010 OK CIV APP 79, ¶ 18, 239 P.3d 484; *Bank of Am., N.A. v. Unknown Successors of Lewis*, 2014 OK CIV APP 78, ¶ 47, 336 P.3d 1034; *Margaret Blair Tr. v. Blair*, 2016 OK CIV APP 47, ¶ 51, 378 P.3d 65. In this case, the two case theories (breach of contract and trade secrets) were premised on the same act— KEA's development of the KP-15. GWACS' two theories sought the same remedy of money damages. There appear to be no required elements that are unique to one theory as opposed to the other. This is the exact situation that the 'inextricably intertwined' rule addresses. And there is no reason at law or equity why KEA should receive less that a full fee for proving a necessary element of a fee-bearing claim simply because the same elements would support a dismissed or non-fee-bearing claim. Accordingly, there is simply need for any apportionment.

However, Defendants do not seek double recovery of their attorney fees and costs incurred

---

[5] In addition, KEA seeks its attorney fees for the period following February 18, 2025, until the Court enters judgment on this motion, which additional amount will be substantiated by a supplemental filing.

in this case. Thus, if any Defendant is awarded its attorney fees and costs, then the other Defendants' respective awards may be offset by the amounts awarded.

### C. NEALON IS A PREVAILING PARTY AND ENTITLED TO HIS ATTORNEY FEES UNDER THE OKLOAHOMA OFFER OF JUDGMENT STATUTE.

First, GWACS does not dispute the application of the fee-shifting provisions of the Oklahoma's offer of judgment statute. Dkt. 279, at pg. 11-12. Nor does GWACS dispute that it rejected Nealon's made a valid offer of judgment made on October 7, 2021. *Id.* It is also undisputed that on February 23, 2023, the Court dismissed GWACS' claims against Nealon, with prejudice, and awarded GWACS zero damages. Dkt. 191, at pg. 40. Instead, GWACS attempts to argue that a "judgment was not rendered on merits in Nealon's favor" despite the Court's dismissal, with prejudice. Dkt. 279, at pg. 12. This argument lacks merit.

To be sure, a dismissal of an action, whether on the merits or not, generally means that defendant is the prevailing party. *Cantrell v. International Broth. of Elec. Workers*, AFL-CIO, Local 2021, 69 F.3d 456 (10th Cir. 1995); Miller & Wright, 10 Fed. Prac. & Proc. Civ. § 2667 (4th ed.). Further, party does not lose "prevailing party" simply because a plaintiff voluntarily dismisses its claims with prejudice. *Mathews v. Crosby*, 480 F.3d 1265, 1276 (11th Cir. 2007); s*ee also Sequa Corp. v. Cooper*, 245 F.3d 1036, 1037–38 (8th Cir.2001) (noting that voluntary dismissal without prejudice under Fed. R. Civ. P. 41(a)(1)(i) does not deprive a district court of authority to award costs) (citing *Cantrell v. Int'l Bhd. of Elec. Workers, Local 2021*, 69 F.3d 456, 458 (10th Cir.1995) (en banc) (holding that district courts have discretion to award costs when a party dismisses an action, with or without prejudice)).

Finally, GWACS disputed the amount of attorney fees incurred by Nealon as not actually incurred after the offer of judgment was rejected. Dkt. 279, pg. 11. But this is factually incorrect. The declaration in support of the Motion provided by counsel provided a fair estimate of the total

fee reasonably incurred by Nealon between October 2021 (when the offer of judgment was rejected) and February 2023 (when the dismissal with prejudice was entered). Dkt. 274-1, at pg. 4. Notably, GWACS does not dispute that the lodestar amount for Nealon's attorney fees was correctly calculated. *See* Dkt. 274-1, at pg. 10-11. Since Nealon has established both components of the lodestar amount, he is thus entitled to a presumption that the amount reflects a reasonable fee. *Robinson*, 160 F.3d at 1281 (internal quotation marks omitted).

### D. BROWNELLS, PHAGAN, AND SST'S ATTORNEY FEES AND COSTS ARE RECOVERABLE, SUPPORTED, AND NEED NOT BE APPORTIONED.

First, GWACS incorrectly argues that Brownells, Phagan, Nealon, and SST's attorney fees are not recoverable because they were paid by KEA. Dkt. 279, at pg. 12. To the contrary, the Tenth Circuit has explained that there is no requirement that a defendant personally pay its attorneys in order to recover its attorney fees and costs. *Infant Swimming Rsch., Inc. v. Faegre & Benson, LLP*, 335 F. App'x 707, 717 (10th Cir. 2009); *see also Kansas Penn Gaming, LLC v. HV Props. of Kansas, LLC*, 790 F. Supp. 2d 1307, 1312 (D. Kan.), aff'd, 662 F.3d 1275 (10th Cir. 2011) (finding that a party was entitled to attorney fees as the prevailing party and that "[t]he issue of who actually paid the fees is irrelevant."); *see e.g., Boulder Plaza Residential, LLC, v. Summit Flooring, LLC*, 198 P.3d 1213, 1217 (Colo.App.2008) (holding that, although defendant's attorney was paid by a third party, defendant is still entitled to seek recovery of those fees and costs from any party liable therefor, and whether defendant must in turn remit any such recovery to the third party does not impair its right to recover them), *cert. denied*, No. 08SC470, 2009 WL 61656 (Colo. Jan. 12, 2009).

Cases in other jurisdictions have reached the same conclusion on this issue. *See, e.g., Menasha Forest Products Corp. v. Curry County Title Inc.,* 350 Or. 81, 91, 249 P.3d 1265 (2011) (defendants are entitled to attorney's fees as prevailing parties under contract provisions even though fees were paid by another party pursuant to agency agreement); *Weichert Co. of Maryland*,

MAC: 16075-001 (#5827293.2)

*Inc. v. Faust*, 191 Md.App. 1, 989 A.2d 1227, 1232–33 (2010) (employee who prevailed in employment action against former employer was entitled to attorney's fees even though fees were paid by her new employer); *International Billing Services, Inc. v. Emigh*, 101 Cal.Rptr.2d 532, 84 Cal.App.4th 1175, 1192–95 (2000) (employees who prevailed in a suit against their former employer were entitled to attorney's fees based upon a written confidentiality agreement even though their new employer had actually paid the fees).

Second, the amount of attorney fees incurred by Brownells, Phagan, and SST were actually incurred after the offer of judgment was rejected. Dkt. 279, pg. 13. Again, the declaration in support of the Motion provided by counsel provided a fair estimate of the total fee reasonably incurred by these Brownells, Phagan, and SST between October 2021 (when the offer of judgment was rejected) and February 2023 (when the dismissal with prejudice was entered). Dkt. 274-1, at pg. 4. Notably, GWACS does not dispute that the lodestar amount for Brownells, Phagan, and SST's attorney fees was correctly calculated. *See* Dkt. 274-1, at pg. 10-11. Since Brownells, Phagan, and SST have established both components of the lodestar amount, he is thus entitled to a presumption that the amount reflects a reasonable fee. *Robinson*, 160 F.3d at 1281 (internal quotation marks omitted).

Third, GWACS makes the same meritless apportionment argument addressed above with respect to Brownells, Phagan, and SST. Dkt. 279, at pg. 16. Again, in Oklahoma, the "'inextricably intertwined' rule holds that time spent in establishing the common elements necessary to both a fee-bearing and a non-fee-bearing claim need not be apportioned." *Nayles*, 2020 OK CIV APP 53, ¶ 25, 476 P.3d at 1251. In this case, the case theory Brownells, Phagan, and SST were premised on the same act— KEA's development of the KP-15. GWACS' two theories sought the same remedy of money damages against Brownells, Phagan, and SST; and there appear to be no required

MAC: 16075-001 (#5827293.2)

elements that are unique to one theory as opposed to the other. This is the exact situation that the 'inextricably intertwined' rule addresses. Accordingly, there is simply no need for any apportionment.

Finally, as already explained above, GWACS' argument that Brownells, Phagan, and SST were required to provide "detailed time records" in support of its Motion is without merit. Dkt. 279, at pg. 16. To be sure, Brownells, Phagan, and SST fully complied with both the Federal Rules and the Local Rules applicable to attorney fee motions. *See* Dkt. 274-1. Brownells, Phagan, and SST's counsel provided a declaration from its counsel of record, which provides a fair estimate of the combined fee total reasonably incurred from the start of the dispute to present, and properly attests to the time spent on the case for Brownells, Phagan, and SST, as well as the hourly fee claimed by its attorneys. *Id.* While GWACS' opposition does not dispute the veracity of the counsel's declaration, Brownells, Phagan, and SST and its counsel are more than willing to provide further support, including detailed time records, if the Court deems it necessary or helpful.

### E.  SST'S ENTITLEMENT TO ATTORNEY FEES IS UNOPPOSED.

As set forth in the Motion, SST is also entitled to its attorney fees under its agreement with GWACS, which contained a prevailing party attorney fee provision. Dkt. 274, at pg. 26. GWACS did not oppose this request. Accordingly, SST's attorney fees should be awarded as unopposed.

### F.  DEFENDANTS' COSTS ARE UNOPPOSED.

In their Motion, Defendants applied for an order that GWACS pay Defendants' costs recoverable as prevailing party under 28 U.S.C. § 1920, which are further itemized in detail in their filed Bill of Costs. GWACS did not oppose this request. Accordingly, Defendants costs should be awarded as unopposed.

### III.  <u>CONCLUSION</u>

For the reasons stated herein, Defendants respectfully requests the Court award: KEA its

MAC: 16075-001 (#5827293.2)

reasonable attorney fees in the amount of **$667,822;** Brownells, Phagan, SST, and Nealon in the amount of **$139,822**; SST in the amount of **$421,720**; and costs in the amount of **$51,460**. However, Defendants do not seek double recovery of their attorney fees and costs incurred in this case. Thus, if any Defendant is awarded its attorney fees and costs, then the other Defendants' respective awards may be offset by the amounts awarded.

Dated this 15th day of April 2025.

Respectfully submitted,

**HALL, ESTILL, HARDWICK, GABLE, GOLDEN & NELSON, P.C.**

*/s/Robert P. Fitz-Patrick*
Robert P. Fitz-Patrick, OBA #14713
521 East 2nd Street, Suite 1200
Tulsa, OK 74120
Telephone: (918) 594-0400
Facsimile: (918) 594-0505
Email: rfitzpatrick@hallestill.com
**ATTORNEYS FOR DEFENDANT**

**-AND-**

**MARQUIS AURBACH**

*/s/ Alexander K. Calaway*
Brian R. Hardy, Esq.
Nevada Bar No. 10068
*Admitted Pro Hac Vice*
Alexander K. Calaway, Esq.
Nevada Bar No. 15188
*Admitted Pro Hac Vice*
10001 Park Run Drive
Las Vegas, Nevada 89145
Tel: 702-382-0711
bhardy@maclaw.com
acalaway@maclaw.com

**ATTORNEYS FOR DEFENDANT**

## **CERTIFICATE OF SERVICE**

      I hereby certify that I electronically filed the foregoing document with the Clerk of the Court for the United States District Court by using the court's CM/ECF system on the 15th day of April, 2025. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

    James E. Weger, Esq.
    Todd J.P. Bogan, Esq.
    JONES, GOTCHER & BOGAN, P.C.
    3800 First Place Tower, 15 East Fifth St.
    Tulsa, OK 74103
    ATTORNEYS FOR THE PLAINTIFF,
    GWACS ARMORY, LLC

                                                                             */s/ C. Hatfield*